# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 22-cr-200** |
| **v.** | : | |
| | : | |
| **PETER K. NAVARRO,** | : | |
| | : | |
| **Defendant.** | : | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

In his Motion to Compel Discovery, the Defendant, Peter K. Navarro, suggests that the Government is holding back on its discovery obligations because there has been "minimal discovery . . . produced by the Government to date." ECF No. 31 at 1. The Defendant's suggestion is incorrect. The Government has exceeded its discovery obligations and already provided the Defendant all discoverable material in its possession, custody, or control. While the volume of discovery might be small, its volume is not a reflection of its thoroughness. Instead, it reflects the straightforward nature of this case—the Defendant received a subpoena, ignored the subpoena's document demand, and refused to appear for testimony despite the admonition that he must. Having received all the information to which he is entitled under the rules and controlling law, the Defendant's motion seeks discovery on defenses that are unavailable to him under the law, attempts to force the Government to go fishing for irrelevant information in far-flung government files by erroneously expanding the prosecution team, and demands discovery on collateral and grand jury matters without making the threshold showing that he is entitled to such information. The Defendant's motion should be denied.

I.      **Background**

On February 9, 2022, the House Select Committee to Investigate the January 6th Attack on the United States Capitol ("the Committee"), after the Defendant confirmed he would accept it, issued a subpoena to the Defendant for documents, due February 23, 2022, and for a deposition on March 2, 2022.  See Indictment, ECF No. 1, ¶ 7-9.  On February 23, the Defendant defaulted on the subpoena's document requirement.  By that date, he had not produced a single record, had not provided the Committee with a log of records withheld because of a privilege, and had not communicated with the Committee in any way since receiving the subpoena.  *Id*. ¶ 15.  The day after the Defendant's complete default on the subpoena's document demands, Committee staff emailed the Defendant reminding him that he had been required to produce records and that he was still required to appear for a deposition on March 2.  *Id*. ¶ 16.  Several days later, the Defendant responded by email and claimed that the former President had "invoked Executive Privilege in this matter."  *Id*.  Thereafter, Committee staff repeatedly rejected the Defendant's claims regarding executive privilege and instructed him that he was required to appear before the Committee and assert any privileges and objections in person, on a question-by-question basis.  *Id*. ¶¶ 18-20.  On March 2, the Defendant did not appear for a deposition as required.  *Id*. ¶ 21.

On June 2, 2022, a federal grand jury in the District of Columbia returned an indictment charging the Defendant with two counts of contempt of Congress, in violation of 2 U.S.C. § 192, for refusing to comply in any way with the Committee's subpoena.

II.     **The Government Has Exceeded its Discovery Obligations.**

Beginning on June 14, 2022—the day after this Court entered a protective order governing discovery—the Government has provided the Defendant with discovery that has met and exceeded its obligations.  This includes all testimony and exhibits presented to the grand jury in the

investigation leading to the pending charges; reports of all witness interviews conducted during the Government's investigation, regardless of whether the witness will be called at trial; all records that the Committee voluntarily produced to the Government during the investigation; all records that the White House Counsel's Office voluntarily produced to the Government during the investigation; and all records obtained pursuant to grand jury subpoenas and a court order issued pursuant to 18 U.S.C. § 2703(d).  *See* Ex. 1 (discovery index).  The Government has produced all discoverable material of which, to date, it is aware or that is in its possession, custody, or control, as well as material for which no discovery obligation exists.

Accordingly, as the Government informed the Defendant in its correspondence, *see* Exs. 5, 7, & 9, Def.'s Mot. to Compel, ECF Nos. 31-3, 31-5, 31-7, the Government has provided all discoverable material in its possession responsive to his specific requests and has even provided information in response to his prior requests and the requests he makes again in his motion to which the law does not entitle him, such as the statements of witnesses who may never be called at trial.

The Defendant nevertheless moves for the production of information about which the Government already has provided any responsive information in its possession.  For example, the Defendant seeks discovery "that would tend to demonstrate . . . the [Select] Committee was improperly constituted and issued its subpoena in violation of House Rules and Resolutions, and because the subpoena was invalid on its face."  ECF No. 31 at 21-25.  The Government has disclosed all the information it possesses about the Committee's authority to issue the Defendant's subpoena.  And, in any event, the objections to the Committee's authority that the Defendant hopes to raise, and for which he seeks additional discovery, appear to all be claims that the Committee did not follow its operational rules.  But he has waived these claims and thus cannot present them

at trial because they all were either known or available to him at the time he defaulted but he did not raise them before the Committee as a basis for noncompliance.[1]  *See McPhaul v. United States*, 364 U.S. 372, 378-79 (1960) (finding defendant waived objection to compliance based on fact he did not have records where he did not raise it before the relevant committee); *United States v. Bryan*, 339 U.S. 323, 330-334 (1950) (finding defendant waived objection regarding a "defect in composition" of the issuing committee—lack of quorum—because she raised it for the first time at her contempt trial); *Liveright v. United States*, 347 F.2d 473, 475-76 (D.C. Cir. 1965) (describing the "Bryan-McPhaul rule" for waiver of objections where the basis for the objection was apparent at the time of default); July 11, 2022, Hearing Transcript, *United States v. Bannon*, Case No. 21-cr-670-CJN, at 126-30 (D.D.C.) (excluding as a defense at trial claims that the Select Committee did not comply with its rules where the Defendant was on notice of the rules but did not raise them at the time of his default).  In addition to having waived the objections, the Defendant's supposed objections are based on interpretations of the Select Committee's rules that are contrary to the House's interpretation and thus cannot be presented to the jury on that basis as well.  *See Barker v. Conroy*, 921 F.3d 1118, 1130 (D.C. Cir. 2019) ("Accordingly, we accept the House's interpretation of its own rules . . . , thus eliminating any risk of running afoul of either the Rulemaking Clause or separation-of-powers principles."); July 11, 2022, Hearing Transcript, *Bannon*, at 130-32 (finding objections to the Select Committee's composition and ranking minority member were not appropriate questions for the jury because the House Committee had articulated

---

[1] Claims that the Committee did not follow its operational rules are defenses that, where not waived, must be proven at trial by the Defendant.  They are not elements of the offense that the Government must prove.  *See, e.g.*, *Yellin v. United States*, 374 U.S. 109, 123 (1963) (finding an alleged rules violation could be a defense to contempt of Congress "were [the defendant] able to prove his defense"); *Liveright*, 347 F.2d at 474-75, 475 n.5 (noting that treating rules violation as a potential defense was consistent with Supreme Court precedent that rules compliance is not essential to the offense but potentially valid defenses).

its reading of the relevant rules and the Defendant's proffered claims were contrary to that reading). These issues being unavailable to the Defendant as defenses at trial, even if additional records existed relating to them, neither Rule 16 nor *Brady* would provide a basis for their production. *See United States v. Armstrong*, 517 U.S. 456, 462 (1996) (finding information is only material to the defense under Rule 16 if it is related to the Defendant's "response to the Government's case in chief"); *Brady v. Maryland*, 373 U.S. 83 (1963) (defining discoverable material as information favorable to a defendant that is "material to either guilt or punishment"); *United States v. Blackley*, 986 F. Supp. 600, 603 (D.D.C. 1997) (finding *Brady* material is "not material that would only support jurisdictional challenges, claims of selective prosecution, or any other collateral attacks on the indictment, because prevailing on those claims would not prove defendant free from fault, guilt or blame").

As another example, the Defendant requests early disclosure of Jencks material. ECF No. 31 at 42 (Request No. 5). The Jencks Act, 18 U.S.C. § 3500, however, only requires the production of statements of testifying witnesses. The Government has not identified its trial witnesses yet, but has nevertheless disclosed the grand jury transcripts and interview reports of every witness questioned in relation to the instant charges. It has also disclosed all communications in its possession between witnesses it interviewed or who testified in the grand jury and the Defendant. As trial preparations commence, the Government will update its disclosures to provide any Jencks material, to the extent it may exist and has not already been provided. *See United States v. Sutton*, Case No. 21-cr-0598-PLF, 2022 WL 1202741, at *9 (D.D.C. Apr. 22, 2022), on reconsideration in part, Case No. 21-cr-0598-1-PLF, 2022 WL 2828995 (D.D.C. July 20, 2022) (Rule 16 of the Federal Rules of Criminal Procedure expressly "does not authorize the discovery or inspection of statements made by prospective government witnesses except as provided by the Jencks Act, 18

U.S.C. § 3500. . . . To compel the disclosure of witness statements before trial – a defendant must demonstrate that (1) portions of those statements contain the substance of any relevant written or oral statements made by the defendant that are disclosable under Rule 16(a)(1)(A) or (B); or (2) they are exculpatory or favorable, so-called *Brady* material." (internal quotations omitted)).

Finally, the Defendant seeks several categories of records that, to the extent they may exist, relate only to internal Department deliberations, *see, e.g.*, ECF No. 31 at 39 (Request No. 2(f) (requesting records relating to how Office of Legal Counsel opinions might apply to the Defendant)), or do not contain any evidence relating to the issues to be decided at trial, *see, e.g.*, *id*. at 38 (Request No. 2(a) (requesting the Government be required to produce copies of requests for information it may have issued and to which it received information it later produced in discovery); *id*. at 40 (Request No. 3 (requesting all interview reports relating to investigations of individuals that have no known involvement in the Defendant's contempt)).  With respect to the former, Rule 16(a)(1)(E), however, "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."  Fed. R. Crim. P. 16(a)(2).  Nor does *Brady*.  *See United States v. Naegele*, 468 F. Supp. 2d 150, 155 (D.D.C. 2007) ("To the extent that defendant seeks documents or records reflecting the internal deliberations of the Department of Justice leading to the decision to seek an indictment, he is not entitled to them under *Brady*, even if some prosecutor 'expressed doubts' that defendant's conduct 'amounts to a crime or warrants prosecution.'").  And with respect to the latter category, as described above, *supra* at 5, the universe of discoverable material is that related to the Defendant's guilt or innocent at trial.  There is nothing more, therefore, to order the Government to provide on these or similarly non-discoverable or irrelevant matters.

Having provided all the discoverable information in its possession to date, the Defendant's various requests under Rule 16, *Brady* and its progeny, and the Jencks Act are moot.   The Government understands it discovery obligations, takes them seriously, and will continue to comply with those obligations as soon as possible should the Government become aware of any additional discoverable information.

### III.   The Committee, the White House, the Justice Department's Civil Division, and the National Archives and Records Administration are Not Part of the Prosecution Team under Federal Rule of Criminal Procedure 16 or *Brady* and its Progeny.

Despite the Government's full discovery, the Defendant claims that the Government's discovery obligations are not satisfied until it has searched the records of the Committee, the White House, the Justice Department's Civil Division, and the National Archives and Records Administration ("NARA") for discoverable material.  ECF No. 31 at 18-20; *see also, e.g.*, *id*. at 38-39 (Request Nos. 2(d), 2(e), 6(d) and 6(g)).  The Government's obligations under Federal Rule of Criminal Procedure 16 and *Brady* only extend, however, to those agencies that are "closely aligned with the prosecution."  *United States v. Libby*, 429 F. Supp. 2d 1, 5-6 (D.D.C. 2006) (finding this standard applicable to the government's obligations under Fed. R. Crim. P. 16(a)(1)(E)) (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1993) (holding the standard applied to the government's *Brady* obligations)).  They do not extend to material "possessed by agencies which had no part in the criminal investigation or when the prosecution had no control over the agency officials who physically possessed the documents."  *Id*. at 6; *see also Brooks*, 966 F.2d at 1503 (holding that the D.C. Metropolitan Police Department was "closely aligned" with the prosecution for purposes of triggering the government's obligations to search its files where it had a "close working relationship" with the prosecutor's office and that relationship was "obviously at work in this prosecution").  Moreover, "it is settled that the government

generally need not produce documents that are in the possession, custody, or control of a separate branch of government such as Congress." *Libby*, 429 F. Supp 2d at 7 (internal citations omitted); *see also United States v. Safavian*, 233 F.R.D. 12, 14 (2005) ("[The government] does not, however, include a committee of the United States Senate (or the House of Representatives) because the Congress is a separate branch of the government and was not intended by the Rules writers to be included within Rule 16."); Mar. 16, 2022, Hearing Transcript, *Bannon*, at 95 (finding the prosecution team in a contempt of Congress case did not include the Committee or the entirety of the government).

Here, the Committee is part of a separate branch of government and neither the White House, the Civil Division, nor NARA has any ongoing close working relationship with the U.S. Attorney's Office or FBI or had any role in the criminal investigation leading to the charges in this case. Indeed, the Defendant appears to concede the matters in relation to which the Defendant has been engaged with the Civil Division and NARA are related to an entirely different congressional committee. ECF No. 31 at 19. The Defendant asserts that the White House, on the other hand, is part of the prosecution team, because, during its criminal investigation, the Government interviewed a witness in the White House Counsel's Office who had direct communications with the Defendant in relation to the subpoena at issue after it was served and before the Defendant defaulted on its testimonial demands and obtained a voluntary production of that witness's communications with the Defendant. *Id*. at 18-19. By arguing that this converts the White House into part of the prosecution team, however, the Defendant appears to be arguing for a standard under which any government official or entity that is a mere witness in a criminal investigation automatically enlists their agency as a member of the prosecution team. Such a standard runs contrary to even the cases on which the Defendant relies to support his claims. In each of the cases

the Defendant cites, the other executive branch agencies the courts found to be part of the prosecution team actively participated in collecting evidence during the criminal investigation, were directly affected by the criminal conduct at issue, provided analysis and review of criminal allegations, had previously provided open-file access to the prosecuting office, and/or had a unique, close relationship with the prosecutor's office.  *See, e.g.*, *United States v. Santiago*, 46 F.3d 885, 893-94 (9th Cir. 1995) (finding Bureau of Prisons inmate files in the possession of the prosecution team where the prosecution team had previously obtained inmate files in the case, BOP had collected evidence in the investigation, and BOP and the U.S. Attorney's Office were part of the same executive branch agency); *United States v. Deutsch*, 475 F.2d 55, 57-58 (5th Cir. 1973) (finding personnel file of USPS employee who was target of charged bribery scheme was in prosecutor's possession where the two agencies were "so closely connected . . . for the purpose of this case" and prosecutor appeared to have access to the file); *Libby*, 429 F. Supp. 2d at 10-11 (finding the Office of the Vice President and the CIA to be "closely aligned" with the prosecution team for discovery purposes where there had been a free flow of information from the agencies and it was unlikely an indictment would have been secured without the information).[2]  None of those circumstances are present here.

Even aside from the fact that the other agencies from which the Defendant seeks records

---

[2] In support of his claims, the Defendant also cites the broad standard applied by one court in this district in *United States v. Safavian*, in which the court held that the "prosecution team" includes "any and all agencies and departments of the Executive Branch."  233 F.R.D. 12, at *2 (D.D.C. 2005).  In a later opinion in the same case, the court recognized this standard "extends beyond agencies 'closely aligned' with the prosecution," *see United States v. Safavian*, 233 F.R.D. 205, at *2 n.1 (D.D.C. 2006), seeming to run contrary, therefore, to the D.C. Circuit's holding in *Brooks*.  Indeed, it does not appear the *Safavian* standard has been adopted by other courts in this district and has been questioned by at least one, *see Libby*, 429 F. Supp. 2d at 6 n.10 (noting that the standard appeared to go even beyond the Ninth Circuit's broad standard for discovery in *Santiago* and that "[t]his Court need not (nor does it believe it could) adopt such a broad reading of the applicable caselaw in this Circuit to properly resolve the pending motions").

are not closely aligned with the prosecution team in this case, the Defendant seeks only records that are either irrelevant to the questions to be determined at trial or about the existence of which he merely speculates. Neither category entitles him to send the Government on a search in another agency's records.

First, as described above, the Defendant is only entitled to information that goes to matters that will be at issue at trial. *See Armstrong*, 517 U.S. at 462; *Brady v. Maryland*, 373 U.S. at 87; *Blackley*, 986 F. Supp. at 603. Yet, the Defendant seeks materials from other government agencies that are untethered from the elements of the offense or available defenses. For example, the Defendant seeks communications about the Defendant between the White House Counsel's Office and former President Donald Trump or the Committee would relate to issues a jury must decide at trial. *See* ECF No. 31 at 39 (Request Nos. 2(d) and 2(e)). The question at trial is whether the Defendant was subpoenaed to provide documents and testimony in relation to the Committee's authorized investigation and whether his default was willful. *See* Final Jury Instr., *Bannon*, ECF No. 129 at 27-28 (instruction on elements of contempt of Congress). The Defendant does not explain how the communications he seeks would go to proving or disproving either. Nor could he—the White House does not control the authorized scope of the Committee's investigation, the subpoena and the Committee's communications with the Defendant speak for themselves with respect to the Defendant's obligations, and communications to which the Defendant was not a party could not provide any evidence of his intent.

Second, speculation is not sufficient to force the Government to search in other agency files for material that may or may not exist and that may or may not be material or favorable under Rule 16 or *Brady*. *See, e.g.*, *Brooks*, 966 F.2d at 1504; *United States v. Apodaca*, 287 F. Supp. 3d 21, 40 (D.D.C. 2017) (citing *United States v. Williams–Davis*, 90 F.3d 490, 514 (D.C. Cir. 1996);

*United States v. Sims*, 508 F. App'x 452, 460–61 (6th Cir. 2012)).  Yet, for example, the Defendant suggests that, simply because of coincidental timing, there may be some relevance to this case of records in an entirely unrelated civil suit against the Defendant about a different congressional committee and his refusal to provide records that belong to NARA.  *See, e.g.*, ECF No. 31 at 19; *id.* at 38 (Request No. 1).

Accordingly, even under a broad definition of the "prosecution team," the records the Defendant seeks are not sufficiently connected to his trial defense to send the Government on the speculative, irrelevant search he desires.  *See Brooks*, 966 F.2d at 1503-04 ("Where the file's link to the case is less clear, the court must also consider whether there was enough of a prospect of exculpatory materials to warrant a search. . . . As the burden of the proposed examination rises, clearly the likelihood of a pay-off must also rise before the government can be put to the effort.").  His efforts to expand the prosecution team must be rejected.

## IV.    The Defendant Has Failed to Demonstrate He is Entitled to Discovery to Support a Selective Prosecution Claim.

The Defendant claims he is entitled to information relating to whether the White House or the Select Committee exerted improper political influence over the decision to seek an indictment against the Defendant, ECF No. 31 at 26-30, and whether the Defendant's prosecution is the result of selective prosecution, *id.* at 26-35.  The information the Defendant seeks does not go to the elements of the offense or answering the government's proof of them at trial and thus is not discoverable under Rule 16 or *Brady*.  *See United States v. Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000) (finding Rule 16 did not entitle the defendant to discovery relating to his double jeopardy claim because the claim related "not to refutation of the government's case in chief but to establishment of an independent constitutional bar to the prosecution"); *Blackley*, 986 F. Supp. at 603 (finding *Brady* material is "not material that would only support jurisdictional challenges,

11

claims of selective prosecution, or any other collateral attacks on the indictment").  The only case the Defendant cites in support of his first claim for discovery, relating to supposed improper political interference, does not discuss the requirements for criminal discovery at all but instead addresses only whether a court should enforce an administrative subpoena issued by the Securities and Exchange Commission.  *See* ECF No. 31 at 26 (citing *SEC v. Wheeling-Pittsburg Steel Corp.*, 648 F.2d 118 (3d Cir. 1981)).  Despite citing no legal authority for the request, however, it appears it is an extension of his later selective prosecution claim.  *See, e.g.*, ECF No. 31 at 29 (claiming he is "entitled to any communications between the Department of Justice and the Select Committee that may have influenced the Government's decision to prosecute the Defendant for contempt of Congress").[3]

To be entitled to discovery relating to a selective prosecution claim, the Defendant must offer "some evidence tending to show the existence of the essential elements of the defense," *Armstrong*, 517 U.S. at 468 (citation omitted), that is, "some evidence of both discriminatory effect and discriminatory intent," *United States v. Bass*, 536 U.S. 862, 863 (2002). The showing the Defendant must make is a "rigorous" one, *Armstrong*, 517 U.S. at 468, and "a defendant must provide something more than mere speculation or 'personal conclusions based on anecdotal evidence,'" *United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019) (quoting *Armstrong*, 517 U.S. at 470).   Moreover, if the Defendant fails to show either discriminatory effect or discriminatory intent, he is not entitled to discovery. *See United States v. Blackley*, 986 F. Supp. 616, 618 (D.D.C. 1997) (citing *Attorney General of U.S. v. Irish People, Inc.*, 684 F.2d 928, 947

---

[3] The Defendant also suggests that he is entitled to contacts between the White House and Select Committee because the "possibility exists" that the White House exerted "political influence over [the Committee's] decisions regarding" the Defendant.  ECF No. 31 at 30.  The Committee's decisions regarding the Defendant, however, can have no relation to any selective prosecution claim since it is a separate branch of government with no prosecuting authority.

(D.C. Cir. 1982)). The Defendant has failed to make the requisite showing to be entitled to discovery for a selective prosecution claim.

First, the Defendant fails to show discriminatory effect. To show discriminatory effect, the Defendant must show some evidence "that the Government afforded 'different treatment' to persons 'similarly situated' to him." *United States v. Judd*, -- F. Supp. 3d --, 2021 WL 6134590, at *2 (D.D.C. 2021) (quoting *Armstrong*, 517 U.S. at 470). "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *United States v. Khanu*, 664 F. Supp. 2d 28, 32 (D.D.C. 2009) (quoting *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008)) (internal quotation marks omitted).

The Defendant claims that Mark Meadows and Daniel Scavino, two other individuals who did not comply with a Select Committee subpoena and were not prosecuted are similarly situated to him. ECF No. 31 at 32-33. He claims that the discriminatory classification differentiating him from Meadows and Scavino is the Defendant's "public expression of political beliefs." *Id* at 31. But the Defendant does not explain or demonstrate how this places him in a protected class of which Meadows and Scavino are not a part. Based on public reporting and their social media pages, Meadows and Scavino both appear to also frequently make public statements about their political beliefs.[4] Having failed to identify any similarly situated individuals that have not exercised the constitutional right for which the Defendant claims he has been chosen for prosecution, he cannot meet his burden to show discriminatory effect.

Moreover, even if the Defendant had shown Meadows and Scavino to be outside the

---

[4] *See, e.g.*, https://twitter.com/markmeadows; https://twitter.com/DanScavino (last accessed Aug. 15, 2022).

protected class of which the Defendant claims he is a part, he has not shown that they have committed "roughly the same crime under roughly the same circumstances." *Khanu*, 664 F. Supp. 2d at 32. The only similarities the Defendant identifies is the fact that he, Meadows, and Scavino all defied a Select Committee subpoena and all invoked executive privilege in doing so. The similarities, however, end there. Meadows, unlike the Defendant, did produce records to the Committee. And, as is clear from the House reports reciting the facts of Meadows's and Scavino's failures to comply with their subpoenas,[5] the circumstances of their communications with the Committee and refusals to comply were different in almost every way from the Defendant's. Having failed to show discriminatory effect, the Defendant's request for discovery relating to selective prosecution can be denied without further analysis.

In any event, the Defendant also has failed to show the second prong of the test—discriminatory intent. To do so, he must demonstrate that "the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, or was designed to prevent or paralyze his exercise of constitutional rights." *United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982) (internal citations and quotation marks omitted); *see also Wayte v. United States*, 470 U.S. 598, 610, (1985) (noting that discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group" (citations and internal quotation marks omitted) (alteration in original)). Here, the Defendant claims that

---

[5] *See* H. Rep. 117-216, Resolution that the House of Representatives find Mark Randall Meadows in Contempt of Congress, *available at* https://www.congress.gov/117/crpt/hrpt216/CRPT-117hrpt216.pdf (last accessed Aug. 15, 2022); H. Rep. 117-284, Resolution that the House of Representatives find Peter K. Navarro and Daniel Scavino, Jr. in Contempt of Congress, https://www.congress.gov/117/crpt/hrpt284/CRPT-117hrpt284.pdf (last accessed Aug. 15, 2022).

discriminatory purpose is evident in the Committee's reference in its criminal contempt report to the Defendant's public statements that he was not going to comply with the subpoena.  ECF No. 31 at 34.  But the Committee is not part of the prosecution team—indeed it is not part of the Executive Branch tasked with enforcing the laws.  It certainly has no role in the Department of Justice's prosecutorial decisionmaking.  It is the prosecuting authority that the Defendant must show acted with discriminatory purpose.  The Committee's report can provide no evidence of the prosecutors' intent.  *See Stone*, 394 F. Supp. 3d at 36 ("If one seeks permission to embark on discovery related to selective prosecution, it is not enough to simply state that the prosecutor was biased.  Defendant must *show* that in his case, the decisionmaker acted with a discriminatory purpose." (emphasis in original)).

The Defendant also appears to claim that there is some evidence of discriminatory intent because, 1) according to the Defendant, this prosecution departs from Office of Legal Counsel opinions, *id*. at 26; 2) months before the Defendant was served with the subpoena, President Biden made statements that individuals who unlawfully defy congressional subpoenas should be prosecuted, ECF No. 31 at 26; 3) the Defendant was not allowed to self-surrender after being indicted, *id*. at 28; 4) █████████████████████████████████████████████ ███████████████████████, *id*.; and 5) the White House Counsel's Office informed the Defendant before he defaulted on the subpoena's testimonial demand that President Biden would not be invoking executive privilege, *id*. at 29.

None of these claims carries the weight of meeting the Defendant's burden to show that the prosecutors in this case sought an indictment to discriminate against the Defendant because he exercised his constitutional rights.  First, this case does not depart from Office of Legal Counsel ("OLC") opinions.  There is no OLC opinion holding that former White House staff members can

invoke executive privilege of their own accord.  Nor is there one that holds that, even where a president invokes executive privilege in response to a congressional subpoena the summonsed witness can then withhold all responsive records, whether privileged or not.  Nor is there an OLC opinion holding that a former White House staff member to a former President has absolute testimonial immunity when summonsed by Congress.  Indeed, there is not even an OLC opinion holding that all current White House staff members have such immunity—OLC has only ever found such immunity to apply to a limited group of immediate advisers based on a fact-intensive review of those advisers' roles.  *See, e.g.*, *See Congressional Oversight of the White House*, 45 Op. O.L.C. __, at *55 (Jan. 8, 2021) ("[I]n determining whether a person qualifies for this immunity, we have considered the day-to-day responsibilities of the adviser and the extent of his or her regular interaction with the President. . . . most members of the White House staff do not qualify for immunity from compelled testimony.").

Second, the Defendant's continuing claims about his arrest are based on a misrepresentation of the facts and his posture toward the Government at the time of his arrest.  He claims that it was unprecedented and unusual that he was not permitted to self-report.  ECF No. 31 at 28.  Contrary to the Defendant's claims, however, it is not law enforcement's normal practice to ask combative, unrepresented subjects to self-surrender.  At the time he was indicted and arrested, the Defendant was not represented.  And only a few days before, when the case agents attempted to interview him and serve him with a subpoena at his residence, the Defendant at first refused to open the door and then, when he did, told the agents to "get the f*** out of here."[6]  The Defendant also has an extensive history of seeking out news coverage.  To avoid a media circus,

---

[6] This interaction was recorded and produced in discovery to the Defendant on June 14, 2022.  The Government can provide it to the Court if needed.

therefore, the arresting agents encountered the Defendant in a discrete location on the jet-bridge at the airport, removed him to the tarmac, and took him to be booked from there—all out of sight of the public.  Moreover, the "strip search" and "leg irons" of which the Defendant repeatedly complains is, to the Government's understanding, the U.S. Marshal's standard procedure for all arrestees—whether they self-surrender or not.  The Defendant seeks to have this Court attribute discriminatory intent to an arrest operation aimed at safely and efficiently handling an unrepresented, unpredictable subject without a media frenzy.  His claims are meritless.

Finally, the Defendant's remaining claims relate to two events that occurred even before the crime had been committed, ECF No. 31 at 26, 29,



Nevertheless, the Defendant asserts that these events and testimony reflect some improper pressure being applied by the Committee or the White House to the career prosecutors in this case, forcing them to make improper discriminatory decisions.  But his claims are based on pure speculation.  And the prosecution team is unaware of any such pressure campaigns.  Being unaware, any additional communications between the Department of Justice and/or the White House and/or the Select Committee, to the extent they even exist, could not have influenced the Government's decision to prosecute the Defendant.[7]  The Defendant's speculation

---

[7] In his motion, the Defendant accuses the Government of shielding from him the existence of any communications between the Department of Justice, including the Office of Legal Counsel, and the Select Committee and/or the White House.  ECF No. 31 at 27.  This is not true.  On July 27, 2022, prior to the Defendant's motion, the Government informed counsel that, "[w]e do not have any correspondence between the White House, the Select Committee, and the Department of

that it is otherwise cannot meet his burden.  *See Stone*, 394 F. Supp. 3d at 11 ("There is no precedent that would authorize the dismissal of an indictment based on pure conjecture.").

Having provided no evidence of discriminatory intent on the part of the actual prosecutorial decisionmakers, the Defendant has failed to make the requisite showing for discovery relating to a selective prosecution claim.

## V.     The Defendant is Not Entitled to Discovery of Additional Grand Jury Material.

The Defendant seeks copies of ████████████████████████████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
████████████████████████████████████████████ To justify these requests, the Defendant claims a "ground may exist to dismiss the indictment because of a matter that occurred before the Grand Jury."  *Id*. at 35.  Specifically, the Defendant suggests that the Government did not present to the grand jury what he claims to be exculpatory material relating to the Committee's composition, *id*. at 36, did not present supposedly exculpatory evidence of the Defendant's only now purported reliance on OLC opinions, *id*. at 36-37, and improperly instructed the grand jury on the law, *id*. at 37.

The Defendant's requests must be denied, because he has failed to meet his burden to show a particularized need.  "Federal Rule of Criminal Procedure 6(e) 'makes quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule.'"  *McKeever v. Barr*, 920 F.3d 842, 844 (D.C. Cir. 2019) (citation omitted).  Accordingly, to pierce the secrecy of grand

---

Justice that is responsive to your request *and we are not aware of any*."  *See* ECF No. 31-7 at 1 (emphasis added).

jury proceedings, the Defendant must demonstrate a particularized need for the material. *United States v. Saffarinia*, 424 F. Supp. 3d 46, 81 (D.D.C. 2020); *Apodaca*, 287 F. Supp. at 47; *United States v. Wilkerson*, 656 F. Supp. 2d 22, 34 (D.D.C. 2009) ("Fed. R. Crim. P. 6(e)(3)(E)(i) allows district courts to authorize disclosure of grand jury matters "in connection with a judicial proceeding" if the party requesting disclosure demonstrates a "particularized need" or "compelling necessity" for the testimony."). "[D]isclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and . . . the burden of demonstrating this balance rests upon the private party seeking disclosure." *United States v. Borda*, 905 F. Supp. 2d 201, 204 (D.D.C. 2012) (internal citation omitted). The Defendant does not meet his burden here.

To show that a ground may exist for dismissing the indictment because of an issue relating to the grand jury, the Defendant must meet a high bar. "Grand jury proceedings are 'accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process.'" *Borda*, 905 F. Supp. 2d at 204 (quoting *United States v. Mechanik,* 475 U.S. 66, 75 (1986) (O'Connor, J., concurring)). "An indictment valid on its face may not be challenged on the ground that the grand jury acted on the basis of inadequate, unreliable or incompetent evidence." *Id*. (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988)). The standard for dismissing an indictment for an error in the grand jury "is so high that dismissal of an otherwise valid indictment is inappropriate even where the government failed to disclose substantial exculpatory evidence it possessed at the time of the grand jury." *Id*. (internal citation omitted). Accordingly, "conclusory or speculative allegations of misconduct do not meet the particularized need standard; a factual basis is required." *Naegele*, 474 F. Supp. 2d at 10.

The Defendant does not explain how issued grand jury subpoenas, judicial orders to testify, and testimony that may have been provided in other matters could shed any light on the

Defendant's claims of purported error.  Having failed to establish that the requested information would do anything to advance his planned claims for dismissal based on evidence not presented to the grand jury or the Government's instructions to the grand jury, the Defendant has failed to make the factual showing necessary to meet the particularized need standard.  In any event, the Government has already provided the Defendant all records obtained in response to grand jury subpoenas and all witness testimony and exhibits presented to the grand jury in this matter.  He has all he needs to be able to make claims about what supposedly exculpatory evidence was and was not presented to the grand jury.

Moreover, the Defendant has failed to make any factual showing of error in the first place. His assertion that the jury was not properly instructed is nothing but speculative.  The indictment properly alleges the elements of the offense—which the Defendant does not appear to dispute— and he provides no reason to believe the grand jury was instructed on the law in any way contrary to those allegations.  This is fatal to the Defendant's claim of particularized need for any grand jury materials in relation to claims about the grand jury charge.  *See Saffarinia*, 424 F. Supp. 3d at 81 (denying request for grand jury minutes where defendant's claim that grand jury was improperly instructed on the law was speculative and indictment sufficiently alleged essential elements); *United States v. North*, 708 F. Supp. 370, 371-72 (D.D.C. 1988) ("[T]here is no requirement that the grand jury be instructed on every aspect of the law. . . . Never have prosecutors had to present all possible legal defenses to a grand jury.").

In addition, the "exculpatory" evidence the Defendant claims was withheld from the grand jury is not, in fact, exculpatory.  As described above, the Defendant's claims relating to the composition of the Committee have been waived as a defense, *supra* at 3-4, and the Defendant's post-indictment claim that he relied on OLC opinions—notably, he identifies none that he believes

should have been presented to the grand jury—cannot provide a defense because the contempt of Congress statute does not require that the Defendant have acted in bad faith or with knowledge that his conduct was unlawful, *see Fields v. United States*, 164 F.2d 97, 100 (D.C. Cir. 1947) (affirming jury instruction on "willful" in contempt of Congress statute); Order, *Bannon*, ECF No. 49 (granting Government's motion to exclude good-faith reliance defenses in contempt of Congress case); July 11, 2022, Hearing Transcript, *id.*, at 117 (noting that arguments that defendant thought he was legally excused from compliance with congressional subpoena "would not go to any aspect of willfully, as the Court of Appeals has defined it").   In any event, even if the information were truly exculpatory—and it is the Government's practice to present true, materially exculpatory information to the grand jury—the law does not require the Government to present exculpatory evidence to the grand jury.  *United States v. Williams*, 504 U.S. 36, 52-53 (1992).[8]

## VI.    Conclusion

The Government has met and exceeded its discovery obligations, and the Government will continue to comply with its obligations as required.  The Defendant has failed to demonstrate that he is entitled to anything more and his motion to compel should be denied.

---

[8] The Defendant relies repeatedly on Justice Manual provisions to support his argument that failure to present exculpatory information is error justifying disclosure of grand jury material. ECF No. 31 at 36.  But as he also concedes, the Justice Manual's requirements of presenting exculpatory information to the grand jury are not reflected in controlling law. *Id*. Moreover, while the Government takes it obligations under the Justice Manual seriously, it does not create any rights for the Defendant in this case.  *See United States v. Blackley*, 167 F.3d 543, 549 (D.C. Cir. 1999) ("[V]iolations of Manual policies by DOJ attorneys or other federal prosecutors afford a defendant no enforceable rights."); *United States v. Kember*, 648 F.2d 1354, 1370 (D.C. Cir. 1980) ("[W]e do not believe the general guidelines established by the Manual are judicially enforceable."); Justice Manual § 1-1.200, *available at* https://www.justice.gov/jm/jm-1-1000-introduction#1-1.200 (last accessed Aug. 18, 2022) (stating the Manual "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal.").

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/  Elizabeth Aloi*
        Molly Gaston (VA 78506)
        Amanda R. Vaughn (MD)
        Elizabeth Aloi (D.C. 1015864)
        Assistant United States Attorneys
        United States Attorney's Office
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-1793 (Vaughn)
        amanda.vaughn@usdoj.gov