IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )
                                   )     CR No. 22-200
                                   )     Washington, D.C.
          vs.                      )     August 31, 2022
                                   )     2:07 p.m.
PETER K. NAVARRO,                  )
                                   )
          Defendant.               )
_____)


TRANSCRIPT OF MOTION HEARING PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:          Amanda Vaughn
                             Elizabeth Ann Aloi
                             Molly Gaston
                             U.S. ATTORNEY'S OFFICE
                             DISTRICT OF COLUMBIA
                             555 4th Street, NW
                             Washington, D.C. 20003
                             (202) 252-7212
                             Email:
                             elizabeth.aloi@usdoj.gov
                             Email: molly.gaston@usdoj.gov

APPEARANCES CONTINUED:

For the Defendant:           John S. Irving, IV
                             EARTH & WATER LAW LLC
                             1455 Pennsylvania Avenue, NW
                             Suite 400
                             Washington, D.C. 20004
                             (301) 807-5670
                             Email: jirving1@verizon.net

                             John P. Rowley, III
                             JPROWLEY LAW PLLC
                             8639 Chase Glen Circle
                             Fairfax Station,
                             Virginia 22039
                             (703) 402-8800
                             Email:
                             john.rowley@jprowleylaw.com

                             Stanley McKennett Brand
                             BRAND WOODWARD LAW
                             3 Pebble Ridge Court
                             Rockville, MD 20854
                             (202) 258-6597
                             Email: stanleymbrand@gmail.com

                             Stanley Edmund Woodward, Jr.
                             BRAND WOODWARD LAW
                             1808 Park Road NW
                             Washington, D.C. 20010
                             (202) 996-7447
                             Email:
                             stanley@brandwoodwardlaw.com

Court Reporter:              William P. Zaremba
                             Registered Merit Reporter
                             Certified Realtime Reporter
                             Official Court Reporter
                             E. Barrett Prettyman CH
                             333 Constitution Avenue, NW
                             Washington, D.C. 20001
                             (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
1                    P R O C E E D I N G S
2              COURTROOM DEPUTY:  All rise.  The Honorable
3    Amit P. Mehta presiding.
4              THE COURT:  Please be seated.
5              COURTROOM DEPUTY:  Good morning, Your Honor.
6    This is criminal case No. 22-200, United States of America
7    versus Peter K. Navarro.
8              Amanda Vaughn, Elizabeth Aloi, and Molly Gaston
9    for the government.
10             John Irving, John Rowley, Stanley Brand, and
11   Stanley Woodward for the defense.
12             The defendant is appearing in person for these
13   proceedings.
14             THE COURT:  Okay, Counsel.  Good afternoon.
15             Mr. Navarro, welcome.  Good afternoon to you, sir.
16             THE DEFENDANT:  Good afternoon to you.
17             THE COURT:  Okay.  So we're here this afternoon to
18   talk about Mr. Navarro's motion to compel discovery.  The
19   parties have exchanged briefs and I've obviously read
20   everything the parties have submitted.
21             I think I'd like to begin with just some
22   questions, and primarily direct those questions to
23   government counsel, just so I can get the factual framework
24   that I think may ultimately inform some of the legal issues
25   that have come up.  So if I could just have government
```

1    counsel approach the lectern.  And I just had a few

2    questions in terms of what's been turned over to Mr. Navarro

3    so far.

4            So much of what at least is seeming to be a

5    subject of the motion are communications with the Select

6    Committee and the White House.  So starting with

7    communications between the Department of Justice and the

8    Select Committee, have any such communications, if they

9    exist, been turned over?

10           MS. ALOI:  Yes, Your Honor.

11           The communications between -- the discoverable

12   communications between the Department -- the prosecution

13   team and the Select Committee have been turned over.

14           There are some logistical emails that have not.

15           THE COURT:  And just out of curiosity, how do you

16   define "logistical emails"?  What do you mean by that?

17           MS. ALOI:  The Department had made a request for

18   information, and there may have been some back and forth on

19   when we would be getting the information, for example.

20           THE COURT:  Okay.

21           MS. ALOI:  All of the materials obtained from the

22   Select Committee at our request have been turned over.

23           THE COURT:  And the materials that you received

24   from the Select Committee, were those materials provided

25   specifically at the request of the Department of Justice or

1    materials that the Select Committee voluntarily provided you

2    or some combination of the two?

3              MS. ALOI:  They were provided at our request.

4              THE COURT:  Okay.

5              MS. ALOI:  And the specific requests, just as we

6    would with grand jury information -- grand jury subpoenas,

7    have not been turned over.  The requests themselves versus

8    the materials received in receipt.

9              THE COURT:  I'm sorry, so the request itself has

10   not been turned over?

11             MS. ALOI:  That's correct.

12             THE COURT:  Okay.

13             And I take it the request for, perhaps, obvious

14   reasons, didn't take the form of a subpoena.  Was it a

15   letter, email, how was it communicated?

16             MS. ALOI:  That's correct, it was a letter

17   communicated by email, and the Committee voluntarily

18   provided information.

19             THE COURT:  Okay.

20             And are there any outstanding requests -- well,

21   let me ask a different question first.

22             Were there any categories of material that the

23   Department of Justice sought that it believes the Committee

24   declined to produce?

25             MS. ALOI:  No.

1          THE COURT:  And are there any outstanding records

2    you're waiting on?

3          MS. ALOI:  No.

4          THE COURT:  Let's talk then about the White House

5    and the Department of Justice.  To the extent that there are

6    communication between the White House and the Department of

7    Justice, were those produced?

8          MS. ALOI:  Similarly, the Department had made --

9    or the prosecution team had made a request to the

10   White House for documents.  Everything received in response

11   to that request was produced, but the precise request was

12   not.

13         THE COURT:  Okay.

14         And was there more than one request or just the

15   one request?

16         MS. ALOI:  Just the one request.

17         THE COURT:  And can you share with me to which

18   component of the White House the request was directed?

19         MS. ALOI:  It went to the White House Counsel's

20   office.

21         THE COURT:  And did the White House Counsel's

22   office withhold any of the information that was otherwise

23   responsive and requested on any privilege or any other

24   grounds?

25         MS. ALOI:  No, Your Honor.

```
1              THE COURT:  And to the extent that you all
2    received information from the White House Counsel's office,
3    has all of that been turned over?
4              MS. ALOI:  Yes, Your Honor.
5              THE COURT:  And other than the request, were there
6    any other communications between the Department of Justice
7    and the White House?  Other than of the logistical type that
8    you mentioned?
9              MS. ALOI:  Other than of a logistical nature, no.
10             THE COURT:  Okay.
11             So the next question then is, insofar as
12   White House communications to the Select Committee, if there
13   were any, would such communications have been covered by
14   your request if there were any?
15             MS. ALOI:  No.
16             THE COURT:  So as you stand here today, do you
17   have any knowledge of whether there were any communications
18   between the White House and the Select Committee?
19             MS. ALOI:  I do not beyond what may have been
20   referenced in the defendant's briefing.
21             THE COURT:  And what's the government's position
22   on, if there were such communications, whether those would
23   be discoverable?  Is it primarily that the White House and
24   the White House Counsel's office is not part of the
25   prosecution team?  Is that the primary argument?
```

1     MS. ALOI:  Your Honor, I think it's both.  The

2  White House had -- it is both that they're not part of the

3  prosecution team and that those communications are not

4  material to the defense.

5     THE COURT:  Okay.

6     MS. ALOI:  Here, the White House had no role

7  whatsoever in the investigation of this case beyond that

8  essentially of a witness, and so they are not part of the

9  prosecution team.  And any information exchanged between the

10 White House and the Select Committee could not have informed

11 either the defendant nor the prosecution's intent here,

12 having had no knowledge of those communications.

13    THE COURT:  And insofar as the investigation as it

14 involved the White House Counsel's office, you've identified

15 a single request that was made and then you received

16 documents back.  And was that the only -- I think you said

17 that's the only request that the Department of Justice made.

18    MS. ALOI:  There was also a request for an

19 interview, and the interview --

20    THE COURT:  I was about to get to that in a

21 moment.

22    So in terms of documents, there was one document

23 request, there was a response.

24    In terms of interviews, can you -- and I'm not

25 asking you to identify names.  Can you just share with me

```
 1    the extent to which there were requests made for interviews
 2    and how many members of the Counsel's office or some other
 3    entity within the Executive Office of the White House were
 4    interviewed?
 5              MS. ALOI:  There was a request to the White House
 6    Counsel's office for them to make available the person with
 7    whom the government -- the investigation team, the
 8    investigators, had reason to believe might have information
 9    relevant to the elements of the offense, and that person was
10    made available and interviewed.
11              THE COURT:  Okay.
12              And was anybody else interviewed other than that
13    individual?
14              MS. ALOI:  No.
15              THE COURT:  Okay.
16              I think my question covered this, but to the
17    extent that you have received -- well, let me ask this
18    directly:  Are you in receipt of any communications between
19    the Select Committee and the White House, either from the
20    production from the Select Committee or the production from
21    the White House Counsel's office?
22              MS. ALOI:  Well, as a starting point, anything we
23    have received has been turned over.
24              THE COURT:  Okay.
25              MS. ALOI:  There was a letter from the White House
```

1    to Mr. Navarro that we received in production and that he is

2    both in possession of and which we disclosed.

3                THE COURT:  Okay.

4                But to your knowledge then, not with the Select

5    Committee?

6                MS. ALOI:  Other than the communications that we

7    had received and turned over.

8                THE COURT:  Right.  Okay.

9                MS. ALOI:  To make sure it's clear, there were

10   email communications between the Select Committee and

11   Mr. Navarro which were provided to us voluntarily and which

12   we have disclosed.

13               THE COURT:  Right.

14               No, my question was as between the White House and

15   the Select Committee because that's one of the broad subject

16   areas that they have made an inquiry about.

17               I think those were the questions that I wanted to

18   raise as a preliminary to our broader discussion.

19               MS. ALOI:  Your Honor, one clarification.

20   I believe the Select Committee was actually CCed, or copied,

21   on the letter that the White House sent to the defendant.

22               THE COURT:  Okay.

23               All that, I think, is helpful.

24               So why don't I turn now to Mr. Navarro's counsel

25   and let's try and work through some of these categories of

1    material that they think they're entitled to.

2              MR. ROWLEY:  Your Honor, good afternoon.

3    John Rowley for Dr. Navarro.

4              THE COURT:  Hi, Mr. Rowley.

5              MR. ROWLEY:  Your Honor, I certainly accept

6    counsel's representations to the Court; however, I think

7    that the chances are extremely good that counsel here may

8    not know about additional correspondence and communications

9    that occurred.

10             For example, Your Honor --

11             THE COURT:  Hang on.

12             Between whom?

13             MR. ROWLEY:  Well, between the White House and the

14   Justice Department; and specifically, the Office of Legal

15   Counsel, OLC.

16             We know, Your Honor -- well, we learned last week

17   from a media article by John Solomon that apparently

18   Jonathan Su, the Deputy General Counsel at the White House

19   who sent Dr. Navarro an unsolicited letter on February 28th,

20   saying that President Biden had waived President Trump's

21   executive privilege, was extremely busy.

22             According to the article -- and, again,

23   Your Honor, I'm only referring to the article because

24   I don't have this information, but the article says that

25   there were memos -- several memos and emails exchanged

1  between Jonathan Su and various agencies in the spring of

2  2022 and that the memos show that Mr. Su was engaged in

3  conversations with the FBI, the DOJ, and NARA, as early as

4  April of 2022.

5          Now, Your Honor, that's extremely important

6  because unless there is -- if Dr. Navarro had invoked --

7          THE COURT:  Can I interrupt you?

8          To the extent that -- does the article specify

9  that those communications or memos relate to Mr. Navarro?

10         MR. ROWLEY:  The article does not say that,

11  Your Honor.

12         THE COURT:  Okay.

13         MR. ROWLEY:  But nevertheless, I think the article

14  references matters that are extremely relevant to this case

15  nevertheless.

16         For example, the communications between the

17  White House and the OLC, as Your Honor knows from our

18  papers, the OLC, for some 50 years, has said that someone of

19  Mr. Navarro's stature as a senior advisor to the President

20  is an alter ego to the President and is not subject to

21  compelled testimony by congressional subpoena.  Somehow that

22  changed in his case.

23         And if we look at --

24         THE COURT:  Can I ask you how any of that is

25  relevant here, other than to the extent that Mr. Navarro

1    might say that he relied on OLC memos to refuse to appear?

2          MR. ROWLEY:  Well, it's certainly relevant for

3    that reason, Your Honor, going to Dr. Navarro's mens rea.

4          But I think it is also relevant to the question of

5    potential, I say potential, improper influence by the

6    White House on the Justice Department, because without that

7    change of policy, and apparently a policy that changed after

8    there was communication between Jonathan Su and the OLC,

9    there could not be a prosecution of Dr. Navarro.  There

10    hasn't been a prosecution for some 50 years of a senior

11    advisor and yet all of a sudden we have one.

12          THE COURT:  Well, but am I right that none of

13    those OLC memos cover former advisers, former senior

14    advisors?

15          MR. ROWLEY:  Your Honor, the government has said

16    that in an OLC memo to Pat Cipollone in May of 2019.  There

17    is a reference to former advisers to a former President, and

18    that says a lot.

19          THE COURT:  And it says what?

20          MR. ROWLEY:  And that references the *Nixon versus*

21    *GSA* case, which also stands for the proposition that

22    unless --

23          THE COURT:  But you're not answering my question.

24          What does the OLC memo say, if anything, about the

25    prosecutability of a former adviser to a former President's

1  refusal to respond to a subpoena?

2        MR. ROWLEY:  Your Honor, the memos speak in terms

3  of whether or not a senior adviser is subject to compelled

4  process by Congress and not -- some of them do, going back

5  some years, talk about a prosecution.

6        But the Cipollone memo that I've made reference to

7  in May of 2019 simply says that executive privilege exists

8  for a former senior advisor to a former President.

9        THE COURT:  Okay.

10       MR. ROWLEY:  And I know the government contests

11  that.  I'm not sure that I have the OLC memo with me, but

12  I'd be more than happy to submit that to the Court.

13       THE COURT:  But the memo does not say that the

14  former advisor can refuse to appear or refuse to produce

15  non- -- or records not covered by executive privilege?

16       MR. ROWLEY:  Well, Your Honor, it speaks in terms

17  of being absolutely immune from congressional testimonial

18  process.

19       THE COURT:  Of a former official?

20       MR. ROWLEY:  Yes, Your Honor, I believe that

21  that's what it says.  I wish I had it with me.

22       THE COURT:  Okay.  I'll at some point dig it up

23  and read it.

24       MR. ROWLEY:  Oh, we have it?

25       Okay.  From the memo -- thank you, Mr. Woodward.

1    In addition -- I'm quoting from the memo now, Your Honor:

2    "In addition, we have recognized that testimonial immunity

3    continues after the tenure of a particular counsel to the

4    president.  As we explained in 2007, 'separation of powers

5    principles dictate that former Presidents and former senior

6    Presidential advisers remain immune from compelled

7    congressional testimony about official matters that occurred

8    during their time as President or senior Presidential

9    advisers.'"

10              And then it goes on to say that the Supreme Court

11   has explicitly recognized this principle in the context of

12   executive privilege.  And there's a cite to then, as I said,

13   Nixon versus the administrator of the GSA, which is a 1977

14   Supreme Court case adopting the view of the then-Solicitor

15   General.

16              THE COURT:  Okay.

17              So going back then to my question of what does it

18   matter, your response, I think, was, the change in position,

19   if, in fact, it's a change in position, I don't think the

20   Department of Justice seems to think otherwise, but that

21   it would be evidence of what, potential -- the change in

22   position is output of potential political influence, in your

23   view?

24              MR. ROWLEY:  Yes, Your Honor.

25              THE COURT:  And what's your basis for believing

1   that?

2          MR. ROWLEY:  Well, the basis is that the Justice

3   Department had one position for some 50 years and then in

4   Mr. Navarro's case shortly before he was indicted, it

5   changed position.  And it changed position, we know now from

6   Mr. Solomon's article, that that change occurred within a

7   matter of weeks after the Deputy White House Counsel

8   contacted the OLC and contacted NARA.

9          THE COURT:  And say hypothetically the facts were

10  to bear out your theory of political influence, that's not a

11  trial defense, right?

12         MR. ROWLEY:  Well, improper influence, I think,

13  could result in a dismissal of the indictment.

14         THE COURT:  Right, but I asked you whether it was

15  a trial defense, not dismissal of the indictment.

16         MR. ROWLEY:  I'd have to think about that,

17  Your Honor.

18         THE COURT:  Okay.

19         Because what I'm trying to figure out is what

20  basket this falls in.  You know, is it material to the

21  preparation of the defense in the Rule 16 sense of the term

22  in which it relates to the government's case, preparing a

23  potential defense, or does it fall outside of Rule 16 and

24  relate more to the kind of discovery you're seeking in the

25  selective prosecution context, which is not governed by

1    Rule 16, and arguably requires a more demanding standard.

2          You know, if, for example, this is, say, a species

3    of vindictive prosecution, then that is not subject to the

4    Rule 16 standard, and the Circuit has said as much, and that

5    it actually is -- the standard that is articulated in the

6    1996 case from the Supreme Court about selective

7    prosecution, the name of which is escaping me right now, but

8    that's the standards; in other words, that you've got to

9    come forward with evidence showing -- *Armstrong*, you've got

10   to come forward with some evidence showing that this, in

11   fact, is likely what motivated the prosecution, as opposed

12   to mere speculation that that could have been at play.

13         MR. ROWLEY:  Understood, Your Honor.

14         And maybe the answer to that question has to do

15   with the type of communication, the substance of the

16   communication that actually occurred, whether it was

17   directed towards Mr. Navarro directly or other people in his

18   position, and, therefore, carried with it the type of

19   discriminatory purpose that the cases speak to in the

20   context of selective prosecution or something else.

21         But until we know exactly what happened, again,

22   I'm relying primarily on this news article from about a week

23   ago, because this information was not disclosed to us by the

24   government.  There may or may not be memos and emails as

25   referenced in the article.  The government didn't tell us

1   that; I'm getting that from the article.

2        If those memos and emails do exist, I think

3   they're highly relevant to the issues that we're discussing

4   here today.

5        THE COURT:  Okay.

6        Well, let me ask government counsel while we're on

7   the subject, are you aware -- well, let me ask you if you'd

8   like to respond to what counsel has just suggested may exist

9   and to the extent that you are aware or not aware of any

10  such material.

11       MS. ALOI:  Yes, Your Honor.

12       An article of two weeks ago about something

13  unrelated to Mr. Navarro cannot form a basis for a selective

14  prosecution claim.

15       To the extent the communications that the

16  government -- that the defendant is seeking even exist, and

17  the prosecution does not know if they exist, because we are

18  wholly unaware of them; they could not have informed our

19  intent.

20       And to the extent that Mr. Navarro's intent was

21  informed by an OLC opinion that he relied on, he has it.

22       THE COURT:  Well, I think the issue is a slightly

23  different one that counsel has raised, which is that --

24  well, let me get at this differently.

25       Counsel has suggested that the Department of

1    Justice has changed its view -- and let me say this at the

2    outset.  I'm not sure it matters to me as a legal matter and

3    whatever I instruct this jury what the OLC's position has

4    been for 50 years or not.  Ultimately it's my decision to

5    determine whether there is some privilege that --

6    testimonial privilege that allows an adviser to the

7    President of the United States, either current or former, to

8    refuse to appear, and to my knowledge, there's no court of

9    law that has ever said that that is a privilege that's

10   recognized.  So the fact that the OLC has said that for

11   50 years is not binding on me.

12           But leave that to the side, is it -- do you share

13   the view that the OLC -- or the Department of Justice has

14   changed its position with respect to compelled testimony and

15   compelled production of records from a former advisor to a

16   former President?

17           MS. ALOI:  No, the Department has not changed its

18   position.

19           As a starting point here, we don't even reach

20   these questions unless there has been an invocation of

21   executive privilege or proper invocation of executive

22   prejudice.

23           For all the reasons that we have laid out in our

24   response to the defendant's motion to dismiss, there was

25   none in this case.  So the Department's position and the

1   decisions that were made to prosecute Mr. Navarro have

2   nothing to do with the OLC opinions.  Mistake of law here is

3   not a defense of the elements of the contempt claim.

4           THE COURT:  Okay.

5           And so why do you take a view that's different

6   than what I just heard Mr. Rowley suggest was the Department

7   of Justice's position no more than two, three years ago?

8           MS. ALOI:  Well, I think Mr. Rowley is misstating

9   the Department's position.  And I don't think there is an

10  OLC opinion that is analogous to the facts of this case such

11  that our behavior would be bound by it in any way, if that

12  even were the case.

13          THE COURT:  Were you quoting from an OLC opinion

14  or were you quoting just from some communication to the

15  former White House Counsel?

16          MR. ROWLEY:  OLC.

17          THE COURT:  An OLC opinion?

18          MS. ALOI:  Your Honor, it's a piece of an OLC

19  opinion in which the facts presented to OLC are different

20  than the facts that are presented here today.

21          THE COURT:  Okay.

22          MR. ROWLEY:  It's a May 20, 2019, OLC opinion.

23          THE COURT:  So let me ask the factual question,

24  which is, to what extent are you -- do you have any

25  knowledge of any communications between the White House and

1    OLC about this sort of body of OLC opinions that have been

2    the subject of this and other cases?

3            MS. ALOI:  No.

4            THE COURT:  Okay.

5            Have you asked?

6            MS. ALOI:  Your Honor, have I asked what

7    specifically?

8            THE COURT:  Have you asked OLC whether any such

9    communications exist?

10           MS. ALOI:  Has the prosecution team asked OLC if

11   communications between the White House and Mr. Navarro --

12           THE COURT:  No.

13           MS. ALOI:  -- or, I'm sorry, White House and OLC

14   exist with regard to the application of the OLC opinions to

15   Mr. Navarro?

16           THE COURT:  Correct.

17           MS. ALOI:  No.

18           THE COURT:  Okay.  So you've not asked.

19           MS. ALOI:  No, we've not.

20           THE COURT:  Okay.  Mr. Rowley.

21           MR. ROWLEY:  Your Honor, that's just it.

22           Again, these individual prosecutors may very well

23   not know about conversations or communications that occurred

24   at some other level of the Department, whether they be the

25   OLC or the DAAGs office with the White House pertaining to

1   Mr. Navarro directly or pertaining to matters that are

2   highly relevant to this case.  And unless counsel looks, we

3   can't expect counsel is going to find anything.  And

4   I'm not sure that that's happened.

5           I might also say, Your Honor, that there also --

6   unfortunately, this case occurs in a highly politically

7   charged environment, and there also is at least some

8   evidence of what could at least potentially be improper

9   communications between congressional committees and the

10  Justice Department.

11          As an example, as Your Honor knows, I believe, and

12  will hear more about in this case, Mr. Navarro first

13  received a subpoena from the Coronavirus Subcommittee in

14  November of 2021.  He invoked executive privilege pursuant

15  to President Trump's instructions, and the Committee did not

16  pursue the matter for some seven months.

17          Fast-forward to June 26th -- June 27th, sorry, of

18  this year, we sent our Rule 16 letter to the government

19  requesting a variety of information, including information

20  about Dr. Navarro's contacts with the Coronavirus

21  Subcommittee.  That happened at 12:00 on June 26th -- June

22  27th, sorry.

23          Four hours later, we received a contact from the

24  Coronavirus Subcommittee asking about Dr. Navarro and

25  whether or not he intended to appear for a deposition before

1    that Committee.

2           Now, Your Honor, coincidence is a possible, but,

3    frankly, at this point in my career, I don't believe in

4    coincidences.  I think there must have been some contact

5    between the Justice Department and the Coronavirus

6    Subcommittee that resulted in the Subcommittee counsel

7    contacting me.

8           Now, to be fair, to be accurate, I asked counsel

9    at the Subcommittee whether she had spoken with the Justice

10   Department and she, after a long pause, said no.  Taking her

11   at her word, that doesn't mean that somebody else at the

12   Subcommittee didn't have that conversation.

13          We also know, for example, with respect to the J6

14   Committee, that they have --

15          THE COURT:  And even -- but say I were to -- say

16   there was such a communication, again, what does it matter?

17          MR. ROWLEY:  Well, it matters, Your Honor -- and

18   I can't say that it matters at this point on this record,

19   but I think we're entitled to discovery to see whether it

20   does matter, because if it does matter, it could be another

21   indication of undue political influence.

22          THE COURT:  But this is why I asked you what I

23   asked you earlier, which is, is this a trial defense or is

24   this something outside of trial defense?  Because if it's

25   outside a trial defense, the mere possibility that a

1    communication exists and that the communication may reflect

2    undue political influence, that's not the kind of

3    evidentiary basis that you've got to come forward with for

4    me to order that kind of extraordinary discovery.

5            MR. ROWLEY:  Well, Your Honor, I think it could be

6    a trial defense, because it at least potentially goes to the

7    integrity of the prosecution here.

8            THE COURT:  I'm not aware of -- I'm not sure what

9    you mean by that.  I mean, I'm not sure there's a trial

10   defense you can -- you have to help me, explain that.

11           MR. ROWLEY:  And if I might, Your Honor, may I ask

12   Mr. Woodward to come up and see?  He may have some thoughts

13   on that that I've not expressed to the Court.

14           MR. WOODWARD:  Good to see you, Judge.

15           THE COURT:  Mr. Woodward.

16           MS. ALOI:  The argument would be that in

17   cross-examination of any agent that the government puts up

18   to establish the fact -- the case-in-chief in their case,

19   that we would be in a position to challenge the integrity of

20   the agent's investigation in advance of its prosecution of

21   Mr. Navarro.

22           This is quite similar to the effect on the

23   listener exception to the hearsay rule.  So our posture

24   would be, well, what did you look at, agent, and what did

25   you investigate.

1          THE COURT:  Well, that's fine, but what does that

2     have to do with contact to a different committee?

3          MS. ALOI:  Well, it all falls into the same

4     overall narrative, which is, what exactly was happening

5     here?  Why was there a contempt referral prosecuted as

6     against Mr. Navarro in the context of the January 6th

7     Committee, not in the context of the Coronavirus Select

8     Committee?

9          And so why did Mr. Navarro believe that he did not

10    have to appear and provide testimony when --

11         THE COURT:  But you can't mount a trial defense

12    based on his non-prosecution in a different case.

13         MR. WOODWARD:  Well --

14         THE COURT:  If anything, that helps the Department

15    of Justice, right?  Or I don't know if they ever got a

16    referral from that committee.

17         MR. WOODWARD:  They did not.

18         THE COURT:  Right.

19         So I'm not quite sure why we would be comparing

20    the two to begin with.

21         MR. WOODWARD:  Well, Your Honor, discovery isn't

22    about what is going to be admissible in presenting our

23    defense, it's about --

24         THE COURT:  But it is about whether it goes to

25    something that is a trial defense or, you know -- I'm not

1  hearing the fact that there may have been some communication

2  with somebody between an agent -- I mean, you'll get *Jencks*

3  material, right?  I don't know whether you've gotten it so

4  far or not.  But if the agent that testifies did have an

5  email communication or a written communication with somebody

6  from the committee, whether it's the Select Committee or

7  another one, presumably you'd get that as *Jencks* material.

8          MR. WOODWARD:  I'm not at all surprised to hear

9  Your Honor frustrated at the amount of speculation that has

10 gone into some of these requests, I appreciate that.

11         Part of what we are hamstrung by is the amount of

12 limited information.  The government, in its investigatory

13 prerogative, has limited the prosecution to a handful of

14 individuals, prosecutors and FBI agents.

15         THE COURT:  But that's what they usually do.

16         You're making it sound like the government usually

17 goes out and adopts a whole bunch of different -- finds a

18 bunch of different agencies to include in a prosecution.

19 Sometimes that's true when there's a subject-matter specific

20 prosecution, but it's not the ordinary course.

21         MR. WOODWARD:  Nor is this an ordinary case.  This

22 is far from an ordinary case.

23         And we know, based on public reporting, that there

24 is communication between the White House, the Justice

25 Department, and Congress.

1          In fact, just yesterday, Attorney General Garland

2     put out a DOJ-wide memo advising all DOJ employees not to

3     communicate with Congress.  Why would the Attorney General

4     be putting out a memo like that if he didn't have concern

5     for what communications were happening between Congress and

6     the Justice Department?

7          I understand that the normal case is for a small

8     prosecution team to investigate and prosecute the case.  But

9     here we have the former senior Presidential advisor being

10    prosecuted for contempt with a mandatory 30-day minimum for

11    each count.

12         And there's just no doubt that if President Trump

13    was still President, the OLC would have issued a memoranda

14    directing him not to comply with Congress's subpoena.

15         So this is an incredibly novel case that

16    Your Honor has been confronted with.  And the only way for

17    us to ensure that we have properly explored all the

18    available defenses is for us to look at what those

19    communications were.  If we don't want to -- we're not

20    asking the Court to --

21         THE COURT:  Sure.  But, again, you all -- I mean,

22    you say "the communications."  I mean, what specific

23    communication -- I mean, you've asked for a lot of

24    communications.

25         MR. WOODWARD:  Yes.

1          THE COURT:  So when you say "the communications,"

2    I've already asked counsel whether every communication

3    between, to their knowledge, between the Department of

4    Justice and the Select Committee has been turned over.  She

5    said it has been.  Every communication between the

6    Department of Justice and the White House, it has been.

7          MR. WOODWARD:  Respectfully, Your Honor, she

8    caveated her statement.  She said "all discoverable

9    communications."

10          THE COURT:  Right, because --

11          MR. WOODWARD:  And she's limiting --

12          THE COURT:  Well, because she excluded scheduling

13    communications.  She wasn't suggesting there was anything

14    else withheld.

15          MR. WOODWARD:  Well, she's also limiting with whom

16    the communications were exchanged.  So she's limiting the

17    communications to the prosecution team, she's limiting the

18    communications to those that the government has determined

19    are material.

20          And just, yes, by way of example, she's confirmed

21    that she did not disclose the requests to either Congress or

22    to the White House, neither of which would be protected by

23    Rule 6, and so it's not clear why those, at a minimum, can't

24    be disclosed.  And we've highlighted a number of other

25    limited set of documents.

1          We understand your Honor is not going to order DOJ

2    to do a firm-wide, if you will, search for references to

3    Navarro, and we are willing to take this piecemeal, one step

4    at a time.  And if the results that we get from an

5    incremental production process show that there is no

6    evidence of political interference, that there is no

7    evidence of changing the rules, if that's what happened,

8    then we'll accept that.

9          But as we stand on this record, our access to

10   documents and information is incredibly limited based on

11   this narrow definition of the prosecution team in an

12   incredibly novel and complex case.

13          I'll defer back to Mr. Rowley.

14          THE COURT:  Okay.

15          Can I just get one more clarification from

16   government counsel, and that is, with respect to

17   communications between the Department of Justice, have you

18   included any case agents from the FBI in that group?

19          MS. ALOI:  Certainly, the case agents from the FBI

20   who have investigated this matter --

21          THE COURT:  Right.

22          MS. ALOI:  -- were privy to and involved in the

23   communications.  But they did not have other communications.

24   Is that what you're asking?

25

```
 1              THE COURT:  No.  It was a simpler question, which
 2    is that your earlier representation about communications
 3    between the Select Committee and the White House and the
 4    Department of Justice, I wanted to just ensure that that
 5    would include the FBI case agents assigned to work with you
 6    all.
 7              MS. ALOI:  Yes, they are a part of our prosecution
 8    team.
 9              THE COURT:  All right.  I just wanted to make sure
10    that that was clear.  Okay.
11              All right.  Mr. Rowley, anything?
12              MR. ROWLEY:  Your Honor, just one further point
13    about potential for political influence.  I talked about the
14    Coronavirus Subcommittee.
15              With respect to the subcommittee, Your Honor, a
16    quick point about that.  I think that that is highly
17    relevant.
18              THE COURT:  Which subcommittee?
19              MR. ROWLEY:  I'm sorry, the Coronavirus
20    Subcommittee.
21              THE COURT:  Okay.
22              MR. ROWLEY:  And Dr. Navarro invokes executive
23    privilege on behalf of President Trump, and the subcommittee
24    doesn't fallow up on that.  That is certainly relevant
25    evidence to his mens rea when he gets a subpoena from the
```

1    J6 Committee and invokes executive privilege.

2            THE COURT:  But -- okay.  Fine.

3            Even if I were to allow what you say, I'm still at

4    a loss to understand how communications that he was never

5    privy to bear on his state of mind.

6            MR. ROWLEY:  Well, again, two different issues,

7    Your Honor.  I was just making the point about state of mind

8    and mens rea.

9            THE COURT:  Okay.

10           MR. ROWLEY:  The other issue is the potential for

11   undue political influence between that committee and the

12   Justice Department.  And I gave the example of the Rule 16

13   letter and the contact I got back the same day from the

14   Coronavirus Subcommittee.

15           One other point, Your Honor, with respect to the

16   J6 Committee, now, again, Your Honor, as I think most of us

17   know, maybe all of us know, this prosecution is occurring in

18   a politically charged environment, there's just no question

19   about that given other things that are not directly relevant

20   to this case that are going on at the moment.

21           And we know that there were voices at the

22   J6 Committee that were clamoring for a prosecution, they

23   were very public about it.  And now we have, as of

24   yesterday -- well, we have President Biden also, as we

25   discussed last time, Your Honor, who said that the --

 1   anybody who refused to comply with one of the J6 Committee
 2   subpoenas should be prosecuted.
 3           And then as of yesterday, we have a motion that's
 4   filed by the House of Representatives, where they want to
 5   participate in this case.  They want to file an amicus brief
 6   and they want to offer to the Court their views on
 7   congressional process and procedure as it pertains to this
 8   case.
 9           And now, according to the motion, the Justice
10   Department said that the Justice Department didn't need
11   their assistance; nevertheless, they're trying to get into
12   this case, and, I think, Your Honor, that it's possible.
13           THE COURT:  Isn't that because you're trying to
14   inject it into the case?
15           MR. ROWLEY:  Well --
16           THE COURT:  I mean, you've written in your papers
17   that one of the defenses that you think you can raise is the
18   propriety of how the Committee was constituted, whether the
19   Committee properly issued the subpoena.
20           MR. ROWLEY:  That's --
21           THE COURT:  I mean, it seems like you've opened
22   the door to the Department -- to the House of
23   Representatives coming in and providing information as to
24   why they haven't run afoul of any of the rules that you
25   suggest they have run afoul of.

1          MR. ROWLEY:  We certainly have raised the issue,

2     Your Honor, but we have competent government counsel that

3     can respond to that.  Without the House of

4     Representatives --

5          THE COURT:  I think they did the same thing in

6     Mr. Bannon's case, right?

7          MR. ROWLEY:  Yeah, I think so, I think so.

8          But in any event, Your Honor, in just simply

9     looking at the issue of potential --

10         THE COURT:  I mean, look, you can't sort of --

11    I mean, I don't want to be difficult here, but you can't

12    throw up a lot of stuff and say, hey, look, there's undue

13    political influence here.  I mean, take a strand here, take

14    a strand there, it doesn't make a picture.

15         And, you know, the fact that the House of

16    Representatives now wants to come in and do the very same

17    thing they did in Mr. Bannon's case seems like a nothing

18    burger to me.

19         MR. ROWLEY:  I'm only suggesting, Your Honor, that

20    there are a lot of dots here, and when those dots are

21    connected, Dr. Navarro has a right to know whether or not

22    there's undue political influence in this case.

23         I'm not suggesting at this point that there was

24    anything wrong with anything that we're discussing here

25    today, we simply don't know, but we believe that we've

1    established the right to find out.

2           THE COURT:  Okay.

3           MR. ROWLEY:  And, Your Honor, if the Court please,

4    Mr. Irving would like to address some other issues

5    pertaining to the grand jury as referenced in our briefing.

6           THE COURT:  Before we get there, though, let me

7    just confirm that you agree with the following, which is

8    that neither I or nor the Department of Justice can compel

9    the Select Committee or any other committee of Congress to

10   produce anything that you're asking for?

11          MR. ROWLEY:  I think that's correct.

12          THE COURT:  Okay.  So to the extent that any of

13   the information you're seeking is in the possession of the

14   Select Committee, nothing I can do about that, right?

15          MR. ROWLEY:  Well, I'd hesitate to go that far,

16   Your Honor, but I understand your point.  And if that

17   information is somewhere in the bowels of the

18   Justice Department, the Justice Department --

19          THE COURT:  Right.  I'm talking about anything

20   that's exclusively in the possession of the congressional

21   committees.

22          MR. ROWLEY:  I agree with that.

23          THE COURT:  Okay.

24          I think I had one other question for you and it's

25   escaping me right now.  It may come to me.  Thanks,

1   Mr. Rowley.

2           MR. ROWLEY:  Thank you, Your Honor.

3           THE COURT:  Mr. Irving.

4           MR. IRVING:  Thank you, Your Honor.

5   Good afternoon.

6           THE COURT:  Good afternoon.

7           MR. IRVING:  So Your Honor hasn't asked any

8   questions about selective prosecution or the grand jury

9   issues.

10          THE COURT:  Because we haven't gotten there yet.

11          MR. ROWLEY:  I don't want to get ahead of the

12  Court.

13          You know, just, I can suffice it to say that for

14  all the reasons that you've been discussing with Mr. Rowley,

15  you know, I think that there is -- that we've made the

16  requisite showing to be entitled to some -- at least some

17  discovery on both of those issues.

18          THE COURT:  Can I ask you about selective

19  prosecution for a moment?

20          MR. ROWLEY:  Sure.

21          THE COURT:  Let me start on the back end, or at

22  least what I think about as the back end.

23          Can you affirmatively say that neither Dan Scavino

24  nor Mark Meadows have made any public statements about the

25  Select Committee?

1          MR. ROWLEY:  No, but I can say that -- only
2    because I don't know.

3          But I can say that --

4          THE COURT:  But shouldn't you know?  Somebody's
5    got to tell me affirmatively -- I mean, the basis of your
6    motion is that Mr. Navarro has spoken publicly and they have
7    not.

8          So my question to you is, can you say with a
9    degree of certainty that Mr. Scavino and/or Mr. Meadows have
10   not made public statements about the Select Committee,
11   because at least the government has suggested that
12   Mr. Scavino has, although the link that they provided was
13   just to a Twitter page and I wasn't going to go through all
14   of Mr. Scavino's tweets.

15         MR. IRVING:  Right.  And clearly I should have.

16         But standing here, can I proffer, you know, an
17   example of Mr. Scavino or Mr. Meadows saying something about
18   the Committee?  I can.  I'm happy to try to supplement that.

19         I think it's --

20         THE COURT:  Well, I'm asking you to represent a
21   negative, which is harder, I admit, which is the absence of
22   communications.

23         MR. ROWLEY:  Sure.

24         THE COURT:  But if you're aware of communications,
25   that would be a relevant thing for me to know.

1          MR. IRVING:  I can certainly --

2          THE COURT:  I don't mean communications, I mean

3    public statements.

4          MR. IRVING:  Sure.

5          Yeah, I'm happy to look further into that.

6          I think it's clear, though, that, you know,

7    under -- through any lens, Dr. Navarro is particularly

8    outspoken, both with respect to the Committee and with

9    respect to its investigation, and, frankly, just about

10   everything else.

11         To the extent that Mr. Scavino or Mr. Meadows --

12         THE COURT:  And can I ask you, are there any more

13   statements -- I mean, you've identified three in your

14   papers, the three that were cited in the congressional

15   report.  There was a statement Mr. Navarro made declining to

16   appear.  Then you referenced a television interview he gave

17   shortly thereafter.  And then there was a second statement,

18   public statement, again, declining either to appear or

19   produce records.  Anything else other than that?

20         MR. IRVING:  I'm certain there are.  Again, I'd be

21   happy to supplement the record with that.

22         THE COURT:  Okay.

23         MR. ROWLEY:  I think, Your Honor, at the end of

24   the day, we've made the requisite showing -- putting Rule 16

25   aside, I think in the context of selective prosecution and

```
 1   grand jury abuse -- and I'll echo what Mr. Rowley said, that
 2   I'm not making those assertions, I'm not casting any
 3   aspersions on government counsel, you know, I think, at this
 4   stage, we're talking about additional discovery, and we've
 5   shown enough that it walks like a duck and quacks like a
 6   duck.  We're asking for the Court's assistance in letting us
 7   determine whether or not it is, in fact, a duck.
 8            THE COURT:  And so why in your view is Mr. Navarro
 9   not similarly situated?  Or I should say, he's -- that he
10   is -- he's not similarly situated from Mr. Meadows and
11   Mr. Scavino in two important respects; one is, both of those
12   gentlemen received a letter from the President's counsel
13   directing them to invoke privileges and assert privileges
14   with respect to the Select Committee's subpoena.
15   Mr. Navarro did not get such a letter; two, Mr. Meadows had
16   extensive communications with the committee and produced
17   documents.  And Mr. Scavino's counsel, who is sitting right
18   here at this table, also had extensive communications with
19   the committee.
20            Your client chose not to be represented, that's
21   his right.  But other than refusals, I don't have a record
22   before me that would suggest that he engaged in the kind of
23   dialogue with the committee that those two gentlemen did
24   through their counsel.
25            MR. IRVING:  Yes, Your Honor.
```

```
 1              Well -- so starting first with the President's
 2    letter --
 3              THE COURT:  By the way, how do we have
 4    Mr. Woodward -- this is a separate issue, Mr. Woodward, but
 5    you did represent Mr. Scavino, right?
 6              MR. WOODWARD:  Yes, sir.
 7              THE COURT:  And you're asking for information
 8    about why he wasn't prosecuted while you're representing
 9    Mr. Navarro?
10              MR. WOODWARD:  Yes, sir.
11              THE COURT:  Okay.
12              Have you obtained -- well, okay.  Anyway, we can
13    talk about that later, but go ahead.
14              MR. IRVING:  I was simply going to say,
15    Your Honor -- so starting with the letter from the
16    President, there's no set way that a President of the
17    United States has to assert executive privilege.  There's no
18    form that he has to sign, there's no, you know, law that
19    says it has to be by some fancy letter.
20              Dr. Navarro was -- did communicate with the
21    committee as best he knew how, he was relying on
22    instructions from the President, and he was relying on his
23    understanding that a person in his position --
24              THE COURT:  But am I correct -- I don't want to be
25    definitely.
```

```
 1              MR. IRVING:  Yeah, sure.

 2              THE COURT:  But the facts matter.

 3              Am I correct in understanding that, to the extent

 4   there was a communication from the President, it was in

 5   connection with the subpoena from the COVID-19 Subcommittee

 6   that your colleague referred to earlier.

 7              MR. IRVING:  That's the public statement from the

 8   President, yes --

 9              THE COURT:  Right.  Okay.

10              MR. IRVING:  -- that had to do with the

11   Coronavirus Committee.

12              THE COURT:  Different committee, different

13   subpoena, right?

14              MR. IRVING:  Yes.

15              THE COURT:  Okay.

16              MR. IRVING:  Same understanding by Mr. Navarro

17   that the President had told him.

18              THE COURT:  But that goes to his state of mind,

19   right?  That's a different issue.  What's in his state of

20   mind is a different issue than the communication he actually

21   received and whether it's a communication that's comparable

22   to what Mr. Scavino received and Mr. Meadows received.

23              MR. ROWLEY:  Right.  We're talking about whether

24   or not they were similarly situated.

25              THE COURT:  Right.
```

1          MR. IRVING:  And the fact that one communication

2    that we have from the President having to do with executive

3    privilege deals with the Coronavirus Committee doesn't, at

4    least in my head, put him in a different category for

5    Mr. Scavino and Mr. Meadows.

6          And the communications with the Committee --

7    I mean, Mr. Navarro told the Committee, the January 6th

8    Committee, that he was asserting executive privilege, that

9    they were going to -- he was telling them to work it out

10   with the President, you know, my hands are tied.  So I --

11         THE COURT:  Did the President communicate or

12   assert executive privilege directly to the Committee on

13   behalf of any of the three gentlemen, Mr. Navarro,

14   Mr. Meadows, and Mr. Scavino?

15         Either the President, through his counsel, was

16   there a communication with the Committee to your knowledge?

17         MR. IRVING:  I don't know the answer to that.

18         MR. WOODWARD:  No.

19         MR. ROWLEY:  My co-counsel says no.

20         THE COURT:  Okay.

21         MR. IRVING:  So Dr. Navarro was doing the best he

22   could, as an unrepresented person, relying on years of OLC

23   opinions, whether or not he had actually, you know, become

24   an OLC opinion scholar, he was operating on the information

25   that he had.

1          And it's fundamentally unfair for the government

2    to move the goalposts in the middle of the game.

3          THE COURT:  Okay.

4          Anything else on the Select Committee prosecution?

5          MR. IRVING:  Not unless Your Honor has any

6    questions.

7          THE COURT:  I don't.

8          MR. IRVING:  Thank you.

9          THE COURT:  Counsel, I'll give the government an

10   opportunity to respond if you'd like.

11         MS. ALOI:  Thank you, Your Honor.

12         The government has not moved any goalposts.  The

13   defendant just appears to not like the fact that he is

14   hamstrung by the law here.

15         Nothing he has said today gives any basis for

16   additional Rule 16 discovery, and it's quite clear that

17   there was no instruction from the President to invoke

18   executive privilege.

19         THE COURT:  But isn't there something to his

20   argument that -- and I'd be curious what your response is --

21   and, you know, he says, look, I am similarly situated to

22   these other officials, both high-ranking officials to the

23   President of the United States, both were subpoenaed, okay,

24   Mr. Meadows produced some documents, but neither Mr. Scavino

25   nor Mr. Meadows -- Mr. Scavino didn't produce anything, and

1   Mr. Scavino and Mr. Meadows, neither of them showed up for

2   their depositions, they just blanketly refused just like

3   I did.  So why isn't he in the exact same boat as the two of

4   them?

5            MS. ALOI:  So, Your Honor, we're here on a motion

6   to compel and what you're describing is a selective

7   prosecution argument.

8            THE COURT:  Right.

9            MS. ALOI:  It is not subject to Rule 16.

10           THE COURT:  Agreed.

11           MS. ALOI:  To obtain discovery, the defendant must

12  show some evidence tending to show the existence of the

13  essential elements of that claim.

14           And so here, the elements of that specific claim

15  include discriminatory effect and intent, and that's

16  *Armstrong*, as you previously noted.

17           THE COURT:  Right.

18           MS. ALOI:  So to show discriminatory effect, the

19  defendant must make a credible showing of different

20  treatment of similarly situated persons.

21           And the defendant also must be in a protected

22  class and the similarly situated offenders must be outside

23  that protected class and committing roughly the same crime.

24  And as was discussed, that's actually just not what happened

25  on the facts here.

```
1              THE COURT:  So to cut to the chase, which is how
2    is Mr. Meadows differently situated, in the government's
3    view, and how is Mr. Scavino differently situated than
4    Mr. Navarro?
5              MS. ALOI:  So just as starting point, both
6    Mr. Meadows and Mr. Scavino had -- were vocal about their
7    political beliefs.  Mr. Meadows' lawyer --
8              THE COURT:  I'm sorry, I didn't hear you.
9              MS. ALOI:  They were both vocal about their
10   political briefs, and Mr. Meadows' lawyer actually wrote an
11   op-ed in The Washington Post about executive privilege.  So
12   the starting point here is that they are all -- they all
13   share that; they all are vocal about their political
14   beliefs.
15             But the defendant has not shown that they
16   committed the same crime for a couple of reasons.
17   Mr. Meadows produced records to the Committee, the defendant
18   did not.
19             And the House reports that recite the failure of
20   both Mr. Meadows and Mr. Scavino to reply to the subpoena in
21   other respects show that their refusals were quite
22   different; there was a level of engagement that did not
23   occur here.
24             But setting that aside, in order to obtain
25   discovery on a selective prosecution --
```

 1          THE COURT:  Before you keep going, I don't want to

 2   set that aside, because that's important.

 3          So is that -- I mean, as you stand here today and

 4   you want me to conclude that Mr. Meadows and Mr. Scavino are

 5   differently situated than Mr. Navarro, and the two grounds

 6   you've identified is that Mr. Meadows produced records and

 7   that the refusal was different for those two gentlemen than

 8   it was for Mr. Navarro.  Is there anything else?

 9          MS. ALOI:  Well, they also must be outside the

10   protected class.  And here --

11          THE COURT:  No, no, I get that point.

12          But I'm asking you about the reasons that you

13   think they're differently situated.  Let's assume for a

14   moment that their argument is right that the other two

15   remain silent and it's only Mr. Navarro that has been

16   outspoken.

17          MS. ALOI:  So, Your Honor, first, just as a

18   starting point, the government doesn't have to refute that,

19   it's their burden to show that they are similarly situated

20   and that there's one outside the protective class --

21          THE COURT:  I know, but you've raised issues in

22   your opposition.

23          MS. ALOI:  -- so they've not met that burden.

24          You know, the government is not going to opine on

25   the internal deliberation over whether and why to bring a

1    criminal prosecution.

2           But here the public record shows that there was a

3    different level of engagement despite them both being in the

4    same protected class with the Committee, and, as you have

5    noted, there was a different way in which Mr. Meadows,

6    Mr. Navarro, Mr. Scavino, claimed that executive privilege

7    was invoked.

8           THE COURT:  Okay.

9           MS. ALOI:  So they also have to show

10   discriminatory impact, and that is important because it is

11   necessary for them to obtain additional discovery, which is

12   the matter before the Court here today.

13          And to do that, they have to show that --

14   Mr. Navarro would have to show that his selection was based

15   on an unjustifiable standard.  And the only evidence he

16   offered to that effect is the committee referral, and the

17   committee referral cannot itself provide evidence of the

18   prosecutor's intent.  These other allegations that there

19   must have been some sort of undue political influence are

20   just speculation, they're not evidence, and speculation is

21   insufficient to obtain discovery on a selective prosecution

22   claim.

23          THE COURT:  Okay.

24          Are you aware of -- I mean, you've mentioned the

25   op-ed that was written by Mr. Meadows' counsel.  Are you

1    aware of any other statements, either by Mr. Meadows, his

2    representative, or Mr. Scavino and his representatives?

3                MS. ALOI:  Am I aware of any other statements?

4                THE COURT:  Public statements that were made about

5    the Select Committee?

6                MS. ALOI:  I cannot recite any particular ones

7    today.  But we did do a review, and as noted in our brief,

8    we had identified some on Twitter.

9                THE COURT:  Okay.  So you think there's some on

10   Twitter from Mr. Scavino directly?

11               MS. ALOI:  Yes, I believe so.

12               You know, they may not be --

13               THE COURT:  I don't follow Mr. Scavino on Twitter

14   or anyone, for that matter.

15               MS. ALOI:  Your Honor, part of the challenge of

16   answering that question is that the defendant really hasn't

17   identified a specific political belief that he claims puts

18   him in this protected class.  He says generally that he

19   is --

20               THE COURT:  Well, he hasn't said it's -- I guess

21   in his reply, he's mentioned or alluded to political beliefs

22   under the D.C. statute.

23               But at least in his primary brief, in his opening

24   brief, it was that, I have been a more vocal critic of the

25   Committee than these other two gentlemen.  That is what he

1    claims is the difference.  And essentially he's saying, I've

2    been retaliated against for being more vocal than these

3    other two former officials.

4            MS. ALOI:  And today I'm just prepared to say that

5    Mr. Meadows and Mr. Scavino have also been vocal about their

6    political beliefs.

7            THE COURT:  Okay.

8            MS. ALOI:  But in any event, you don't have to

9    reach this issue to find that he is not entitled to

10   additional discovery on this claim, because they didn't

11   commit similar crimes and there's no evidence of

12   discriminatory impact.

13           THE COURT:  Okay.

14           I mean, it's not that they committed similar

15   crimes, it's that they engaged in similar conduct.

16           MS. ALOI:  Similar conduct, that's right.

17           THE COURT:  One was prosecuted and the other two

18   have not been.  Okay.

19           MS. ALOI:  That's right.

20           THE COURT:  All right.

21           Mr. Irving, I think you wanted to say something

22   more about grand jury.  And if you want to reply, I'll give

23   you an opportunity to be heard as well, or rebuttal I should

24   say.

25           MR. IRVING:  Your Honor, if I may just address a

1    couple of other points from a moment ago.

2           With respect to, you know, whether these people

3    are differently situated -- or similarly situated,

4    government counsel suggested that this was not the same

5    crime; that somehow Mark Meadows had produced some records;

6    that there were different levels of engagement.  The

7    government's theory of this whole case is that it's just a

8    simple case that just has -- all they have to do is show

9    that he was -- Mr. Navarro, Dr. Navarro was subpoenaed, he

10   didn't show up, that's that, he doesn't have any opportunity

11   to raise any kind of defenses about that because --

12           THE COURT:  But you wouldn't argue to me that it's

13   not within the Department of Justice's purview to make a

14   prosecutorial determination based upon some of the factors

15   they've identified?

16           MR. IRVING:  I'm sorry, I didn't catch that.

17           THE COURT:  In other words, say because of the

18   dialogue that was had between counsel for Mr. Scavino and

19   Mr. Meadows, you mean to say that the Department of Justice

20   doesn't have discretion to take that into account when

21   they're making a charging decision?

22           MR. IRVING:  I think that the government can take

23   a wide variety of things into account when they're making

24   charging decisions, but not when you have -- not just

25   similarly situated individuals.

1           THE COURT:  But do you think that's an

2    illegitimate consideration?

3           MR. IRVING:  That what, that --

4           THE COURT:  Right.

5           I mean, look, you've just heard from government

6    counsel that one of the reasons that they're dissimilarly

7    situated is that there was a greater level of engagement.

8    And I'm asking you, is that greater level of engagement an

9    illegitimate reason to not have prosecuted the other two

10   when they prosecuted Mr. Navarro?

11          MR. IRVING:  Yes, in particular when their

12   position is that this is a simple case that only requires

13   showing that the guy was subpoenaed and didn't show up.

14   I mean, neither one of them showed up.  So absolutely,

15   Your Honor.

16          THE COURT:  Okay.

17          MR. IRVING:  And just to address again very

18   quickly the discussion about discriminatory impact, I would

19   point to the animus, for example, showing -- in our view,

20   shown towards Mr. Navarro at his arrest, I don't mean to go

21   back over that yet again.  But, you know, certainly that was

22   an outlier in anything I've ever seen having to do with a

23   misdemeanor white-collar defendant essentially.

24          So I don't mean to take up more of the Court's

25   time on that.  If there's anything about grand jury, I'd be

1    happy to answer that.

2          THE COURT:  If there's anything you'd like to add

3    about grand jury, I'm happy to hear it.

4          MR. IRVING:  Well, just one thing on that,

5    Your Honor.

6          There seems to be some discussion about kind of no

7    harm, no foul, when, in the briefs when both parties were --

8    when the government was talking about grand jury.

9          And when I looked through those cases, there were

10    a number of cases that didn't involve constitutional errors.

11    There were cases that involved situations where a trial jury

12    had already found the defendant guilty, thereby making less

13    relevant what happened before a grand jury.  And some of the

14    information that counsel was seeking was -- didn't rise to

15    the level of what we're asking for.

16          THE COURT:  Can I just ask you to distill for me

17    and crystallize for me what you think -- what you will

18    contend the impropriety is that occurred before the grand

19    jury that would entitle you to the disclosure of information

20    that's otherwise protected by Rule 6(e) and that you're not

21    entitled to receive?

22          MR. IRVING:  Sure.  Any information -- we are

23    concerned that there were due-process violations here

24    through the -- and I'm trying to be careful with the whole

25    grand jury thing in an open courtroom -- we're concerned

1    that there were due-process violations that --

2              THE COURT:  In what respect?  Give me -- tell me

3    exactly how Mr. Navarro's due-process rights were violated

4    by the presentation of evidence to the grand jury that

5    indicted him.

6              Again, what you suspect.  What do you suspect

7    happened that violated his grand jury rights -- I mean, his

8    due-process rights.

9              MR. IRVING:  I suspect that the grand jury was

10   incorrectly instructed as to the element of wilfulness, mens

11   rea, as to how and why executive privilege is asserted and

12   what it covers, as absolute immunity and as to the

13   Committee's, you know, Constitution.

14             We have very cursory information provided by the

15   agent.  And I'll stop there, I guess, before the microphone

16   there.

17             THE COURT:  Okay.  Anything else?

18             MR. IRVING:  No, sir.

19             THE COURT:  All right.  Thank you, Counsel.

20             MS. ALOI:  Your Honor, the defendant's

21   presentation begs the question as to whether the Department

22   exercised its discretion properly when it declined to charge

23   Mr. Scavino.

24             Just on the grand jury information, it's quite

25   clear that speculation of grand jury error alone is

1    insufficient to obtain disclosure of additional grand jury

2    material.

3           The defendant makes absolutely no showing of

4    particularized need.  The government is not the gatekeeper

5    of grand jury information.  And here, there's simply no

6    reason --

7           THE COURT:  It's not?

8           MS. ALOI:  Well, for some of the information --

9    for some of the information the defendant --

10          THE COURT:  I always thought it was.

11          MS. ALOI:  Some of the information the defendant

12   seeks, we'd have to go to the Chief Judge for.

13          THE COURT:  I understand that, but you've got a

14   pretty big key to open the gate.

15          MS. ALOI:  We sure do and that is why we did give

16   the defendant the grand jury information relevant to his

17   case and the material to any defense that he might make.

18          THE COURT:  So let me just ask you this.  I mean,

19   their theory is that, as I understand it, that there was

20   information withheld from the grand jury that it should have

21   received.

22          For example, that Mr. -- that OLC had, for 50

23   years, taken the view that Mr. Navarro and people in his

24   shoes were absolutely immune from being compelled to

25   testify.

1        They also take the view that the grand jury should

2   have been told or somehow advised or at least given the

3   facts about the Constitution of the Select Committee which,

4   in their view, was not properly constituted.

5        So why shouldn't the grand jury have had that

6   information and been able to make its own assessment on

7   those matters?

8        MS. ALOI:  Your Honor, so just taking a step back

9   for a minute, just as a starting point, the elements that we

10  are required to prove at trial are that the defendant was

11  summoned as a witness to give testimony or produce

12  information that the subpoena which summoned him was issued

13  by the authority of the Select Committee upon a matter under

14  their inquiry; that the information sought was pertinent to

15  that inquiry, and the defendant willfully made default,

16  wilfulness meaning that the defendant's default was

17  deliberate and intentional.

18       Here, there is no legal obligation to instruct the

19  grand jury on every aspect of the law or every possible

20  legal defense.  What matters is that the indictment is valid

21  on its face.  And here, it properly alleges the elements of

22  the offense.

23       And the defendant has actually offered no reason

24  to believe that the grand jury was instructed contrary to

25  those elements.

1          THE COURT:  Okay.

2          All right.  Anything else?

3          MS. ALOI:  Not on grand jury.

4          THE COURT:  Okay.  Thank you, Counsel.

5          All right.  Mr. Irving and counsel, anything else

6  you'd like to add?

7          MR. IRVING:  Thank you, Your Honor.

8          I would just submit to the Court that it's -- the

9  no-harm, no-foul kind of discussion around grand jury is

10  inappropriate where we're talking about potential

11  constitutional violations.

12          You know, it's disconcerting certainly to hear an

13  argument for the government that, you know, somehow this

14  would be that kind of situation, that there was -- this

15  case -- again, this case is a very simple case, all he had

16  to do was get subpoenaed, not show up.

17          There are -- there's the concept of fundamental

18  fairness in the government's role as supposedly the

19  non-biased advocate for the truth here, and it's -- you

20  know, it's not just me, it's former U.S. Attorney and later

21  Judge Stan Harris in a very similar situation and said that

22  the grand jury would be entitled to know this kind of

23  information.

24          And we're not asking all that much, frankly.

25  We're asking to see what happened here.  And if there's

1    nothing to see here, then maybe it isn't a duck.

2              THE COURT:  Okay.

3              MS. ALOI:  Your Honor, if I can respond.

4         The idea that the government did not present

5    speculation and information wholly irrelevant to the

6    elements of the offense and that may somehow have violated

7    the constitutional rights of the defendant is offensive.

8         The errors that he points to in his own motion for

9    why there was error in front of the grand jury involved

10   defenses that he has either waived or this post-indictment

11   claim that he relied on an OLC opinion which we've already

12   discussed he's not even entitled to additional discovery on.

13        The government does take its obligations to

14   present information to the grand jury very seriously,

15   including exculpatory information, but we have no obligation

16   to provide the grand jury with wholly irrelevant

17   information.

18             THE COURT:  Okay.  Thank you, Counsel.

19        All right, Counsel, thank you for your

20   presentations today.  I think I'm going to issue something

21   in writing.  So I'm not going to rule from the bench this

22   afternoon; I'll take it all under advisement and I'll strive

23   to get you something as soon as I possibly can.

24        So is there anything else either side would like

25   to raise before we adjourn?



```
1              Okay.
2              MR. ROWLEY:  No, Your Honor.
3              THE COURT:  I am going to ask the defense team and
4    Mr. Navarro to stay behind and I'm going to go into a closed
5    session with the defense team, all right?
6              MS. ALOI:  Thank you.
7              THE COURT:  Thank you.
8              (Sealed, ex parte session)
```











(Proceedings concluded at 3:24 p.m.)

## C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

Date:__September 3, 2022_____ 

William P. Zaremba, RMR, CRR

COURTROOM DEPUTY: [3] 3/2 3/5 62/23

MR. IRVING: [29] 35/4 35/7 36/15 37/1 37/4 37/20 38/25 39/14 40/1 40/7 40/10 40/14 40/16 41/1 41/17 41/21 42/5 42/8 48/25 49/16 49/22 50/3 50/11 50/17 51/4 51/22 52/9 52/18 55/7

MR. ROWLEY: [47] 11/2 11/5 11/13 12/10 12/13 13/2 13/15 13/20 14/2 14/10 14/16 14/20 14/24 15/24 16/2 16/12 16/16 17/13 20/16 20/22 21/21 23/17 24/5 24/11 30/12 30/19 30/22 31/6 31/10 32/15 32/20 33/1 33/7 33/19 34/3 34/11 34/15 34/22 35/2 35/11 35/20 36/1 36/23 37/23 40/23 41/19 57/2

MR. WOODWARD: [18] 24/14 25/13 25/17 25/21 26/8 26/21 27/25 28/7 28/11 28/15 39/6 59/11 60/8 62/5 62/22

MS. ALOI: [69]

THE COURT: [167]

THE DEFENDANT: [7] 3/16 61/17 62/3 62/9 62/11 62/14 62/21

'

'separation [1] 15/4

1

12:00 [1] 22/21
1455 [1] 2/3
16 [9] 16/21 16/23 17/1 17/4 22/18 31/12 32/24 42/16 43/9
1808 [1] 2/15
19 [1] 40/5
1977 [1] 15/13
1996 [1] 17/6

2

20 [1] 20/22
200 [2] 1/4 3/6
20001 [1] 2/21
20003 [1] 1/16
20004 [1] 2/4
20010 [1] 2/15
2007 [1] 15/4
2019 [3] 13/16 14/7 20/22
202 [4] 1/16 2/12 2/16 2/21
2021 [1] 22/14
2022 [4] 1/5 12/2 12/4 63/7
20854 [1] 2/12

22039 [1] 2/8
252-7212 [1] 1/16
258-6597 [1] 2/12
26th [2] 22/17 22/21
27th [2] 22/17 22/22
28th [1] 11/19
2:07 [1] 1/6

3

30-day [1] 27/10
301 [1] 2/4
31 [1] 1/5
3249 [1] 2/21
333 [1] 2/20
354-3249 [1] 2/21
3:24 [1] 62/25

4

400 [1] 2/3
402-8800 [1] 2/8
4th [1] 1/15

5

50 [5] 12/18 13/10 16/3 19/4 53/22
50 years [1] 19/11
555 [1] 1/15
5670 [1] 2/4

6

6597 [1] 2/12
6th [2] 25/6 41/7

7

703 [1] 2/8
7212 [1] 1/16
7447 [1] 2/16

8

807-5670 [1] 2/4
8639 [1] 2/7
8800 [1] 2/8

9

996-7447 [1] 2/16

A

able [1] 54/6
about [56] 3/18 6/4 8/20 10/16 11/8 13/24 14/5 15/7 16/16 17/6 17/22 18/12 21/1 21/23 22/12 22/20 22/24 25/22 25/23 25/24 30/2 30/13 30/13 30/16 31/7 31/19 31/23 34/14 34/19 35/8 35/18 35/22 35/24 36/10 36/17 37/9 38/4 39/8 39/13 40/23 44/6 44/9 44/11 44/13 45/12 47/4 48/5 48/22 49/11 50/18 50/25 51/3 51/6 51/8 54/3 55/10
above [1] 63/4
above-titled [1] 63/4
absence [1] 36/21
absolute [1] 52/12
absolutely [4] 14/17

abuse [1] 38/1
accept [2] 11/5 29/8
access [1] 29/9
according [2] 11/22 32/9
account [2] 49/20 49/23
accurate [1] 23/8
actually [8] 10/20 17/5 17/16 40/20 41/23 43/24 44/10 54/23
add [2] 51/2 55/6
addition [2] 15/1 15/2
additional [7] 11/8 38/4 42/16 46/11 48/10 53/1 56/12
address [3] 34/4 48/25 50/17
adjourn [1] 56/25
administrator [1] 15/13
admissible [1] 25/22
admit [1] 36/21
adopting [1] 15/14
adopts [1] 26/17
advance [1] 24/20
advised [1] 54/2
advisement [1] 56/22
adviser [1] 13/25 14/3 19/6
advisers [3] 13/13 13/17 15/6
advisers.' [1] 15/9
advising [1] 27/2
advisor [6] 12/19 13/11 14/8 14/14 19/15 27/9
advisors [1] 13/14
advocate [1] 55/19
affirmatively [2] 35/23 36/5
aful [2] 32/24 32/25
after [4] 13/7 15/3 16/7 23/10
afternoon [8] 3/14 3/15 3/16 3/17 11/2 35/5 35/6 56/22
again [13] 11/22 17/21 21/22 23/16 27/21 31/6 31/16 37/18 37/20 50/17 50/21 52/6 55/15
against [2] 25/6 48/2
agencies [2] 12/1 26/18
agent [5] 24/17 24/24 26/2 26/4 52/15
agent's [1] 24/20
agents [4] 26/14 29/18 29/19 30/5
ago [4] 17/23 18/12 20/7 49/1
agree [2] 34/7 34/22
Agreed [1] 43/10
ahead [2] 35/11 39/13
aided [1] 2/23
all [32] 3/2 4/21 7/1 7/3 10/23 13/11 19/23 25/3 26/8 27/2 27/17 27/21

31/17 35/14 36/13 44/12 44/12 44/13 48/20 49/8 52/19 55/2 55/5 55/15 55/24 56/19 56/22 57/5
all right [1] 57/5
allegations [1] 46/18
alleges [1] 54/21
allow [1] 31/3
allows [1] 19/6
alluded [1] 47/21
Aloi [2] 1/13 3/8
alone [1] 52/25
already [3] 28/2 51/12 56/11
also [15] 8/18 13/4 13/21 22/5 22/5 22/7 22/13 28/15 31/24 38/18 43/21 45/9 46/9 48/5 54/1
alter [1] 12/20
although [1] 36/12
always [1] 53/10
am [6] 13/12 39/24 40/3 42/21 47/3 57/3
Amanda [1] 1/13 3/8
AMERICA [2] 1/3 3/6
amicus [1] 32/5
AMIT [2] 1/10 3/3
Amit P [1] 3/3
amount [2] 26/9 26/11
analogous [1] 20/10
animus [1] 50/19
Ann [1] 1/13
another [2] 23/20 26/7
answer [3] 17/14 41/17 51/1
answering [2] 13/23 47/16
any [43] 4/8 5/20 5/22 6/1 6/22 6/23 6/23 7/6 7/13 7/14 7/17 7/17 8/9 9/18 12/24 18/9 20/11 20/24 20/25 21/8 24/17 29/18 32/24 33/8 34/9 34/12 35/7 35/24 37/7 37/12 38/2 41/13 42/5 42/12 42/15 47/1 47/3 47/6 48/8 49/10 49/11 51/22 53/17
anybody [2] 9/12 32/1
anyone [1] 47/14
anything [21] 9/22 13/24 22/3 25/14 28/13 30/11 33/24 33/24 34/10 34/19 37/19 42/4 42/25 45/8 50/22 50/25 51/2 52/17 55/2 55/5 56/24
Anyway [1] 39/12
apparently [2] 11/17 13/7
appear [2] 13/1 14/14 19/8 22/25 25/10 37/16 37/18
APPEARANCES [2] 1/12 1/18

31/17 35/14 36/13 44/12 44/12 44/13 48/20 49/8 52/19 55/2 55/5 55/15 55/24 56/19 56/22 57/5

appearing [1] 3/12
appears [1] 42/13
application [1] 21/14
appreciate [1] 26/10
approach [1] 4/1
April [1] 12/4
are [40] 4/5 4/14 5/20 6/1 6/5 8/3 8/8 9/18 11/7 12/14 18/7 18/9 18/17 20/19 20/20 20/24 22/1 26/11 28/19 29/3 30/7 31/19 31/20 33/20 33/20 37/12 37/20 41/10 44/12 44/13 45/4 45/19 46/19 46/24 46/25 49/3 51/22 54/10 54/10 55/17
areas [1] 10/16
arguably [1] 17/1
argue [1] 49/12
argument [6] 7/25 24/16 42/20 43/7 45/14 55/13
Armstrong [2] 17/9 43/16
around [1] 55/9
arrest [1] 50/20
article [12] 11/17 11/22 11/23 11/24 12/8 12/10 12/13 16/6 17/22 17/25 18/1 18/12
articulated [1] 17/5
as [55] 5/5 7/11 7/16 8/13 8/13 9/22 10/14 10/18 12/3 12/3 12/17 12/19 15/4 15/8 15/12 17/4 17/11 17/24 19/2 19/19 22/11 22/11 25/5 26/7 29/9 31/16 31/23 31/24 32/3 32/7 32/23 34/5 35/22 39/21 41/22 43/3 43/16 43/24 44/5 45/3 45/17 46/4 47/7 48/23 52/10 52/11 52/12 52/12 52/21 53/19 54/9 54/11 55/18 56/23 56/23
aside [3] 37/25 44/24 45/2
ask [12] 5/21 9/17 12/24 18/6 18/7 20/23 24/11 35/18 37/12 51/16 53/18 57/3
asked [12] 16/14 21/5 21/6 21/8 21/10 21/18 23/8 23/22 23/23 27/23 28/2 35/7
asking [13] 8/25 22/24 27/20 29/24 34/10 36/20 38/6 39/7 45/12 50/8 51/15 55/24 55/25
aspect [1] 54/19
aspersions [1] 38/3
assert [3] 38/13 39/17 41/12
asserted [1] 52/11
asserting [1] 41/8
assertions [1] 38/2

**A**

assessment [1] 54/6
assigned [1] 30/5
assistance [2] 32/11 38/6
assume [1] 45/13
Attorney [3] 27/1 27/3 55/20
Attorney General [2] 27/1 27/3
ATTORNEY'S [1] 1/14
August [1] 1/5
authority [1] 54/13
available [3] 9/6 9/10 27/18
Avenue [2] 2/3 2/20
aware [8] 18/7 18/9 18/9 24/8 36/24 46/24 47/1 47/3

**B**

back [10] 4/18 8/16 14/4 15/17 29/13 31/13 35/21 35/22 50/21 54/8
Bannon's [2] 33/6 33/17
Barrett [1] 2/20
based [5] 25/12 26/23 29/10 46/14 49/14
basis [6] 15/25 16/2 18/13 24/3 36/5 42/15
basket [1] 16/20
be [42] 3/4 4/4 4/19 7/23 13/9 14/12 15/21 17/24 20/11 21/24 22/8 23/8 23/8 23/20 24/5 24/16 24/19 24/24 25/19 25/22 27/4 28/22 28/24 32/2 33/11 35/16 36/25 37/20 38/20 39/19 39/24 42/20 43/21 43/22 45/9 47/12 48/23 50/25 51/6 51/24 55/14 55/22
bear [2] 16/10 31/5
because [21] 10/15 11/23 12/6 13/6 16/19 17/23 18/17 23/20 23/24 24/6 28/10 28/12 32/13 35/10 36/2 36/11 45/2 46/10 48/10 49/11 49/17
become [1] 41/23
been [31] 4/2 4/9 4/13 4/18 4/22 5/7 5/10 7/3 7/13 7/19 9/23 13/10 17/12 19/4 19/20 21/1 23/4 26/1 27/16 28/4 28/5 28/6 35/14 45/15 46/19 47/24 48/2 48/5 48/18 54/2 54/6
before [11] 1/10 16/4 22/25 34/6 38/22 45/1 46/12 51/13 51/18 52/15 56/25
begin [2] 3/21 25/20
begs [1] 52/21
behalf [2] 30/23 41/13

behavior [1] 24/11
behind [1] 57/4
being [5] 14/17 27/9 46/3 48/2 53/24
belief [1] 47/17
beliefs [4] 44/7 44/14 47/21 48/6
believe [9] 9/8 10/20 14/20 22/11 23/3 25/9 33/25 47/11 54/24
believes [1] 5/23
believing [1] 15/25
bench [1] 56/21
best [2] 39/21 41/21
between [29] 4/7 4/11 4/12 6/6 7/6 7/18 8/9 9/18 10/10 10/14 11/12 11/13 12/1 12/16 13/8 20/25 21/11 22/9 23/5 26/2 26/24 27/5 28/3 28/3 28/5 29/17 30/3 31/11 49/18
beyond [2] 7/19 8/7
biased [1] 55/19
Biden [2] 11/20 31/24
big [1] 53/14
binding [1] 19/11
blanketly [1] 43/2
boat [1] 43/3
body [1] 21/1
both [13] 8/1 8/2 10/2 35/17 37/8 38/11 42/22 42/23 44/5 44/9 44/20 46/3 51/7
bound [1] 20/11
bowels [1] 34/7
Brand [4] 2/10 2/11 2/14 3/10
brandwoodwardlaw.com [1] 2/17
brief [4] 32/5 47/7 47/23 47/24
briefing [2] 7/20 34/5
briefs [3] 3/19 44/10 51/7
bring [1] 45/25
broad [1] 10/15
broader [1] 10/18
bunch [2] 26/17 26/18
burden [2] 45/19 45/23
burger [1] 33/18
busy [1] 11/21

**C**

can [28] 3/23 6/17 8/24 8/25 12/7 12/24 14/14 24/10 29/15 32/17 33/3 34/8 34/14 35/13 35/18 35/23 36/1 36/3 36/8 36/16 36/18 37/1 37/12 39/12 49/22 51/16 56/3 56/23
can't [6] 22/3 23/18 25/11 28/23 33/10 33/11
cannot [1] 18/13 46/17 47/6
career [1] 23/3

carried [1] 17/18
case [42] 3/6 8/7 12/14 12/22 13/21 15/14 16/4 16/22 17/6 19/25 20/10 20/12 22/2 22/6 22/12 24/18 24/18 25/12 26/21 26/22 27/7 27/8 27/15 29/12 29/18 29/19 30/5 31/20 32/5 32/8 32/12 32/14 33/6 33/17 33/22 49/7 49/8 50/12 53/17 55/15 55/15 53/15
cases [5] 17/19 21/2 51/9 51/10 51/11
casting [1] 38/2
catch [1] 49/16
categories [1] 5/22 10/25
category [1] 41/4
caveated [1] 28/8
CCed [1] 10/20
certain [1] 37/20
certainly [8] 11/5 13/2 29/19 30/24 33/1 37/1 50/21 55/12
certainty [1] 36/9
Certified [1] 2/19
certify [1] 63/2
CH [1] 2/20
challenge [1] 24/19 47/15
chances [1] 11/7
change [5] 13/7 15/18 15/19 15/21 16/6
changed [7] 12/22 13/7 16/5 16/5 19/1 19/14 19/17
changing [1] 29/7
charge [1] 52/22
charged [2] 22/7 31/18
charging [2] 49/21 49/24
chase [2] 2/7 44/1
chief [2] 24/18 53/12
chose [1] 38/20
Cipollone [2] 13/16 14/6
Circle [1] 2/7
Circuit [1] 17/4
cite [1] 15/12
cited [1] 37/14
claim [7] 18/14 20/3 43/13 43/14 46/22 48/10 56/11
claimed [1] 46/6
claims [2] 47/17 48/1
clamoring [1] 31/22
clarification [1] 10/19 29/15
class [6] 43/22 43/23 45/10 45/20 46/4 47/18
clear [6] 10/9 28/23 30/10 37/6 42/16 52/25
clearly [1] 36/15
client [1] 38/20
closed [1] 57/4

co-counsel [1] 41/19
coincidence [1] 23/2
coincidences [1] 23/4
collar [1] 50/23
colleague [1] 40/6
COLUMBIA [2] 1/1 1/15
combination [1] 5/2
come [7] 3/25 17/9 17/10 24/3 24/12 33/16 34/25
coming [1] 32/23
commit [1] 48/11
committed [2] 44/16 48/14
committee [63] 4/6 4/8 4/13 4/22 4/24 5/1 5/17 5/23 7/12 7/18 8/10 9/19 9/20 10/5 10/10 10/15 10/20 22/15 23/1 23/14 25/2 25/7 25/8 25/16 26/6 26/6 28/4 30/3 31/1 31/11 31/16 31/22 32/1 32/18 32/19 34/9 34/9 34/14 35/25 36/10 36/18 37/8 38/16 38/19 38/23 39/21 40/11 40/12 41/3 41/6 41/7 41/8 41/12 41/16 42/4 44/17 46/4 46/16 46/17 47/5 47/25 54/3 54/13
Committee's [2] 38/14 52/13
committees [2] 22/9 34/21
committing [1] 43/23
communicate [3] 27/3 39/20 41/11
communicated [2] 5/15 5/17
communication [20] 6/6 13/8 17/15 17/16 20/14 23/16 24/1 24/1 26/1 26/5 26/5 26/24 27/23 28/2 28/5 40/4 40/20 40/21 41/1 41/16
communications [45] 4/5 4/7 4/8 4/11 4/12 7/6 7/12 7/13 7/17 7/22 8/3 8/12 9/18 10/6 10/10 11/8 12/9 12/16 18/15 20/25 21/9 21/11 21/23 22/9 27/5 27/19 27/22 27/24 28/1 28/9 28/13 28/16 28/17 28/18 29/17 29/23 29/23 30/2 31/4 36/22 36/24 37/2 38/16 38/18 41/6
comparable [1] 40/21
comparing [1] 25/19
compel [3] 3/18 34/8 43/6
compelled [6] 12/21 14/3 15/6 19/14 19/15 53/24

competent [1] 33/2
complex [1] 29/12
comply [2] 27/14 32/1
component [1] 6/18
computer [1] 2/23
computer-aided [1] 2/23
concept [1] 55/17
concern [1] 27/4
concerned [2] 51/23 51/25
conclude [1] 45/4
concluded [1] 62/25
conduct [2] 48/15 48/16
confirm [1] 34/7
confirmed [1] 28/20
confronted [1] 27/4
Congress [6] 14/4 26/25 27/3 27/5 28/21 34/9
Congress's [1] 27/14
congressional [7] 12/21 14/17 15/7 22/9 32/7 34/20 37/14
connected [1] 33/21
connection [1] 40/5
consideration [1] 50/2
constituted [2] 32/18 54/4
Constitution [2] 2/20 52/13 54/3
constitutional [3] 51/10 55/11 56/7
contact [4] 22/23 23/4 25/2 31/13
contacted [2] 16/8 16/8
contacting [1] 23/7
contacts [1] 22/20
contempt [3] 20/3 25/5 27/10
contend [1] 51/18
contests [1] 14/10
context [6] 15/11 16/25 17/20 25/6 25/7 37/25
CONTINUED [1] 2/1
continues [1] 15/3
contrary [1] 54/24
conversation [1] 23/12
conversations [2] 12/3 21/23
copied [1] 10/20
Coronavirus [20] 22/13 22/20 22/24 23/5 25/7 30/14 30/19 31/14 40/11 41/3
correct [7] 5/11 5/16 21/16 34/11 39/24 40/3 63/3
correspondence [1] 11/8
could [10] 3/25 8/10 13/9 16/13 17/12 18/18 22/8 23/20 24/5 41/22
counsel [38] 3/14 3/23 4/1 10/24 11/7 11/15 11/18 15/3 16/7 18/6

**C**

counsel... [28] 18/8
18/23 18/25 20/15 22/2
22/3 23/6 23/8 28/2
29/16 33/2 38/3 38/12
38/17 38/24 41/15
41/17 42/9 46/25 49/4
49/18 50/6 51/14 52/19
55/4 55/5 56/18 56/19
counsel's [9] 6/19 6/21
7/2 7/24 8/14 9/2 9/6
9/21 11/6
count [1] 27/11
couple [2] 44/16 49/1
course [1] 26/20
court [17] 1/1 2/11
2/18 2/19 11/6 14/12
15/10 15/14 17/6 19/8
24/13 27/20 32/6 34/3
35/12 46/12 55/8
Court's [2] 38/6 50/24
courtroom [1] 51/25
cover [1] 13/13
covered [3] 7/13 9/16
14/15
covers [1] 52/12
COVID [1] 40/5
COVID-19 [1] 40/5
CR [1] 1/4
credible [1] 43/19
crime [3] 43/23 44/16
49/5
crimes [2] 48/11 48/15
criminal [2] 3/6 46/1
critic [1] 47/24
cross [1] 24/17
cross-examination [1]
24/17
CRR [2] 63/2 63/8
crystallize [1] 51/17
curiosity [1] 4/15
curious [1] 42/20
current [1] 19/7
cursory [1] 52/14
cut [1] 44/1

**D**

D.C [5] 1/5 1/16 2/4
2/15 2/21
D.C. [1] 47/22
D.C. statute [1] 47/22
DAAGs [1] 21/25
Dan [1] 35/23
Date [1] 63/7
day [3] 27/10 31/13
37/24
deals [1] 41/3
decision [2] 19/4 49/21
decisions [2] 20/1
49/24
declined [2] 5/24 52/22
declining [2] 37/15
37/18
default [2] 54/15 54/16
defendant [23] 1/7 2/2
3/12 8/11 10/21 18/16
42/13 43/11 43/19
43/21 44/15 44/17

53/9 53/11 53/16 54/10
54/15 54/23 56/7
defendant's [4] 7/20
19/24 52/20 54/16
defense [19] 3/11 8/4
16/11 16/15 16/21
16/23 20/3 23/23 24/3
23/25 24/6 24/10 25/11
25/23 25/25 53/17
54/20 57/3 57/5
defenses [4] 27/18
32/17 49/11 56/10
defer [1] 29/13
define [1] 4/16
definitely [1] 39/25
definition [1] 29/11
degree [1] 36/9
deliberate [1] 54/17
deliberation [1] 45/25
demanding [1] 17/1
Department [39] 4/7
4/12 4/17 4/25 5/23 6/5
6/6 6/8 7/6 8/17 11/14
13/6 15/20 16/3 18/25
19/13 19/17 20/6 21/24
22/10 23/5 23/10 25/14
26/25 27/6 28/3 28/6
29/17 30/4 31/12 32/10
32/10 32/22 34/8 34/18
34/18 49/13 49/19
52/21
Department's [2] 19/25
20/9
deposition [1] 22/25
depositions [1] 43/2
Deputy [2] 11/18 16/7
describing [1] 43/6
despite [1] 46/3
determination [1]
49/14
determine [2] 19/5
38/7
determined [1] 28/18
dialogue [2] 38/23
49/18
dictate [1] 15/5
did [23] 6/21 22/15
24/24 24/24 25/9 25/9
25/17 26/4 28/21 29/23
33/5 33/17 38/15 38/23
39/5 39/20 41/11 43/3
44/18 44/22 47/7 53/15
56/4
did you [1] 24/24
didn't [13] 5/14 17/25
23/12 27/4 32/10 42/25
44/8 48/10 49/10 49/16
50/13 51/10 51/14
difference [1] 48/1
different [20] 5/21
18/23 20/5 20/19 25/2
25/12 26/17 26/18 31/6
40/12 40/12 40/19
40/20 41/4 43/19 44/22
45/7 46/3 46/5 49/6
differently [6] 18/24
44/2 44/3 45/5 45/13

difficult [1] 33/11
dig [1] 14/22
direct [1] 3/22
directed [2] 6/18 17/17
directing [2] 27/14
38/13
directly [6] 9/18 17/17
22/1 31/19 41/12 47/10
disclose [1] 28/21
disclosed [4] 10/2
10/12 17/23 28/24
disclosure [2] 51/19
53/1
disconcerting [1]
55/12
discoverable [3] 4/11
7/23 28/8
discovery [14] 3/18
16/24 23/19 24/4 25/21
35/17 38/4 42/16 43/11
44/25 46/11 46/21
48/10 56/12
discretion [2] 49/20
52/22
discriminatory [6]
17/19 43/15 43/18
46/10 48/12 50/18
discussed [3] 31/25
43/24 56/12
discussing [3] 18/3
33/24 35/14
discussion [4] 10/18
50/18 51/6 55/9
dismiss [1] 19/24
dismissal [2] 16/13
16/15
dissimilarly [1] 50/6
distill [1] 51/16
DISTRICT [1] 1/1 1/1
1/10 1/15
do [27] 4/15 4/16 7/16
7/19 14/4 17/14 18/2
19/12 20/2 20/5 20/24
25/2 26/15 29/2 33/16
34/14 39/3 40/10 41/2
46/13 47/7 49/8 50/1
50/22 52/6 53/15 55/16
do you [4] 4/15 19/12
20/5 52/6
do you have [1] 20/24
document [1] 8/22
documents [7] 6/10
8/16 8/22 28/25 29/10
38/17 42/24
does [12] 12/8 12/10
13/24 14/13 15/17
16/23 18/17 23/16
23/20 23/20 25/1 56/13
doesn't [7] 23/11 30/24
33/14 41/3 45/18 49/10
49/20
doing [1] 41/21
DOJ [4] 12/3 27/2 27/2
29/1
DOJ-wide [1] 27/2
don't [23] 10/24 11/24
15/19 19/19 20/9 23/3

33/25 35/11 36/2 37/2
38/21 39/24 41/17 42/7
45/1 47/13 48/8 50/20
50/24
door [1] 32/22
dots [2] 33/20 33/20
doubt [1] 27/12
Dr. [13] 11/3 11/19
12/6 13/3 13/9 22/20
22/24 30/22 33/21 37/7
39/20 41/21 49/9
Dr. Navarro [11] 11/3
11/19 12/6 13/9 22/24
30/22 33/21 37/7 39/20
41/21 49/9
Dr. Navarro's [2] 13/3
22/20
duck [4] 38/5 38/6 38/7
56/1
due [4] 51/23 52/1 52/3
52/8
due-process [4] 51/23
52/1 52/3 52/8
during [1] 15/8

**E**

each [1] 27/11
earlier [3] 23/23 30/2
40/6
early [1] 12/3
EARTH [1] 2/2
echo [1] 38/1
ed [2] 44/11 46/25
Edmund [1] 2/14
effect [4] 24/22 43/15
43/18 46/16
ego [1] 12/20
either [9] 8/11 9/19
19/7 28/21 37/18 41/15
47/1 56/10 56/24
element [1] 52/10
elements [8] 9/9 20/3
43/13 43/14 54/9 54/21
54/25 56/6
Elizabeth [2] 1/13 3/8
Elizabeth Aloi [1] 3/8
elizabeth.aloi [1] 1/17
else [12] 9/12 17/20
23/11 28/14 37/10
37/19 42/4 45/8 52/17
55/2 55/5 56/24
email [10] 1/17 1/18
2/5 2/9 2/13 2/16 5/15
5/17 10/10 26/5
emails [5] 4/14 4/16
11/25 17/24 18/2
employees [1] 27/2
end [3] 35/21 35/22
37/23
engaged [3] 12/2 38/22
48/15
engagement [5] 44/22
46/3 49/6 50/7 50/8
enough [1] 38/5
ensure [2] 27/17 30/4
entitle [1] 51/19
entitled [7] 11/1 23/19

35/16 48/9 51/21 55/22
56/12
entity [1] 9/3
environment [2] 22/7
31/18
error [2] 52/25 56/9
errors [2] 51/10 56/8
escaping [2] 17/7
34/25
essential [1] 43/13
essentially [3] 8/8 48/1
50/23
establish [1] 24/18
established [1] 34/1
even [6] 18/16 19/19
20/12 23/15 31/3 56/12
event [2] 33/8 48/8
ever [3] 19/9 25/15
50/22
every [4] 28/2 28/5
54/19 54/19
everything [3] 3/20
6/10 37/10
evidence [13] 15/21
17/9 17/10 22/8 29/6
29/7 30/25 43/12 46/15
46/17 46/20 48/11 52/4
evidentiary [1] 24/3
ex [1] 57/8
exact [1] 43/3
exactly [3] 17/21 25/4
52/3
examination [1] 24/17
example [11] 4/19
11/10 12/16 17/2 22/11
23/13 28/20 31/12
36/17 50/19 53/22
exception [1] 24/23
exchanged [4] 3/19 8/9
11/25 28/16
excluded [1] 28/12
exclusively [1] 34/20
exculpatory [1] 56/15
executive [18] 9/3
11/21 14/7 14/15 15/12
19/21 19/21 22/14
30/22 31/1 39/17 41/2
41/8 41/12 42/18 44/11
46/6 52/11
exercised [1] 52/22
exist [7] 4/9 18/2 18/8
18/16 18/17 21/9 21/14
existence [1] 43/12
exists [2] 14/7 24/1
expect [1] 22/3
explain [1] 24/10
explained [1] 15/4
explicitly [1] 15/11
explored [1] 27/17
expressed [1] 24/13
extensive [2] 38/16
38/18
extent [13] 6/5 7/1 9/1
9/17 12/8 12/18 12/25 18/9
18/15 18/20 20/24
34/12 37/11 40/3
extraordinary [1] 24/4
extremely [4] 11/7

**E**

extremely... [3] 11/21
12/5 12/14

**F**

face [1] 54/21
fact [10] 15/19 17/11
19/10 24/18 26/1 27/1
33/15 38/7 41/1 42/13
factors [1] 49/14
facts [7] 16/9 20/10
20/19 20/20 40/2 43/25
54/3
factual [2] 3/23 20/23
failure [1] 44/19
fair [1] 23/8
Fairfax [1] 2/7
fairness [1] 55/18
fall [1] 16/23
fallow [1] 30/24
falls [2] 16/20 25/3
fancy [1] 39/19
far [4] 4/3 26/4 26/22
34/15
Fast [1] 22/17
Fast-forward [1] 22/17
FBI [5] 12/3 26/14
29/18 29/19 30/5
February [1] 11/19
few [1] 4/1
figure [1] 16/19
file [1] 32/5
filed [1] 32/4
find [3] 22/3 34/1 48/9
finds [1] 26/17
fine [2] 25/1 31/2
firm [1] 29/2
firm-wide [1] 29/2
first [4] 5/21 22/12 39/1
45/17
follow [1] 47/13
following [1] 34/7
foregoing [1] 63/3
form [3] 5/14 18/13
39/18
former [19] 13/13
13/13 13/17 13/17
13/25 13/25 14/8 14/8
14/14 14/19 15/5 15/5
19/7 19/15 19/16 20/15
27/9 48/3 55/20
forth [1] 4/18
forward [4] 17/9 17/10
22/17 24/3
foul [2] 51/7 55/9
found [1] 51/12
Four [1] 22/23
framework [1] 3/23
frankly [3] 23/3 37/9
55/24
front [1] 56/9
frustrated [1] 26/9
fundamental [1] 55/17
fundamentally [1] 42/1
further [2] 30/12 37/5

**G**

game [1] 42/2

Gaston [2] 1/14 3/8
gate [1] 53/14
gatekeeper [1] 53/4
General [4] 11/18
15/15 27/1 27/3
generally [1] 47/18
gentlemen [5] 38/12
38/23 41/13 45/7 47/25
get [14] 3/23 8/20
18/24 26/2 26/7 29/4
29/15 32/11 34/6 35/11
38/15 45/11 55/16
56/23
gets [1] 30/25
getting [2] 4/19 18/1
give [5] 42/9 48/22
52/2 53/15 54/11
given [2] 31/19 54/2
gives [1] 42/15
Glen [1] 2/7
gmail.com [1] 2/13
go [6] 34/15 36/13
39/13 50/20 53/12 57/4
go ahead [1] 39/13
goalposts [2] 42/2
42/12
goes [5] 15/10 24/6
25/24 26/17 40/18
going [16] 13/3 14/4
15/17 22/3 25/22 29/1
31/20 36/13 39/14 41/9
45/1 45/24 56/20 56/21
57/3 57/4
gone [1] 26/10
good [9] 3/5 3/14 3/15
3/16 11/2 11/7 24/14
35/5 35/6
Good afternoon [1]
35/5
got [7] 17/8 17/9 24/3
25/15 31/13 36/5 53/13
gotten [2] 26/3 35/10
governed [1] 16/25
government [33] 1/13
3/9 3/23 3/25 9/7 13/15
14/10 17/24 17/25 18/6
18/16 22/18 24/17
26/12 26/16 28/18
29/16 33/2 36/11 38/3
42/1 42/9 42/12 45/18
45/24 49/4 49/22 50/5
51/8 53/4 55/13 56/4
56/13
government's [5] 7/21
16/22 44/2 49/7 55/18
grand [31] 5/6 5/6 34/5
35/8 38/1 48/22 50/25
51/3 51/8 51/13 51/18
51/25 52/4 52/7 52/9
52/24 52/25 53/1 53/5
53/16 53/20 54/1 54/5
54/19 54/24 55/3 55/9
55/22 56/9 56/14 56/16
grand jury [1] 56/16
greater [2] 50/7 50/8
grounds [1] 6/24 45/5

GSA [2] 13/21 15/13
guess [2] 47/20 52/15
guilty [1] 51/12
guy [1] 50/13

**H**

had [29] 4/1 4/17 6/8
6/9 8/2 8/6 8/12 9/8
10/7 11/20 12/6 14/21
16/3 23/9 34/24 38/15
38/18 40/10 40/17
41/23 41/25 44/6 47/8
49/5 49/18 51/12 53/22
54/5 55/15
hamstrung [2] 26/11
42/14
handful [1] 26/13
hands [1] 41/10
Hang [1] 11/11
happened [8] 17/21
22/4 22/21 29/7 43/24
51/13 52/7 55/25
happening [2] 25/4
27/5
happy [6] 14/12 36/18
37/5 37/21 51/1 51/3
harder [1] 36/21
harm [2] 51/7 55/9
Harris [1] 55/21
has [42] 5/9 7/3 9/23
12/18 13/15 15/11 17/4
17/14 18/8 18/21 18/23
18/25 19/1 19/3 19/9
19/10 19/13 19/17
19/20 21/10 26/9 26/13
27/16 28/4 28/5 28/6
28/18 33/21 36/6 36/11
36/12 39/17 39/18
39/19 42/5 42/12 42/15
44/15 45/15 49/8 54/23
56/10
hasn't [4] 13/10 35/7
47/16 47/20
have [86]
haven't [2] 32/24 35/10
having [3] 8/12 41/2
50/22
he [46] 10/1 13/1 16/4
18/21 18/21 22/14
22/25 24/12 25/9 27/4
30/25 31/4 37/16 38/9
38/22 39/8 39/18 39/21
39/21 39/22 40/20 41/8
41/9 41/21 41/23 41/24
41/25 42/13 42/15
42/21 43/3 46/15 47/17
47/18 47/18 47/20
47/25 48/9 49/9 49/9
49/10 53/17 55/15 56/8
56/10 56/11
he didn't [1] 27/4
he's [5] 38/9 38/10
47/21 48/1 56/12
head [1] 41/4
hear [5] 22/12 26/8
44/8 51/3 55/12
heard [3] 20/6 48/23

hearing [1] 1/9 26/1
hearsay [1] 24/23
help [1] 24/10
helpful [1] 10/23
helps [1] 25/14
her [3] 23/10 23/11
28/8
here [37] 3/17 7/16 8/6
8/11 11/7 12/25 18/4
19/19 20/2 20/20 24/7
25/5 27/9 33/11 33/13
33/13 33/20 33/24
36/16 38/18 42/14 43/5
43/14 43/25 44/12
44/23 45/3 45/10 46/2
46/12 51/23 53/5 54/18
54/21 55/19 55/25 56/1
hesitate [1] 34/15
hey [1] 33/12
Hi [1] 11/4
high [1] 42/22
high-ranking [1] 42/22
highlighted [1] 28/24
highly [4] 18/3 22/2
22/6 30/16
him [6] 27/14 40/17
41/4 47/18 52/5 54/12
his [24] 12/22 17/17
25/12 30/25 31/5 38/21
39/22 39/23 40/18
40/19 41/15 42/19
46/14 47/1 47/2 47/21
47/23 47/23 50/20 52/7
52/7 53/16 53/23 56/8
Honor [69]
HONORABLE [2] 1/10
3/2
hours [1] 22/23
House [43] 4/6 6/4 6/6
6/10 6/18 6/19 6/21 7/2
7/7 7/12 7/18 7/23 7/24
8/2 8/6 8/10 8/14 9/3
9/5 9/19 9/21 9/25
10/14 10/21 11/13
11/18 12/17 13/6 16/7
20/15 20/25 21/11
21/13 21/25 26/24 28/6
28/22 30/3 32/4 32/22
33/3 33/15 44/19
how [12] 4/15 5/15 9/2
12/24 31/4 32/18 39/3
39/21 44/1 44/3 52/3
52/11
however [1] 11/6
hypothetically [1] 16/9

**I**

I admit [1] 36/21
I am [2] 42/21 57/3
I believe [2] 10/20
22/11
I can [7] 3/23 34/14
35/13 36/1 36/3 36/18
37/1
I can't [1] 23/18
I cannot [1] 47/6
I did [1] 43/3

I didn't [2] 44/8 49/16
I don't [5] 15/19 20/9
23/3 42/7 47/13
I don't have [2] 11/24
38/21
I gave [1] 31/12
I guess [1] 47/20
I have [1] 14/11
I just [3] 4/1 20/6 30/9
I know [2] 14/10 45/21
I mean [13] 24/9 27/21
27/22 33/10 33/11
33/13 36/5 37/2 41/7
50/5 50/14 52/7 53/18
I say [1] 13/5
I should [3] 36/15 38/9
48/23
I think [30] 3/24 8/1
8/16 9/16 10/23 11/6
12/13 13/4 15/18 16/12
18/2 18/22 20/8 23/4
23/19 24/5 30/16 31/16
33/5 34/11 34/24 35/15
35/22 36/19 37/6 37/23
38/3 48/21 49/22 56/20
I understand [3] 34/16
53/13 53/19
I wanted [1] 10/17
I was [2] 8/20 31/7
I'd [7] 3/21 14/12 16/16
34/15 37/20 42/20
50/25
I'll [8] 14/22 29/13 38/1
42/9 48/22 52/15 56/22
56/22
I'm [38] 5/9 8/24 11/23
14/11 15/1 16/19 17/22
18/1 19/2 21/13 22/4
24/8 24/8 24/9 25/19
25/25 26/8 30/19 31/3
33/19 33/23 34/19
36/18 36/20 37/5 37/20
38/2 38/2 44/8 45/12
48/4 49/16 50/8 51/3
51/24 56/20 56/21 57/4
I'm going [1] 57/4
I'm just [1] 48/4
I'm not [7] 8/24 24/8
25/19 25/25 26/8 33/23
56/21
I'm not sure [3] 14/11
22/4 24/9
I'm sorry [4] 5/9 21/13
30/19 44/8
I've [6] 3/19 14/6 24/13
28/2 48/1 50/22
idea [1] 56/4
identified [6] 8/14
37/13 45/6 47/8 47/17
49/15
identify [1] 8/25
III [1] 2/6
illegitimate [2] 50/2
50/9
immune [3] 14/17 15/6
53/24
immunity [5] 15/2
52/12

**I**

**impact [3]** 46/10 48/12 50/18
**important [4]** 12/5 38/11 45/2 46/10
**improper [3]** 13/5 16/12 22/8
**impropriety [1]** 51/18
**inappropriate [1]** 55/10
**include [3]** 26/18 30/5 43/15
**included [1]** 29/18
**including [2]** 22/19 56/15
**incorrectly [1]** 52/10
**incredibly [3]** 27/15 29/10 29/12
**incremental [1]** 29/5
**indication [1]** 23/21
**indicted [2]** 16/4 52/5
**indictment [4]** 16/13 16/15 54/20 56/10
**individual [2]** 9/13 21/22
**individuals [2]** 26/14 49/25
**influence [11]** 13/5 15/22 16/10 16/12 23/21 24/2 30/13 31/11 33/13 33/22 46/19
**inform [1]** 3/24
**information [38]** 4/18 4/19 5/6 5/18 6/22 7/2 8/9 9/8 11/24 17/23 22/19 22/19 26/12 29/10 32/23 34/13 34/17 39/7 41/24 51/14 51/19 51/22 52/14 52/24 53/5 53/8 53/9 53/11 53/16 53/20 54/6 54/12 54/14 55/23 56/5 56/14 56/15 56/17
**informed [3]** 8/10 18/18 18/21
**inject [1]** 32/14
**inquiry [3]** 10/16 54/14 54/15
**insofar [2]** 7/11 8/13
**instruct [2]** 19/3 54/18
**instructed [2]** 52/10 54/24
**instruction [1]** 42/17
**instructions [2]** 22/15 39/22
**insufficient [2]** 46/21 53/1
**integrity [2]** 24/7 24/19
**intended [1]** 22/25
**intent [5]** 8/11 18/19 18/20 43/15 46/18
**intentional [1]** 54/17
**interference [1]** 29/6
**internal [1]** 45/25
**interrupt [1]** 12/7
**interview [3]** 8/19 8/19 37/16
**interviewed [1]** 9/4

**interviews [2]** 8/24 9/1
**investigate [2]** 24/25 27/8
**investigated [1]** 29/20
**investigation [5]** 8/7 8/13 9/7 24/20 37/9
**investigators [1]** 9/8
**investigatory [1]** 26/12
**invocation [2]** 19/20 19/21
**invoke [2]** 38/13 42/17
**invoked [3]** 12/6 22/14 46/7
**invokes [2]** 30/22 31/1
**involve [1]** 51/10
**involved [4]** 8/14 29/22 51/11 56/9
**irrelevant [2]** 56/5 56/16
**Irving [6]** 2/2 3/10 34/4 35/3 48/21 55/5
**is [131]**
**is there [1]** 56/24
**isn't [5]** 25/21 32/13 42/19 43/3 56/1
**issue [9]** 18/22 31/10 33/1 33/9 39/4 40/19 40/20 48/9 56/20
**issued [3]** 27/13 32/19 54/12
**issues [7]** 3/24 18/3 31/6 34/4 35/9 35/17 45/21
**it [75]**
**it would be [1]** 15/21
**it's [33]** 8/1 10/9 13/2 15/19 19/4 20/18 20/22 23/24 25/23 26/6 26/20 28/23 32/12 34/24 36/19 37/6 40/21 42/1 42/16 45/15 45/19 47/20 48/14 48/15 49/7 49/12 52/24 53/7 55/8 55/12 55/19 55/20 55/20
**its [10]** 19/1 19/14 19/17 24/20 26/12 37/9 52/22 54/6 54/21 56/13
**itself [2]** 5/9 46/17
**IV [1]** 2/2

**J**

**J6 [5]** 23/13 31/1 31/16 31/22 32/1
**J6 Committee [3]** 31/1 31/16 31/22
**January [2]** 25/6 41/7
**January 6th [2]** 25/6 41/7
**Jencks [2]** 26/2 26/7
**jirving1 [1]** 2/5
**John [6]** 2/2 2/6 3/10 3/10 11/3 11/17
**John Rowley [1]** 11/3
**john.rowley [1]** 2/9
**Jonathan [3]** 11/18 12/1 13/8

**J**
**jprowleylaw.com [1]** 2/9
**Jr [1]** 2/14
**JUDGE [1]** 1/10 24/14 53/12 55/21
**June [4]** 22/17 22/17 22/21 22/21
**jury [33]** 5/6 5/6 19/3 34/5 35/8 38/1 48/22 50/25 51/3 51/8 51/11 51/13 51/19 51/25 52/4 52/7 52/9 52/24 52/25 53/1 53/5 53/16 53/20 54/1 54/5 54/19 54/24 55/3 55/9 55/22 56/9 56/14 56/16
**just [49]** 3/21 3/23 3/25 4/1 4/15 5/6 6/14 6/16 8/25 18/8 20/6 20/14 21/21 27/1 27/12 28/20 29/15 30/4 30/9 30/12 31/7 31/18 33/8 34/7 35/13 36/13 37/9 42/13 43/2 43/2 43/24 44/5 45/17 46/20 48/4 48/25 49/7 49/8 49/24 50/5 50/17 51/4 51/16 52/24 53/18 54/8 54/9 55/8 55/20
**Justice [30]** 4/7 4/25 5/23 6/5 6/7 7/6 8/17 11/14 13/6 15/20 16/2 19/1 19/13 22/10 23/5 23/9 25/15 26/24 27/6 28/4 28/6 29/17 30/4 31/12 32/9 32/10 34/8 34/18 34/18 49/19
**Justice Department [2]** 23/5 34/18
**Justice's [2]** 20/7 49/13

**K**

**keep [1]** 45/1
**key [1]** 53/14
**kind [9]** 16/24 24/2 24/4 38/22 49/11 51/6 55/9 55/14 55/22
**knew [1]** 39/21
**know [43]** 11/8 11/16 14/10 16/5 16/20 17/2 17/21 18/17 21/23 23/13 25/15 25/25 26/3 26/23 31/17 31/17 31/21 33/15 33/22 33/25 35/13 35/15 36/2 36/4 36/16 36/25 37/6 38/3 39/18 41/10 41/17 41/23 45/21 45/21 45/24 47/12 49/2 50/21 52/13 55/12 55/13 55/20 55/22
**knowledge [7]** 7/17 8/12 10/4 19/8 20/25 28/3 41/16
**knows [2]** 12/17 22/11

**L**

**laid [1]** 19/23
**last [2]** 11/16 31/25
**later [3]** 22/23 39/13 55/20
**law [2]** 2/2 2/6 2/11 2/14 19/9 20/2 39/18 42/14 54/19
**lawyer [2]** 44/7 44/10
**learned [1]** 11/16
**least [10]** 4/4 22/7 22/8 24/6 35/16 52/22 36/11 41/4 47/23 54/2
**leave [1]** 19/12
**lectern [1]** 4/1
**legal [5]** 3/24 11/14 19/2 54/18 54/20
**lens [1]** 37/7
**less [1]** 51/12
**let [10]** 5/21 9/17 18/6 18/7 18/24 19/1 20/23 34/6 35/21 53/18
**let's [3]** 6/4 10/25 45/13
**letter [12]** 5/15 5/16 9/25 10/21 11/19 22/18 31/13 38/12 38/15 39/2 39/15 39/19
**letting [1]** 38/6
**level [6]** 21/24 44/22 46/3 50/7 50/8 51/15
**levels [1]** 49/6
**like [15]** 3/21 18/8 26/16 27/4 32/21 33/17 34/4 38/5 38/5 42/10 42/13 43/2 51/2 55/6 56/24
**likely [1]** 17/11
**limited [4]** 26/12 26/13 28/25 29/10
**limiting [4]** 28/11 28/15 28/16 28/17
**link [1]** 36/12
**listener [1]** 24/23
**LLC [1]** 2/2
**logistical [4]** 4/14 4/16 7/7 7/9
**long [1]** 23/10
**look [8]** 12/23 24/24 27/18 33/10 33/12 37/5 42/21 50/5
**looked [1]** 51/9
**looking [1]** 33/9
**looks [1]** 22/2
**loss [1]** 31/4
**lot [4]** 13/18 27/23 33/12 33/20

**M**

**made [17]** 4/17 6/8 6/9 8/15 8/17 9/1 9/10 10/16 14/6 20/1 35/15 35/24 36/10 37/15 37/24 47/4 54/15
**make [8]** 9/6 10/9 30/9 33/14 43/19 49/13 53/17 54/6
**makes [1]** 53/3

**making [6]** 26/16 31/7 38/2 49/21 49/23 51/12
**mandatory [1]** 27/10
**many [1]** 9/2
**Mark [1]** 35/24 49/5
**material [10]** 5/22 8/4 11/1 16/20 18/10 26/3 26/7 28/19 53/2 53/17
**materials [5]** 4/21 4/23 4/24 5/1 5/8
**matter [14]** 15/18 16/7 19/2 22/16 23/16 23/20 23/20 26/19 29/20 40/2 46/12 47/14 54/13 63/4
**matters [8]** 12/14 15/7 19/2 22/1 23/17 23/18 54/7 54/20
**may [19]** 3/24 4/18 7/19 11/7 13/16 14/7 17/24 17/24 18/8 20/22 21/22 24/1 24/11 24/12 26/1 34/25 47/12 48/25 56/6
**maybe [3]** 17/14 31/17 56/1
**McKennett [1]** 2/10
**MD [1]** 2/12
**me [33]** 5/21 6/17 8/25 9/17 14/11 14/21 17/7 18/6 18/7 18/24 19/1 19/2 19/11 20/23 23/7 24/4 24/10 33/18 34/6 34/25 34/25 35/21 36/5 36/25 38/22 45/4 49/12 51/16 51/17 52/2 52/2 53/18 55/20
**Meadows [23]** 35/24 36/9 36/17 37/11 38/10 38/15 40/22 41/5 41/14 42/24 42/25 43/1 44/2 44/6 44/17 44/20 45/4 45/6 46/5 47/1 48/5 49/5 49/19
**Meadows' [3]** 44/7 44/10 46/25
**mean [28]** 4/16 23/11 24/9 24/9 26/2 27/21 27/22 27/23 32/16 32/21 33/10 33/11 33/13 36/5 37/2 37/2 37/13 41/7 45/3 46/24 48/14 49/19 50/5 50/14 50/20 50/24 52/7 53/18
**meaning [1]** 54/16
**mechanical [1]** 2/23
**media [1]** 11/17
**MEHTA [2]** 1/10 3/3
**members [1]** 9/2
**memo [3]** 13/16 13/24 14/6 14/11 14/13 14/25 15/1 27/2 27/4
**memoranda [1]** 27/13
**memos [9]** 11/25 11/25 12/2 12/9 13/1 13/13 14/2 17/24 18/2
**mens [4]** 13/3 30/25 31/8 52/10
**mentioned [3]** 7/8

6 9

# M

mentioned... [2]  46/24
47/21
mere [2]  17/12 23/25
Merit [2]  2/18
met [1]  45/23
microphone [1]  52/15
middle [1]  42/2
might [5]  9/8 13/1 22/5
24/11 53/17
mind [4]  31/5 31/7
40/18 40/20
minimum [2]  27/10
28/23
minute [1]  54/9
misdemeanor [1]
50/23
misstating [1]  20/8
Mistake [1]  20/2
Molly [2]  1/14 3/8
molly.gaston [1]  1/18
moment [5]  8/21 31/20
35/19 45/14 49/1
months [1]  22/16
more [12]  6/14 14/12
16/24 17/1 20/7 22/12
29/15 37/12 47/24 48/2
48/22 50/24
morning [1]  3/5
most [1]  31/16
motion [9]  1/9 3/18 4/5
19/24 32/3 32/9 36/6
43/5 56/8
motivated [1]  17/11
mount [1]  25/11
move [1]  42/2
moved [1]  42/12
Mr [1]  53/22
Mr. [112]
Mr. Bannon's [2]  33/6
33/17
Mr. Irving [4]  34/4 35/3
48/21 55/5
Mr. Meadows [21]  36/9
36/17 37/11 38/10
38/15 40/22 41/5 41/14
42/24 42/25 43/1 44/2
44/6 44/17 44/20 45/4
45/6 46/5 47/1 48/5
49/19
Mr. Meadows' [1]  44/7
44/10 46/25
Mr. Navarro [35]  3/15
4/2 10/1 10/11 12/9
12/25 17/17 18/8 20/1
21/11 21/15 22/1 22/12
24/21 25/6 25/9 36/6
37/15 38/8 38/15 39/9
40/16 41/7 41/13 44/4
45/5 45/8 45/15 46/6
46/14 49/9 50/10 50/20
53/23 57/4
Mr. Navarro's [6]  3/18
10/24 12/19 16/4 18/20
52/3
Mr. Rowley [9]  11/4
20/6 20/8 21/20 29/13
30/11 35/1 35/14 38/1

M.Solomon [1]  1/13
36/12 36/17 37/11
38/11 39/5 40/22 41/5
41/14 42/24 42/25 43/1
44/3 44/6 44/20 45/4
46/6 47/2 47/10 47/13
48/5 49/18 52/23
Mr. Scavino's [2]
36/14 38/17
Mr. Solomon's [1]  16/6
Mr. Su [1]  12/2
Mr. Woodward [5]
14/25 24/12 24/15 39/4
39/4
much [3]  4/4 17/4
55/24
must [7]  23/4 43/11
43/19 43/21 43/22 45/9
46/19
my [11]  9/16 10/14
13/23 15/17 19/4 19/8
23/3 36/8 41/4 41/10
41/19

# N

name [1]  17/7
names [1]  8/25
NARA [2]  12/3 16/8
narrative [1]  25/4
narrow [1]  29/11
nature [1]  7/9
NAVARRO [49]  1/6 3/7
3/15 4/2 10/1 10/11
11/3 11/19 12/6 12/9
12/25 13/9 17/17 18/13
20/1 21/11 21/15 22/1
22/12 22/24 24/21 25/6
25/9 29/3 30/22 33/21
36/6 37/7 37/15 38/8
38/15 39/9 39/20 40/16
41/7 41/13 41/21 44/4
45/5 45/8 45/15 46/6
46/14 49/9 49/9 50/10
50/20 53/23 57/4
Navarro's [8]  3/18
10/24 12/19 13/3 16/4
18/20 22/20 52/3
necessary [1]  46/11
need [2]  32/10 53/4
negative [1]  36/21
neither [6]  28/22 34/8
35/23 42/24 43/1 50/14
never [1]  31/4
nevertheless [3]  12/13
12/15 32/11
news [1]  17/22
next [1]  7/11
Nixon [2]  13/20 15/13
no [45]  1/4 3/6 5/25 6/3
6/25 7/9 7/15 8/6 8/12
9/14 10/14 19/8 19/17
20/7 21/3 21/12 21/17
21/19 23/10 27/12 29/5
29/6 29/25 31/18 36/1
39/16 39/17 39/18
41/18 41/19 42/17
45/11 45/11 48/11 51/6
51/7 52/18 53/3 53/5

56/15 57/2
no-foul [1]  55/9
no-harm [1]  55/9
non [3]  14/15 25/12
55/19
non-biased [1]  55/19
non-prosecution [1]
25/12
none [2]  13/12 19/25
normal [1]  27/7
not [107]
noted [3]  43/16 46/5
47/7
nothing [5]  20/2 33/17
34/14 42/15 56/1
novel [2]  27/15 29/12
November [1]  22/14
now [12]  10/24 12/5
15/1 16/5 17/7 23/2
23/8 31/16 31/23 32/9
33/16 34/25
number [2]  28/24
51/10
NW [4]  1/15 2/3 2/15
2/20

# O

obligation [2]  54/18
56/15
obligations [1]  56/13
obtain [5]  43/11 44/24
46/11 46/21 53/1
obtained [2]  4/21
39/12
obvious [1]  5/13
obviously [1]  3/19
occur [1]  44/23
occurred [6]  11/9 15/7
16/6 17/16 21/23 51/18
occurring [1]  31/17
occurs [1]  22/6
offenders [1]  43/22
offense [2]  9/9 54/22
56/6
offensive [1]  56/7
offer [1]  32/6
offered [2]  46/16 54/23
office [12]  1/14 6/20
6/22 7/2 7/24 8/14 9/2
9/3 9/6 9/21 11/14
21/25
official [3]  2/19 14/19
15/7
officials [3]  42/22
42/22 48/3
Oh [1]  14/24
okay [56]  3/14 3/17
4/20 5/4 5/12 5/19 6/13
7/10 8/5 9/11 9/15 9/24
10/3 10/8 10/22 12/12
14/9 14/22 14/25 15/16
16/18 18/5 20/4 20/21
21/4 21/18 21/20 29/14
30/10 30/21 31/2 31/9
34/2 34/12 34/23 37/22
39/11 39/12 40/9 40/15
41/20 42/3 42/23 46/8

48/18 50/16 52/17 55/1
55/4 56/2 56/18 57/1
OLC [33]  11/15 12/17
12/18 13/1 13/8 13/13
13/16 13/24 14/11 16/8
18/21 19/10 19/13 20/2
20/10 20/13 20/16
20/17 20/18 20/19
20/22 21/1 21/1 21/8
21/10 21/13 21/14
21/25 27/13 41/22
41/24 53/22 56/11
OLC's [1]  19/3
one [24]  6/14 6/15 6/16
8/22 10/15 10/19 13/11
16/3 18/23 26/7 29/3
29/15 30/12 31/15 32/1
32/17 34/24 38/11 41/1
45/20 48/17 50/6 50/14
51/4
ones [1]  47/6
only [9]  8/16 8/17
11/23 27/16 33/19 36/1
45/15 46/15 50/12
op [2]  44/11 46/25
op-ed [2]  44/11 46/25
open [2]  51/25 53/14
opened [1]  32/21
opening [1]  47/23
operating [1]  41/24
opine [1]  45/24
opinion [8]  18/21
20/10 20/13 20/17
20/19 20/22 41/24
56/11
opinions [4]  20/2 21/1
21/14 41/23
opportunity [3]  42/10
48/23 49/10
opposed [1]  17/11
opposition [1]  45/22
order [3]  24/4 29/1
44/24
ordinary [3]  26/20
26/21 26/22
other [35]  6/23 7/5 7/6
7/7 7/9 9/2 9/12 10/6
12/25 17/8 17/17 21/2
21/24 28/24 29/23
31/10 31/15 31/19 34/4
34/9 34/24 37/19 38/21
42/22 44/21 45/14
46/18 47/1 47/3 47/25
48/3 48/17 49/1 49/17
50/9
otherwise [3]  6/22
15/20 51/20
our [15]  4/22 5/3 10/18
12/17 18/18 19/23
20/11 22/18 24/23
25/22 29/9 30/7 34/5
47/7 50/19
out [9]  4/15 16/10
16/19 19/23 26/17 27/2
27/4 34/1 41/9
outlier [1]  50/22
output [1]  15/22

outset [1]  19/2
outside [6]  16/23 23/24
23/25 43/22 45/9 45/16
outspoken [2]  37/8
45/16
outstanding [2]  5/20
6/1
over [12]  4/2 4/9 4/13
4/22 5/7 5/10 7/3 9/23
10/7 28/4 45/25 50/21
overall [1]  25/4
own [12]  54/6 56/8

# P

p.m [2]  1/6 62/25
page [1]  36/13
papers [2]  12/18 32/16
37/14
Park [1]  2/15
part [6]  7/24 8/2 8/8
26/11 30/7 47/15
parte [1]  57/8
participate [1]  32/5
particular [3]  15/3 47/6
50/11
particularized [1]  53/4
particularly [1]  37/7
parties [3]  3/19 3/20
51/7
Pat [1]  13/16
pause [1]  23/10
Pebble [1]  2/11
Pennsylvania [1]  2/3
people [3]  17/17 49/2
53/23
perhaps [1]  5/13
person [5]  3/12 9/6 9/9
39/23 41/22
persons [1]  43/20
pertaining [3]  21/25
22/1 34/5
pertains [1]  32/7
pertinent [1]  54/14
PETER [2]  1/6 3/7
picture [1]  33/14
piece [1]  20/18
piecemeal [1]  29/3
Plaintiff [1]  1/4
play [1]  17/12
please [2]  3/4 34/3
PLLC [1]  2/6
point [17]  9/22 14/22
19/19 23/3 23/18 30/12
30/16 31/7 31/33 33/23
34/16 44/5 44/12 45/11
45/18 50/19 54/9
points [2]  49/1 56/8
policy [2]  13/7 13/7
political [16]  15/22
16/10 23/21 24/2 29/6
30/13 31/11 33/13
33/22 44/7 44/10 44/13
46/19 47/17 47/21 48/6
politically [2]  22/6
31/18
position [17]  7/21
15/18 15/19 15/22 16/3
16/5 16/5 17/16 17/18 19/3

**P**

position... [8] 19/14
19/18 19/25 20/7 20/9
24/19 39/23 50/12
possession [3] 10/2
34/13 34/20
possibility [1] 23/25
possible [3] 23/2 32/12
54/19
possibly [1] 56/23
post [2] 44/11 56/10
post-indictment [1]
56/10
posture [1] 24/23
potential [9] 13/5 13/5
15/21 15/22 16/23
30/13 31/10 33/9 55/10
potentially [2] 22/8
24/6
powers [1] 15/4
precise [1] 6/11
prejudice [1] 19/22
preliminary [1] 10/18
preparation [1] 16/21
prepared [1] 48/4
preparing [1] 16/22
prerogative [1] 26/13
present [2] 56/4 56/14
presentation [2] 52/4
52/21
presentations [1]
56/20
presented [2] 20/19
20/20
presenting [1] 25/22
president [27] 11/20
11/20 12/19 12/20
13/17 14/8 15/4 15/8
19/7 19/16 22/15 27/12
27/13 30/23 31/24
39/16 39/16 39/22 40/4
40/8 40/17 41/2 41/10
41/11 41/15 42/17
42/23
President Trump [1]
27/12
President Trump's [2]
11/20 22/15
President's [3] 13/25
38/12 39/1
Presidential [3] 15/6
15/8 27/9
Presidents [1] 15/5
presiding [1] 3/3
presumably [1] 26/7
pretty [1] 53/14
Prettyman [1] 2/20
previously [1] 43/16
primarily [3] 3/22 7/23
17/22
primary [2] 7/25 47/23
principle [1] 15/11
principles [1] 15/5
privilege [20] 6/23
11/21 14/7 14/15 15/12
19/5 19/6 19/9 19/21
22/14 30/23 31/1 39/17
41/3 41/8 41/12 42/18

privileges [2] 38/13
38/13
privy [2] 29/22 31/5
procedure [1] 32/7
proceedings [5] 1/9
2/23 3/13 62/25 63/4
process [8] 14/4 14/18
29/5 32/7 51/23 52/1
52/3 52/8
produce [6] 5/24 14/14
34/10 37/19 42/25
54/11
produced [8] 2/23 6/7
6/11 38/16 42/24 44/17
45/6 49/5
production [5] 9/20
9/20 10/11 19/15 29/5
proffer [1] 36/16
proper [1] 19/21
properly [5] 27/17
32/19 52/22 54/4 54/21
proposition [1] 13/21
propriety [1] 32/18
prosecutability [1]
13/25
prosecute [2] 20/1
27/8
prosecuted [7] 25/5
27/10 32/2 39/8 48/17
50/9 50/10
prosecution [36] 4/12
6/9 7/25 8/3 8/9 13/9
13/10 14/5 16/25 17/3
17/7 17/11 17/20 18/14
18/17 21/10 24/7 24/20
25/12 26/13 26/18
26/20 27/8 28/17 29/11
30/7 31/17 31/22 35/8
35/19 37/25 42/4 43/7
44/25 46/1 46/21
prosecution's [1] 8/11
prosecutor's [1] 46/18
prosecutorial [1] 49/14
prosecutors [2] 21/22
26/14
protected [7] 28/22
43/21 43/23 45/10 46/4
47/18 51/20
protective [1] 45/20
prove [1] 54/10
provide [3] 25/10
46/17 56/16
provided [7] 4/24 5/1
5/3 5/18 10/11 36/12
52/14
providing [1] 32/23
public [9] 26/23 31/23
35/24 36/10 37/3 37/18
40/7 46/2 47/4
publicly [1] 36/6
purpose [1] 17/19
pursuant [1] 22/14
pursue [1] 22/16
purview [1] 49/13
put [2] 27/2 41/4
puts [2] 24/17 47/17
putting [2] 27/4 37/24

**Q**

quacks [1] 38/5
question [15] 5/21
7/11 9/16 10/14 13/4
13/23 15/17 17/14
20/23 30/1 31/18 34/24
36/8 47/16 52/21
questions [7] 3/22
3/22 4/2 10/17 19/20
35/8 42/6
quick [1] 30/16
quickly [1] 50/18
quite [5] 24/22 25/19
42/16 44/21 52/24
quoting [3] 15/1 20/13
20/14

**R**

raise [4] 10/18 32/17
49/11 56/25
raised [3] 18/23 33/1
45/21
ranking [1] 42/22
rea [4] 13/3 30/25 31/8
52/11
reach [2] 19/19 48/9
read [2] 3/19 14/23
really [1] 47/16
Realtime [1] 2/19
reason [5] 9/8 13/3
50/9 53/6 54/23
reasons [6] 5/14 19/23
35/14 44/16 45/12 50/6
rebuttal [1] 48/23
receipt [2] 5/8 9/18
receive [1] 51/21
received [16] 4/23 5/8
6/10 7/2 8/15 9/17 9/23
10/1 10/7 22/13 22/23
38/12 40/21 40/22
40/22 53/21
recite [2] 44/19 47/6
recognized [3] 15/2
15/11 19/10
record [6] 23/18 29/9
37/21 38/21 46/2 63/3
recorded [1] 2/23
records [7] 6/1 14/15
19/15 37/19 44/17 45/6
49/5
reference [2] 13/17
14/6
referenced [4] 7/20
17/25 34/5 37/16
references [3] 12/14
13/20 29/2
referral [2] 25/5 25/16
46/16 46/17
referred [1] 40/6
referring [1] 11/23
reflect [1] 24/1
refusal [2] 14/1 45/7
refusals [2] 38/21
44/21
refuse [4] 13/1 14/14
14/14 19/8
refused [2] 32/1 43/2
refute [1] 45/18

Registered [1] 2/18
relate [2] 12/9 16/24
relates [1] 16/22
relevant [13] 9/9 12/14
12/25 13/2 13/4 18/3
22/2 30/17 30/24 31/19
36/25 51/13 53/16
relied [3] 13/1 18/21
56/11
relying [4] 17/22 39/21
39/22 41/22
remain [2] 15/6 45/15
reply [3] 44/20 47/21
48/22
report [1] 37/15
Reporter [4] 2/18 2/18
2/19 2/19
reporting [1] 26/23
reports [1] 44/19
represent [2] 36/20
39/5
representation [1]
30/2
representations [1]
11/6
representative [1] 47/2
representatives [5]
32/4 32/23 33/4 33/16
47/2
represented [1] 38/20
representing [1] 39/8
request [20] 4/17 4/22
4/25 5/3 5/9 5/13 6/9
6/11 6/11 6/14 6/15
6/16 6/18 7/5 7/14 8/15
8/17 8/18 8/23 9/5
requested [1] 6/23
requesting [1] 22/19
requests [6] 5/5 5/7
5/20 9/1 26/10 28/21
required [1] 54/10
requires [2] 17/1 50/12
requisite [2] 35/16
37/24
respect [10] 19/14
23/13 29/16 30/15
31/15 37/8 37/9 38/14
49/2 52/2
Respectfully [1] 28/7
respects [2] 38/11
44/21
respond [5] 14/1 18/8
33/3 42/10 56/3
response [5] 6/10 8/23
15/18 19/24 42/20
responsive [1] 6/23
result [1] 16/13
resulted [1] 23/6
results [1] 29/4
retaliated [1] 48/2
review [1] 47/7
Ridge [1] 2/11
right [40] 10/8 10/13
13/12 16/11 16/14 17/7
25/15 25/18 26/3 28/10
29/21 30/9 30/11 33/6
33/21 34/1 34/14 34/19

34/25 36/15 38/17
38/21 39/5 40/9 40/13
40/19 40/23 40/25 43/8
43/17 45/14 48/16
48/19 48/20 50/4 52/19
55/2 55/5 56/19 57/5
rights [4] 52/3 52/7
52/8 56/7
rise [2] 3/2 51/14
RMR [2] 63/2 63/8
Road [1] 2/15
Rockville [1] 2/12
role [2] 8/6 55/18
roughly [1] 43/23
Rowley [12] 2/6 3/10
11/3 11/4 20/6 20/8
21/20 29/13 30/11 35/1
35/14 38/1
rule [13] 16/21 16/23
17/1 17/4 22/18 24/23
28/23 31/12 37/24
42/16 43/9 51/20 56/21
Rule 16 [9] 16/21 16/23
17/1 17/4 31/12 31/12
37/24 42/16 43/9
rules [2] 29/7 32/24
run [2] 32/24 32/25

**S**

said [16] 8/16 12/18
13/15 15/12 17/4 19/9
19/10 23/10 28/5 28/8
31/25 32/10 38/1 42/15
47/20 55/21
same [10] 25/3 31/13
33/5 33/16 40/16 43/3
43/23 44/16 46/4 49/4
say [29] 12/10 13/1
13/5 13/24 14/13 15/10
16/9 17/2 19/1 22/5
23/15 23/15 23/18
27/22 28/1 31/3 33/12
35/13 35/23 36/1 36/3
36/8 38/9 39/14 48/4
48/21 48/24 49/17
49/19
saying [3] 11/20 36/17
48/1
says [9] 11/24 13/18
13/19 14/7 14/21 39/19
41/19 42/21 47/18
Scavino [24] 35/23
36/9 36/12 36/17 37/11
38/11 39/5 40/22 41/5
41/14 42/24 42/25 43/1
44/3 44/6 44/20 45/4
46/6 47/2 47/10 47/13
48/5 49/18 52/23
Scavino's [2] 36/14
38/17
scheduling [1] 28/12
scholar [1] 41/24
Sealed [1] 57/8
search [1] 29/2
seated [1] 3/4
second [1] 37/17
see [5] 23/19 24/12
24/14 55/25 56/1

**S**

seeking [4]  16/24 18/16 34/13 51/14
seeks [1]  53/12
seeming [1]  4/4
seems [4]  15/20 32/21 33/17 51/6
seen [1]  50/22
Select [28]  4/5 4/8 4/13 4/22 4/24 5/1 7/12 7/18 8/10 9/19 9/20 10/4 10/10 10/15 10/20 25/7 26/6 28/4 30/3 34/9 34/14 35/25 36/10 38/14 42/4 47/5 54/3 54/13
selection [1]  46/14
selective [10]  16/25 17/6 17/20 18/13 35/8 35/18 37/25 43/6 44/25 46/21
senior [8]  12/19 13/10 13/13 14/3 14/8 15/5 15/8 27/9
sense [1]  16/21
sent [3]  10/21 11/19 22/18
separate [1]  39/4
September [1]  63/7
seriously [1]  56/14
session [2]  57/5 57/8
set [3]  28/25 39/16 45/2
setting [1]  44/24
seven [1]  22/16
several [1]  11/25
share [4]  6/17 8/25 19/12 44/13
she [8]  23/9 23/10 28/4 28/7 28/8 28/12 28/13 28/21
she's [5]  28/11 28/15 28/16 28/17 28/20
shoes [1]  53/24
shortly [2]  16/4 37/17
should [6]  32/2 36/15 38/9 48/23 53/20 54/1
shouldn't [2]  36/4 54/5
show [14]  12/2 29/5 43/12 43/12 43/18 44/21 45/19 46/9 46/13 46/14 49/8 49/10 50/13 55/16
showed [2]  43/1 50/14
showing [8]  17/9 17/10 35/16 37/24 43/19 50/13 50/19 53/3
shown [3]  38/5 44/15 50/20
shows [1]  46/2
side [2]  19/12 56/24
sign [1]  39/18
silent [1]  45/15
similar [6]  24/22 48/11 48/14 48/15 48/16 55/21
similarly [10]  6/8 38/9 38/10 40/24 42/21

49/25
simple [1]  49/8 50/12 55/15
simpler [1]  30/1
simply [5]  14/7 33/8 33/25 39/14 53/5
single [1]  8/15
sir [4]  3/15 39/6 39/10 52/18
sitting [1]  38/17
situated [15]  38/9 38/10 40/24 42/21 43/20 43/22 44/2 44/3 45/5 45/13 45/19 49/3 49/3 49/25 50/7
situation [2]  55/14 55/21
situations [1]  51/11
slightly [1]  18/22
small [1]  27/7
so [56]  3/17 3/23 3/25 4/3 4/4 4/6 5/9 7/11 7/16 8/8 8/22 10/24 15/17 19/10 19/25 20/5 20/23 21/18 24/23 25/9 25/19 26/3 27/15 28/1 28/16 28/23 33/7 33/7 34/12 35/7 36/8 38/8 39/1 39/15 41/10 41/21 43/3 43/5 43/14 43/18 44/1 44/5 44/11 45/3 45/17 45/23 46/9 47/9 47/11 50/14 50/24 53/18 54/5 54/8 56/21 56/24
so it's [1]  28/23
Solicitor [1]  15/14
Solomon [1]  11/17
Solomon's [1]  16/6
some [39]  3/21 3/24 4/14 4/18 5/2 9/2 10/25 12/18 13/10 14/4 14/5 14/22 16/3 17/10 19/5 20/14 21/24 22/7 22/16 23/4 24/12 26/1 26/10 34/4 35/16 35/16 39/19 42/24 43/12 46/19 47/8 47/9 49/5 49/14 51/6 51/13 53/8 53/9 53/11 53/24
somebody [3]  23/11 26/2 26/5
Somebody's [1]  36/4
somehow [5]  12/21 49/5 54/2 55/13 56/6
someone [1]  12/18
something [9]  17/20 18/12 23/24 25/25 36/17 42/19 48/21 56/20 56/23
Sometimes [1]  26/19
somewhere [1]  34/17
soon [1]  56/23
sorry [7]  5/9 21/13 22/17 22/22 30/19 44/8 49/16
sort [3]  21/1 33/10 46/19

sound [1]  26/16
speak [2]  14/2 17/19
speaks [1]  14/16
species [1]  17/2
specific [5]  5/5 26/19 27/22 43/14 47/17
specifically [3]  4/25 11/14 21/7
specify [1]  12/8
speculation [6]  17/12 26/9 46/20 46/20 52/25 56/5
spoken [2]  23/9 36/6
spring [1]  12/1
stage [1]  38/4
Stan [1]  55/21
stand [3]  7/16 29/9 45/3
standard [4]  17/1 17/4 17/5 46/15
standards [1]  17/8
standing [1]  36/16
stands [1]  13/21
stanley [5]  2/10 2/14 2/17 3/10 3/11
stanleymbrand [1]  2/13
start [1]  35/21
starting [9]  4/6 9/22 19/19 39/1 39/15 44/5 44/12 45/18 54/9
state [4]  31/5 31/7 40/18 40/19
statement [5]  28/8 37/15 37/17 37/18 40/7
statements [7]  35/24 36/10 37/3 37/13 47/1 47/3 47/4
STATES [7]  1/1 1/3 1/10 3/6 19/7 39/17 42/23
Station [1]  2/7
stature [1]  12/19
statute [1]  47/22
stay [1]  57/4
stenography [1]  2/23
step [2]  29/3 54/8
still [2]  27/13 31/3
stop [1]  52/15
strand [2]  33/13 33/14
Street [1]  1/15
strive [1]  56/22
stuff [1]  33/12
Su [4]  11/18 12/1 12/2 13/8
subcommittee [14]  22/13 22/21 22/24 23/6 23/6 23/9 23/12 30/14 30/15 30/18 30/20 30/23 31/14 40/5
subject [9]  4/5 10/15 12/20 14/3 17/3 18/7 21/2 26/19 43/9
subject-matter [1]  26/19
submit [2]  14/12 55/8
submitted [1]  3/20

12/21 14/1 22/13 27/14 30/25 32/19 38/14 40/5 40/13 44/20 54/12
subpoenaed [4]  42/23 49/9 50/13 55/16
subpoenas [2]  5/6 32/2
substance [1]  17/15
such [8]  4/8 7/13 7/22 18/10 20/10 21/8 23/16 38/15
sudden [1]  13/11
suffice [1]  35/13
suggest [3]  20/6 32/25 38/22
suggested [4]  18/8 18/25 36/11 49/4
suggesting [3]  28/13 33/19 33/23
Suite [1]  2/3
summoned [2]  54/11 54/12
supplement [2]  36/18 37/21
supposedly [1]  55/18
Supreme [3]  15/10 15/14 17/6
Supreme Court [3]  15/10 15/14 17/6
sure [15]  10/9 14/11 19/2 22/4 24/8 24/9 25/19 27/21 30/9 35/20 36/23 37/4 40/1 51/22 53/15
surprised [1]  26/8
suspect [3]  52/6 52/6 52/9

**T**

table [1]  38/18
take [12]  5/13 5/14 20/5 29/3 33/13 33/13 49/20 49/22 50/24 54/1 56/13 56/22
taken [1]  53/23
taking [2]  23/10 54/8
talk [4]  3/18 6/4 14/5 39/13
talked [1]  30/13
talking [5]  34/19 38/4 40/23 51/8 55/10
team [13]  4/13 6/9 7/25 8/3 8/9 9/7 21/10 27/8 28/17 29/11 30/8 57/3 57/5
television [1]  37/16
tell [3]  17/25 36/5 52/2
telling [1]  41/9
tending [1]  43/12
tenure [1]  15/3
term [1]  16/21
terms [5]  4/2 8/22 8/24 14/2 14/16
testifies [1]  26/4
testify [1]  53/25
testimonial [3]  14/17 15/2 19/6

testimony [5]  12/21 15/7 19/14 25/10 54/11
than [19]  6/14 7/5 7/7 7/9 9/12 10/6 12/25 14/12 20/6 20/7 20/20 37/19 38/21 40/20 44/3 45/5 45/7 47/25 48/2
thank [12]  14/25 35/2 35/4 42/8 42/11 52/19 55/4 55/7 56/18 56/19 57/6 57/7
thank you [8]  14/25 35/2 35/4 42/11 55/7 56/19 57/6 57/7
Thanks [1]  34/25
that [361]
that's [33]  5/11 5/16 8/17 10/15 12/5 14/21 16/10 17/8 19/9 20/5 21/21 22/4 24/2 25/1 26/15 26/19 29/7 32/3 32/20 34/11 34/20 38/20 40/7 40/19 40/21 43/15 43/24 45/2 48/16 48/19 49/10 50/1 51/20
their [18]  15/8 24/18 28/3 32/6 32/11 38/24 43/2 44/6 44/9 44/13 44/21 45/14 45/19 48/5 50/11 53/19 54/4 54/14
them [10]  9/6 14/4 18/18 38/13 41/9 43/1 43/4 46/3 46/11 50/14
themselves [1]  5/7
then [15]  6/4 7/11 8/15 10/4 15/10 15/12 15/14 15/17 16/3 17/3 29/8 32/3 37/16 37/17 56/1
then-Solicitor [1]  15/14
theory [3]  16/10 49/7 53/19
there [75]
there's [19]  15/12 19/8 24/9 26/19 27/12 31/18 33/12 33/22 39/16 39/17 39/18 45/20 47/9 48/11 50/25 51/2 53/5 55/17 55/25
thereafter [1]  37/17
thereby [1]  51/12
therefore [1]  17/18
these [10]  3/12 10/25 19/20 21/22 26/10 42/22 46/18 47/25 48/2 49/2
they [43]  4/8 5/3 8/8 10/16 11/1 18/17 18/18 21/24 23/14 25/15 25/17 26/15 29/23 30/7 31/22 32/4 32/5 32/6 32/24 32/25 33/5 33/17 36/6 36/12 40/24 41/9 42/4 44/9 44/12 44/12 44/13 44/15 45/9 45/19 46/9 46/13 47/12 48/10 48/14 48/15 49/8 50/10 54/1

**T**

they're [9]  8/2 11/1 18/3 32/11 45/13 46/20 49/21 49/23 50/6
they've [2]  45/23 49/15
thing [5]  33/5 33/17 36/25 51/4 51/25
things [2]  31/19 49/23
think [46]  3/21 3/24 8/1 8/16 9/16 10/17 10/23 11/1 11/6 12/13 13/4 15/18 15/19 15/20 16/12 16/16 18/2 18/22 20/8 20/9 23/4 23/19 24/5 30/16 31/16 32/12 32/17 33/5 33/7 33/7 34/11 34/24 35/15 35/22 36/19 37/6 37/23 37/25 38/3 45/13 47/9 48/21 49/22 50/1 51/17 56/20
this [61]  3/6 3/17 8/7 9/16 9/17 11/24 12/14 15/11 16/20 17/2 17/10 17/22 17/23 18/24 19/1 19/3 19/25 20/10 21/1 21/2 22/2 22/6 22/12 22/18 23/3 23/18 23/18 23/22 23/23 23/24 24/22 26/21 26/21 27/15 29/3 29/9 29/11 29/20 31/17 31/20 32/5 32/7 32/12 33/22 33/23 38/3 38/18 39/4 47/18 48/9 48/10 49/4 49/7 50/12 53/18 55/13 55/14 55/15 55/22 56/10 56/21
This is [1]  3/6
those [22]  3/22 4/24 6/7 7/22 8/3 8/12 10/17 12/9 13/13 18/2 27/18 28/18 28/23 33/20 35/17 38/2 38/11 38/23 45/7 51/9 54/7 54/25
though [2]  34/6 37/6
thought [1]  53/10
thoughts [1]  24/12
three [4]  20/7 37/13 37/14 41/13
through [7]  10/25 36/13 37/7 38/24 41/15 51/9 51/24
throw [1]  33/12
tied [1]  41/10
time [4]  15/8 29/4 31/25 50/25
titled [1]  63/4
today [10]  7/16 18/4 20/20 33/25 42/15 45/3 46/12 47/7 48/4 56/20
told [3]  40/17 41/7 54/2
towards [2]  17/17 50/20
transcript [3]  1/9 2/23 63/3
transcription [1]  2/23
treatment [1]  43/20

transcription [1]  2/23
23/23 23/24 23/25 24/6 24/9 25/11 25/25 51/11 54/10
true [1]  26/19
Trump [2]  27/12 30/23
Trump's [2]  11/20 22/15
truth [1]  55/19
try [2]  10/25 36/18
trying [4]  16/19 32/11 32/13 51/24
turn [1]  10/24
turned [10]  4/2 4/9 4/13 4/22 5/7 5/10 7/3 9/23 10/7 28/4
tweets [1]  36/14
Twitter [4]  36/13 47/8 47/10 47/13
two [16]  5/2 18/12 20/7 25/20 31/6 38/11 38/15 38/23 43/3 45/5 45/7 45/14 47/25 48/3 48/17 50/9
type [3]  7/7 17/15 17/18

**U**

U.S [1]  1/14
U.S. [1]  55/20
U.S. Attorney [1]  55/20
ultimately [2]  3/24 19/4
unaware [1]  18/18
under [4]  37/7 47/22 54/13 56/22
understand [6]  27/7 29/1 31/4 34/16 53/13 53/19
understanding [3]  39/23 40/3 40/16
Understood [1]  17/13
undue [6]  23/21 24/2 31/11 33/12 33/22 46/19
unfair [1]  42/1
unfortunately [1]  22/6
UNITED [7]  1/1 1/3 1/10 3/6 19/7 39/17 42/23
United States [3]  19/7 39/17 42/23
United States of [1]  3/6
unjustifiable [1]  46/15
unless [5]  12/6 13/22 19/20 22/2 42/5
unrelated [1]  18/13
unrepresented [1]  41/22
unsolicited [1]  11/19
until [1]  17/21
up [12]  3/25 14/22 24/12 24/17 30/24 33/12 43/1 49/10 50/13 50/14 50/24 55/16
upon [2]  49/14 54/13
us [8]  10/11 17/23 17/25 27/17 27/18

**V**

usdoj.gov [1]  1/17 1/18
usually [2]  26/15 26/16

**V**

valid [1]  54/20
variety [2]  22/19 49/23
various [2]  12/1
Vaughn [1]  1/13 3/8
verizon.net [1]  2/5
versus [2]  3/7 5/7 13/20 15/13
very [8]  21/22 31/23 33/16 50/17 52/14 55/15 55/21 56/14
view [11]  15/14 15/23 19/1 19/13 20/5 38/8 44/3 50/19 53/23 54/1 54/4
views [1]  32/6
vindictive [1]  17/3
violated [3]  52/3 52/7 56/6
violations [3]  51/23 52/1 55/11
Virginia [1]  2/8
vocal [4]  44/6 44/9 44/13 47/24 48/2 48/5
voices [1]  31/21
voluntarily [3]  5/1 5/17 10/11
vs [1]  1/5

**W**

waiting [1]  6/2
waived [2]  11/20 56/10
walks [1]  38/5
want [10]  27/19 32/4 32/5 32/6 33/11 35/11 39/24 45/1 45/4 48/22
wanted [4]  10/17 30/4 30/9 48/21
wants [1]  33/16
was [90]
Washington [6]  1/5 1/16 2/4 2/15 2/21 44/11
wasn't [3]  38/13 36/13 39/8
WATER [1]  2/2
way [6]  20/11 27/16 28/20 39/3 39/16 46/5
we [57]  4/19 5/5 9/22 10/1 10/2 10/6 10/12 11/16 11/16 12/23 13/11 14/24 15/2 15/4 16/5 17/21 18/17 19/19 19/23 22/2 22/18 22/23 23/13 24/19 25/19 26/11 26/23 27/9 27/17 27/19 29/1 29/3 29/4 31/24 31/24 32/3 33/1 33/2 33/25 33/25 34/6 35/10 39/3 39/12 41/2 47/7 47/8 51/22 52/14 55/16 56/25

**We Believe [2]**  32/5
we would [2]  4/19 25/19
we'd [1]  53/12
we'll [1]  29/8
we're [3]  3/17 18/3 18/6 23/19 27/19 33/24 38/4 38/6 40/23 43/5 51/15 51/25 55/10 55/24 55/25
we've [7]  21/19 28/24 33/25 35/15 37/24 38/4 56/11
week [2]  11/16 17/22
weeks [2]  16/7 18/12
welcome [1]  3/15
well [37]  5/20 9/17 9/22 11/13 11/16 13/22 13/12 14/16 16/2 16/12 18/6 18/7 18/22 18/24 20/8 21/22 23/17 24/5 24/24 25/1 25/3 25/13 25/21 28/12 28/15 31/6 31/24 32/15 34/15 36/20 39/1 39/12 45/9 47/20 48/23 51/4 53/8
went [2]  6/19
were [45]  4/24 5/3 6/7 6/7 7/5 7/13 7/14 7/17 7/22 9/1 9/3 10/9 10/11 10/17 11/25 16/9 20/1 20/12 20/13 20/14 23/15 27/5 27/19 28/16 29/22 31/3 31/21 31/22 31/23 37/14 40/24 41/9 42/23 44/6 44/9 44/21 47/4 49/6 51/7 51/9 51/11 51/23 52/1 52/3 53/24
what [52]  4/4 4/16 7/19 13/19 13/24 14/21 15/17 15/21 16/19 16/19 17/11 17/21 18/8 19/3 20/6 20/24 21/6 22/8 23/16 23/22 24/8 24/24 24/24 25/1 25/4 25/22 26/11 26/15 27/5 27/18 27/22 29/7 29/24 31/3 35/22 38/1 40/22 42/20 43/6 43/24 47/25 50/3 51/13 51/15 51/17 51/7 51/8 51/9 52/22
what's [4]  2/7 21 15/25 40/19
whatever [1]  19/3
whatsoever [1]  8/7
when [16]  4/19 25/10 26/19 28/1 30/25 33/20 40/20 49/23 49/24 50/10 50/11 51/7 51/7 51/8 51/9 52/22
where [3]  32/4 51/11 55/10
whether [24]  7/17 7/22 14/3 16/14 17/16 19/5 21/8 21/24 22/25 23/9 23/19 23/24 26/3

38/2 32/18 33/21 38/7 40/21 40/23 41/23 45/25 49/2 52/21
which [27]  6/17 9/1 10/2 10/11 10/11 13/21 15/13 16/22 16/25 17/7 18/23 20/19 20/24 23/23 25/4 28/22 30/1 30/18 34/7 36/21 36/21 44/1 46/5 46/11 54/3 54/12 56/11
while [2]  18/6 39/8
white [39]  4/6 6/4 6/6 6/10 6/16 6/19 6/21 6/21 7/2 7/7 7/12 7/18 7/23 7/24 8/2 8/6 8/10 8/14 9/3 9/5 9/19 9/21 9/25 10/14 10/21 11/13 11/18 12/17 13/6 16/7 20/15 20/25 21/11 21/13 21/25 26/24 28/6 28/22 30/3 50/23
White House [33]  4/6 6/4 6/6 6/10 6/18 6/19 6/21 7/2 7/7 7/12 7/18 7/24 8/2 8/6 8/10 9/3 9/5 9/19 9/21 9/25 10/14 10/21 11/13 11/18 12/17 13/6 16/7 20/25 21/11 21/13 21/25 26/24 28/22 30/3
white-collar [1]  50/23
who [5]  11/19 29/20 31/25 32/1 38/17
whole [3]  26/17 49/7 51/24
wholly [3]  18/18 56/5 56/16
whom [1]  9/7 11/12 28/15
why [17]  10/24 20/5 23/22 25/5 25/9 25/19 27/3 28/23 32/24 38/8 39/8 43/3 45/25 52/11 53/15 54/5 56/9
wide [3]  27/2 29/2 49/23
wilfulness [2]  52/10 54/16
will [3]  22/12 29/2 51/17
willfully [1]  54/15
William [3]  2/18 63/2 63/8
willing [1]  29/3
wish [1]  14/21
withheld [2]  28/14 53/20
withhold [1]  6/22
within [3]  9/3 16/6 49/13
without [2]  13/6 33/3
witness [2]  8/8 54/11
WOODWARD [9]  2/11 2/14 2/14 3/11 14/25 24/12 24/15 39/4 39/4
word [1]  23/11
words [2]  17/8 49/17

**work [3]**  10/25 30/5
41/9
**would [24]**  4/19 5/6
7/13 7/22 15/21 20/11
24/16 24/19 24/24
25/19 27/3 27/13 28/22
30/5 34/4 36/25 38/22
46/14 50/18 51/19 55/8
55/14 55/22 56/24
**wouldn't [1]**  49/12
**writing [1]**  56/21
**written [3]**  26/5 32/16
46/25
**wrong [1]**  33/24
**wrote [1]**  44/10

**Y**

**Yeah [3]**  33/7 37/5 40/1
**year [1]**  22/18
**years [9]**  12/18 13/10
14/5 16/3 19/4 19/11
20/7 41/22 53/23
**yes [15]**  4/10 7/4 14/20
15/24 18/11 27/25
28/20 30/7 38/25 39/6
39/10 40/8 40/14 47/11
50/11
**yesterday [3]**  27/1
31/24 32/3
**yet [3]**  13/11 35/10
50/21
**you [126]**
**you know [1]**  39/18
**you'd [5]**  18/7 26/7
42/10 51/2 55/6
**you'll [1]**  26/2
**you're [13]**  6/2 13/23
16/24 26/16 29/24
32/13 34/10 34/13
36/24 39/7 39/8 43/6
51/20
**you've [16]**  8/14 17/8
17/9 21/18 24/3 26/3
27/23 32/16 32/21
35/14 37/13 45/6 45/21
46/24 50/5 53/13
**your [87]**
**your Honor [66]**

**Z**

**Zaremba [3]**  2/18 63/2
63/8