## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | **Case No: 22-cr-200 (APM)** |
| **v.** | **:** | |
| | **:** | |
| **PETER K. NAVARRO,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## JOINT PROPOSED JURY INSTRUCTIONS

The United States and Defendant agree to the majority of the jury instructions ("Instructions") from the Criminal Jury Instructions for the District of Columbia ("Redbook"). The agreed-upon Instructions are listed below. The Defendant proposes modifications to three of those instructions: 2.102 (Function of Jury), 2.207 (Law Enforcement Officer's testimony), and 2.209 (Defendant as Witness). The proposed modifications are set forth in bold following each of those Instructions in the list below. The government's response to those modifications are set forth immediately following the Defendant's proposed modifications. The Defendant also proposes including Redbook Instruction 2.215 (Specialized Opinion Testimony). The government has received no notice of expert testimony and therefore objects to that Instruction.

The parties were not able to reach agreement on any of the substantive instructions not found in the Redbook. These disputed instructions are included in their entirety on the subsequent pages and are identified by the party proposing the instruction. The government's objections to the Defendant's proposed instructions follow the Defendant's collection of proposed instructions.

The parties understand that certain instructions may change, subject to issues that arise during trial or additional pretrial motions and orders.

1

## Redbook Instructions

- Instruction No. 1.102 (Preliminary Instruction Before Trial)

- Instruction No. 1.105 (Notetaking by Jurors)

- Instruction No. 1.107 (Preliminary Instruction to Jury Where Identity of Alternates Is Not Disclosed)

- Instruction No. 1.108 (A Juror's Recognition of a Witness or Other Party Connected To The Case)

- Instruction No. 1.202 (Cautionary Instruction on the Use of the Internet and Publicity)

- Instruction No. 2.100 (Furnishing the Jury with a Copy of the Instructions)

- Instruction No. 2.101 (Function of the Court)

- Instruction No. 2.102 (Function of the Jury) **[Dr. Navarro proposes that the instruction be modified to: "All people deserve fair treatment in our system of justice regardless of any personal characteristic, such as race, national or ethnic origin, religion, age, disability, sex, gender identity or expression, sexual orientation, education, income level, or political leanings. . . ."**

  - o <u>Government Response</u>:  The proposed modification adds the phrase "or political leanings" to the end of this sentence.  The government does not object to this modification.

- Instruction No. 2.103 (Jury's Recollection Controls)

- Instruction No. 2.104 (Evidence in the Case – Judicial Notice, Stipulations) (*if applicable*)

- Instruction No. 2.105 (Statements of Counsel)

- Instruction No. 2.106 (Indictment Not Evidence)

- Instruction No. 2.107 (Burden of Proof – Presumption of Innocence)

- Instruction No. 2.108 (Reasonable Doubt – Instruction for U.S. District Court)

- Instruction No. 2.109 (Direct and Circumstantial Evidence)

- Instruction No. 2.110 (Nature of Charges Not to be Considered)

- Instruction No. 2.111 (Number of Witnesses)

- Instruction No. 2.112 (Inadmissible and Stricken Evidence) (*if applicable*)

- Instruction No. 2.200 (Credibility of Witnesses)

- Instruction No. 2.207 (Law Enforcement Officer's Testimony) (*if applicable*) **[Dr. Navarro proposes modifying this instruction as follows: "A law enforcement officer's testimony should be evaluated by you just as any other evidence in the case. In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because he or she is a law enforcement officer."]**

  o <u>Government's Response</u>:  The modification substitutes "law enforcement officer" for "police officer" in the instruction.  The government has no objection.

- Instruction No. 2.208 (Right of Defendant Not To Testify) (*if applicable*)

- Instruction No. 2.209 (Defendant as Witness) (*if applicable*) **[Dr. Navarro proposes the following in lieu of Instruction 2.209, and in the event he chooses to testify: "In a criminal case, the defendant cannot be required to testify, but, if he chooses to testify, he is, of course, permitted to take the witness stand on his own behalf. In this case, the defendant decided to testify. You should examine and evaluate his testimony just as you would the testimony of any witness with an interest in the outcome of this case."]**

  o <u>Government's Response</u>:  The government objects to the Defendant's proposed substitution of this language for the Redbook instruction regarding the Defendant as Witness.  The Redbook instruction provides a clear and accurate description of the law that will assist the jury.

- **Instruction No. 2.215 (Specialized Opinion Testimony)**

  o Government's Response:  The Defendant has not provided notice of any expert witness as required by the Court's pretrial order and Fed. R. Crim. P. 16(b)(1)(C), and the government therefore objects to this instruction.

- Instruction No. 2.216 (Evaluation of Prior Inconsistent Statement of Witness) (*if applicable)*

- Instruction No. 2.217 (Evaluation of Prior Consistent Statement of Witness) (*if applicable*)

- Instruction No. 2.307 (Motive)

- Instruction No. 2.402 (Multiple Counts, One Defendant)

- Instruction No. 2.405 (Unanimity – General)

- Instruction No. 2.407 (Verdict Form Explanation)

- Instruction No. 2.500 (Redacted Documents) (*if applicable*)

- Instruction No. 2.501 (Exhibits During Deliberations)

- Instruction No. 2.502 (Selection of Foreperson)

- Instruction No. 2.508 (Cautionary Instruction on Publicity, Communication, and Research)

- Instruction No. 2.509 (Communication Between Court and Jury During Jury's Deliberations)

- Instruction No. 2.511 (Excusing Alternate Jurors)

- Instruction No. 3.101 (Proof of State of Mind)

## <u>DISPUTED INSTRUCTIONS</u>

**GOVERNMENT'S PROPOSED INSTRUCTION**

- Contempt of Congress – Elements of the Offense

## <u>GOVERNMENT PROPOSED INSTRUCTION:</u><br><u>CONTEMPT OF CONGRESS – ELEMENTS OF THE OFFENSE</u>

Counts One and Two of the Indictment charge the Defendant with the crime of contempt of Congress for willfully not providing testimony and information to the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol, which I'll refer to as the Select Committee. Count One charges the Defendant with a willful failure to produce records on February 23, 2022. Count Two charges the Defendant with a willful failure to provide testimony on March 2, 2022.

To find the Defendant guilty of contempt of Congress, you must find that the Government proved each of the following elements beyond a reasonable doubt:[1]

> *First*, that the Defendant was subpoenaed by the Select Committee to provide testimony or produce papers;
>
> *Second*, that the subpoena sought testimony or information pertinent to the investigation that the Select Committee was authorized to conduct[2];

---

[1] *See United States v. Bannon,* D.D.C. Case No. 1:21-cr-670, ECF No. 129, at 27-28, (Final Jury Instructions).

[2] *See Gojack v. United States*, 384 U.S. 702, 716 (1966) ("It can hardly be disputed that a specific, properly authorized subject of inquiry is an essential element of the offense under § 192."); *United States v. McSurely*, 473 F.2d 1178, 1203 (D.C. Cir. 1972) (describing "one of the necessary elements of [the Government's] case" as the "pertinency of its demands to the valid subject of the legislative inquiry"); *United States v. Seeger*, 303 F.2d 478, 482 (2d Cir. 1962) (requiring that the committee was "duly empowered to conduct the investigation, and that the inquiry was within the scope of the grant of authority" (citing *United States v. Rumely*, 345 U.S. 41, 42-43 (1953); *United States v. Lamont*, 236 F.2d 312, 315 (2d Cir. 1956); *United States v. Orman*, 207 F.2d 148, 153 (3d Cir. 1953))).

*Third*, that the Defendant failed to comply or refused to comply with the subpoena[3]; and

*Fourth*, that the Defendant's failure or refusal to comply was willful.

With respect to the second element, for the testimony or information sought by the subpoena to be "pertinent," the Government must prove that, at the time the Select Committee issued the subpoena, the testimony or information sought could have related to the Select Committee's investigation in some way.[4]

With respect to the fourth element, the word "willful" does not mean that the Defendant's failure or refusal to comply with the Select Committee's subpoena was for an evil or a bad purpose. The reason or purpose of the failure or refusal to comply is immaterial, so long as the failure or refusal was deliberate and intentional.  To be deliberate or intentional means that the failure to comply was not the result of inadvertence, accident, or mistake.[5]

---

[3] *See United States v. Bryan*, 339 U.S. 323, 327 (1950) ("'Default' is, of course, a failure to comply with the summons."); *Fields v. United States*, 164 F.2d 97, 100 (D.C. Cir. 1947) (affirming jury instruction on meaning of willful as it defined a "failure or refusal to comply").

[4] *See Watkins v. United States*, 354 U.S. 178, 214-15 (1957) (requiring, where witness objects on pertinency grounds, that congressional committee explain pertinence of a question by "describing what the topic under inquiry is and the connective reasoning whereby the precise questions asked relate to it"); *Rumley v. United States*, 197 F.2d 166, 267 (D.C. Cir. 1952), *aff'd*, 346 U.S. 41 (1953) (finding that "pertinent," as used in the statute, means "pertinent to a subject matter properly under inquiry, not generally pertinent to the person under interrogation"); *Orman*, 207 F.2d at 153-54 (affirming instruction to jury that it did not matter for pertinency whether the information the witness refused to provided actually would have been pertinent, and that all that was required was that it could have been pertinent at the time Congress sought the information).

[5] Adapted from *Fields*, 164 F.2d at 100 (affirming jury instruction on meaning of "willful" under the statute); *see also Quinn v. United States*, 349 U.S. 155, 165 (1955) (explaining that the "criminal intent" required under § 192 is "a deliberate, intentional refusal to answer"); *Bryan*, 339 U.S. at 330 ("[W]hen the Government introduced evidence in this case that respondent had been validly served with a lawful subpoena directing her to produce records within her custody and control, and that on the day set out in the subpoena she intentionally failed to comply, it made out a prima facie case of willful default.").

It is not a defense to contempt of Congress that the Defendant failed or refused to comply because of his understanding or belief of what the law required or allowed or because of his understanding or belief that he had a legal privilege, such as executive privilege, that excused him from complying.[6]

---

[6] *See Yellin v. United States*, 374 U.S. 109, 123 (1963) ("Of course, should Yellin have refused to answer in the mistaken but good-faith belief that his rights had been violated, his mistake of law would be no defense."); *Watkins*, 354 U.S. at 208 ("[T]he witness acts at his peril. he is '* * * bound rightly to construe the statute.' An erroneous determination on his part, even if made in the utmost good faith, does not exculpate him if the court should later rule that the questions were pertinent to the question under inquiry." (quoting *Sinclair v. United States*, 279 U.S. 263, 299 (1929))); *Sinclair*, 279 U.S. at 299 ("There is no merit in appellant's contention that he is entitled to a new trial because the court excluded evidence that in refusing to answer he acted in good faith on the advice of competent counsel. The gist of the offense is refusal to answer pertinent questions. No moral turpitude is involved. Intentional violation is sufficient to constitute guilt. There was no misapprehension as to what was called for. The refusal to answer was deliberate. . . . He was bound rightly to construe the statute. His mistaken view of the law is no defense."); *Licavoli v. United States*, 294 F.2d 207, 209 (D.C. Cir. 1961) ("Since, as we have remarked, it has been established since the *Sinclair* case that reliance upon advice of counsel is no defense to a charge of refusing to answer a question, such reliance is not a defense to a charge of failure to respond. The elements of intent are the same in both cases. All that is needed in either event is a deliberate intention to do the act. Advice of counsel does not immunize that simple intention."); *Bart v. United States*, 203 F.2d 45, 49-50 (D.C. Cir. 1952), *reversed on other grounds*, 349 U.S. 219 (1955) ("A witness does not insulate himself from contempt by asserting a reason for a refusal to answer, or by objecting to the question, or by querying its propriety."); *Fields*, 164 F.2d at 100 ("The apparent objective of the statute involved here would be largely defeated if, as appellant contends, a person could appear before a congressional investigating committee and by professing willingness to comply with its requests for information escape the penalty for subsequent default.").

## DEFENDANT'S PROPOSED INSTRUCTIONS

- Willfulness
- Default – Accommodation Requirement
- Authority of the House
- Entrapment by Estoppel
- Public Authority
- Apparent Authority
- Crimes Not Charged
- Elements of the Offense

## DEFENDANT'S PROPOSED INSTRUCTION: WILLFULNESS

The Government is required to prove beyond a reasonable doubt that Dr. Navarro "willfully made default" in response to the Select Committee's subpoena. In order to prove that he acted "willfully", the Government must prove beyond a reasonable doubt that Dr. Navarro acted on his own volition and knew or reasonably should have known that his conduct was unlawful.[1] In order to find Dr. Navarro guilty, the Government must prove beyond a reasonable doubt that he was conscious of wrongdoing.[2] It is up to you to determine whether Dr. Navarro acted "willfully".

In making that determination, you may consider whether Dr. Navarro acted as he did with respect to the subpoena because: (1) he was following former President Trump's instructions to

---

[1] *Ratzlaf v. United States*, 510 U.S. 135, 138 (1994); *United States v. Burden,* 934 F.3d 675, 692 (D.C. Cir. 2019; *United States v. Zeese*, 437 F. Supp. 3d 86, 94, (D.D.C. 2020); *United States v. Myers*, 2008 U.S. Dist. LEXIS 43981, *4, 2008 WL 2275457 (N.D. W. Va., June 3, 2008) (quoting *Licavoli* on "willfulness" and explaining that "willfulness" in the criminal contempt context means "a volitional act done by one who knows or reasonably should be aware that his conduct is wrongful.").

[2] *Elonis v. United States,* 575 U.S. 723 (2015), slip. Op. at 9 (rule of construction for criminal statute that did not specify mental state reflects the basic principle that "wrongdoing must be conscious to the criminal."), quoting *Morissette v. United States*, 342 U.S. 246, 250 (1952).

assert executive privilege on behalf of the President and by law, it was not his privilege to waive; (2) he acted consistent with the official statements by the U.S. Department of Justice's Office of Legal Counsel; and/or (3) because of any other evidence admitted during the trial.[3]

---

[3] "Furthermore, a person can be prosecuted under § 192 only for "willful" failure to produce documents in response to a congressional subpoena. *See United States v. Murdock*, 290 U.S. 389, 397-98 (1933); *Townsend v. United States*, 95 F.2d 352, 359 (D.C. Cir.), *cert. denied,* 303 U.S. 664 (1938). There is some doubt whether obeying the President's direct order to assert his constitutional claim of executive privilege would amount to "willful" violation of the statute. Moreover, reliance on explicit opinion of the Attorney General may negate the *mens rea* even in the case of a statute without a willfulness requirement." *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, Op. O.L.C. May 30, 1984). *See Model Penal Code* § 2.04(3)(b); *United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976) (Merhige, J., concurring).

## DEFENSE PROPOSED INSTRUCTION:
## <u>DEFAULT - ACCOMMODATION REQUIREMENT</u>

The Government has the burden to prove beyond a reasonable doubt each element of the offenses charged. One of the elements that the Government must prove beyond a reasonable doubt is that Dr. Navarro willfully made default after being served with the Select Committee's subpoena. In making that determination, you should consider whether the Select Committee satisfied its burden to contact former President Trump or his attorneys to attempt to resolve the invocation of executive privilege.

When a congressional committee issues a subpoena to a prospective witness and executive privilege is invoked, the committee has an obligation to work toward an accommodation with the witness before referring the matter for criminal prosecution.[4] If you conclude that Dr. Navarro invoked executive privilege as former President Trump instructed him to do, you should also consider whether the Committee fulfilled its obligation to try to reach accommodation with President Trump or his lawyers as the holder of the privilege.[5]

---

[4] *See Trump v. Mazars, LLP*, 591 U.S. __, 140 S. Ct. 2019 (2020) ("Congress and the Executive have nonetheless managed for over two centuries to resolve such disputes among themselves without the benefit of guidance from us. Such longstanding practice 'is a consideration of great weight' in cases concerning 'the allocation of power between [the] two elected branches of Government,' and it imposes on us a duty of care to ensure that we not needlessly disturb 'the compromises and working arrangements that ]those branches … themselves have reached.'" (internal quotations and citations omitted)). *See also United States v. American Telephone. and Telegraph Co.*, 567 F. 2d 121, 127 (D.C. Cir. 1977); and *Congressional Oversight of the White House*, 45 Op. O.L.C at 37-43.

[5] *Congressional Oversight of the White House*, 45 Op. O.L.C at 37-43 ("A congressional committee may not avoid its obligation to participate in this constitutionally mandated process by issuing or seeking to enforce a subpoena before the accommodation process has run its course.").

If you find that the Committee did not attempt to resolve the matter with former President Trump, you should find that the Government has not satisfied this element.

**DEFENSE PROPOSED INSTRUCTION:**
**<u>AUTHORITY OF U.S. HOUSE OF REPRESENTATIVES</u>**

The statute under which Dr. Navarro is charged, 2 U.S.C.§ 192, provides as follows:

> Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either a House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of [Contempt of Congress] ….

The Government has the burden to prove beyond a reasonable doubt each element of the offenses charged. One of the elements that the Government must prove beyond a reasonable doubt is that the subpoena served on Dr. Navarro was valid and lawfully authorized by the U.S. House of Representatives.

Dr. Navarro asserts that the Select Committee issued the subpoena without valid, lawful authority. This is because the Rules of the House of Representatives were not followed, and/or because the Committee did not adhere to the House Resolution establishing it and empowering it to act. It is up to you to determine whether the subpoena was lawfully authorized. In making that determination, you may consider the Rules established by the U.S. House of Representatives, the House Resolution establishing it and empowering it to act, and any evidence that bears upon whether the Rules and authorizing Resolution have been followed.[6]

---

[6] *Christoffel v. United States*, 338 U.S. 84, 88-90 (1949) (holding that the validity of a congressional subpoena turned on judicial determination of "what rules the House has established and whether they have been followed"); *United States v. Smith*, 286 U.S. 6, 33 (1932); *United States v. Ballin*, 144 U.S. 1 (1892); *Yellin v. United States*, 374 U.S. 109 (1963);

If you find that the Committee did not follow its own rules or if you find that it did not adhere to the House Resolution which established it, you should find that the Government has not satisfied this element.

---

*Shelton v. United States*, 327 F. 2d 601, 606 (D.C. Cir. 1963) (adherence to rules may be considered when determining the validity of the subpoena); *Watkins v. United States*, 354 U.S. 178 (1957); *Gojack v. United States*, 384 U.S. 702 (1966).

## DEFENSE PROPOSED INSTRUCTION: ENTRAPMENT BY ESTOPPEL

Dr. Navarro has raised the affirmative defense of entrapment by estoppel. The defense of entrapment by estoppel is based on the legal principle, under the due process clause of the United States Constitution, that a person cannot be convicted of a crime for action he took based on his reasonable reliance on a statement by an authorized government official or on official written statements by an authorized government agency that led him to believe his conduct would be lawful.[7]

"The defense of entrapment by estoppel does not depend solely on the absence of criminal intent. Nor is it limited to the circumstances of actual authorization. It focuses on the *conduct of the government* leading the defendant to believe reasonably that it was authorized (to take the action he took)."[8] "The doctrine depends on the unfairness of prosecuting one who has been led by the conduct of [official government statements] to believe his acts were authorized."[9]

---

[7] *Raley v. Ohio*, 360 U.S. 423, 438 (1959); *Cox v. Louisiana*, 379 U.S. 559, 571-72 (1965).

[8] *United States v. Barker*, 546 F.2d 940 (D.C. Cir. 1976) ) (reasonable reliance on an invalid search warrant). *See also United States v. Alvarado*, 808 F.3d 474, 485 (11th Cir. 2015) (The entrapment-by-estoppel defense differs from the public authority defense in that the latter requires that the government official who sanctions the illegal activity have actual authority to approve the defendant's criminal activity, whereas the entrapment-by-estoppel defense only requires that the official have apparent authority); *United States v. Abcasis*, 45 F.3d 39, 44 (2d Cir. 1995).

[9] *Abcasis, 45 F.3d at 44, citing United States v. Brebner*, 951 F.2d 1017, 1025 (9th Cir. 1991); *United States v. Smith*, 940 F.2d 710, 714 (1st Cir. 1991). *See also United States v. Burrows*, 36 F.3d 875, 882 (9th Cir. 1994) ("The difference between the entrapment by estoppel defense and the public authority defense is not great.  In the first, a government official commits an error and the defendant relies on it and thereby violates the law. . . .  In the second, a government official makes some statement or performs some act and the defendant relies on it, possibly mistakenly, and commits an offense in so doing.")

Dr. Navarro asserts that he responded to the Committee's subpoena as he did by relying on official statements by the United States Department of Justice, in the form of Office of Legal Counsel, or OLC Opinions, and other official Department of Justice writings regarding the duties, rights, and obligations that apply when executive privilege has been invoked with respect to the subpoena.

I instruct you that upon receipt of the subpoena and the invocation of executive privilege by the former President of the United States, Dr. Navarro was entitled to consider that the Department of Justice's OLC has concluded for many years that a senior advisor to a current or former President cannot be compelled to testify before a congressional committee.[10]

To find Dr. Navarro not guilty based on his defense of entrapment by estoppel, you must find that:

(1) Dr. Navarro reasonably believed that former President Trump invoked executive privilege regarding the Committee's subpoena;

(2) the Department of Justice's long-held position that gave rise to Dr. Navarro's reasonable belief that he was did not required to comply with the subpoena;

(3) Dr. Navarro's reliance on the Department of Justice's position was reasonable.[11]

---

[10] *United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655, 673-75 (1973) ("Thus, to the extent that the regulations deprived [the defendant] of fair warning as to what conduct the Government intended to make criminal, we think there can be no doubt that traditional notions of fairness inherent in our system of criminal justice prevent the Government from proceeding with the prosecution. See Newman, Should Official Advice Be Reliable?—Proposals as to Estoppel and Related Doctrines in Administrative Law, 53 Col.L.Rev. 374 (1953); Note, Applying Estoppel Principles in Criminal Cases, 78 Yale L.J. 1046 (1969)."

[11] *United States v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992), *citing United States v. Smith*, 940 F.2d 710 (1st Cir. 1990). *See also, United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976) (Merhige, J.) (defense simply requires reasonable reliance on the conclusion of the statement of law issued by an official charged with the interpretation, administration, and/or

I instruct you that the defense of entrapment by estoppel applies even if the official Government statements that Dr. Navarro reasonably relied on were incorrect or misstated the law.[12]

If you find that Dr. Navarro has satisfied these elements by a preponderance of the evidence, then prosecuting him would be unfair and violate the constitutional right to due process of law, and you must find him not guilty.[13]

A defendant must prove his affirmative defense by a preponderance of the evidence. A preponderance of the evidence means that you must be persuaded that the things the defendant seeks to prove are more probably true than not true. This is a lesser burden of proof than the Government's burden to prove beyond a reasonable doubt each element of the crimes charged.[14]

If you find that that Dr. Navarro relied on the Department of Justice's long-established

---

enforcement responsibilities in the relevant legal field). Judge Merhige also relied on Section 2.04 (3)(b) of the Model Penal Code which provides that:

> A belief that conduct is not legally constitute an offense is a defense to a prosecution for that offense based upon such conduct when … (b) he acts in reasonable reliance upon an official statement of the law, after were determined to be invalid or erroneous, contained in (i) a statute or other enactment; (ii) a judicial decision; (iii) an administrative order or grant of permission; of (iv) an official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration or enforcement of the law defining the offense.

[12] *See also, United States v. Jenkins*, 701 F.2d 850, 857-59 (10th Cir. ___); *United States v. North*, 910 F.2d 843, 881, n. 10, *modified on other grounds*, 920 F.2d 940 (D.C. Cir. 1990).

[13] *United States v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992); *United States v. Smith*, 940 F.2d 710 (1st Cir. 1990), cited with approval in *United States v. Abcasis*, , 45 F.3d 39, 43 (2d Cir. 1995).

[14] *United States v. Batterjee*, 361 F.3d 1210 (9th Cir. 2004); *United States v. Burrows,* 36 F. 3d 875, 881-82 (9th Cir. 1994).

position that he was not subject to compelled congressional process, and that his reliance was

reasonable, then you must find him not guilty.[15]

---

[15] *See United States v. Smith*, 940 F.2d 710 (1st Cir. 1991) (entrapment by estoppel applies regardless of the intent nature of the crime charged for the defendant's mental state regarding intent; it rests, instead, on principles of fairness); *United States v. Hedges*, 912 F.2d 1397 (11th Cir. 1990); *United States v. Clegg*, 846 F.2d 1221 (9th Cir. 1988); *United States v. Talmadge,* 829 F.2d 767 (9th Cir. 1987). Adapted from requested jury instruction in *United States v. Abcasis,* 35 F. 3d 39 (2d Cir. 1995) (convictions reversed for failure to give defense requested jury instruction on entrapment by estoppel).

### DEFENSE PROPOSED INSTRUCTION: PUBLIC AUTHORITY

Dr. Navarro asserts that he acted in reliance on public authority. This is an affirmative defense that is similar to entrapment by estoppel, but in the defense of public authority, a government official makes some statement or performs some act and the defendant relies on it, possibly mistakenly, and commits an offense in so doing.[16] Specifically, Dr. Navarro contends that his actions with respect to the subpoena in this case were in reliance on the former President of the United States' invocation of executive privilege and on official writings of the United States Department of Justice's Office of Legal Counsel on the impact of the invocation of privilege on the rights, duties, and obligations of the recipient of the subpoena concerning which executive privilege has been invoked.

A defendant who commits an offense in reliance on public authority does not act willfully and should not be found guilty.[17]

To be found not guilty based on reliance of public authority, Dr. Navarro must prove that each of the following things or more likely true than not true:

(1) That former President Trump requested, directed or authorized Dr. Navarro to engage in the conduct charged against him;

---

[16] *United States v. Burrows*, 36 F.3d 875, 882 (9th Cir. 1994)

[17] "Furthermore, a person can be prosecuted under § 192 only for "willful" failure to produce documents in response to a congressional subpoena." *See United States v. Murdock*, 290 U.S. 389, 397-98 (1933); *Townsend v. United States*, 95 F. 2d 352, 359 (D.C. Cir.), *cert denied,* 303 U.S. 664 (1938). There is some doubt whether obeying the President's direct order to assert his constitutional claim of executive privilege would amount to "willful" violation of the statute. Moreover, reliance on an explicit opinion of the Attorney General may negate the required mens rea even in the case of a statute without a willfulness requirement. See Model Penal Code § 2.04 (3)(b); *United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976) (Merhige, J., concurring). *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted Claim of Executive Privilege*, at 135 (May 30, 1984).

(2) That former President Trump had the actual or apparent authority[18] to grant authorization for Dr. Navarro to engage in this conduct; on this point I instruct you that a former President of the United States has the authority to invoke executive privilege concerning his communications with others and that once he invokes executive privilege, it is presumptively valid;[19] and

(3) In engaging in this conduct, Dr. Navarro reasonably relied on the former President's authorization.

---

[18] The Government has argued that the Eleventh Circuit's opinion in *United States v. Alvarado*, 808 F.3d 474, 486 (11th Cir. 2015), sets forth the elements of the public authority defense, including that "the official must have actually had the authority to permit him to engage in the criminal conduct in question." That is inconsistent with this Circuit's decision in *United States v. Barker*, 546 F.2d 940, 947-48 954-57 (D.C. Cir. 1976).   At a minimum, we are aware of no authority in this circuit requiring that a government official reasonably relied upon had actual, as opposed to apparent, authority.

[19] *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977); *United States v. Nixon*, 418 U.S. 683, 708 (1974); *Senate Select Committee on Presidential Campaign Activities v. Nixon,* 498 F. 2d 725, 731 (D.C. Cir. 1974); *Olson OLC* opinion of May 30, 1984, at 136: "In order to overcome the presumptively privileged nature of the documents, a congressional committee must show that 'the subpoenaed evidence is demonstrably critical to the reasonable fulfillment of the Committee's functions.'" "Thus, the President's assertion of privilege is far different from a private person's individual assertion of privilege; it is entitled to special deference due to the critical connection between the privilege and the President's ability to carry out his constitutional duties."

## **DEFENSE PROPOSED INSTRUCTION: APPARENT AUTHORITY**

Dr. Navarro has asserted the defense of apparent authority, among other defenses to the charges against him. The defense of apparent authority requires a reasonable belief, whether that belief is correct or mistaken, that the source of the information relied upon had the authority to license the conduct at issue and did so.[20]

I instruct you that if you find that Dr. Navarro reasonably believed that he was authorized to respond to the subpoena as he did based on former President Donald J Trump's invocation of executive privilege, and that the former President had the authority to instruct him to respond as he did, you must find him not guilty even if his belief in the former President's authority was mistaken.

Similarly, I instruct you that if you find that Dr. Navarro reasonably believed that he was authorized to respond to the subpoena as he did, based on the Department of Justice's long-established position and authoritative writings, then you must find him not guilty even if his belief in the authority of the sources was mistaken.

---

[20] *United States v. Barker*, 546 F.2d 940, 947-48 954-57 (D.C. Cir. 1976); Model Penal Code § 2.04(3)(b).

## DEFENSE PROPOSED INSTRUCTION: CONSIDER ONLY CRIME CHARGED

You are here to determine whether the Government has met its burden to prove beyond a reasonable doubt that Dr. Navarro is guilty of the crimes charged. He is not on trial for any act, conduct, or crime that is not charged in the indictment.[21]

---

[21] See Fed. R. Evid. 4040(b) (permitting admission of other crimes evidence only for specific, limited purposes); *Huddleson v. United States*, 485 U.S. 681, 691 (1988) (discussing protections that should be employed to protect against unfair prejudice should such other crimes evidence be admitted).

**DEFENSE PROPOSED INSTRUCTION: ELEMENTS OF THE OFFENSE**

Dr. Navarro is charged with violating 2 U.S.C. § 192. That statute reads, in pertinent part, as follows:

> Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either a House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of [Contempt of Congress] ….

The Government has the burden to prove beyond a reasonable doubt each element of the offenses charged.

These elements are the following:

*First,* that the U.S. House of Representatives had the constitutional power to investigate the matter at issue or to make the particular inquiry;[22]

*Second,* that the Select Committee was duly empowered to conduct the investigation, and that the inquiry was within the scope of the grant of authority granted by the U.S. House of Representatives;[23]

---

[22] *Watkins v. United States*, 354 U.S. 178, 187 (1957); *Sinclair v. United States*, 279 U.S. 263, 292 (1929); *McGrain v. Daugherty*, 273 U.S. 135, 173-74 (1927); *Kilbourne v. Thompson*, 103 U.S. 168, 196 (1880).

[23] *Gojack v. United States*, 384 U.S. 702, 708 (1966) (holding that specific, properly authorize subject of inquiry is essential element of the offense under statute making it a misdemeanor to refuse to answer questions one summoned before congressional committee); *United States v. Rumley*, 345 U.S. 41, 42-43 (1953); *United States v. Lamont*, 236 F. 2d 312, 315 (2d Cir. 1956), aff'g 18 F.R.D. 27, 33 (S.D.N.Y. 1955); *United States v. Orman*, 207 F.2d 148, 153 (3d Cir. 1953); *United States v. Kamin*, 136 F. Supp 791, 793 (D. Mass. 1956).

*Third,* that the information sought from Dr. Navarro by the Select Committee was

pertinent to the authorized inquiry;[24]

*Fourth,* that the subpoena seeking documents and testimony was valid and issued

pursuant to the lawful authority of the Select Committee and the authority of the U.S. House of

Representatives;[25] and

*Fifth,* that Dr. Navarro's actions in response to the subpoena constituted a willful default.

The term "willful default" as used in these instructions means that Dr. Navarro knew or

reasonably should have known that his conduct was unlawful, that he was conscious of

wrongdoing, and that his actions were deliberate and intentional, and not the result of the

accident, mistake, or misunderstanding, or the assertion of a valid privilege.[26]

---

[24] *Barenblatt v. United States*, 360 U.S. 109, 123 (1959); Sacher v. United States, 356 U.S. 576, 577 (1958).

[25] *Gojack v. United States*, 384 U.S. 702, 716 (1966) ("[t]he legislative history of § 192 makes plain that a clear chain of authority from the House to the questioning body is an essential element of the offense"); *see also Yellen v. United States*, 374 U.S. 109 (1963) (holding that failure of House Committee on Un-American Activities to comply with its rule on executive sessions excuse the witness's refusal to answer questions, and witness was entitled to prove such defense when he discovered at his contempt trial that his rights under the executive session rule had been violated); *see generally Christoffel v. United States*, 338 U.S. 84, 85-90 (1949) (perjury conviction reversed where committee did not follow the rules regarding quorum).

[26] *Quinn v. United States*, 349 U.S. 155, 165 (1955); *United States v. House of Representatives of United States,* 556 F. Supp 150, 152 (D.D.C. 1983) (holding that the statutory provisions concerning penalties for contempt of Congress, 2 U.S.C. § 192 and 194, constitute "an orderly and often approved means of vindicating constitutional claims arising from a legislative investigation.") (citing *Sanders v. McClellan*, 463 F.2d 894, 899 (D.D.C. 1972). Under these provisions, constitutional claims and other objections to congressional investigatory procedures may be raised as defenses in a criminal prosecution. *See Barenblatt v. United States*, 360 U.S. 109 (1959); *Ansara v. Eastland*, 442 F. 2d 751 (D. D. C. 1971); *Tobin v. United States*, 306 F. 2d 270, 276 (D. D. C. 1962); *see also United States v. Seeger*, 303 F. 2d 478, 481-82 (2d Cir. 1962); *Licavoli v. United States*, 294 F. 2d 207, 208 (D. D. C. 1961); *see also Ratzlaf v. United States*, 510 U.S. 135, 138 (1994); *United States v. Burden*, 934 F. 3d 675, 692 (D. C. Circ. 2019); *United States v. Zeese*, 437 F. Supp. 3d 86, 94 (D. D. C. 2020); *United States v. Myers*, 2008 U.S. Dist. LEXIS 43981, *4, 2008 WL 2275457 (N.D. W. Va., June 3, 2008) (quoting *Licavoli*

on "willfulness" and explaining that "willfulness" in the criminal contempt context means " a volitional act done by one who knows or reasonably should be aware that his conduct is wrongful.") "Furthermore, a person can be prosecuted under § 192 only for "willful" failure to produce documents in response to a congressional subpoena. *See United States v. Murdock*, 290 U.S. 389, 397-98 (1933); *Townsend v. United States*, 95 F.2d 352, 359 (D.C. Cir.), *cert. denied,* 303 U.S. 664 (1938). There is some doubt whether obeying the President's direct order to assert his constitutional claim of executive privilege would amount to "willful" violation of the statute. Moreover, reliance on explicit opinion of the Attorney General may negate the mens rea even in the case of a statute without a willfulness requirement." *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, __Op. __, O.L.C. (May 30, 1984). *See Model Penal Code* § 2.04(3)(b); *United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976) (Merhige, J., concurring).

## GOVERNMENT'S OBJECTIONS
## TO DEFENDANT'S PROPOSED INSTRUCTIONS

▪ Willfulness

The government objects to the Defendant's proposed instruction regarding the definition of "willfulness."  As set forth in detail in the Government's Opposition to the Defendant's Motion to Dismiss (ECF No. 44) and the Government's Omnibus Motion in Limine (ECF No. 58), binding precedent makes clear that, in the context of contempt of Congress (2 U.S.C. 192), willfulness does not require a bad or unlawful purpose or consciousness of wrongdoing.  All that is required is that the default was deliberate and not the result of accident or mistake.  *See Fields*, 164 F.2d at 100 (affirming jury instruction on meaning of "willful" under the statute); *see also Quinn v. United States*, 349 U.S. 155, 165 (1955) (explaining that the "criminal intent" required under § 192 is "a deliberate, intentional refusal to answer"); *Bryan*, 339 U.S. at 330 ("[W]hen the Government introduced evidence in this case that respondent had been validly served with a lawful subpoena directing her to produce records within her custody and control, and that on the day set out in the subpoena she intentionally failed to comply, it made out a prima facie case of willful default."); *Licavoli v. United States*, 294 F.2d 207, 209 (D.C. Cir. 1961) ("Since, as we have remarked, it has been established since the *Sinclair* case that reliance upon advice of counsel is no defense to a charge of refusing to answer a question, such reliance is not a defense to a charge of failure to respond. The elements of intent are the same in both cases. All that is needed in either event is a deliberate intention to do the act. Advice of counsel does not immunize that simple intention."); *United States v. Bannon,* D.D.C. Case No. 1:21-cr-670, ECF No. 129, at 27-28, (Final Jury Instructions).

- <u>Default – Accommodation Requirement</u>

The government objects to the Defendant's proposed instruction, which would require that the jury consider, among other things, the following: "In making that determination, you should consider whether the Select Committee satisfied its burden to contact former President Trump or his attorneys to attempt to resolve the invocation of executive privilege."   There is nothing in the law regarding the offense of contempt of Congress that would require the government to prove that a congressional committee made efforts to contact a third-party and attempt to resolve any issues regarding a purported invocation of privilege.  Issues involving the purported assertion of executive privilege are matters for the Court to resolve in the context of the Defendant's Rule 12 motion to dismiss.  This is not an element of the offense that must be proven to, or resolved by, the jury.

- <u>Authority of the House</u>

The government objects to the Defendant's proposed instruction requiring that the jury evaluate whether the Select Committee followed its rules and complied with the requirements of House Resolution 503 establishing the Select Committee.   As outlined in the Government's Opposition to the Defendant's Motion to Dismiss (ECF No. 44) at 14-19, and the Government's Omnibus Motion in Limine (ECF No. 58) at 8-10, the Defendant has waived the objections he has identified regarding the composition of the Select Committee and the status of the ranking minority member.   Moreover, the Court must defer to the determination of the House itself, which has concluded that the Committee was authorized to act as constituted.  *See Brief of the U.S. House of Representatives as Amicus Curiae* (ECF No 49); *Republican National Committee v. Pelosi, 2022 WL 1294509 (D.C. 2022)*.

26

- Entrapment by Estoppel
- Public Authority
- Apparent Authority

The government objects to the Defendant's proposed instructions regarding Entrapment by Estoppel, Public Authority, and Apparent Authority.  As set forth in the Government's Omnibus Motion in Limine (ECF No. 58) at 5-8, and the Government's Response to Defendant's Notice Under Federal Rule of Criminal Procedure 12.3 (ECF No. 47) at 1-3, the Defendant is not entitled to any such instructions because no government official authorized the defendant's default on the subpoena.

The Defendant also misstates the law; there is no apparent public authority defense.  *See United States v. North*, 910 F.2d 843, 878-81 & n.10 (D.C. Cir. 1990) (per curiam), *opinion withdrawn and superseded in part on other grounds*, 920 F.2d 940 (D.C. Cir. 1990).   An instruction on a defense that does not exist under the law is not appropriate.  *Cf. United States v. Tarantino*, 846 F.2d 1384, 1403-04 (D.C. Cir. 1988) (finding defendant was not entitled to an instruction on the law that was not legally relevant to the charged offense).  Even if an apparent authority defense did exist, it is a species of a public authority defense that relies on apparent instead of actual authority and requires therefore that it be a government official's apparent authority on which a defendant acts, not a private individual.

Any issues regarding whether the Defendant was excused from complying with the subpoena due to executive privilege should be resolved by the Court in the context of the Defendant's Rule 12 motion to dismiss.  Those issues are not matters to be decided by the jury, and the Defendant may not circumvent any legal rulings by the Court under Rule 12 by attempting to litigate those legal issues before the jury.  Moreover, the defendant's mistaken belief that he was authorized to defy the subpoena is not a defense to the charges because a mistake of law is not a

defense to contempt of Congress.  *See Yellin v. United States*, 374 U.S. 109, 123 (1963) ("Of course, should Yellin have refused to answer in the mistaken but good-faith belief that his rights had been violated, his mistake of law would be no defense."); *Watkins*, 354 U.S. at 208 ("[T]he witness acts at his peril. he is '* * * bound rightly to construe the statute.'  An erroneous determination on his part, even if made in the utmost good faith, does not exculpate him if the court should later rule that the questions were pertinent to the question under inquiry." (quoting *Sinclair v. United States*, 279 U.S. 263, 299 (1929))); *Sinclair*, 279 U.S. at 299 ("There is no merit in appellant's contention that he is entitled to a new trial because the court excluded evidence that in refusing to answer he acted in good faith on the advice of competent counsel.  The gist of the offense is refusal to answer pertinent questions. No moral turpitude is involved. Intentional violation is sufficient to constitute guilt. There was no misapprehension as to what was called for. The refusal to answer was deliberate. . . . He was bound rightly to construe the statute. His mistaken view of the law is no defense."); *Licavoli v. United States*, 294 F.2d 207, 209 (D.C. Cir. 1961) ("Since, as we have remarked, it has been established since the *Sinclair* case that reliance upon advice of counsel is no defense to a charge of refusing to answer a question, such reliance is not a defense to a charge of failure to respond. The elements of intent are the same in both cases. All that is needed in either event is a deliberate intention to do the act. Advice of counsel does not immunize that simple intention.").

- ▪ <u>Crimes Not Charged</u>

The government is not aware of any evidence of other crimes by the Defendant that will be introduced at trial; however, the government has no objection to the proposed instruction that the Defendant is not on trial for any act, conduct, or crime not charged in the indictment.

▪ <u>Elements of the Offense</u>

The government objects to the proposed elements of the offense submitted by the Defendant.  The elements of the offense proposed by the government, above, constitute a complete and accurate statement of the elements of the offenses charged.  They are drawn from binding Supreme Court and D.C. Circuit law, and were employed in the recent contempt trial in *United States v. Bannon,* D.D.C. Case No. 1:21-cr-670, ECF No. 129, at 27-28, (Final Jury Instructions). The Defendant's proposed elements of the offense are not consistent with the law.

The Defendant's first, second, and fourth proposed elements would submit to the jury questions regarding the Committee's constitutional authority to conduct the investigation, the scope of the authority granted to the Committee by the House of Representatives, and whether the subpoena was valid in light of the Committee's lawful authority.  Any objections that the defendant had regarding those matters were waived when the defendant failed to raise them at the time of his default.  Moreover, to the extent that the Defendant wishes to challenge the authority of the Committee to conduct its inquiry or the validity of its process, he has raised those matters in his motion to dismiss, and those are legal matters to be addressed by the Court.  Once resolved by the Court, they are not issues that should be submitted to the jury.   *See* Government's Opposition to Defendant's Motion to Dismiss (ECF No. 44) at 19-23.

With respect to the Defendant's third proposed element, the government agrees that "pertinence" is an essential element of the offenses charged, and the government has included pertinence as an element in its proposed instructions.  The government objects to the Defendant's proposed language which would assign to the jury the task of determining whether the Committee's inquiry was "authorized."