**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | **Criminal No. 1:22-cr-00200-APM** |
| **v.** ) | |
| ) | |
| **PETER K. NAVARRO,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**DEFENDANT'S MOTION TO RECONSIDER, FOR AN EVIDENTIARY HEARING,
AND TO COMPEL MATERIAL DISCOVERY**

Defendant Dr. Peter K. Navarro, by and through the undersigned counsel, and pursuant to Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley*, 514 U.S. 419 (1995), and Rule 5.1 of the Local Criminal Rules of the District Court for the District of Columbia, respectfully moves this Court to reconsider its January 19, 2023 Order and (i) reverse its holding that Dr. Navarro bears the burden of establishing that former President Donald J. Trump invoked executive privilege or, in the alternative, hold only that Dr. Navarro establish his reasonable belief that he had a legal duty to assert executive privilege; (ii) order an evidentiary hearing on the question of what evidence supports a finding that former President Trump invoked privilege and/or that Dr. Navarro reasonably believed he had a legal duty to assert executive privilege; and (iii) compel the Government to comply with its obligations to provide discovery that is material to the preparation of Dr. Navarro's defense.

Never before has a former senior Presidential advisor been charged with contempt of congress pursuant to 18 U.S.C. § 192, following as assertion of executive privilege over communications during that advisor's tenure and for which that advisor believed he was duty-

1

bound to follow. At the outset, Dr. Navarro acknowledges, for purposes of the relief requested in the instant motion, that this Court has determined that this Circuit's precedent, "forecloses a defense premised solely on Defendant's claimed belief that President Trump's invocation of executive privilege excused his nonappearance before the Select Committee." Order at 30-31 (Jan. 19, 2023) (ECF No. 68) (citing *Licavoli v. United States*, 294 F.2d 207, 208 (D.C. Cir. 1961)).[1] The question therefore presented is what standard this Court must adopt in determining whether executive privilege had been invoked, before it can determine whether that invocation excused Dr. Navarro's appearance before the Select Committee.

For the first time in history, this Court has held that to rely on an assertion of executive privilege in seeking the dismissal of an indictment pursuant to 18 U.S.C. § 192, the defendant must present evidence pretrial to establish that the President interposed "a formal claim of privilege" after "personal consideration" with respect to the reason for the privilege's invocation. Order at 5 (Jan. 19, 2023) (ECF No. 68). Dr. Navarro respectfully disagrees that a defendant bears the burden of establishing a President's "formal claim of privilege" and requests reconsideration of this ruling. At the very least, he should only be required to establish that he reasonably believed he had a legal duty assert executive privilege on behalf of the President. Should the Court ultimately insist that Dr. Navarro bears some burden, he requests an opportunity to meet that burden at an evidentiary hearing. To that end, Dr. Navarro requests this Court compel the government to produce additional evidence material to the question of President Trump's invocation of privilege and Dr. Navarro's reasonable belief thereof.

---

[1] Although the prudence of deciding questions of executive privilege – often involving judicially uncharted constitutional waters – is readily apparent, Dr. Navarro expressly does not waive the right to present to the jury evidence of his belief that he was not required to comply with the Select Committee subpoena should either the Circuit or the Supreme Court overrule *Licavoli*.

I.   LEGAL STANDARD

"Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not specifically provide for them. A district court should have the opportunity to correct alleged errors in its dispositions." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014), quoted in *United States v. Travelsi*, 28 F. 4th 1291, 1297 (D.C. Cir. 2022) ("We review a denial of a motion to reconsider in a civil case for abuse of discretion, and the same standard applies to a denial of a motion for reconsideration in a criminal case. However, a district court by definition abuses its discretion when it makes an error of law." (quotations and citations omitted)). "A motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law." *Christy*, 739 F.3d at 539.

II.   ARGUMENT

To require a former senior Presidential advisor to establish that the President they served has made a "formal claim of privilege" after "personal consideration" unnecessarily risks vitiating the privilege. Dr. Navarro submits it is not too great a burden to require coequal branches of government to ascertain the applicability of any executive privilege before assuming this risk. At the very least, Dr. Navarro should only be required to establish pretrial that he reasonably believed he had a legal duty to assert executive privilege. Dr. Navarro further submits that should the Court conclude he bears some burden, he should have the opportunity to present evidence of President Trump's invocation of privilege at an evidentiary hearing. To that end, Dr. Navarro requests this Court compel the government to produce additional evidence material to the question of President Trump's invocation of privilege – namely the recorded depositions and interviews and any related correspondence or other records provided by the Select Committee to the Department of Justice that concern either Dr. Navarro or the invocation of executive privilege.

   *a. Invocation of Executive Privilege*

"Because '[a] President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately,' the privilege 'safeguards the public interest in candid, confidential deliberations within the Executive Branch.'" *Trump v. Thompson*, 20 F.4th 10, 26 (D.C. Cir. 2021) (quoting *Nixon v. GSA*, 433 U.S. 447; *United States v. Nixon*, 418 U.S. 683, 708 (1974). Indeed, the Supreme Court has recognized that, "Presidential communications" are "presumptively privileged." *Nixon*, 418 U.S. at 708 (quoting *Nixon v. Sirica*, 487 F.2d 700, 717 (D.C. Cir. 1973)).  *See also Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2032 (2020) ("And recipients have long been understood to retain common law and constitutional privileges with respect to certain materials, such as attorney-client communications and governmental communications protected by executive privilege."). The identification of sensitive information deemed subject to executive privilege by the President, "gives rise to a legal duty on the part of the aide to invoke the privilege on the President's behalf." *Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148, 213 n.34 (D.D.C. 2019). To that end, the Supreme Court has recognized: "it is the province and duty of this Court 'to say what the law is' with respect to the claim of [executive] privilege.'" *Nixon*, 418 U.S. at 705 (quoting *Marbury v. Madison*, 5 U.S. 1 (Cranch) 137, 177 (1803)). *See also Trump v. Thompson*, 142 S. Ct. 680, 680 (2022) (Kavanaugh, J., respecting denial of application for stay) ("A former President must be able to successfully invoke the Presidential communications privilege for communications that occurred during his Presidency, even if the current President does not support the privilege claim.").

   This case presents the question of what process a President must follow to successfully invoke the privilege in response to a congressional subpoena that invades the province of his "presumptively privileged" communications with his senior advisors. Of note, only once has the

Supreme Court even addressed the applicability of a congressional subpoena to a President's information. *Mazars*, 140 S. Ct. at 2026 ("We have never addressed a congressional subpoena for the President's information."). In addressing a President's invocation in the context of civil litigation, the Supreme Court recognized: "[O]ur precedent provides no support for the proposition that the Executive Branch 'shall bear the burden' of invoking executive privilege with sufficient specificity and of making particularized objections." *Cheney v. United States Dist. Court*, 542 U.S. 367, 388 (2004). Further, this Court identified, "no case that speaks to the manner in which a President must invoke executive privilege in response to a congressional subpoena to a former aide." Order at 4-6 (Jan. 19, 2023) (ECF No. 68). Yet, for the first time in history, this Court concludes that any such assertion of executive privilege requires a "formal claim of privilege," Order at 4-6 (ECF No. 68), and that, "it is proper to place the initial evidentiary burden on [a] Defendant to come forth with *some* evidence to show that [a] President . . . made a 'formal claim of privilege' after 'personal consideration' of the [congressional] subpoena [at issue]." *Id.* at 5.

With respect, the Court's holding erroneously places the initial burden of demonstrating an assertion of executive privilege on a former senior advisor to a President – an initial burden not supported by any prior precedent. Indeed, both the Supreme Court and the D.C. Circuit have acknowledged the prudence of narrowing interbranch disputes in advance of a determination that executive privilege be invoked. "Historically, disputes over congressional demands for presidential documents have not ended up in court. Instead, they have been hashed out in the 'hurly-burly, give-and-take of the political process between the legislative and the executive." *Mazars*, 140 S. Ct. at 2029. In *Cheney*, the Supreme Court acknowledged the efficacy of resolving disputes concerning the scope of information to be compelled *in advance of* resolving interbranch conflicts:

> Once executive privilege is asserted, coequal branches of the Government
> are set on a collision course.  The Judiciary is forced into the difficult task
> of balancing the need for information in a judicial proceeding and the
> Executive's Article II prerogatives.  This inquiry places courts in the
> awkward position of evaluating the Executive's claims of confidentiality
> and autonomy, and pushes to the fore difficult questions of separation of
> powers and checks and balances.  These "occasion[s] for constitutional
> confrontation between the two branches" should be avoided whenever
> possible.

542 U.S. at 389-390 (quoting *Nixon*, 418 U.S. 691-692). Nor would requiring resolution of an

interbranch conflict be novel for a criminal prosecution. In *United States v. Poindexter*, 727 F.

Supp. 1501 (1989), the District Court agreed to narrow the scope of a trial subpoena at the request

of a former President *prior to an assertion of executive privilege* so as to avoid confronting the

constitutional question of which coequal branch of Government's prerogative would prevail.  *Id.*

at 1504.  As the district court concluded:

> [T]he public interest requires that a coequal branch of Government 'afford
> Presidential confidentiality the greatest protection consistent with the fair
> administration of justice,' and give recognition to the paramount necessity
> of protecting the Executive Branch from vexatious litigation that might
> distract it from the energetic performance of its constitutional duties.

*Id.* at 381 (quoting *Nixon*, 418 U.S. at 715). Similarly, this rationale – a desire to avoid the

constitutional confrontation – resulted in the dismissal of on indictment against former

Congressman Henry Helstoski where the allegations against him "rely on legislative acts or the

motivation for legislative acts," – conduct protected by the speech or debate clause of the

Constitution.  *United States v. Helstoski*, 635 F.2d 200, 206 (3rd Cir. 1980) (quoting *United States

v. Brewster*, 408 U.S. 501, 512 (1972)).  As the Third Circuit recognized, "the mere issuance of an

indictment has a profound impact on the accused, whether he be in public life or not," and further:

> [T]he mere threat of an indictment is enough to intimidate the average
> congressman and jeopardize his independence. Yet, it was to prevent just
> such overreaching that the speech or debate clause came into being. A
> hostile executive department may effectively neutralize a troublesome
> legislator, despite the absence of admissible evidence to convict, simply by

> ignoring or threatening to ignore the privilege in a presentation to a grand
> jury.

*Id.* at 205. In the current political climate it is not too great a leap to imagine a fervent congress

weaponizing § 192 in a manner that chills the advice provided by senior advisors to the President.

Moreover, no court has ever explicitly held that a "formal claim of executive privilege" is

required to initiate the process for determining the applicability of the privilege. In *McClelland v.*

*Andrus*, 606 F.2d 1278 (D.C. Cir. 1979), the D.C. Circuit remanded to the district court for the

purpose of ordering the disclosure of a certain National Park Service report *so that* executive

privilege could be asserted if applicable. And in *United States v. Reynolds*, 345 U.S. 1 (1953),

although the Supreme Court observed that a claim of privilege with respect to "military and state

secrets" is "not to be lightly invoked," and requires a "formal claim of privilege," privilege had

already been invoked – and therefore the procedure for its "formal" invocation was not an issue

before the Supreme Court. *Id.* at 7-8. Similarly, in Judge MacKinnon's dissent from the *per curiam*

opinion in *Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973), analyzing whether executive privilege

had properly been invoked, it was undisputed that former President Nixon's "letter in response to

the subpoena from the District Court expressed a clear intent to claim his constitutional privilege

to withhold recordings of conversations with his advisers." *Id.* at 753-754 (MacKinnon, J.,

dissenting).

Put simply, neither the Supreme Court, the D.C. Circuit, nor any court in this district has

held that the assertion of executive privilege by a former close advisor to a former President

requires any "formal claim" by that president. To so hold poses two practical problems for the

sanctity of executive privilege. *First*, requiring proof of a formal claim of executive privilege by a

president presumes that a former president will be advised of the potential that executive privilege

will be implicated.  If a former president is not advised of this potential – or is unable to be advised,

for example, if he were deceased – there would be no means for him to make a "formal claim of privilege."[2] Here, we know that neither the Select Committee nor the Government attempted to contact former President Trump to ascertain the extent of his invocation of executive privilege – even though Dr. Navarro has repeatedly notified them that he had.[3] To the contrary, in its interviews of various former senior advisors, the Select Committee advised witnesses, "let me just say, [before you discuss with your counsel], that we received a letter from the current White House indicating their view it would not be appropriate to assert executive privilege." Depo. Tr. of General Keith Kellog at 81:6-8 (Dec. 14, 2021).[4] Yet, no caselaw holds that President Biden has statutory authority to decide issues of testimonial executive privilege separate from the specific and limited determinations delegated him under the Presidential Records Act.  44 U.S.C. §§ 2201-2209.

In its investigation before the grand jury, █████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████ but did not ask President Trump himself (before the Grand Jury or otherwise). As Dr. Navarro has long asserted, neither the Select Committee nor the Government inquired directly of former President Trump directly because they did not want to know his answer. Indisputably, former President Trump would have affirmed his desire for Dr. Navarro, as well as his former senior advisors, to assert executive privilege, "to the fullest extent permitted by law so as to permit

---

[2] Similarly, the Court's holding would permit a recalcitrant witness to waive or otherwise disregard executive privilege insofar as that witness for whatever reason disregarded the instruction of a current or former President's invocation of executive privilege.

[3] In its ongoing investigation of matters related to the 2020 Presidential election, the Department's routine practice is to contact counsel for the President to inquire whether he will instruct his senior aides to assert executive privilege before they testify in the Grand Jury.  For some reason, no contact was made with the former President concerning Dr. Navarro.

[4] Available at https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000034610/pdf/GPO-J6-TRANSCRIPT-CTRL0000034610.pdf.

him to "defend these fundamental privileges in court." H. Rpt. 117-284 (March 29, 2022), Ex. 7 Letter from Justin Clark to Dan Scavino (Oct. 6, 2021).[5] Moreover, Dr. Navarro's reasonable understanding that he was to invoke executive privilege created an obligation that he do so. *McGahn*, 415 F. Supp. 3d at 213 n.34 (D.D.C. 2019) (The identification of sensitive information deemed subject to executive privilege by the President, "gives rise to a legal duty on the part of the aide to invoke the privilege on the President's behalf").

*Second*, the Court's holding places a burden on the former close advisors of a president to ascertain the scope of executive privilege from a former president. Thus, a former close advisor who believed in good faith, albeit incorrectly, that a former president did not desire the advisor to invoke executive privilege, the privilege would be inadvertently pierced. Again, here the position of both the Select Committee and the Government has been that any assertion of executive privilege by former President Trump is immaterial, relying on President Biden's assertion that the privilege should not be invoked with respect to the matters pertinent to the Select Committee's investigation. Moreover, the corollary to the possibility that a former close advisor could inadvertently waive privilege is the scenario now presented to the Court where Dr. Navarro reasonably believed he was under instruction to assert executive privilege to "the fullest extent permitted by law."  It is now obvious that both the Select Committee and the Department of Justice has studiously sought to avoid the constitutional confrontation presented by their investigations of former President Trump. This Court should not allow Dr. Navarro to be made victim of this avoidance and confront the difficult legal question of what privileges and immunities a former president enjoys while balancing the important interest "of a former Chief Executive to be free from coercion with respect to his papers containing both personal observations and comments on

---

[5] Available at https://www.congress.gov/117/crpt/hrpt284/CRPT-117hrpt284.pdf.

matters of state," *United States v. Poindexter*, 727 F. Supp. 1501, 1502 (D.C. 1989), as against, "[t]he power of Congress to conduct investigations [that] is inherent in the legislative process." *Watkins v. United States*, 354 U.S. 178, 187 (1957).

It is not unreasonable to ask that before invading the constitutionally derived privileges of a coequal branch of government that Congress or the Department of Justice make even a minimal effort to inquire whether the President has asserted executive privilege. *See Sirica*, 487 F.2d at 715 ("That the privilege is being asserted by the President against a grand jury does not make the task of resolving the conflicting claims any less judicial in nature. Throughout our history, there have frequently been conflicts between independent organs of the federal government, as well as between the state and federal governments. When such conflicts arise in justiciable cases, our constitutional system provides a means for resolving them – one Supreme Court."). Where a former president declines to invoke executive privilege the third coequal branch, the court, is spared the necessity of "wad[ing] into these judicially uncharted constitutional waters" of constitutional prerogative. Put simply, this Court should do what virtually every court confronting the issue has done, which is to leave to the coequal branches of government the "hurly-burly, the give-and-take of the political process between the legislative and the executive." *Mazars*, 140 S. Ct. 2019 at 2029. It is against this backdrop that Dr. Navarro submits, should he bear any burden at all, it should be to establish that he reasonably believed he had a legal duty to assert executive privilege with respect to the Select Committee's subpoenas.

        b.  *A Pretrial Determination Concerning Executive Privilege Requires an Evidentiary Hearing.*

In the alternative, should the Court not dismiss the indictment and affirm its holding that Dr. Navarro bears some burden to demonstrate either that former President Trump asserted privilege or that Dr. Navarro reasonably believed he had a legal duty to do so – the Court should

hold an evidentiary hearing to provide Dr. Navarro an opportunity to put forth evidence to meet that burden. To that end, Dr. Navarro submits that the Government has improperly withheld evidence that would corroborate his claim that former President Trump in fact invoked executive privilege.

The Court concluded that Dr. Navarro's assertion that an invocation of executive privilege rendered his refusal to comply with the Select Committee's subpoenas presumptively "lawful" was an issue to be resolved pretrial. Order at 4 n.1 (Jan. 19, 2023) (ECF No. 68) (quoting *United States v. Bulger*, 816 F.3d 137, 146 (1st Cir. 2016)). While Dr. Navarro does not dispute that the Court can rule on the question pretrial, he does submit that having decided to do so, the Court is obligated to provide him with an opportunity to present evidence to the Court in support of his claim that he was under a legal duty to assert such privilege before the Select Committee. *United States v. Poindexter*, 698 F. Supp. 300, (D.D.C. 1988) (holding a "substantial preliminary inquiry" and citing "procedures approved by [the D.C. Circuit] for resolving issues of immunity pretrial: "A trial court faced with a pretrial motion to dismiss the indictment because of immunity granted by Federal or State Governments has basically four alternative procedures for determining whether or not the prosecution's evidence is tainted: (1) it can hold a pretrial evidentiary hearing . . ." (quoting *United States v. De Diego*, 511 F.2d 818, 823-24 (D.C. Cir. 1975)). *See Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148, 213 n.34 (D.D.C. 2019) (acknowledging the "legal duty on the part of the aide to invoke the privilege on the President's behalf").

A pretrial evidentiary hearing is also prudent insofar as it would permit the Court a more fulsome record on the issue of whether Dr. Navarro reasonably believed he was duty-bound to assert executive privilege and not comply with the Select Committee's subpoenas. Although, by definition, no court has addressed this precise context, the Supreme Court has acknowledged that a defendant does not necessarily waive their Fifth Amendment privilege against self-incrimination

by testifying at a pretrial evidentiary hearing. *See Simmons v. United States*, 390 U.S. 377, 389-394 (1968) ("[W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."); *Bailey v. United States*, 389 F.2d 305, 310-311 (D.C. Cir. 1967) (acknowledging, "[i]t is the rule in this jurisdiction that the defendant can challenge the voluntariness of his confession outside the jury's presence without waiving his privilege against self incrimination" and holding that a defendant may testify at a suppression hearing without waiving his Fifth Amendment privilege against self-incrimination (citing *Wright v. United States*, 250 F.2d 4, 13 (D.C. Cir. 1957)). *See also United States v. Khan*, 309 F. Supp. 2d 789, 799 (E.D.Va. 2004) (extending *Simmons* to pretrial proceedings concerning applicability of the attorney-client privilege). Therefore, if permitted an evidentiary hearing, Dr. Navarro could himself testify without waiving his Fifth Amendment privilege. *See* Order at 6 (Jan. 19, 2023) (ECF No. 68) ("Defendant offers no proof to support [the assertion that former President Trump invoked executive privilege] – he has offered neither a sworn affidavit nor testimony from the former President.").

In addition, if permitted an evidentiary hearing Dr. Navarro would present ample evidence of former President Trump's invocation of executive privilege. *First*, following the Court's admonishment that Dr. Navarro had not proffered evidence of such an invocation from former President Trump, defense counsel requested the former President's position on the matter, who advised, through counsel, that, "as one of [President Trump's] senior advisors, [Dr. Navarro] had an obligation to assert executive privilege on [President Trump's] behalf and fully comply with the principles of confidentiality [associated with the provision of advice by a close advisor to the President] when Dr. Navarro responded to the Committee's subpoena." Letter from M. Evan Corcoran to Peter K. Navarro (Jan. 23, 2023) (attached hereto as Exhibit A).

*Second*, it is now beyond dispute that former President Trump did broadly invoke executive privilege with respect to the matters of inquiry of the Select Committee. Relevant here, in the last few weeks, the Select Committee released hundreds of transcripts of interviews and depositions of former Trump administration officials in which the issue of executive privilege was discussed. These transcripts make clear that the Select Committee and its Members knew and understood from the testimony of former President Trump's senior advisors that former President Trump had universally invoked executive privilege to the fullest extent permitted by law. This evidence is circumstantial proof of Dr. Navarro's reasonable belief he was legally obligated to do the same. *McGahn*, 415 F. Supp. 3d at 213 n.34 (D.D.C. 2019) (The identification of sensitive information deemed subject to executive privilege by the President, "gives rise to a legal duty on the part of the aide to invoke the privilege on the President's behalf").

Specifically, it now appears that all former Trump Administration officials invoked executive privilege. Consider, for example, the testimony of President Trump's White House Counsel Pat Cipollone. Despite being advised by President Biden's White House Counsel that, "an assertion of executive privilege would not in their view be appropriate," Mr. Cipollone's counsel advised the Select Committee that, "Mr. Cipollone will not speak about Presidential -- direct Presidential communications as those are privileged." Int. Tr. of Pat Cipollone at 6-7 (July 8, 2022).[6] The statement is short and succinct and yet speaks volumes – executive privilege cannot be waived by those senior Presidential advisors whose communications it is intended to protect. Its provenance traces to the President – current or former – whose "candid, confidential deliberations" are intended for its protection. Of note, Select Committee staff do not reject Mr. Cipollone's assertion of executive privilege – to the contrary, the only discussion about the

---

[6]   Available   at   https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000928885/pdf/GPO-J6-TRANSCRIPT-CTRL0000928885.pdf.

applicability of executive privilege concerned whether it extended to then Chief of Staff Mark Meadows's reiteration of Presidential communications. Depo. Tr. of Pat Cippollone at 156-157 (July 8, 2022).

Then there is the assertion of executive privilege by senior advisor Stephen Miller. His counsel clearly articulated for the Select Committee that, "the committee has refused to articulate detailed areas of questioning for this deposition[,] [which] *has prevented us from having clear and meaningful discussions with White House counsel and counsel for President Trump regarding the important privilege issues that are implicated in this matter.*" Depo. Tr. of Stephen  Miller at 8 (April 14, 2022) (emphasis added).[7] Further, Mr. Miller's counsel later noted:  "President Trump has not waived executive privilege," *Id.* at 19, a proposition the Select Committee did not take issue with or otherwise counter with an argument that a formal claim of executive privilege was required.[8]

Pertinent to Dr. Navarro, in the Select Committee's interview of Alex Cannon, an attorney of former President Trump's, the Select Committee was advised, "right now, the COVID committee is not requiring a formal assertion of executive privilege under the [Presidential Records Act][,] the letter from counsel is sufficient for them."  Int. of Alex Cannon at 54 (Aug. 18, 2022).[9] Mr. Cannon's Select Committee testimony is consistent with ██████████ grand jury testimony that ███████████████████████████████████████████████████████████████

---

[7]   Available   at   https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000062444/pdf/GPO-J6-TRANSCRIPT-CTRL0000062444.pdf.

[8] Even General Keith Kellogg – Vice President Mike Pence's National Security Advisor – raised the issue of executive privilege despite being advised that President Biden's White House Counsel had instructed General Kellogg the privilege would not apply.  Dep. Keith Kellogg at 80:24-25 – 81:1-9 (Dec. 14, 2021), available at https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000034610/pdf/GPO-J6-TRANSCRIPT-CTRL0000034610.pdf.

[9]   Available   at   https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000916113/pdf/GPO-J6-TRANSCRIPT-CTRL0000916113.pdf

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Relatedly, Dr. Navarro also seeks the compelled disclosure of records that would refute the Government's characterization of the record. *See* Opp. Mot. Dismiss at 10 (Aug. 31, 2022) (ECF No. 44) ("Were it to do so, the Court, not the executive, would be deciding to invoke executive privilege in the face of an explicit refusal to do so by the sitting President *and the apparent decision not to do so by the former President.*").

   c. *Evidence Corroborating Former President Trump's Invocation of Executive Privilege is Material to Dr. Navarro's Defense.*

Federal Rule of Criminal Procedure 16(a)(1)(E) provides that:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i)  the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1). The D.C. Circuit has emphasized that the prosecution must disclose evidence which is material "to the preparation of the defendant's defense." *United States v. Marshall,* 132 F.3d 63, 67 (D.C. Cir. 1998). The Government must disclose both inculpatory and exculpatory evidence. *Id*. "Inculpatory evidence, after all, is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence" because "it is just as important to the preparation of a defense to know its potential pitfalls as to know its strengths." *Marshall*,

132 F.3d at 67; *accord United States v. O'Keefe*, No. 06-0249 (PLF), 2007 WL 1239204, at *2 (Apr. 27, 2007).

The Government's discovery obligations are "intended to provide a criminal defendant 'the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case.'" *O'Keefe*, 2007 WL 1239204, at *2 (quoting *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989)). *See also United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (materiality standard "is not a heavy burden" – information is material and must be disclosed if it has the potential to play an "important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal"); *United States v. George*, 786 F. Supp. 11, 13 (D.D.C. 1991) (discovery materiality hurdle "is not a high one").

"As a general matter, Rule 16 establishes the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." *United States v. Apodaca*, 287 F. Supp. 3d 21, 39 (D.D.C. 2017). *See also United States v. Karak*e, 281 F. Supp. 2d 302, 306 (D.D.C. 2003). Moreover, "the government cannot take a narrow reading of the term material in making its decisions on what to disclose under Rule 16." *O'Keefe*, *supra*, 2007 WL 1239204, at *2.

Government disclosure of exculpatory and impeachment evidence is essential to the constitutional guarantee to a fair trial. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). The law requires the disclosure of exculpatory and impeachment evidence when such evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. Because *Brady* and *Giglio* are constitutional obligations, *Brady/Giglio* evidence must be disclosed regardless of whether the defendant makes a request for the information. *See Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). Since it is sometimes difficult to

assess the materiality of evidence before trial, prosecutors must err on the side of disclosure. *Kyles*, 514 U.S. at 439. *See also* Local Rule Crim. P. 5.1(b); Justice Manual § 9-5.001.  Here, Dr. Navarro has asserted as a defense to the indictment that his refusal to comply with the Select Committee's subpoenas presumptively "lawful," an issue the Court has concluded must be resolved pretrial. Order at 4 n.1 (Jan. 19, 2023) (ECF No. 68) (quoting *Bulger*, 816 F.3d at 146).

On January 2, 2023, Representatives Bennie Thompson and Liz Cheney, Chairman and Vice Chairwoman, respectively, of the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol, issued a Press Release advising:  "Over the past several weeks, the Committee has made an enormous volume of material available to the Special Counsel."[10] Separately, government counsel have advised defense counsel in another matter that the Select Committee recently made "several hundred transcripts and related materials that have not otherwise been made publicly available by the Committee" available to the Office of Special Counsel on January 2, 2023.

Accordingly, Dr. Navarro requested the Government provide any transcripts and related materials, to include any communications with or among Members and Select Committee staff, that: (i) reference Dr. Navarro; (ii) include any reference to an assertion of executive privilege by any deponent or interviewee on behalf of by President Biden or former President Trump; (iii) include any reference to any witness's refusal to answer a question posed by the Select Committee in its interview and/or deposition of that witness; and (iv) include any correspondence between the Department and the Select Committee concerning any of the foregoing, including any decision to refer and/or prosecute any such witness for contempt of Congress.

---

[10] Available at https://web.archive.org/web/20230102183939/https://january6th.house.gov/news/press-releases/message-chairman-thompson-vice-chair-cheney.

The Government declined to provide this information. *See* Letter from Elizabeth Aloi to John P. Rowley III (Jan. 10, 2023) (attached hereto as Exhibit B). Contrary to the Government's assertion that, "a mistaken reliance on a claim of executive privilege is not a defense" and that the "reasonableness of [Dr. Navarro's] belief [that he had a legal duty to assert executive privilege] can only be assessed with respect to actions of other witnesses with which he was familiar," evidence of former President Trump's invocation of executive privilege provides circumstantial evidence that the privilege was invoked with respect to Dr. Navarro. Indeed, defense counsel submits that not a single witness will have advised the Select Committee that former President Trump was *declining* to invoke executive privilege *in any respect*. This is so regardless of whether Dr. Navarro may assert as a defense his reasonable belief that he had a legal duty to assert executive privilege. Dr. Navarro is entitled to a clear record of what evidence he intended to rely upon as proof of this belief.

Dr. Navarro has also requested the Government provide ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████     ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████nt

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ are

both relevant and material to Dr. Navarro's defense that his refusal to comply with the Select Committee's subpoenas presumptively "lawful."

Accordingly, Dr. Navarro respectfully requests the Court Order the Government to disclose any materials provided to the Department of Justice by the Select Committee that: (i) reference Dr. Navarro; (ii) include any reference to an assertion of executive privilege by any deponent or interviewee on behalf of by President Biden or former President Trump; (iii) include any reference to any witness's refusal to answer a question posed by the Select Committee in its interview and/or deposition of that witness; and (iv) include any correspondence between the Department and the Select Committee concerning any of the foregoing, including any decision to refer and/or prosecute any such witness for contempt of Congress; as well as the Government's ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

## CONCLUSION

Wherefore, for the reasons set forth above, Dr. Navarro respectfully requests an Order dismissing the indictment with prejudice or, alternatively, requests an evidentiary hearing to address any burden Dr. Navarro bears in asserting executive privilege as well as an Order

compelling the Government's disclosure of evidence that would be relevant at that hearing and material to Dr. Navarro's defense.

[SIGANTURE ON NEXT PAGE]

Dated: January 24, 2023                    Respectfully Submitted,

E&W Law, LLC

       /s/ John S. Irving
John S. Irving (D.C. Bar No. 460068)
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
Telephone: (301) 807-5670
Email: john.irving@earthandwatergroup.com

SECIL LAW PLLC

       /s/ John P. Rowley, III
John P. Rowley, III  (D.C. Bar No. 392629)
1701 Pennsylvania Ave., N.W., Suite 200
Washington, D.C. 20006
Telephone: (703) 417-8652
Email: jrowley@secillaw.com

BRAND WOODWARD LAW, LP

       */s/ Stanley E. Woodward, Jr.*
Stan M. Brand (D.C. Bar No. 213082)
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel to Dr. Peter K. Navarro*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | **Criminal No. 1:22-cr-00200-APM** |
| **v.** | ) | |
| | ) | |
| **PETER K. NAVARRO,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

On January 24, 2023, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

Respectfully submitted,

_____ */s/ Stanley E. Woodward, Jr.* _____
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Dr. Peter K. Navarro*