# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| | : | **CRIMINAL NO. 22-cr-200 (APM)** |
| **v.** | : | |
| | : | |
| **PETER K. NAVARRO,** | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES' BRIEF ON DEFENDANT NAVARRO'S UNSUPPORTED CLAIMS OF EXECUTIVE PRIVILEGE AND TESTIMONIAL IMMUNITY

The jury in Defendant Peter K. Navarro's trial should be charged with deciding only the essential elements of the charged offense, that is: whether the Defendant knew he had been subpoenaed by the Select Committee to Investigate the January 6th Attack on the United States Capitol ("the Committee") to produce documents and appear for a deposition, and nonetheless made a deliberate decision not to do either. The Defendant argues that both executive privilege and testimonial immunity excuse his noncompliance with the Committee's subpoena. This is incorrect. As set forth herein, even had former President Trump purported to invoke executive privilege or testimonial immunity – of which the Defendant has offered no evidence – those assertions would not have justified the Defendant's categorical non-compliance with the subpoena as to either the documents in his possession or his appearance at the deposition. For this reason, the Court should exclude from trial all argument and evidence relating to executive privilege and testimonial immunity and grant the United States' pending motion in limine (ECF No. 70) (Motion in Limine to Exclude Exhibits).

I. **Relevant Factual Background**

On June 30, 2021, the U.S. House established the Committee to investigate the facts, circumstances, and causes of the January 6, 2021, attack on the U.S. Capitol. *See* Government's Trial Exhibit (GEX) 1 (House Resolution 503).[1] As part of its investigation, the Committee identified the Defendant as someone with information relevant to its inquiry through, in -part, his own public statements. Accordingly, on February 9, 2022, a Committee staff member emailed the Defendant and asked if he would accept service of a subpoena from the Committee by email. GEX 4 (February 9, and 24, 2022, emails). The Defendant responded within three minutes and wrote only, "yes. no counsel. Executive privilege." *Id*. Later that day, the staff member emailed the Defendant the subpoena at issue in this case. *Id.* The subpoena required the Defendant to appear on February 23, 2022, and produce various documents relating to the Defendant's role in the lead-up to and events of January 6, and to appear on March 2, 2022, for deposition testimony. GEX 2 (Subpoena and attachments). In a cover letter accompanying the subpoena, the Committee gave the Defendant, the former White House Director of Trade and Manufacturing, some examples of why the Committee believed the Defendant had relevant information, including that it had been publicly reported that the Defendant had worked with various individuals outside of the Government to change the outcome of the 2020 presidential election and that the Defendant had publicly repeated discredited claims of election fraud. *Id.*

Between the time the subpoena was served and the deadline for the document production on February 23, 2022, the Defendant did not communicate with the Committee in any way, and he did not produce a single document by the deadline. On February 24, 2022, the Committee emailed the Defendant and confirmed he was in default of the subpoena's document demand. GEX 4. In

---

[1] The Government's Trial Exhibits are attached as Exhibit 1.

the same email, the Committee also confirmed the Defendant still was required to appear for his deposition and instructed the Defendant to contact the Committee to confirm the details.  *Id.*  The Defendant responded three days later and wrote that former President Donald J. Trump had "invoked Executive Privilege in this matter," that it was not his privilege "to waive," and that he would not, therefore, comply.  GEX 5 (February 27, 2022 emails).[2]  In response to the Defendant's email, the Committee rejected the Defendant's wholesale refusal to comply on the basis of executive privilege, instructed him to appear for his deposition as required, and directed him to invoke privilege on a question-by-question basis if appropriate.  *Id.*

On February 28, 2022, the Defendant again refused to comply, asserting the "privilege is not mine to waive."  GEX 6 (February 28, 2022, and March 1, 2022, emails).  Also on February 28, 2022, the White House Counsel's Office sent the Defendant a letter, notifying him that President Joseph R. Biden had "determined that an assertion of executive privilege is not in the national interest, and therefore is not justified, with respect to the particular subjects within the purview of the Select Committee."  *See* Exhibit 2 (US_000945).  The letter further noted that "[f]or the same reasons underlying his decision on executive privilege, President Biden has determined that he will not assert immunity to preclude [Mr. Navarro] from testifying before the Select Committee."  *Id.*

---

[2] As this Court has already determined, because the Defendant does not hold the executive privilege, he cannot assert it on behalf of himself, or personally make the decision to assert in on behalf of the Presidency.  *See* Mem.  Op., January 19, 2023, ECF No. 68 at 9 ("As the privilege holder, it was on President Trump to assert a formal claim of privilege…after actual personal consideration") (internal citations omitted); *see also Trump v. Thompson*, 20 F.4th 10, 26 (D.C. Cir. 2021) (noting that the privilege resides with the current President and that former presidents have been recognized to "retain for some period of time a right to assert executive privilege over documents generated during their administrations" (internal citation omitted)).

The Defendant did not appear as required for his deposition on March 2. GEX 7 (March 2, 2022, Deposition Transcript). At no time did the Defendant provide the Committee with any evidence supporting his assertion that the former President had invoked executive privilege over the information the Committee's subpoena sought from the Defendant. And at no time in his communications with the Select Committee did the Defendant raise the issue of testimonial immunity, nor even suggest that former President Trump had requested that he communicate any assertion of such immunity to the Committee.

For the Defendant's deliberate refusal to comply, a grand jury sitting in the District of Columbia returned the pending Indictment. The Indictment charges the Defendant with two counts of contempt of Congress —*i.e.,* of having "willfully" "ma[de] default" on a "summon[s]" (that is, a subpoena) duly issued by a committee of the House, in violation of 2 U.S.C. § 192. Count One charges the Defendant with refusing to provide documents and Count Two charges him with refusing to appear for testimony. *See* Indictment ¶¶ 22-23, 24-25.

## II.    Relevant Procedural Background

On August 17, 2022, the Defendant sought to dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12 because "when a former president invokes Executive Privilege as to a senior presidential adviser, the adviser cannot thereafter be prosecuted." ECF No. 34 at 17. As proof of former President Trump's invocation of executive privilege, the Defendant offered a November 20, 2021, press release by the former President, issued well over two months before the Committee even contacted the Defendant, and claimed it constituted an invocation of executive privilege over the information sought by the Committee's not-yet-issued subpoena. ECF No. 34 at 5. The Defendant's executive privilege claims appeared to conflate the different concepts of executive privilege and testimonial immunity.

The Government responded to the Defendant's motion on August 31, 2022.  ECF No. 44. The Government agreed that it has been the Department of Justice's position that if a sitting president made a plausible assertion of privilege and directed a current adviser not to comply with a subpoena seeking testimony about presidential communications, the adviser is not in contempt of Congress, and the Executive Branch may not bring a contempt charge.  *See Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101 at 102 (May 30, 1984) ("Olson Memo").  The Government argued, however, that those circumstances were not met with regard to the Defendant because, among other reasons, there had been no actual invocation of executive privilege as to the subpoena.

The Court heard argument on the Defendant's motion on November 4, 2022.  Throughout, the Court asked repeatedly for the Defendant to provide evidence of former President Trump's invocation of executive privilege.  *See, e.g.,* Hrg. Tr. 11/4/22 at 8 ("So what I'm wondering is by – is there any other evidence other than that single statement in which you claim the President of the United States invoked executive privilege as to Dr. Navarro with respect to this subpoena?").  The Court evaluated the parties' pleadings and made its factual findings: there was no invocation. *See* Mem.  Op., January 19, 2023, ECF No. 68 at 3-4.

On January 19, 2023, this Court denied the Defendant's motion to dismiss.  In doing so, this Court emphasized that no President — sitting or former — invoked executive privilege with respect to the subpoena that the Committee issued the Defendant, or directed the Defendant not to appear for a deposition or provide documents.  *See* Mem.  Op., January 19, 2023, ECF No. 68 at 3 ("Defendant's testimonial immunity defense resets on an unsupported factual premise that President Trump invoked executive privilege with regard to the Select Committee's subpoena.").

During the November 4, 2022, hearing, the Court asked counsel for the Government

whether, according to the Department of Justice, a former adviser to a sitting President may "refuse[] to appear before Congress," without being subject to contempt under Section 192, based upon a "proper invocation of executive privilege." Hrg. Tr. 11/4/22 at 27. As discussed below, the Department of Justice's view is that such a proper invocation of executive privilege by the sitting President would justify the official's refusal to turn over those documents containing, or refusal to testify, regarding the particular information that is the subject of the President's privilege assertion. It would *not* justify a categorical refusal "to appear before Congress." A proper assertion by a sitting President of *testimonial immunity* for certain close advisers, by contrast, would be a basis for a refusal of such an adviser to *testify* before Congress (but not for a refusal to provide documents).

The Court then asked counsel whether a "proper invocation by a *former* President with respect to a former senior adviser of executive privilege" would likewise afford that person a basis for a "refusal to appear" before a committee and thereby preclude prosecution for contempt under Section 192. Counsel erroneously answered this second question in the affirmative, as well, albeit only with respect to information "as to official matters."[3]

---

[3] THE COURT: So can we back up just to make sure I understand where there are areas of disagreement. I know that's not this situation, but does the Department of Justice still take the position that the former – that a former official of a sitting President who refuses to appear before Congress, based upon the proper invocation of executive privilege, cannot be subject to contempt under 192.

AUSA: So if there were an invocation by the privilege holder, Your Honor, that is correct.

THE COURT: Okay. So does the Department of Justice also believe, or take the position, that if there is a proper invocation by a former President with respect to a former senior adviser of executive privilege, that that person's refusal to appear would not be subject to prosecution under 192?

In other words, the Government stated that it was the position of the Department of Justice that if there is a proper invocation of executive privilege by a *former* President with respect to a *former* senior adviser as to official matters, that that adviser's refusal to appear would not be subject to prosecution for contempt. This was a mistake. It is not and has never been the position of the Department of Justice that a proper invocation of either executive privilege or testimonial immunity by a former President can itself justify a former official's complete non-compliance with a congressional subpoena and thereby preclude prosecution of that person for contempt of Congress under Section 192.

On January 24, 2023, the Defendant filed a motion asking the Court to reconsider its decision denying the Rule 12 motion to dismiss. The Defendant also sought an evidentiary hearing and to compel discovery from the Government. Attached to the Defendant's motion was a letter dated January 23, 2023, from a lawyer for President Trump. The letter states that the Defendant, in general, "had an obligation to assert executive privilege." ECF No. 71-1. It does not suggest that this general obligation excused his compliance with the Committee's subpoena, nor does the letter contain evidence that former President Trump made a "formal claim of privilege" after "personal consideration" with respect to the Select Committee subpoena, in the manner this Court suggested would be required for an executive privilege assertion. Mem. Op. ECF No. 68 at 5. It also does not state that former President Trump had or would have directed the Defendant not to comply with the subpoena's requirements altogether.

---

AUSA: Yes, Judge, I would say that it would be an invocation by the former President as to the former official *as to official matters.*

Hrg. Tr. 11/4/22 at 41-42 (emphasis added).

The Court heard argument on the Defendant's motion for reconsideration at the pretrial conference on January 27, 2023.  During the hearing, the Court rejected the idea that the January 23, 2023, letter from former President Trump's counsel conveyed information sufficient to demonstrate that former President Trump had invoked executive privilege or asked the Defendant to do so as it related to the Select Committee subpoena.  Hrg.  Tr. 1/27/23 at 5-7.  The Court later denied the motion for reconsideration.  *See* February 2, 2023, Minute Order.

At the pretrial conference on January 27, 2023, the Court suggested that, despite finding insufficient evidence of an executive privilege claim to dismiss the case on the Rule 12 motion, the Defendant could present evidence at trial that former President Trump instructed or requested him to invoke executive privilege.  The Court appeared to presume that, despite all evidence to the contrary (and ample opportunity to put forth such evidence), the Defendant would testify that former President Trump instructed him to assert privilege on behalf of the Presidency.  The Court suggested that if the jury found this testimony credible, an acquittal or dismissal would be appropriate because, in those circumstances, the Committee lacked the authority to compel the Defendant to comply with the subpoena.  Hrg.  Tr. 1/27/23 at 22-23.

This position appeared to be based on the government's mistaken statements from the November 4, 2022, hearing – that is, on the notion that if there were a proper invocation of executive privilege by a former President with respect to a former senior adviser, that that person's refusal to appear would not be subject to prosecution for contempt.

The Court further suggested that if, in the Department of Justice's view, the Defendant was the sort of close presidential adviser who is entitled to testimonial immunity before Congress, then that might also preclude the government from prosecuting him for failing to comply with the subpoena.  Hrg.  Tr. 1/27/23 at 68-69 (discussing *Testimonial Immunity Before Congress of the*

*Assistant to the President and Senior Counselor to the President*, ___ Op. O.L.C. ___, Slip. Op. (July 12, 2019)) ("Conway Opinion").  Counsel for the Government disagreed with the Court's suggestions, sought permission to brief the scope of testimonial immunity, and the January 31, 2023, trial date was continued.

### III.    Discussion

The Defendant has provided no evidence that the former President asserted executive privilege as to the Defendant's subpoena, and the Defendant has never even claimed that the former President asserted testimonial immunity as to the Defendant.  Even if the Defendant were able to demonstrate that the former President had instructed him to assert executive privilege or testimonial immunity, however, such instructions would not preclude the Defendant's prosecution and conviction for violating 2 U.S.C. § 192.  Accordingly, the Court should not permit the Defendant to raise his assertions about privilege and immunity before the jury.

As the Court is aware, it is the Department of Justice's longstanding view that when the *incumbent* President asserts executive privilege or testimonial immunity and directs an official to act in accord with that assertion, the official cannot be convicted for violating Section 192 for complying with the President's directive.  For reasons explained below, however, that reasoning does not apply to an assertion of privilege or testimonial immunity by a *former* President that is not supported by the incumbent.  This Court, however, need not and should not reach the question whether a former President's assertion of executive privilege or testimonial immunity could ever preclude a prosecution under Section 192 for several reasons – including that no assertion by former President Trump could have covered most of the information that the Committee asked the Defendant to produce in documents or at his deposition, and because the Defendant never raised with the Committee – and thus waived – any claim that the former President had directed him to

assert testimonial immunity.  The Court should reject the Defendant's claims of privilege and immunity in advance of trial.

      a.   **The Department of Justice Has Not Taken the Position That a Former President's Invocation of Executive Privilege, in the Face of a Contrary Assertion by a Sitting President, can Justify the Defendant's Non-Compliance with the Subpoena**

As an initial matter, the Court has inquired as to whether upon "a proper invocation by a former President with respect to a former senior adviser of executive privilege, that the person's refusal to appear would not be subject to prosecution" for contempt.  Hrg.  Tr. 11/4/22 at 42.  For the reasons described in more detail below – including that the former President could not have asserted privilege as to all material and testimony covered by the subpoena, and that the Defendant has waived any claim to testimonial immunity – the Court need not, and should not, reach that question with respect to the Defendant.  Nonetheless, the answer is no; the Department of Justice has not previously taken the position and its existing Office of Legal Counsel (OLC) opinions do not state that if a former president invokes executive privilege as to a subpoena to an aide, in the face of a contrary assertion by a sitting President, that the aide's refusal to appear would not be subject to prosecution.

The Department of Justice took the position in a Statement of Interest in *Meadows v. Pelosi*, that when a congressional committee demands testimony from an immediate presidential adviser after a president's term of office has ended, at most, a form of qualified immunity applies.  Civil Action No. 21-3217 (D.C.C.) (July 15, 2022), ECF No. 42, at 2 (attached as Exhibit 3).  There, the issue concerned a subpoena for testimony from the Committee to Mark Meadows, the former President's former Chief of Staff, regarding whom the former President had claimed executive privilege, but regarding whom the current President had declined to invoke.  *Id.* at 14-15.  The Department of Justice's stated position was that the Committee's showing of need in Meadows'

case was sufficient to overcome qualified testimonial immunity.  *Id*. at 11.  In the Statement of Interest, the Department of Justice also asserted the view that an instruction by a former President should not, at least absent extraordinary circumstances, overcome a sitting President's conclusion that immunity is not warranted.

The OLC opinions explaining that Section 192 cannot be applied to an official for complying with a sitting President's assertion of executive privilege or testimonial immunity are inapposite when the assertion is from a former president.  Executive privilege and testimonial immunity for certain close advisers to the President are not designed for the benefit of such advisers in their individual capacities, nor for the personal benefit of any particular President.  They may only be invoked on behalf of the institution of the Presidency and, ultimately, "for the benefit of the Republic." *Nixon v. Administrator of General Services (GSA)*, 433 U.S. 425, 449 (1977); *see also Trump v. Thompson*, 20 F.4th 10, at 48 (D.C. Cir. 2021) ("The interests the privilege protects are those of the Presidency itself, not former President Trump individually.").  Accordingly, the determination whether to invoke such immunity should be made by the singular officer who "speaks authoritatively for the interests of the Executive Branch," *Thompson*, 20 F.4th at 33—the sitting President.  And here, President Biden determined not to invoke.

The Department of Justice's view that the congressional contempt statute does not (and cannot constitutionally) apply to an official who has acted in accord with an incumbent President's invocation of executive privilege or testimonial immunity depends upon two principal rationales, neither of which is implicated where, as here, a *former* President has instructed former officials to assert privilege or immunity in conflict with the incumbent President's contrary determination.

First, OLC has explained that "the President's assertion of executive privilege is far different from a private person's individual assertion of privilege; it is entitled to special deference

due to the critical connection between the privilege and the President's ability to carry out his constitutional duties." Olson Memo at 136. In particular, if Congress could wield the prospect of criminal contempt with respect to information that the incumbent President has determined should be withheld on grounds of executive privilege, that would be "inconsistent with the 'spirit of dynamic compromise'" that marks the accommodation process the Constitution requires the two political Branches to use in cases where a congressional request for information implicates Executive Branch confidentiality interests. *See id.* at 139 (*quoting United States v. AT&T*, 567 F.2d 121, 127 (D.C. Cir. 1977)). That concern, however, is inapposite when the President and Congress agree that a witness should testify. Indeed, in such a case the accommodation process has worked as designed. If a former President's claim of privilege or immunity had the effect of enabling a witness to refuse to testify without the possibility of contempt, that would "throw a wrench into the ongoing working relationship and accommodations between the Political Branches." *Thompson*, 20 F.4th 10 at 48.

Second, OLC has explained that an incumbent President's "assertion of executive privilege is presumptively valid, and that presumption may be overcome only if Congress establishes that the requested information 'is demonstrably critical to the responsible fulfillment of the Committee's functions.'" *Id.* (quoting *Senate Select Committee on Presidential Campaign Activities v. Nixon*, 498 F.2d 725 at 731 (D.C. Cir. 1974). By contrast, when a *former* President invokes a presidential communications privilege claim that the incumbent President has determined should *not* be made, that claim is *not* "presumptively valid." Olson Memo at 137. To the contrary, and as the recent decision in *Trump v. Thompson* demonstrates, even if a former President were able to obtain a judicial hearing of the dispute with the incumbent President concerning the privilege claim, the courts would defer to the incumbent's determination. *See*

*Thompson*, 20 F.4th at 38 ("When a former and incumbent President disagree about the need to preserve the confidentiality of presidential communications, the incumbent's judgment warrants deference because it is the incumbent who is 'vitally concerned with and in the best position to assess the present and future needs of the Executive Branch'" (quoting *GSA*, 433 U.S. at 449)).

That said, however, the Government acknowledges that the D.C. Circuit's decision in *Thompson* did not "conclusively resolve whether and to what extent a court could second guess the sitting President's judgment" because it concluded that the privilege would have been overcome in that case in any event. *Id.* at n.2.  And the Supreme Court, in denying former President Trump's application for an injunction, emphasized that the D.C. Circuit had analyzed his privilege claims "without regard to his status as a former President." 142 S. Ct. at 680.

This Court should follow the same course here.  Because as explained below, any assertion by former President Trump could not have justified the Defendant's categorical refusal to produce documents or to testify at the deposition, and the Defendant has waived a claim of testimonial immunity, his prosecution would not be precluded even if such an assertion has occurred.  The Court need not decide whether there are any circumstances in which a plausible assertion by a former President might preclude a contempt prosecution notwithstanding the sitting President's judgment that assertions of privilege and immunity were not in the interests of the United States.

### b.  The Defendant has Waived Any Immunity Claim

The Defendant has provided no evidence to support his claim that the former President asserted executive privilege as to the Defendant's subpoena, and the Defendant has never even claimed that the former President asserted testimonial immunity as to the Defendant.  Because the Defendant failed to raise an immunity claim with the Committee, he should not now be allowed to invoke testimonial immunity after the fact to foreclose prosecution for a violation of Section 192.

13

Such argument has been waived.  *See United States v. Bryan,* 339 U.S. 323, 330-34 (1950) ("[I]f respondent had legitimate reasons for failing to produce the records of the association, a decent respect for the House of Representatives, by whose authority the subpoenas issued, would have required that she state her reasons for noncompliance upon the return of the writ.  . . . To deny the Committee the opportunity to consider the objection or remedy it is in itself a contempt of authority and an obstruction of its processes." (citation omitted)); *Hutcheson v. United States*, 369 U.S. 599, 608-611 (1962) (stating that a constitutional objection "must be adequately raised before the inquiring committee if [it] is to be fully preserved for review in this Court.  To hold otherwise would enable a witness to toy with a congressional committee in a manner obnoxious to the rule that such committees are entitled to be clearly apprised of the grounds on which a witness asserts a right of refusal to answer." (internal citations omitted)); *McPhaul v. United States*, 364 U.S. 372, 378-79 (1960) (finding that the defendant could not raise a defense that he did not possess subpoenaed records because he had never made the claim before the issuing committee).

### c.  The Court Need Not Decide Whether a Former President's Assertion of Executive Privilege or Testimonial Immunity Could Ever Preclude Application of Section 192 Because There Not Has Been a Proper Executive Privilege Assertion in this Case

Within mere moments of receiving it, the Defendant told the Committee that he would not comply with its subpoena because of executive privilege.  As it relates to the subpoena received by the Defendant, a former aide to a former president, the only type of applicable executive privilege at issue, had it actually been asserted, would be the presidential communications privilege.[4]  That privilege is limited to communications "made in the process of arriving at

---

[4] The deliberative process privilege is not relevant here as the Supreme Court has only recognized the authority of a former President to invoke the presidential communications privilege under certain circumstances.  *See GSA*, 433 U.S. 425 (1977).  Moreover, the deliberative process

*presidential* decisions." *In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997) (emphasis added); *see also Assertion of Executive Privilege with Respect to Clemency Decision*, 23 Op. O.L.C. 1 (1999) (Att'y Gen. Reno) (concluding that the President could assert executive privilege to protect information concerning deliberations regarding his decision whether to offer clemency); *In re Sealed Case,* 121 F.3d at 752 (noting that the presidential communications privilege covers not only communications directly with the President about his own governmental decision-making but also "communications authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate"). It may be asserted by both current and former Presidents; neither did in connection with the Defendant's subpoena.

Here, the January 23, 2023, letter from former President Trump's attorney merely states that the Defendant should have asserted privilege with respect to his communications with former President Trump himself. There was no suggestion of an invocation at all with respect to the Defendant's communications with third parties. Indeed, the Committee informed the Defendant that most of the information it was seeking did not concern communications he took in his capacity as presidential adviser at all, but instead related to matters undertaken in his personal capacity with persons outside the government. Executive privilege, in this case, therefore could not justify a complete default on the Committee's subpoena.

---

privilege only covers information that is pre-decisional – *i.e.*, that was prepared to assist government decisionmakers in arriving at decisions – and deliberative in the sense of reflecting the give-and-take of the consultative process antecedent to such decisions. The Committee gave no indication that it was asking the Defendant for information that would satisfy that description with respect to any executive branch decision-making.

The Department of Justice has made clear, moreover, that testimonial immunity should apply *only* with respect to questions seeking information from a close presidential adviser concerning "matters that occur[red] during the course of discharging [the adviser's] official duties."  *See* Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena, 38 Op. O.L.C. 5 at 7 (July 15, 2014) ("Simas Opinion"); *Testimony Before Congress of the Former Counselor to the President*, 43 Op. O.L.C. _ (2019) ("McGahn Opinion") at 19; Conway Opinion at 1.  Arguably, no president, current or former would have the authority to make a categorical invocation of testimonial immunity over all the information sought by the Committee from the Defendant because most of the information the Committee sought did not concern matters that occurred in the course of the Defendant's discharge of his governmental duties.   For example, the subpoena sought, among other things, "all documents and communications relating in any way to protests, marches, public assemblies, rallies, or speeches in Washington, D.C. on November 14, 2020," and "all communications, documents and information that are evidence of the claims of purported fraud in the three-volume report you wrote, *The Navarro Report*."  *See* Ex 1 at 19-20.

Defendant was a trade adviser, and responsible in -part for the Trump administration's response to the Coronavirus crisis.  In contrast, the Select Committee subpoena sought information wholly related to the attack on the Capitol on January 6, 2021, and the threat to the peaceful transition of power between administrations.[5]  As with the alleged assertion of executive privilege, any such assertion of testimonial immunity therefore would have been germane only (at most) to

---

[5] Given his own assertions to the contrary, it is not credible to believe that the Defendant thought the subpoena related exclusively to his official responsibilities.  In his own press release, announcing the results of his post-election analysis, the Defendant states he was acting in his private capacity.  *See* Exhibit 4.

the Defendant's testimony about a fraction of the subjects about which the Committee informed him it wished to inquire at the deposition.

Accordingly, a reasonable assertion of executive privilege or testimonial immunity could not have been grounds for the Defendant to refuse to testify altogether; instead, the most it would have justified would have been an assertion of privilege at the former President's request regarding particular documents or testimony seeking information about communications between the Defendant and the former President himself (or, in the case of a proper immunity assertion, about testimony concerning matters related to the Defendant's official duties).   Therefore, even if the Defendant could establish that former President Trump instructed him to assert privilege as to *all* questions that might be asked of him at the deposition, such an assertion would not have been proper.   It follows that such an assertion could not preclude the Section 192 charge in Count Two of the Indictment.

### d.   Testimonial Immunity is Not Available to Defendant Navarro as Defense to Count One (Contempt of Congress – Papers)

No authority exists that suggests a witness could have absolute immunity from producing documents.   The OLC opinions on testimonial immunity address only immunity from compelled testimony, and OLC has specifically explained that the doctrine does not apply to subpoenas for documents. Simas Opinion at 9.   The rationales for such immunity do not justify any categorical rule with respect to a subpoena for documents and, in any event, such a rule is foreclosed by the Court of Appeals' decision in *Senate Select Committee on Presidential Campaign Activities v. Nixon*, 498 F.2d 725 (D.C. Cir. 1974) (en banc) (rejecting absolute immunity over compulsory process demanding physical items).   The differing treatment of testimony and documents is consistent with the logic and holdings of these Office of Legal Counsel opinions, as many of the arguments advanced in support of testimonial immunity – such as the difficulty of trying to parse

17

in real time which questions would elicit privileged information – do not apply when considering a request for documents.

All OLC opinions available at the time of the Defendant's default concluded that, under certain circumstances, upon a proper invocation of executive privilege, a presidential adviser may withhold specifically identified privileged documents from his or her subpoena response.   No OLC opinion concluded that a presidential adviser may ignore a subpoena's demand for documents altogether.[6]   Testimonial immunity and executive privilege do not provide a defense for the Defendant's complete failure to produce a single document in response to the Committee's document demand.

### e.   The Question of Whether an Assertion of Executive Privilege Precludes Prosecution Must be Resolved Pretrial

The Parties, and the Court, agree in this case that it is the Court's responsibility pretrial to determine whether a valid invocation of privilege precludes prosecution.   ECF No. 68 at 4 ("Defendant does not dispute that it is the court's responsibility pretrial to determine whether a valid invocation of privilege immunizes a person from prosecution"); Hrg. Tr. 11/4/22 at 10 ("The questions of immunities and privileges, I know of no precedent in any area, and I'm happy for you to provide me some, in which the question of an immunity and whether an immunity or privilege applies is a jury determination.");  *see also United States v. Bulger*, 816 F.3d 137, 146-48 (1st Cir. 2016) (finding the judge was the proper factfinder to determine if the defendant had been given immunity from prosecution by the government in a pretrial decision).

---

[6] *See* Olson Memo; Assertion of Executive Privilege With Respect to Clemency Decision, 23 Op. O.L.C. 1 (1999); Immunity of the Former Counsel to the President From Compelled Congressional Testimony, 31 Op. O.L.C. 191, 192 (2007); Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena, 38 Op. O.L.C. 5 (July 15, 2014); McGahn Opinion.

The question of whether executive privilege was invoked – and if there were an invocation, the implications of such an invocation – should not be submitted to the jury in this case. This Court has already resolved this legal question during the pretrial proceedings, which it can do without usurping the jury's fact-finding role. *Bulger*, 816 F.3d at 146-48 (judges make immunity determinations in criminal prosecutions pretrial without usurping the jury's fact-finding role).[7]

Moreover, while a valid assertion of executive privilege may provide a bar to prosecution, a subpoenaed witness's mistaken belief that executive privilege was asserted or excused compliance is not a defense at all. ECF No. 68 at 30 ("The government is correct that *Licavoli* forecloses a defense premised solely on the Defendant's claimed belief that former President Trump's invocation of executive privilege excused his nonappearance before the Select Committee."). This Court has already found there was no executive privilege assertion. The Defendant should not be permitted to testify about contrary and mistaken beliefs before the jury.[8]

---

[7] A potential conflict between the current and former president underscores why the Court should adjudicate privilege claims as a matter of law. Were a jury confronted with credible evidence both that there an invocation by the former President, and that there was not an invocation (and/or an express decision not to invoke) by the current President, there is no fact finding the jury could do that would resolve the conflict; whether the assertion precludes a contempt charge could only be adjudicated as a matter of law. Moreover – because any assertion of executive privilege would require a legal determination as to its effect rather than a factual question as to Defendant's state of mind – it is necessarily an issue for the Court, not a purely factual element for the jury to determine at trial.

[8] Even if an assertion of executive privilege by a former president could form the basis of an affirmative defense, this Court should require a proffer from the Defendant on the contours of such an assertion before submitting any such question to the jury. Absent such information, and given the complexities of the issues involved, the Government could not otherwise appropriately address the matter before the jury. And, here based on the record, any such proffer could only relate to the Defendant's mistaken belief that executive privilege was both asserted and provided a basis to completely ignore the subpoena – which is not a defense to contempt.

**f.   The Authority of the Committee to Subpoena Defendant Navarro Does Not Depend Upon Whether there was an Invocation of Executive Privilege**

At trial, the Government must prove, among other things, that the Defendant was subpoenaed by the Committee, and that the subpoena sought testimony or information pertinent to the investigation that the Committee was authorized to conduct.  *See Gojack v. United States*, 384 U.S. 702, 716 (1966) ("It can hardly be disputed that a specific, properly authorized subject of inquiry is an essential element of the offense under § 192."); *United States v. McSurely*, 473 F.2d 1178, 1203 (D.C. Cir. 1972) (describing "one of the necessary elements of [the Government's] case" as the "pertinency of its demands to the valid subject of the legislative inquiry*"); United States v. Seeger*, 303 F.2d 478, 482 (2d Cir. 1962) (requiring that the committee was "duly empowered to conduct the investigation, and that the inquiry was within the scope of the grant of authority" (citing *United States v. Rumely*, 345 U.S. 41, 42-43 (1953); *United States v. Lamont*, 236 F.2d 312, 315 (2d Cir. 1956); *United States v. Orman*, 207 F.2d 148, 153 (3d Cir. 1953)).

The Court suggested that whether executive privilege was invoked by former President Trump is a question for the jury to decide because it is a possible defense to his contempt.  Hrg. Tr. 1/27/23 at 22 ("So if what you propose, Mr. Woodward, is that Dr. Navarro would get up on the witness stand or you've got independent evidence that would show an actual invocation, I suppose you could ask me to hold an evidentiary hearing now and consider that in the context of Rule 12, in which case I would be required to make factual findings and determinations. Or if I'm right that it's a potential defense, you put that issue before the jury and it will be for the jury to decide whether, in fact, there was an invocation, because I think the government's position was there was no invocation.").  The Court further suggested that the Government must prove beyond a reasonable doubt that Congress had the authority to summon the Defendant as an element of the contempt offense, and that Congress could not have had such authority if the jury found, as a

factual matter, that there had been an invocation of executive privilege, because such an invocation would have triggered testimonial immunity, negating Congress's authority as a matter of law. Hrg. Tr. 1/27/23 at 62 ("The jury will decide whether Dr. Navarro is telling the truth or not, right? They will have to make that decision. They will be instructed: If you conclude that there was an invocation by the President, that means the Committee had no authority to subpoena him to appear. They lacked authority. The government has not met that element of proof.").

This view appears to be based on the Department of Justice's longstanding position that valid assertion of testimonial immunity by a sitting president precludes prosecution of the witness who follows the president's direction. However, that position is inapplicable here. The Department of Justice has never applied complete testimonial immunity to an assertion of privilege by a former president. *See*, *supra*, page 10; Meadows Litigation Statement of Interest, Exhibit 3 at 2. The Department of Justice agrees that the subpoena in such a case is valid – indeed, the President typically asserts privilege or testimonial immunity only after the Committee has issued a valid subpoena. The Department of Justice's view is, instead, that the President's assertion precludes any effort to enforce the subpoena by way of a finding of, or prosecution for, contempt of Congress, *i.e.*, that Section 192 does not apply in such a case. *See* Olson Memo at 129-42.

Further, subsequent invocations of immunity do not divest Congress of its subpoena authority. Rather, the invocation of immunity limits Congress's authority to seek compliance with a validly issued subpoena for testimony. It is such an effort to enforce a subpoena where the Executive has properly asserted a privilege or immunity that trigger Separation of Powers concerns, not the initial issuance of a subpoena. Congress frequently issues subpoenas consistent with its oversight authority. Congress cannot know, when it identifies individuals with information

21

pertinent to its investigation, when such information will be subject to a privilege assertion – yet it retains the "authority" to issue the subpoena.

For this reason, courts in previous contempt prosecutions required that the government prove the Committee's authority to conduct the investigation pertinent to the information sought by the subpoena.  *See United States v. Bannon*, D.D.C. Case No. 1:21-cr-670, ECF No. 129, at 27-28 (Final Jury Instructions).   This analysis is done at the time the subpoena is issued.  The Court previously referenced in two cases with regard to Congress's subpoena authority: *Gojack v. United States*, 384 U.S. 702 (1966) and *Shelton v. United States*, 404 F.2d 1292, 1300 (D.C. Cir. 1968).  *See* ECF No. 68 at 18 n.4; Hrg. Tr. 1/27/23 at 62-63.   Neither case held that the Committee's authority to issue a subpoena is negated when the subpoena recipient asserts a valid privilege claim.

In *Gojack*, the Court reversed Gojack's contempt conviction because Congress had attempted to compel information unrelated to any inquiry that the relevant committee had been authorized to conduct.   *See Gojack*, 384 U.S. at 704–05 & n.1.  This issue does not exist here where the subpoena falls squarely within the issues delegated to the Committee.  The Court did not opine on the scope of Congress's subpoena power, when, as here, there has been a specific delegation of authority to the relevant Committee by the House of Representatives.

*Shelton* similarly addressed the need for Congress to follow its own rules.  In *Shelton*, the relevant subpoena was issued by counsel to the Committee chairman.  However, the rules governing the Committee's investigation required that the Committee itself authorize any subpoenas.  Shelton's conviction was reversed because the subpoena was issued without the Committee's authorization. *See Shelton*, 327 F.2d 601, 607 (D.C. Cir. 1963) ("Shelton had a right under the Subcommittee charter to have the Subcommittee responsibly consider whether or not he should be subpoenaed before the subpoena issued. Shelton's rights were abridged when the

subpoena was issued without Subcommittee authorization.").  The Shelton Court did not opine that the Executive could somehow divest a Congressional Committee of its authority to issue a subpoena when it was acting within the scope of its delegated authority and pursuant to its own rules.

Because the Court has an obligation to decide the Defendant's claims of privilege and immunity, these claims should never reach the jury – either because the Court finds for the Defendant and dismisses the case, or because the Court has rejected the claims.  Accordingly, the Defendant should be precluded from presenting all evidence and argument regarding any purported privilege or immunity – including through his own testimony – if the Court holds that they did not excuse the Defendant's complete noncompliance with a validly issued subpoena.

### g.  The Entrapment by Estoppel Defense Remains Unavailable to the Defendant

The entrapment by estoppel affirmative defense "arises when an individual criminally prosecuted for an offense reasonably relied on statements made by a government official charged with 'interpreting, administering, or enforcing the law defining the offense' and those statements actively misled the individual to believe that his or her conduct was legal." *United States v. Chrestman*, 525 F. Supp. 3d 14, 29–30 (D.D.C. 2021) (quoting *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)).  Before presenting an entrapment by estoppel defense to the jury, a Defendant must make a threshold showing that: "(1) that a government agent actively misled [the defendant] about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of

law misrepresented, and the substance of the misrepresentation." *Chrestman*, 525 F. Supp. 3d 14, at 31.

On August 17, 2022, the Defendant gave notice of his intention to raise an entrapment by estoppel defense.  ECF No. 36.  He stated that, with respect to the Committee's subpoena, he had a "correct and reasonable understanding that he was not required to comply, and was unable to comply, in light of the instructions he had received from President Trump." *Id.* at 2-4.  He noted that he believed his actions to be consistent with OLC opinions but offered no evidence of reliance upon them at the time of default.  *Id.* The Government responded to the Defendant's notice, and moved in limine to exclude the defense altogether. ECF Nos. 47 and 58.

The Court, on January 19, 2023, agreed, stating that, without a more precise factual proffer, the entrapment by estoppel defense is not available to the Defendant, both as it relates to any instruction he received from former President Trump, and regarding any claimed reliance on OLC opinions.  ECF No. 68 at 34 ("This court finds that, without a more precise factual proffer, the entrapment by estoppel defense is not available to Defendant.").  The Court gave a deadline of February 28, 2023, for the Defendant to provide a more precise factual proffer.  Hrg.  Tr. 1/27/23 at 77.  The Defendant has failed to provide anything responsive by this deadline.  The Defendant has not – and on the facts in this case, cannot – make the required showing for an entrapment by estoppel defense.  Therefore, he should not be permitted to present evidence or argument regarding it at trial.

### h.  The Government's Pending Motion in Limine Should be Granted

This Court has broad discretion to determine whether evidence or argument can properly be presented at trial.  *See United States v. Morgan*, 581 F.2d 933, 936 (D.C. Cir. 1978) ("The district court has wide discretion to admit or exclude evidence where the question is one of

relevancy or materiality"); *United States v. Tarantino*, 846 F.2d 1384, 1410 (D.C. Cir. 1988).  This includes excluding evidence or argument whose only purpose is to encourage the jury to nullify. *See United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975) (affirming trial court's exclusion of evidence relevant only to jury nullification) (citing *Sparf v. United States*, 156 U.S. 51, 106 (1895); *United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006) ("[A] juror . . . who commits jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role.").

For this reason, on September 28, 2022, the Government moved in limine to exclude the Defendant from offering any evidence or argument that executive privilege excused his total non-compliance with the Committee's subpoena.  Consistent with the Court's January 19, 2023, Order, agreeing that there had been no invocation of executive privilege, on January 24, 2023, the Government filed a motion in limine to exclude from trial exhibits on matters it understood the Court had found inadmissible.  ECF No. 70.  This motion remains pending.  The Government respectfully requests that this Court grant the pending motion because – as noted above – the Defendant cannot properly assert a defense based on the concepts of executive privilege or testimonial immunity.

## IV.    Conclusion

For the reasons stated above, the Government respectfully requests that the Court preclude the Defendant from introducing evidence or making legally unsupported arguments to the jury based on executive privilege, any purported testimonial immunity, or any claim of entrapment by estoppel.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/Elizabeth Aloi*
        John Crabb
        Elizabeth Aloi (D.C. Bar No. 1015864)
        Assistant United States Attorneys
        United States Attorney's Office
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-7212 (Aloi)
        elizabeth.aloi@usdoj.gov