UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| | : | CRIMINAL NO. 22-cr-200 (APM) |
| v. | : | |
| | : | |
| PETER K. NAVARRO, | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' REPLY BRIEF REGARDING DEFENDANT NAVARRO'S UNSUPPORTED CLAIMS OF PRIVILEGE AND IMMUNITY

Defendant's brief ignores the central failing of his claims: as previously noted, "even had former President Trump purported to invoke executive privilege or testimonial immunity – of which the Defendant has offered no evidence – those assertions would not have justified the Defendant's categorical non-compliance with the subpoena as to either the documents in his possession or his appearance at the deposition." ECF No. 79 at 1.  Instead, sidestepping its lack of pertinence, Defendant asks the Court to unnecessarily decide a categorical question: whether a former senior Presidential advisor can be prosecuted for contempt of Congress for asserting a former President's privilege to withhold information wholesale from a Congressional committee.[1] Defendant was a former advisor to a former President.[2]  Defendant, despite ample opportunity,

---

[1] The Court has also posed this question.  As explained in the Government's brief, ECF No. 79 at 7, it has never been the position of the Department of Justice that a proper invocation of either executive privilege or testimonial immunity by a former President can itself justify a former official's complete non-compliance with a Congressional subpoena and thereby preclude prosecution of that person for contempt of Congress under Section 192.

[2] While Defendant characterizes his former role as "senior," there is nothing in the 40 years of Office of Legal Counsel (O.L.C.) opinions that supports the notion that Defendant's role as White House Director of Trade and Manufacturing would alone constitute a senior role for purposes of these opinions.

has provided no evidence that the former President even asserted executive privilege as to Defendant's subpoena, let alone that that the former President asserted testimonial immunity. On these facts, and in the face of the sitting President declining to invoke any privilege, Defendant may be prosecuted for contempt of Congress for his utter disregard of the January 6 Select Committee's subpoena and legal questions of executive privilege and testimonial immunity should not be put to the jury.

Defendant fails to confront in any serious way at least two reasons why the Court should exclude such evidence and legal arguments: (1) executive privilege and testimonial immunity cannot preclude prosecution for contempt where the testimony at issue included non-privileged communications with third parties (*see* ECF No. 79 at 15); and (2) testimonial immunity is not a defense to his failure to produce documents (*id*. at 17-18). At most, Defendant devotes only part of a footnote to one of these arguments – *see* ECF No. 81 at 7-8 n.5 – where he fleetingly mentions the Government's argument (ECF No. 79 at 16-17) that immunity could not possibly apply to questions about matters outside Defendant's official duties – but offers no substantive response at all.

Rather, Defendant suggests that he relied on 40 years of precedent when he chose to ignore the Select Committee's subpoena and presumably seeks leave to testify to the same at trial. ECF No. 81 at n.2. Defendant misunderstands the O.L.C. opinions on which he purportedly relied, including the Olson Opinion.[3] As explained in the Government's brief, ECF No. 79 at 10-13, the rationales underlying the Olson Opinion do not apply to privilege assertions by a former President.

Defendant also claims that he was duty bound to comply with the hypothetical "directive"

---

[3] *Prosecution for Contempt of Congress of an Executive Branch Official Who has Asserted a Claim of Privilege*, 8 Op. O.L.C. 101 (May 30, 1984).

from the former President not to appear before the Select Committee. ECF No. 81 at n.1. It may raise due process concerns to prosecute a current presidential aide for complying with an executive privilege assertion from the current President upon the advice of the attorney general, given the responsibilities of the aide to assist the President in the lawful performance of the President's duties. *See* Olson Opinion at 134 ("[T]here could be a serious due process problem if such an official were subjected to criminal penalties for obeying an express Presidential order, an order which was accompanied by advice from the Attorney General that compliance with the Presidential directive was not only consistent with the constitutional duties of the Executive Branch, but also affirmatively necessary in order to aid the President in the performance of his constitutional obligations to take care that the law was faithfully executed."). These due process concerns do not exist with regard to a former official's compliance with a "directive" by a former President; neither the former official nor the former President have any continuing responsibility for executive branch functions, nor does a former President have any governmental power to direct a person not to comply with a subpoena.

A central problem with Defendant's arguments is that he continues to conflate executive privilege with testimonial immunity, the latter of which was never invoked by anyone in connection with defendant's subpoena. In the context of this case, executive privilege assertions would be limited to communications "made in the process of arriving at *presidential* decisions." *In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997) (emphasis added). The privilege may be asserted by both current and former Presidents to withhold communications "made in the process of arriving at *presidential* decisions."[4] *Id.* It does not provide any blanket immunity from

---

[4] Defendant mischaracterizes the nature of the privilege by describing it as that of the former President. ECF No. 81 at 2. As the Government has explained, the presidential communications

appearing in response to a Congressional subpoena for testimony or from producing documents in response to such a subpoena. Here, the January 23, 2023, letter from counsel for the former President—a letter that was sent nearly a year after the date the subpoena required testimony and the production of documents—merely states that Defendant should have asserted executive privilege with respect to his communications with former President Trump himself. There was no suggestion of an invocation at all with respect to Defendant's communications with third parties.

In contrast, testimonial immunity applies with respect to questions (not documents) seeking information from a close presidential adviser concerning "matters that occur[red] during the course of discharging [the adviser's] official duties." *See* Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena, 38 Op. O.L.C. 5 at 7 (July 15, 2014) ("Simas Opinion"). As discussed in the Government's brief, ECF No. 79 at 16, no President, current or former would have the authority to make a categorical invocation of testimonial immunity over all the information sought by the Committee from Defendant. And, like executive privilege, testimonial immunity must be affirmatively invoked.

Moreover, the factual record does not bear out that Defendant, in fact, relied on the precedent to which he cites, as every opinion discussing testimonial immunity involves an invocation by the privilege holder. Defendant has never claimed that he was granted testimonial immunity. Instead, he told the Select Committee "executive privilege"—the related but distinct principle—mere moments after being asked if he would accept service of the Committee's subpoena. This two-word response was sent prior to Defendant even learning what information the Committee sought from him. Because he did not know the information that was sought,

---

privilege protects the *Presidency*, not any particular person holding the office, much less someone who once did. ECF No. 79 at 11.

4

Defendant could not have obtained in the few moments before he sent his response an informed assertion of executive privilege (or immunity) from the former President. Every O.L.C. opinion discussing immunity for contempt would require, at a minimum, an invocation in some form or fashion by a President and a substantive analysis of the information sought by Congress preceding the invocation.  In sum, even if Defendant already had detailed knowledge of 40 years of O.L.C. canon at the time he received the request to accept service, he did not even know what was being sought from him and lacked what everyone who was the subject of a previous O.L.C. opinion on this subject had received: an assertion of not just executive privilege, but also testimonial immunity from the privilege holder *with respect to the particular process served*.  Assuming arguendo Defendant had or could establish such evidentiary predicate, he should not be permitted to do so, given that it would not provide a defense to this prosecution, for the aforementioned reasons.

At bottom, Defendant wants to testify about O.L.C. opinions that have no bearing on him; offer his understanding of why he, nevertheless, viewed them as relevant; and preserve the right to describe communications from the former President that would excuse neither Defendant's failure to appear nor his failure to produce documents.  Testimony and argument on these issues would not be probative of any issue before the jury and could only introduce confusion. Accordingly, such testimony and argument should be precluded.  Defendant may wish to argue some type of good faith mistake and to claim that he genuinely, but erroneously, believed he could simply ignore the Congressional subpoena. As this Court has already ruled, even a good-faith mistake would not excuse non-compliance.  *See* ECF No. 68 at 30-31. Defendant seeks an end-run

around this ruling and wants to introduce evidence that is wholly irrelevant to his *mens rea*.[5] His efforts to do so should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/Elizabeth Aloi*
John Crabb
Elizabeth Aloi (D.C. Bar No. 1015864)
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7212 (Aloi)
elizabeth.aloi@usdoj.gov

---

[5] Nor, for the reasons discussed in the Government's brief, ECF No. 79 at 23-24, is the entrapment by estoppel defense available to Defendant. It is not enough to give notice of an intention to offer the defense, as Defendant misleadingly suggests. ECF No. 81 at n. 2. To put this affirmative defense before the jury, the Court must find that the notice makes a *prima facie* showing of each element, which Defendant has not done and, on these facts, simply cannot do. *See United States v. Chrestman*, 525 F. Supp. 3d 14, 29–31 (D.D.C. 2021); *see also* Hrg. Tr. 1/27/23 at 77; ECF No. 68 at 34 ("This court finds that, without a more precise factual proffer [due February 28, 2023], the entrapment by estoppel defense is not available to Defendant.").