```
                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,          )
                                   )
           Plaintiff,              )
                                   )      CR No. 22-200
                                   )      Washington, D.C.
        vs.                        )      June 21, 2023
                                   )      10:00 a.m.
PETER K. NAVARRO,                  )
                                   )
           Defendant.              )
_____)
```

                    TRANSCRIPT OF MOTION HEARING PROCEEDINGS
                     BEFORE THE HONORABLE AMIT P. MEHTA
                        UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:          Elizabeth Ann Aloi
                             John Crabb, Jr.
                             U.S. ATTORNEY'S OFFICE
                             DISTRICT OF COLUMBIA
                             601 D Street, NW
                             Washington, D.C. 20001
                             (202) 252-7212
                             Email:
                             elizabeth.aloi@usdoj.gov
                             Email: John.D.Crabb@usdoj.gov

APPEARANCES CONTINUED:

For the Defendant:                    John S. Irving, IV
                                      EARTH & WATER LAW LLC
                                      1455 Pennsylvania Avenue, NW
                                      Suite 400
                                      Washington, D.C. 20004
                                      (301) 807-5670
                                      Email: jirving1@verizon.net

                                      John P. Rowley, III
                                      JPROWLEY LAW PLLC
                                      8639 Chase Glen Circle
                                      Fairfax Station, VA 22039
                                      (703) 402-8800
                                      Email:
                                      john.rowley@jprowleylaw.com

                                      Stanley Edmund Woodward, Jr.
                                      BRAND WOODWARD LAW
                                      1808 Park Road NW
                                      Washington, D.C. 20010
                                      (202) 996-7447
                                      Email:
                                      stanley@brandwoodwardlaw.com

                                      Stanley McKennett Brand
                                      BRAND WOODWARD LAW
                                      3 Pebble Ridge Court
                                      Rockville, MD 20854
                                      (202) 258-6597
                                      Email: stanleymbrand@gmail.com

Court Reporter:                       William P. Zaremba
                                      Registered Merit Reporter
                                      Certified Realtime Reporter
                                      Official Court Reporter
                                      E. Barrett Prettyman CH
                                      333 Constitution Avenue, NW
                                      Washington, D.C. 20001
                                      (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

1

COURTROOM DEPUTY:  Good morning, Your Honor.
This is Criminal Case No. 22-200, United States of America
versus Peter K. Navarro.

Elizabeth Aloi and John Crabb, Jr., for the
government.

John Irving, John Rowley, Stanley Brand, and
Stanley Woodward for the defense.

The defendant is appearing in the courtroom for
these proceedings.

THE COURT:  Okay.  Good morning again, everyone.

Mr. Navarro, good morning to you, sir.

All right.  So we're here this morning to discuss
a couple of outstanding matters; one is the follow-on
briefing from the hearing we had back in January, I believe
it was, and then the motion to dismiss that's been filed on
speedy trial grounds.

So why don't we start with the supplemental
briefing and the matters that have been discussed in that
briefing and then we can talk about the motion to dismiss on
speedy trial grounds.

Why don't we begin with the government, Ms. Aloi
or Mr. Crabb.

MR. CRABB:  Good morning, Your Honor.

THE COURT:  Good morning.

1          I don't know if you've got anything prepared but I

2     had some questions I wanted to walk through with you.  So

3     I'm happy to hear from you first or however you wish,

4     whatever -- if you've got something you want to say at the

5     outset, I'm happy to start it there.

6          MR. CRABB:  I'll save the Court any speeches and

7     attempt to answer the Court's questions.

8          THE COURT:  Okay.

9          So I guess what I would like to just walk through

10    with you is what my understanding is now of the Department

11    of Justice's position and what that means for Mr. Navarro.

12         I think the way I'd like to do this is to just

13    start off with a hypothetical.  Let's divorce this from

14    Mr. Navarro's case for a moment.

15         Say hypothetically Congress subpoenaed a former

16    President's senior aide, and that subpoena called for

17    testimony -- let's just stick with testimony for a moment --

18    testimony concerning that aide's official acts, okay?

19         Do I understand correctly that the Department of

20    Justice's view is that that senior aide would have a

21    qualified testimonial immunity in response to that

22    subpoena -- or as to that subpoena?

23         MR. CRABB:  May I just make sure I have the

24    hypothetical correct, Your Honor?

25         THE COURT:  Sure.  Of course.

1          MR. CRABB:  So we have a former President, an aide

2    of a former President is subpoenaed by a congressional

3    committee.  And it's clear, based on the subpoena, that it's

4    going to call for information involving the former aide's

5    official duties?

6          THE COURT:  Correct.

7          MR. CRABB:  Yes, I think -- just to say, I think

8    there would be some procedural things that would have to be

9    done as far as a consideration, an invocation.

10         But as a general answer to the Court's question,

11   that, yes, under those circumstances, the Department's

12   position is that that former aide would have qualified

13   testimonial immunity.

14         And I want to be clear on my part that our

15   position is testimonial immunity and executive privilege are

16   two different things, but I believe the Court's question was

17   about testimonial immunity.

18         THE COURT:  Right.

19         Yeah, no, I understand that.

20         MR. CRABB:  Okay.

21         THE COURT:  Okay.

22         So the next question is, if the Department's

23   position is that such an aide would have qualified

24   testimonial immunity, what role does the current President

25   play in the qualified immunity assessment?

1          MR. CRABB:  I believe, Your Honor, with the

2    qualified immunity, the question is whether that immunity

3    could be overcome by the congressional subpoena, the

4    importance of the information sought.

5          And I think as part of that calculation and

6    balancing whether or not the subpoena would overcome the

7    qualified immunity, the current President's position as to

8    the importance of the testimony, the necessity of the

9    information, the importance of it to the country and/or the

10   Congress specifically would be part of making that

11   evaluation as to whether or not the qualified immunity was

12   overcome.

13          THE COURT:  Okay.

14          So if the qualified immunity analysis is a

15   balancing essentially of executive branch interest, or let's

16   even say more broadly, the interest in preserving the

17   importance of separation of powers, the Executive Branch's

18   interest in ensuring candid conversations in communications,

19   it would balance that against Congress's need.

20          The current President's view would sort of fall on

21   one side of that scale.  And maybe it's in line with, maybe

22   it's at odds with the former President's, but the bottom

23   line is that's a variable in the Department of Justice's

24   estimation; that is, the current President's view is a

25   variable in that balancing?

1          MR. CRABB:  Yes, Your Honor.

2          THE COURT:  Okay.

3          So the next question is this, again, same

4    hypothetical.

5          MR. CRABB:  Sorry, same one or different one?

6          THE COURT:  Same hypothetical.

7          MR. CRABB:  Okay.

8          THE COURT:  From the standpoint of the aide, and

9    say the aide is, as I said, directed to assert qualified

10   immunity, qualified testimonial immunity in response to the

11   congressional subpoena, as a practical matter from the

12   perspective of the aide that is subpoenaed, what is that

13   aide to do in order to assert the immunity?

14         MR. CRABB:  The immunity would need to be

15   communicated to the issuer of the subpoena, whichever part

16   of Congress issued the subpoena.

17         Is the Court asking whether the aide personally

18   would have to communicate the invocation or not?

19         THE COURT:  I guess what I'm curious about -- and

20   maybe I should have been more precise in my question.

21         Dr. Navarro takes the position that the immunity

22   in the hypothetical I've just described is an absolute

23   immunity, I believe that's their position.  And that,

24   I think, is how they interpret the OLC opinions.  We can

25   talk about that in a moment.  But I believe they believe it

1    is an absolute immunity.  And that so long as that assertion

2    of immunity is communicated to Congress, that aide doesn't

3    need to go to the Hill, right?

4            Let me ask you first:  Does the DOJ agree with

5    that position; that is, if the aide was entitled to absolute

6    immunity -- let's leave aside whether you think he is or

7    not.  If the aide was entitled to receive absolute immunity,

8    that aide could communicate to the Hill, I'm invoking

9    immunity or I've been told to assert immunity, I don't need

10   to show up, right?

11           MR. CRABB:  Yes.

12           Could I just -- to make sure we're on the same

13   page on the two points?

14           THE COURT:  Yes, of course.

15           MR. CRABB:  Yes, I don't mean to dodge -- the

16   answer is yes.

17           But we're assuming, I believe, in this

18   hypothetical that, one, the subpoena calls for information

19   that is related to the official duties.

20           THE COURT:  Correct.

21           MR. CRABB:  And it's been the testimonial --

22   I mean, we're talking about testimonial immunity, not

23   executive privilege.

24           THE COURT:  Correct.

25           MR. CRABB:  Yes, I believe that's what testimonial

1    immunity is about.  You don't have to show up.  It's not a

2    question-by-question invocation.  It's a broader

3    proposition.

4              THE COURT:  Right.  Okay.

5              So if we're in agreement that that's how absolute

6    testimonial immunity looks and operates, how is that

7    different than how a qualified testimonial immunity would

8    work and operate from the aide's perspective who receives

9    the subpoena?

10             MR. CRABB:  I'm sorry, different in what respect,

11   Your Honor?

12             THE COURT:  Well, that's what I'm trying to figure

13   out; in other words --

14             MR. CRABB:  How it would be --

15             THE COURT:  Right.

16             In other words, the aide who is receiving the

17   subpoena.  This is -- now we're back to my hypothetical of

18   the former President's aide who gets a subpoena with respect

19   to official acts and is directed by the former President not

20   to testify, the Department of Justice's position is that in

21   those circumstances, it's qualified immunity, it's not

22   absolute immunity.

23             In that situation, what is the aide to do or how

24   is the aide's conduct supposed to be any different, in your

25   view, than the aide who's entitled to absolute immunity, if

1  at all?

2          MR. CRABB:  Obviously stop me if I'm not following

3  the Court's point.  But is the question:  How does the aide

4  vindicate this right?

5          THE COURT:  Right.

6          What does the aide do?  In other words, does that

7  aide do something any differently than the aide who's got

8  absolute immunity?

9          Or is it simply what the aide who has absolute

10  immunity does, which is, look, I'm communicating my

11  assertion of immunity.  And in that case, I'm not going to

12  show up.  And if you, Congress, want to compel me to show

13  up, if, for example, you think absolute -- you know,

14  qualified immunity can be overcome, you've got to go to

15  court.

16          Is that how it would play out in your view?

17          MR. CRABB:  It does in respect, if I'm following,

18  I don't believe that the adjudication or resolution of the

19  qualified immunity would be resolved by the committee.  Is

20  that the question?

21          THE COURT:  No.  That's what I'm saying.  Go to

22  court.

23          MR. CRABB:  Right.

24          THE COURT:  You've got to go to court.  You've got

25  to come to the U.S. District Court in the

1    District of Columbia.

2              The committee comes in and says, the aide is

3    asserting qualified immunity.  Our position is either, one,

4    there is no such immunity; and, two, if it is qualified,

5    we've overcome it, right?

6              MR. CRABB:  Right.

7              THE COURT:  And in that case, the Court would

8    either direct the aide to testify or not testify.  And if

9    the aide refused to testify, can be charged with contempt.

10             MR. CRABB:  Correct.

11             THE COURT:  Right.

12             Okay.

13             MR. CRABB:  Could I?  May I?

14             THE COURT:  Yeah.

15             MR. CRABB:  I agree with what the Court said.

16             We know a real-world example of -- and not saying

17   there's another way this could be done, I'm not saying to

18   the exclusion of the way the Court pointed out.  In fact,

19   where the qualified immunity was most recently articulated

20   by the Department in the *Meadows* matter --

21             THE COURT:  Right.

22             MR. CRABB:  -- where what Mr. Meadows did after

23   receiving a subpoena is he went to court and moved to quash

24   it.  And in that proceeding is when the Department stated

25   that they believed, based on his status, that he had a

1    qualified immunity to be adjudicated.

2              THE COURT:  Right.

3              MR. CRABB:  And I believe that the Court's

4    question and hypothetical dovetailed with one of the issues

5    that came up back in January.  It's like, what is the effect

6    and what is the meaning of testimonial immunity, whether it

7    be qualified -- well, if it fits if it's qualified -- but

8    has it been overcome; or just as absolute testimonial

9    immunity, argue is that something that -- and it's happened

10   here for all intents and purposes, is an invocation of

11   immunity, which would be litigated pretrial and a

12   determination will be made whether or not the person at

13   issue, the recipient of the subpoena, had immunity.

14             It's not a question, it doesn't go to the validity

15   of the subpoena which was issued previously.  It doesn't

16   affect the validity of the subpoena one way or the other.

17   That's adjudicated or evaluated on other factors but...

18             THE COURT:  We -- well...

19             MR. CRABB:  I'm getting off track.

20             THE COURT:  No, no, you're not getting off track,

21   because you're actually going to the place I wanted to go to

22   next, which is, okay -- so you'll bear with me in

23   hypothetical world; I promise I'll get to Dr. Navarro in a

24   second.

25             All right.  So the former aide of the former

1   President who was directed to assert qualified immunity,

2   testimonial immunity concerning official acts does so, he

3   doesn't show up.

4           In your view, in the Department of Justice's view,

5   is that aide's conduct subject to the contempt statute?

6           MR. CRABB:  This is a former aide, received a

7   subpoena.  And we're assuming that the former President did

8   the proper things and invoked testimonial immunity, which,

9   based on the former status, is qualified immunity.

10          And I'm sorry, so the Court's question is then

11  would that be prosecuted?

12          THE COURT:  Correct.

13          If the former aide says, I'm not showing up, and

14  then Congress, instead of coming to court, passes a contempt

15  resolution, in the Department of Justice's view, is that

16  aide subject to the contempt statute?

17          MR. CRABB:  I think the answer to that question,

18  Your Honor, turns on whether or not the qualified immunity

19  has been overcome, because if there is testimonial immunity,

20  the Department's position is that that person cannot be

21  prosecuted for contempt.

22          THE COURT:  Right, right.

23          But how do we know?

24          In other words, in my hypothetical -- and you'll

25  forgive me, because this is going to all make sense in a

1    second.

2          But in my hypothetical, Congress hasn't done

3    anything, okay?

4          Congress has not come to the U.S. District Court

5    and said, we're trying to compel this testimony.  What

6    they've done instead is said, we're going to adopt a

7    contempt resolution and we're going to refer it to the

8    Department of Justice for prosecution, okay?

9          The Department of Justice gets that referral.  Is

10   it the Department of Justice's position that an aide in that

11   position, that is, former aide, former President, official

12   acts, communicates it to Congress that, I'm asserting the

13   testimonial immunity, I'm not showing up.  Is that aide

14   subject to contempt?

15         MR. CRABB:  I'm sorry, Your Honor, because --

16   I think I'm missing the Court's point because -- I know I'm

17   repeating myself now -- that turns on whether or not the

18   qualified immunity is overcome by the competing need.

19         THE COURT:  It's not.

20         Well, it's interesting you say that, because in

21   the *Harriet Miers* -- not *Harriet Miers*.  In the -- I guess

22   it also is true in *Harriet Miers*.

23         But in the original *Olson* OLC opinion, the

24   Department of Justice's position was that an aide, the

25   current President's aide, who, at the direction of the

1   President, doesn't show up -- or actually I should say --

2   doesn't produce records that are subject to an executive

3   privilege invocation, that that aide can't be subject to a

4   prosecution for contempt because that conduct falls outside

5   the scope of the contempt statute, right?

6           MR. CRABB:  But I believe that's -- yes, but

7   that's a function of the conduct falling within valid

8   testimonial immunity.

9           And if it's a person who has a qualified

10  testimonial immunity before -- that has to be resolved to

11  determine whether or not they were immune from --

12          THE COURT:  So how does the aide do that?

13          In other words, again, this is very practical.

14  The aide says, hey, I'm not showing up because I'm invoking

15  qualified immunity.  Congress doesn't do anything other than

16  pass a contempt resolution.  The Department of Justice gets

17  that set of facts.  Is that aide subject to the contempt

18  statute?

19          In other words, how does that aide know whether

20  his testimony is qualified -- subject to qualified immunity

21  or not?  He's been told by his former boss to invoke.  He

22  does what his former boss says because the Department of

23  Justice has told him he's got qualified immunity.  And

24  because Congress doesn't go to the court to have that

25  qualified immunity resolved, you mean to say that that aide

1   could still be subject to contempt?

2          MR. CRABB:  Sorry, I didn't want to interrupt the

3   Court.

4          THE COURT:  I'm done.

5          MR. CRABB:  May I give a preface?  I promise I'll

6   attempt to answer the question.

7          THE COURT:  Yeah, sure.

8          MR. CRABB:  I understand as the Court said, this

9   is a hypo.

10          THE COURT:  Right.

11          I'm going to get to Dr. Navarro in a second, I

12   promise.

13          MR. CRABB:  Well, I was only saying that -- as the

14   Court is aware, some of these issues have not actually

15   happened, and I want to be careful --

16          THE COURT:  I know.

17          MR. CRABB:  -- as I'm explaining what

18   I understand.

19          But, one, I apologize, but to repeat myself, and

20   I'll try to get there, but the ultimate question, I believe,

21   is whether or not there is valid testimonial immunity as to

22   whether or not the person in the Court's hypo is subject to

23   a contempt prosecution.  And I understand, I believe, what

24   the Court's asking, okay, great, but how do we assess that,

25   how do we determine that.

1          THE COURT:  More importantly, how does the aide

2     know?

3          MR. CRABB:  Okay.

4          One way -- I'm not saying it's obligatory and it's

5     certainly not the only way -- it's what we've already

6     referred to -- but Mr. Meadows went and moved to quash the

7     subpoena, invoking testimonial immunity and could be

8     litigated in that fashion.

9          THE COURT:  Right.

10         But we now know that that can't happen, right,

11    because Judge Nichols dismissed Mr. Meadows' case because --

12         MR. CRABB:  He found it invoked --

13         THE COURT:  -- Speech or Debate Clause.  So you

14    really can't do that.

15         MR. CRABB:  To some extent, yes, Your Honor.

16         What I would say is that, putting that option

17    aside, that if -- in the Court's hypo -- and this -- the

18    person at issue, the recipient of the subpoena had qualified

19    immunity, in the Department's view, that an assessment would

20    be made by the Department as to whether or not that

21    qualified immunity had been overcome.

22         Again, I'm sorry but I want to stress in this

23    hypothetical world, I believe that would be communicated to

24    the recipient of the subpoena that, in the Department's

25    view, the invocation gave qualified immunity.  And under the

1    circumstances of that subpoena, the competing interest, the

2    qualified immunity has been overcome, so there is no

3    testimonial immunity.

4              THE COURT:  So just to put a pause on it.

5              So your view is that the aide in my hypothetical

6    could be subject to contempt only after he is advised that

7    the Department believes that there is no qualified immunity?

8              MR. CRABB:  I'm sorry, Your Honor.  I don't mean

9    to say "only."

10             THE COURT:  Because here's what I'm trying to

11   understand, okay, and this will come to Dr. Navarro in a

12   moment.

13             If I am a former aide of a President who gets a

14   subpoena, and you're now telling me that aide is subject to

15   qualified testimonial immunity, my former boss says, don't

16   show up, invoke immunity, and that aide does exactly what

17   his boss has told him to do, I find it hard to believe that

18   in that circumstance, that aide's conduct, the refusal to go

19   to the Hill, the invocation of an actual immunity, can be

20   prosecuted by the contempt statute.

21             Because what you're then saying is that the aide

22   has to subject himself or herself to potential criminal

23   prosecution in order to vindicate the immunity.  And that

24   can't be right and that's not consistent with what the

25   Department of Justice's position has been with respect to

1  absolute immunity.

2          MR. CRABB:  I don't mean to mince words with the

3  Court, but I believe the Court said "potential prosecution."

4          Yes, determining as to whether or not this

5  qualified immunity survives or is overcome by the other

6  interest, and if it's the latter case, that qualified

7  immunity is overcome by other interests, the person who

8  received a subpoena is subject to contempt prosecution.

9          I didn't mean to say earlier that there's some

10 rule --

11         THE COURT:  But, again, I want to pause, because

12 this is all really -- I promise you this is important to me;

13 I keep saying that.

14         MR. CRABB:  May I interrupt?

15         THE COURT:  Yeah, sure, go ahead.

16         MR. CRABB:  I'm sorry to interrupt.

17         But I can't see a scenario where, in the Court's

18 hypothetical, and the recipient's subpoena invokes

19 testimonial immunity, in the estimation of the Department,

20 it's qualified testimonial immunity.

21         And however it's resolved, whether it's through a

22 civil lawsuit, I understand what the Court said, there are

23 roadblocks there, or in some pretrial litigation, if there's

24 a determination made that the qualified immunity doesn't

25 survive, I have to believe that that person would be given

```
 1   the opportunity, them being told, no, you had qualified
 2   immunity, that qualified immunity doesn't survive, which is
 3   the same as saying, you don't have testimonial immunity, so
 4   you have to comply with the subpoena.
 5          I can't imagine a scenario where the person
 6   wouldn't have the opportunity to purge -- maybe that's not
 7   the right word -- but to comply with the subpoena once the
 8   fact that the qualified --
 9          THE COURT:  Okay.
10          MR. CRABB:  -- immunity doesn't -- the immunity
11   doesn't exist.
12          So I don't believe someone would, having, as
13   I understand the Court saying, in good faith doing what the
14   former President told them to do, invoking immunity.  But
15   then once it's later resolved in whatever form, that it's
16   qualified and it doesn't fit here to overcome the other
17   considerations, there would be an opportunity to testify.
18          Now, if one persisted in refusing to testify after
19   it's been resolved that the person doesn't have testimonial
20   immunity, I believe they absolutely would be subject to a
21   contempt prosecution.
22          THE COURT:  Okay.  I think we're on the same page.
23          MR. CRABB:  Sorry for the interruption.
24          THE COURT:  Okay.
25          All right.  I think we're on the same page now.
```

1    MR. CRABB:  Thank you for indulging my monologue.

2    THE COURT:  No, no, that's important, because

3  I think what I hear you saying is that in this hypothetical

4  that I've just spun out, it's only after that aide is made

5  aware that there, in fact, is no qualified immunity; that

6  it's been overcome; that if they then were to persist in not

7  testifying, that the person could be subject to contempt, is

8  what I hear you saying.

9    MR. CRABB:  Right.

10    I don't --

11    THE COURT:  Right.

12    MR. CRABB:  I can't imagine a world where a

13  person, who, in good faith, invoked qualified immunity or

14  testimonial immunity, we believe is qualified, and then it

15  was determined by the appropriate forum otherwise --

16    THE COURT:  Okay.

17    MR. CRABB:  -- wouldn't have an opportunity to act

18  accordingly.

19    THE COURT:  Okay.  All right.

20    Let's turn to Dr. Navarro.

21    Bear with me with the following, I know you have a

22  different view.  But let's assume for a moment that

23  President Trump invoked qualified immunity, or put it

24  differently, directed Dr. Navarro to invoke immunity,

25  whether it's qualified, absolute, I'm not sure it really

1    matters, but he directed him to do so, all right?  So that's

2    my operating assumption.

3              Dr. Navarro, as the facts show, communicates that

4    assertion, or an assertion, which he says executive

5    privilege, I get it, and I know there's a difference but he

6    says executive privilege to Congress.

7              Congress then says to him, look, we think there

8    are parts of this subpoena as to which you can testify that

9    have nothing to do with official acts.  And instead of

10   coming to Federal District Court to compel his testimony,

11   Congress passes the contempt statute -- passes the contempt

12   resolution, it comes to the Department of Justice.  Okay,

13   that's our now -- that's our scenario, including my

14   hypothetical factual predicate.

15             In that situation, why is Dr. Navarro subject to

16   contempt for following the instructions of the former

17   President, that the Department of Justice has now said at a

18   minimum has the potential to be subject to qualified

19   immunity?

20             MR. CRABB:  Well, again, we're -- I understand

21   we're now using names, but we're still in a hypothetical,

22   correct?

23             THE COURT:  Correct, a hypothetical that, in fact,

24   that President Trump -- say there's a letter, okay?  There's

25   a letter, Dr. Navarro, you go invoke, and he does so.  In

1    that scenario in our facts, in our set of facts that we all

2    have now, why is he subject to contempt if he doesn't show

3    up?

4             MR. CRABB:  I have to apologize again, I don't

5    mean to parse words with the Court.  But when you say

6    "subject to"?

7             THE COURT:  Right, prosecutable for contempt.

8             MR. CRABB:  Okay.

9             But -- and I believe this is an assumption, but

10   I think the way this would, should, and actually, in large

11   measure, has played out in this case, that that's something

12   that would be litigated pretrial if someone has immunity --

13            THE COURT:  In a criminal case or in a civil

14   context?

15            MR. CRABB:  Well, it would depend if the person

16   who received the subpoena hadn't attempted some civil

17   action.

18            If the contempt citation is passed by Congress and

19   a grand jury returns the indictment and the Department

20   determines to go forward on that prosecution for contempt,

21   I believe the appropriate thing to do under those

22   circumstances would be to move to dismiss the indictment,

23   saying, I have testimonial immunity that immunizes me from

24   this prosection.  We're in the *Bulger* world at that point,

25   and that would be an appropriate thing for the Court to

1    consider whether or not the person had testimonial immunity.

2            If the Court concluded there was testimonial

3    immunity, you dismiss the case.  If the Court determined it

4    was qualified testimonial immunity and then looked at the

5    different factors and then determined that the qualified

6    immunity was not overcome, so there was, indeed, immunity,

7    that would be a valid defense of the case and a basis for

8    dismissal, and we believe, in large measure, that's what

9    happened here.

10           I believe what the Court said is it didn't have to

11   get into some of these thornier issues because there was no

12   evidence presented to the Court that any of these things had

13   happened to actually have testimonial immunity.  But if they

14   had, that would be an issue for the Court to determine.  And

15   if the Court determined there was valid testimonial

16   immunity, that would be a basis to dismiss the indictment

17   and block the prosecution.

18           THE COURT:  Okay.

19           So why isn't the question of whether, in fact,

20   there was an invocation subject to a factual determination

21   by a jury?

22           And the reason I ask is this.  At least according

23   to the *Olson* memo, a former aide, or in that case it was a

24   current aide, but an aide who follows the President's

25   instruction to invoke and does so properly, that conduct

1    falls outside the contempt statute, right?  I mean, that's

2    the position of the *Olson* memo, okay?

3              You know, as an aside and relatedly, I mean, in

4    the *Meadows* case, you all also suggested that that's also a

5    restraint; that is, the immunity is also a restraint on

6    Congress's authority to issue or compel such testimony.  And

7    there's language in there that suggests that the immunity

8    can also be thought of as a restraint on Congress's

9    authority, and I can read that portion to you, if that's

10   helpful, in a moment.

11             So why then can't a jury decide whether the

12   conduct here rises to criminal conduct if there's a factual

13   dispute about whether the President invoked or not?

14             MR. CRABB:  Your Honor, if I may, I don't believe

15   that's a "yes" or "no" question.

16             I think the question about whether or not an

17   invocation of executive privilege, or call it for these

18   purposes testimonial immunity, whether or not it's an issue

19   for the jury to determine, I think it's not either "yes" or

20   "no", it's not black or white.

21             I believe it depends on the context and in what

22   mechanism it's being presented, if it's coming up in the

23   context we were just discussing, which is a person saying,

24   I have testimonial immunity, therefore, I am immune --

25   excuse me -- from these charges.  That's something for a

1    court to decide.

2          There could be circumstances where arguably an

3    invocation of immunity and the circumstances, whatever back

4    and forth happened between the recipient of the subpoena and

5    the person invoking privilege, the President or former

6    President, there could be circumstances, not the one about

7    immunity for prosecution, but other circumstances, where

8    it would be a factual question for the jury.

9          For instance, it seems like that question would be

10   germane to an affirmative defense of entrapment by estoppel.

11   And if that defense were being presented to the jury, that

12   arguably would be very relevant to it.

13         So I believe that whether or not the jury -- it's

14   a jury question as to whether there was an invocation

15   depends on what context that proposition is being presented

16   in, whether it's to bar the prosecution based on immunity or

17   it's part of an affirmative defense.

18         THE COURT:  So to be clear, I'm not sure what you

19   mean by "bar the prosecution."

20         I want to be clear here, because I don't

21   understand the immunity to be tantamount to prosecute -- I'm

22   immune from prosecution.  That's not what we're talking

23   about here.  We're not talking about immunity from

24   prosecution.  We're talking about conduct that falls outside

25   the scope of the statute, right?

1          The *Olson* memo in that scenario said -- and the

2     same was true in *Miers*, right, the aide did as the President

3     directed.  That conduct is not subject to contempt; it falls

4     outside the contempt statute.  It's not a question of

5     immunity, it's not a question of can the prosecution be

6     brought.  It is, does the conduct fall within the

7     constraints of the statute, right?

8          MR. CRABB:  Yes, I'm sorry I used a -- I was not

9     as precise in my language.

10          THE COURT:  No, it's an important issue, because

11    it seems to me that the question of immunity, and whether

12    somebody is immune from prosecution, that really is

13    something that ought to be determined by a court pretrial.

14    I mean, I think that's right.

15          But here when the question of whether somebody is

16    immune or whether -- really put it differently, whether the

17    person follows the instruction of the President that is

18    cloaked by the prospect of immunity and the person follows

19    that instruction, why that factual dispute about whether

20    there was, in fact, an instruction to begin with, is not a

21    jury question.

22          MR. CRABB:  Well, again, to get back to what I

23    said, it depends on how it comes up.

24          If it's -- the Court, I believe, has already ruled

25    that it doesn't negate an element, it doesn't negate

 1  wilfulness.  So there's no reason for the jury to hear --

 2  even if there were ironclad evidence that the former

 3  President had told the defendant, I'm invoking executive

 4  privilege, testimonial immunity, you're not coming to court,

 5  I believe the Court already ruled, so what, that doesn't

 6  negate an element of the offense, that doesn't go to

 7  wilfulness.

 8          THE COURT:  I don't know that that's what --

 9  you'll forgive me.  I'm not sure that's what I've held.

10          I thought that what I held was that because

11  there's no evidence, I don't need to reach the issue

12  essentially.  He presented no evidence that, in fact, he

13  had -- that the President had invoked, and so I was left

14  with a blank record.

15          MR. CRABB:  Well --

16          THE COURT:  And then in terms of -- go ahead.

17  Maybe I'm misrecollecting.

18          MR. CRABB:  I'm probably misreading.

19          THE COURT:  No, no.

20          MR. CRABB:  I'm going from the Court's opinion

21  from January 19th.

22          Page 11.  The Court's already dealt with the

23  motion to dismiss and is dealing with the government's

24  motion in limine.

25          And what I was referring to where the Court said,

1    "Defendant similarly cannot argue that his failure to appear

2    was unintentional or not deliberate because he believed in

3    good faith that President Trump's purported invocation of

4    executive privilege excused his appearance."

5              THE COURT:  Right.

6              MR. CRABB:  And there's a footnote -- what -- if

7    the Court says I'll now or later address whether or not an

8    invocation is germane to either entrapment by estoppel or a

9    public-authority defense.

10             THE COURT:  Right.

11             MR. CRABB:  But what I understand that -- the

12   Court to have said, it doesn't go to an element.

13             THE COURT:  Right, I agree with that.  I mean,

14   I don't disagree with that.

15             What I meant by that is that his belief, his

16   subjective belief -- you know, there's not a mistake of fact

17   defense, right?

18             MR. CRABB:  Right.

19             THE COURT:  He can't come in and say, well, I

20   thought the President did this when there's no factual basis

21   to do that.

22             He can't come in and defend as a subjective matter

23   and say, I thought the President had invoked, right?

24   There's no mistake of fact defense.

25             I understand him to be potentially advocating a

1    different defense, which is, there, in fact, was an

2    instruction that, in fact, he was told -- I don't know if he

3    was or not -- but there was, in fact, an instruction to

4    invoke.

5              And so I get back to my question.  If the question

6    for a jury ultimately is, was the conduct contemptuous, and

7    the determination of whether the conduct was contemptuous

8    rises or falls on an instruction by the President to not go

9    testify, why is that factual dispute not something the jury

10   can consider and resolve?  Why is it for me to make that

11   decision as a court, as a judge?

12             MR. CRABB:  Well, again, Your Honor, it's our

13   position that it depends on how that factor is being used.

14             If it is being used, as I've already said and

15   I'm sorry to repeat myself, as trying to establish, for

16   instance, an entrapment by estoppel defense, that might well

17   be germane.

18             But if it is attempting to use that to say, I'm

19   immune from prosecution here, I have testimonial immunity,

20   that is classically and appropriately something that the

21   Court decides.

22             THE COURT:  Again, I want to go back and be clear.

23             This isn't a strict question of immunity, it is a

24   question of, does the conduct rise to contempt, okay?

25             I mean, let's use a different hypothetical.  Let's

1   go back to the facts as they were in the *Olson* memo, right?

2   Or in the -- let's use Harriet Miers as an example, right?

3          President Bush -- I'll put it differently.

4          Harriet Miers tells Congress, I'm not showing up.

5   I've been told by the President to invoke testimonial

6   immunity.  I'm not going, okay?  That's -- we know that

7   happened as a factual matter.

8          Now say hypothetically there was a dispute as to

9   whether President Bush had, in fact, directed her not to

10  show up, a factual dispute.

11         The Department of Justice says President Bush,

12  there's no evidence that he did this, there's no evidence

13  that he made the -- directed her.  Ms. Miers' defense is,

14  yeah, he told me to do this.

15         It's not clear to me why the outcome, at least in

16  terms of the Department of Justice's evaluation of that --

17  the Department of Justice says, in the *Bradbury* memo, that

18  if there's evidence that the President directed Ms. Miers to

19  invoke, she cannot be subject to contempt, right?  Because

20  it falls outside the contempt statute because that's what we

21  said in the *Olson* memo a decade-plus ago.

22         And so what I'm getting at is, what if in the

23  *Miers* situation there was a factual dispute as to whether

24  President Bush had invoked?  It seems to me that the end

25  result would rise and fall on the resolution of the fact

1    tips, and the end result being, was it contempt or was it

2    not contempt.

3            So would you agree with me with that, say -- the

4    *Miers* situation; that if there was a dispute as to whether

5    the President hadn't invoked, that that dispute would need

6    to be factually resolved by a jury to determine whether the

7    conduct was contemptuous or not?

8            MR. CRABB:  No, Your Honor, I don't agree.

9            THE COURT:  Why not?

10           MR. CRABB:  I would ask the Court to consider

11   looking at it from this prism.

12           What a jury in this case or any other criminal

13   case's function is is to determine whether the elements of

14   the crime have been proven beyond a reasonable doubt.  And

15   what we're talking about right now is not an element of the

16   contempt statute.  What we're talking about right now are

17   things about whether the person -- it's appropriate or legal

18   to prosecute the person for contempt.

19           And there's other examples, many examples courts

20   deal with that don't deal with elements, such as if a

21   defendant believes that there's double jeopardy, that's

22   something, or selective prosecution.  These are things for

23   the Court to decide but they don't go to the elements of the

24   crime.  Those are for the jury to decide.

25           THE COURT:  You'll forgive me; I don't want to be

1   difficult.

2           MR. CRABB:  Sorry.

3           THE COURT:  No, no, don't apologize.

4           But that's not what your position has been with

5   respect to this set of facts.

6           And what I mean by that is, the *Olson* memo is very

7   clear, and so is the *Bradbury* memo, that the refusal to

8   appear in that circumstance, it's not a matter of

9   prosecutorial discretion that we don't prosecute in that

10  circumstance, it's that the statute doesn't cover the

11  conduct.

12          That's what the OLC memos say.  They say the

13  statute doesn't cover that conduct.  It's not a matter of

14  we're going to exercise our discretion or not.  It's that

15  the statute doesn't reach it.

16          MR. CRABB:  So I apologize, Your Honor, I didn't

17  mean to suggest there was prosecutorial discretion.

18  I misspoke.

19          What I meant to say is, there's a question about

20  whether it's prosecutable.  And not as a discretionary

21  matter, as a legal matter.  And that's akin to a question of

22  whether, even if someone satisfies all the elements of a

23  crime but is barred by double jeopardy, for instance, that's

24  not for the jury to decide, that's for the Court to decide;

25  or it's barred by some other selective prosecution,

```
1    vindictive prosecution.  This is akin to those types of
2    things about whether or not the prosecution could go forward
3    not as a discretionary matter but as a legal matter.  And
4    those are issues for the Court to decide.  They don't go to
5    the elements of the crime itself.
6              THE COURT:  But I don't -- maybe it's a
7    distinction that you're seeing that I'm not, which is --
8              MR. CRABB:  That's my failing.
9              THE COURT:  No, no.  I -- look, I mean, we can
10   have a conversation -- that's why we're having this
11   discussion.
12             I mean, I see things like double jeopardy, those
13   are legal propositions that have -- I mean obviously have
14   something to do with the conduct because you have to define
15   it.
16             But this is really about whether the conduct
17   qualifies as a crime, right?  And that's what juries are
18   asked to determine all the time, you know, does the conduct
19   qualify as a crime.
20             The indictment in this case clearly believes that
21   a crime was committed, right.  The grand jury determined
22   that a crime of contempt was committed, part of which was a
23   presentation of evidence that there was no invocation.
24             Dr. Navarro, it seems to me, has the opportunity
25   at a trial to come forward and say there was an invocation.
```

 1    You, Department of Justice, are wrong, there was an

 2    invocation.

 3            And if the jury is convinced that there was an

 4    invocation, then my conduct is not contemptuous, it is not

 5    illegal.  And what you've charged me with is not unlawful;

 6    that is, the failure to show up.

 7            So, again, it just seems to me that's a jury

 8    question.  I was confused why that is not a jury question;

 9    in other words, why it should be for me as a judge to

10    resolve a factual dispute that goes to the scope of the

11    statute.

12            It almost feels like a summary judgment issue in a

13    civil case, but there's no summary judgment in a criminal

14    case.

15            MR. CRABB:  True.

16            I don't see it as a summary judgment at all.

17            I think the distinction is a very important one as

18    to what's in the purview of the jury, and the jury is to

19    determine whether or not the elements of the offense have

20    been proven beyond a reasonable doubt.

21            And what I understand the Court to have been

22    addressing most recently doesn't go to that.  So that's for

23    the Court to decide.  I understand the Court thinks some of

24    my analogies are at best ill-fitting or perhaps completely

25    off base.

1            But there are things that determine whether or not

2     a prosecution -- and I didn't mean to say "discretionary,"

3     but whether there is a legal bar to a prosecution that a

4     court decides pretrial.

5            The only thing that a jury should decide -- well,

6     I should say at least two things:  One, whether or not the

7     elements of the offense have been proven beyond a reasonable

8     doubt, and this does not get to an element; and, second, if

9     the defense chooses to present an affirmative defense,

10    whether that affirmative defense carries the day.

11           And we understand that questions about an

12    invocation and about any communications between the

13    recipient of the subpoena and the holder of the privilege

14    could well bear on the issues I mentioned in the second

15    category coming to affirmative defenses.

16           We don't believe they have any bearing whatsoever

17    on proving elements of the offense.  That's why we don't

18    think -- even though it's a factual question, it's not a

19    factual question that's appropriately given to the jury.

20    There are a number of factual things that courts decide

21    pretrial, even during trial, for that matter.

22           So I don't believe this question turns on whether

23    it's a factual question; therefore, it's a jury question.

24    Not necessarily.  It depends on other factors.  And the jury

25    should be restricted to determining whether the elements of

1    the offense have been established beyond a reasonable doubt,

2    and if an affirmative defense is presented, whether that

3    carries the day.

4              THE COURT:  So in the *Miers* case, let me read you

5    what you wrote, okay -- not you personally but the

6    Department of Justice wrote, because this goes to the

7    question of whether this has to do with an element or not.

8              On page 5 of that submission, the Department of

9    Justice wrote, "OLC and the courts have often described" the

10   principle -- "that principle" -- as a form of testimonial

11   immunity."

12             Let me back up; let me read the first sentence.

13             "Many of the same principles that preclude

14   Congress from summoning the President to appear before a

15   legislative committee also require immunity from compelled

16   congressional testimony from a sitting President's immediate

17   advisers."

18             Next sentence:  "OLC and the courts have often

19   described that principle as a form of testimonial immunity.

20   But it can also be described as a limit on Congress's

21   investigative authority that is required by the

22   constitutional separation of powers."

23             On page 8, footnote 5, government wrote, "The

24   testimonial immunity could also be understood as a limit on

25   Congress's implied investigative power in the form of a

1    requirement that Congress must make a specific showing,

2    above and beyond what would be required to subpoena an

3    ordinary witness, to demonstrate that its asserted

4    legislative purpose warrants a significant step of

5    compelling a former media adviser to testify about his or

6    her official duties."

7              I read those passages to suggest that what we've

8    just been talking about can also be construed as a limit on

9    Congress's authority.  And what we talked about last time is

10   that the government, one of the elements it has to prove, is

11   that the subpoena is authorized.

12             And so perhaps we look at this in a slightly

13   different view, through your prism.  Why then isn't the

14   question of whether there was in this case an invocation go

15   to the element of authority, because if it did, if there was

16   an invocation, he perhaps would have something akin to

17   qualified immunity.

18             So I sort of now get at the same issue about why

19   this doesn't go to the jury from the lens that you're asking

20   me to look at it as, which is that, it goes to an element,

21   because at least you've suggested in the *Miers* decision,

22   that it also may have to do with the authority of Congress

23   to compel testimony.

24             MR. CRABB:  Your Honor, I would ask the Court to

25   consider in our briefing from May 14th of this year, and

1    starting at page 20, Part F, we attempted to explain our

2    position on this; that it is the Department's position that

3    the validity of a subpoena is not adjudged by subsequent

4    events such as an invocation of executive privilege or --

5    excuse me, testimonial immunity; that the validity of a

6    subpoena is determined at the time of its issuance; and that

7    whether or not there's testimonial immunity doesn't affect

8    the validity of the subpoena, it's a question about whether

9    or not the contempt should be enforced.

10            THE COURT:  Okay.

11            No, I know that's what you wrote.

12            And I get it, I get it.

13            It just seems to me a little bit in tension with

14   what was written in *Miers*.

15            MR. CRABB:  May I have just a moment, please?

16            THE COURT:  Yes.

17            (Government counsel conferred off the record.)

18            MR. CRABB:  Your Honor, I just want to make one

19   point.  I believe I understand the Court's point.

20            To the extent there's some tension or some

21   confusion in OLC opinions over the years, what I want the

22   Court to understand is what we submitted in our brief on

23   March 14th, 2023, is the Department's position.  That wasn't

24   me by any means.  This is OLC's position.  This is the

25   Department's position that an invocation of testimonial

1    immunity does not effect the validity of the subpoena.

2    That's determined later; it's a bifurcated process.

3                    THE COURT:  Okay.

4                    MR. CRABB:  And I understand at least part of the

5    Court's point is that there could be some confusion or some

6    language in some OLC opinions that, as the Court, I believe,

7    put it, could be at tension.  But I want to let the Court

8    that trying to cut through the thicket of this is how

9    we believe it works.

10                   THE COURT:  Yeah.

11                   And to be clear, it's not in the OLC opinion, it

12   was in the submission in *Miers*, in the statement of interest

13   that that was said.

14                   All right.  Last area that I want to now inject

15   into this and then I'll turn to the defense.

16                   What if we have a situation that's a little bit

17   different than my hypothetical and perhaps more akin to the

18   circumstances Dr. Navarro faced, maybe you disagree but;

19   that the subpoena could be construed potentially as reaching

20   both testimony about official acts and unofficial acts.

21                   The email, for example, that was sent by the

22   congressional aide for the Committee, said, look, we think

23   there's some things you can testify about that have nothing

24   to do with your official acts.  But what he did not say is

25   that we won't ask you about official acts or what might

1  qualify as official acts.  In that circumstance, what's the

2  Department's view of what the aide should properly do in

3  that circumstance?

4          And just to reset, former President, former aide

5  subpoenaed for testimony that arguably covers both official

6  and unofficial acts, and the aide has been directed by the

7  President to invoke testimonial immunity.  What's the aide

8  to do?

9          MR. CRABB:  In testimonial immunity, not executive

10  privilege?

11          THE COURT:  Right.

12          MR. CRABB:  I believe the aide should appear,

13  because the parties have been very clear that testimonial

14  immunity only covers questioning about one's official

15  duties.

16          So even if we all agreed there was testimonial

17  immunity, we're not quibbling over qualified or any of these

18  issues, testimonial immunity only provides for a senior

19  government official to fail to appear to answer questions

20  about their official duties.  It doesn't give them the right

21  to fail to appear about other types of questioning.

22          So the testimonial immunity would not be a

23  complete bar to appearance, it would be a complete bar to

24  questions regarding their official duties.

25          THE COURT:  But what if, as here, there's some

1    ambiguity about what's going to be asked?

2            In other words, Congress hasn't or didn't

3    seemingly tell Dr. Navarro, look, we're not going to ask you

4    about anything that's official acts.

5            And it seems to me that in that circumstance if

6    there's some ambiguity, then if the aide goes to the Hill at

7    that point, hasn't that aide essentially waived the

8    testimonial immunity or forfeited the testimonial immunity?

9    Because they've now done exactly what the immunity covers,

10   which is, you don't have to show up.

11           And if there's some ambiguity -- it may be

12   different if, for example, the subpoena was clear that we're

13   not going to ask you about official acts, and the aide still

14   refuses to come up.

15           But in a case where there's some ambiguity, it

16   seems to me that arguably the aide then forfeits the

17   immunity if he goes to the Hill to invoke on a

18   question-by-question basis, which is what you've suggested

19   he ought to do.

20           In other words, there's nothing to invoke anymore

21   if you've already shown up, right?  There's no more

22   testimonial immunity.  You're already there, you're in the

23   chair, and they ask you a question about official acts.  At

24   that point, you're not invoking testimonial immunity because

25   you're there.  You may have invoked executive privilege,

1    fine.  But you've already essentially forfeited testimonial

2    immunity, it seems to me, just by showing up.

3            Am I missing something?

4            MR. CRABB:  I don't think so.

5            But I think the Court's point illustrates some of

6    the problems here, that, one, the defendant never mentioned

7    testimonial immunity.  And as far as we know at this point,

8    there's been no invocation of testimonial immunity.

9            THE COURT:  Right.

10           MR. CRABB:  I think -- I don't think the Court's

11   missing anything.  I think what the Court is -- is

12   illuminating the problems for the defense here.

13           Had testimonial immunity been considered and

14   invoked in an appropriate fashion, I believe the issue the

15   Court's identified could have been addressed.  But because

16   it wasn't mentioned at all, it was only executive privilege,

17   which, as the Court just mentioned, that something that's

18   done on a question-by-question basis, it leads to the

19   situation we had, whereas a proper invocation of executive

20   privilege -- sorry, testimonial immunity, would have -- it's

21   not fool proof, but would have had a better chance of

22   remedying the situation the Court's identified.  But that's

23   not what happened here.  That's why we are where we are.

24           THE COURT:  So your view after all of my giving

25   you hypotheticals on all this, it's like, look, none of it

1    matters, Judge, because there's no evidence -- there's no

2    proof, even from his own words, that Dr. Navarro was

3    instructed to invoke testimonial immunity.  At most, he was

4    told to invoke executive privilege.  And executive privilege

5    doesn't immunize him from walking up to the Hill and

6    answering on a question-by-question basis.

7            MR. CRABB:  I certainly didn't mean to suggest in

8    any way that what the Court said didn't matter.

9            THE COURT:  No, no, I'm saying what I said doesn't

10   matter, you know, but I get it.

11           MR. CRABB:  But, yes, these would, I believe, if

12   it's possible, be even thornier issues had there been some

13   invocation of testimonial immunity.

14           But as the Court just said, there's not a shred of

15   evidence of that.  There's not even a claim of that from the

16   defense, and that has been long since waived as a claim of

17   testimonial immunity.

18           So although -- and I believe again the Court

19   pointed out at one point in the opinion I keep referring to,

20   that the Court wasn't required to get into some of these

21   very thorny issues, because there is no basis to even

22   evaluate an assertion of testimonial immunity.

23           So, yes, I agree with the Court, on these facts in

24   this case, we don't have to sort through some of these

25   difficult issues.

1          THE COURT:  Okay.

2          And just to be clear, your view on waiver is that

3     it's waived because he didn't raise it with Congress?

4          MR. CRABB:  Correct.

5          And I believe, and we've cited to the Court, and I

6     don't know them off the top of my head but I could quickly

7     tell the Court, there's a number of cases that support that

8     proposition that a defendant has to raise even a

9     constitutional privilege to the Committee or it's waived.

10         THE COURT:  But you agree with me that there's no

11    waiver when it goes -- when it goes to an element of the

12    crime or a defense?

13         MR. CRABB:  I'm not sure I understand the Court's

14    question.

15         THE COURT:  In other words, I think what the

16    Supreme Court has held -- and we talked about this time --

17    is that -- let's take this out of Dr. Navarro's case -- say

18    hypothetically a committee issues a subpoena that it doesn't

19    have the authority to issue and the witness fails to raise

20    that with the committee and then in the contempt prosecution

21    says, wait a minute, you didn't have the authority to issue

22    that subpoena, I don't think in that circumstance there is a

23    waiver, because it goes to an essential element of the

24    offense.  I think that's what the Supreme Court has held;

25    there's no waiver in that circumstance.

1          If it has to do with how many people are on the
2    committee or, you know, things like that, that's different.
3    But if it has to essentially do with the authority of the
4    Committee to issue that subpoena in the first place and
5    there's no objection, the Supreme Court said, in a contempt
6    prosecution, that's not waived.
7               MR. CRABB:  Correct.
8          And if I'm understanding the Court's getting back
9    to one of our areas of disagreement.  The invocation of a
10   privilege we don't believe goes to an element of the
11   offense.
12              THE COURT:  Right.
13              MR. CRABB:  So that -- now we're back to a --
14              THE COURT:  Understood.
15         I know we have some daylight on that here and I
16   appreciate that.  But okay.  Okay.
17         All right.  Mr. Crabb, I've taken up a lot of your
18   time.
19         Anything you want to add before I turn to --
20   Ms. Aloi may want to --
21              MR. CRABB:  Maybe I do want to add something.
22              THE COURT:  Maybe she wants to set me straight.
23              MR. CRABB:  She doesn't have that much time,
24   Your Honor.
25              (Government counsel conferred off the record.)

1          MR. CRABB:  Thank you, Your Honor.

2          THE COURT:  Thank you.

3          MR. CRABB:  Going back a step, I believe a few

4    moments ago the Court said, well, all we've talked about

5    that I'm saying doesn't matter because it didn't happen

6    here.

7          I want to emphasize that our position is, even if

8    there had been an invocation of testimonial immunity, that

9    would not be the end of the story under these circumstances.

10   We've have already talked about, such as qualified immunity,

11   the scope of testimonial immunity, and the scope of what the

12   subpoena was looking for.

13         So I just want to be clear.  I understand the

14   Court said that, you know, our view is there was no

15   testimonial immunity so we don't have to invoke so we don't

16   have to talk about that.  But even if there had been some

17   shred of evidence that testimonial immunity was invoked

18   here, we don't believe that would be the end of the

19   discussion and instantly the prosecution would be over.

20         THE COURT:  What would be left then to discuss?

21         MR. CRABB:  Well, at least, and I'm sorry to

22   repeat myself, some of the things we talked about before.

23   It would be qualified and whether the qualified immunity had

24   been overcome, the scope of the testimonial immunity, and

25   I understand the Court just pointed this out, but how do you

1    deal with the parameters of matters that fall outside of the

2    scope of that.

3              THE COURT:  But this goes back to what we were

4    talking about at the very beginning which is why I started

5    where I did and tried to kind of build upon some -- put some

6    building blocks in place.

7              I thought I understood you to say that in a

8    situation with qualified immunity, that from the perspective

9    of the aide -- again, the aide doesn't know whether it's

10   qualified or not, at least as a matter of law.  All the aide

11   knows is that I've been told to invoke.

12             And it's not until there is some communication to

13   the aide, whether from a court or maybe even the Department

14   of Justice, that the qualified immunity has been overcome,

15   that that aide could then be subject to contempt if they

16   continue to refuse to testify, right?

17             I thought I understood you to say that that's --

18   right?

19             MR. CRABB:  Yes, Your Honor.

20             THE COURT:  But in Dr. Navarro's situation, there

21   was never any further clarification, either from the

22   Department of Justice, at least until he was prosecuted, or

23   from a court, that he didn't have any qualified immunity.

24   So I'm not sure why we'd be then talking about qualified

25   immunity in the context of this case.

1          MR. CRABB:  I'm sorry, Your Honor, I confused

2    myself.

3          I thought -- what I was trying to say is -- and

4    I'm sure I got confused -- that the Court said, the

5    government's position is we don't have to talk about any of

6    these things because there is no testimonial immunity here.

7          What I just meant to say was had -- if there were

8    some, and perhaps I misunderstood the Court, I didn't mean

9    to say that if there had been, that would be the end of the

10   discussion.  It would be the things the Court just alluded

11   to that we talked about at the beginning of the discussion

12   would need to be sorted through.

13         Does that make any better sense?

14         THE COURT:  I mean, you'll have to forgive me.

15         Let's say these are the facts of Dr. Navarro's

16   case.

17         President Trump sends him a letter.  Says, you

18   need to invoke qualified immunity.  He uses all the right

19   magic words.

20         Dr. Navarro goes to Congress, says, I'm not

21   showing up, I've been told to invoke qualified immunity --

22   qualified testimonial immunity.

23         Congress does nothing.

24         It doesn't come to the U.S. District Court to try

25   and overcome the immunity, it doesn't come to the Department

1    of Justice and say, Department of Justice, we want you to

2    evaluate whether the qualified immunity is overcome.  We're

3    passing a contempt resolution and we want you to prosecute.

4              Is Dr. Navarro prosecutable for contempt in those

5    circumstances?

6              MR. CRABB:  If in the Department's estimation

7    there was not valid testimonial immunity or the qualified

8    immunity was overcome, yes.  But then, of course, even

9    though the Department comes to that conclusion, the --

10             THE COURT:  But when?  In the context of the grand

11   jury investigation?  Because it seems to me that's too late

12   for him.

13             MR. CRABB:  Well, I believe it could come up at a

14   number of points, but I don't think it's ever "too late"

15   because if there are charges brought, he would still have an

16   opportunity to present to the Court, I had testimonial

17   immunity, this prosecution cannot go forward.

18             So it never would be too late.  It would be, I

19   agree, better for everyone if it were sorted out earlier.

20   But if for whatever reason it weren't, the defendant would

21   always have an opportunity to present that to the Court and

22   the Court could determine whether the government's right

23   that it's qualified immunity.  And assuming we are right,

24   whether or not it's been overcome in this case.  And if we

25   are right it had been overcome, the prosecution would go

1    forward.  But if the Court were to conclude, no, Mr. Navarro

2    had testimonial immunity, then that would be an appropriate

3    basis to dismiss the indictment.

4            Now, I want to emphasize, there certainly could be

5    better, more efficient times to sort this out, but I don't

6    believe it's "too late."  The defendant would always have an

7    opportunity to address this issue.

8            THE COURT:  Okay.

9            Just, you know -- and I'll stop pestering you, but

10   it just seems to me that this -- at least the way I

11   understood the OLC's position, this -- in some sense,

12   this -- the immunity question has less to do with whether

13   the invocation is right or not than whether the person was

14   directed to follow the instructions of the President; in

15   other words, even an incorrect following of the directions

16   would not be subject to contempt.

17           MR. CRABB:  I think, Your Honor, again, I must

18   have misspoken.

19           I just meant to get to the issue, not to question,

20   like, evaluating the question of immunity, but evaluating,

21   if it's qualified testimonial immunity, whether that

22   qualification had been overcome.

23           I didn't mean to question, if I'm following the

24   Court's latest issue, if there is perhaps a more simple

25   scenario, the current President invokes testimonial immunity

1    for a senior adviser, instructs the adviser not to go to

2    Congress.

3            I didn't mean to suggest that the Court should

4    look behind the curtain on how that came about.  I meant to

5    suggest that in a qualified immunity circumstance, the Court

6    would have to assess the competing interest.  I apologize if

7    I misspoke before.

8            THE COURT:  No, I don't know that you misspoke.  I

9    just --

10           MR. CRABB:  But I didn't mean in any way to

11   suggest that --

12           THE COURT:  Let me just make the following

13   observation, which is, it seems odd to me that --

14   hypothetically let's say the former President tells a former

15   aide to invoke, and the aide does so.  Congress does nothing

16   about coming to the U.S. District Court to compel.  The

17   Department of Justice, for whatever reason, makes the

18   determination that the person wasn't entitled to testimonial

19   immunity and indicts.  And that it's in the context of a

20   criminal case for the first time that the person then has to

21   justify that they had testimonial immunity and is really not

22   given an opportunity to cure or at least an opportunity to

23   not be held in contempt.

24           Makes perfect sense to me if the person is told

25   before they're indicted, we don't think you have testimonial

1    immunity, you either go or you don't go.  But once the

2    person's been indicted to then say their conduct in refusing

3    to go when they weren't told that the immunity didn't exist,

4    either by a court or by the DOJ, just seems very odd to me.

5              MR. CRABB:  May I make two comments?

6              First, as I tried to say earlier, I can't --

7    I don't believe this has ever happened, at least to my

8    knowledge, but I can't imagine a situation where if someone,

9    a former -- involving a former President, former aide

10   invoked qualified testimonial immunity, was charged with

11   contempt and it was a determination made that the qualified

12   immunity was overcome, that that person wouldn't be given an

13   opportunity to address the issue.  I think I earlier said

14   "purge," I'm not sure that's quite the right word, but to

15   address it.  So I think -- I don't think the scenario the

16   Court is spinning out would happen.  I think that person

17   would be given an opportunity to address the situation.

18             I would also say just in a broader perspective,

19   that's generally how the system works is not till someone is

20   charged that they present their defenses, the things I've

21   mentioned before.  They say, well, you can't do this because

22   of the statute of limitations.  You can't do this because of

23   double jeopardy.

24             So I don't think it's such a strange proposition

25   to think that someone doesn't have the opportunity to

1   contest charges until they're charged.  That's how the

2   system often works.

3                 THE COURT:  Fair enough.

4                 Okay.  Thank you, Mr. Crabb.  I appreciate it.

5                 MR. CRABB:  I'll sit down right now.

6                 THE COURT:  Before I can ask you another question.

7                 All right.  Mr. Woodward, are you up next?

8                 MR. WOODWARD:  There's a lot to address or maybe

9   not.

10                We struggle with the Court's question, whether

11  this is something that ought to be presented to a jury for

12  resolution or whether the invocation in the Court's

13  hypothetical, properly, of executive privilege and

14  testimonial immunity results in an absolute bar against

15  prosecution.

16                As we walk through the progression, again using

17  the Court's hypothetical and divorcing ourselves of the

18  disputed facts, we're mindful of the interplay of the

19  statute, right?

20                We're not talking about a statute that comes from

21  Title 18.  We're talking about a statute in Title 2.  This

22  is a statute that was enacted to give Congress the ability

23  to enforce its subpoenas after Congress had concluded that

24  self-regulation, self-enforcement was an inadequate remedy.

25  And so Congress determined in its infinite wisdom it would

1    create this interplay of statutes, right?

2            And recall that under 2 U.S.C. 194, once Congress

3    has passed a contempt resolution, 194 provides that the

4    resolution shall be provided to the appropriate

5    United States Attorney "whose duty it shall be to bring the

6    matter before the grand jury for its action."

7            THE COURT:  Right.

8            But the Department of Justice says that we're not

9    compelled to do that.

10           MR. WOODWARD:  Exactly.

11           THE COURT:  Right.

12           MR. WOODWARD:  And the question is why.

13           And the Court, I think, sees this issue.  This is

14   a question of separation of powers.

15           And as applied, 192 is unconstitutional where it

16   requires the prosecution of a senior aide to a President,

17   current or former.

18           The Department has taken the view that, no, you

19   can't force the Department to prosecute one of its own.  And

20   so we have a litany of OLC memoranda dating back 40 years.

21           Judge Smith in *United States versus United States*

22   *House of Representatives*, struggled mightily with this

23   question.  And he writes, first concluding that he's not

24   going to address the issue, he's instead just going to find

25   that he can't.

1              But he observes, as I think the Court is leaning,

2    he observes that Ms. Gorsuch could present defenses of

3    immunity if she were ever to be criminally prosecuted, an

4    event that Judge Smith thought unlikely given that the

5    Department had brought the lawsuit in order to find that

6    they were not required to bring that prosecution.

7              Here, it's a difficult question of whether

8    immunity, assuming it's been properly invoked, absolutely

9    bars prosecution or whether a jury is permitted to find that

10   the prosecution be barred.

11             In a number of contexts as the government points

12   out, we don't allow the case to go to a jury first.  The one

13   that comes first to mind is in foreign immunity cases.  We

14   don't require defendants to be prosecuted to put up the

15   defense of sovereign immunity and then argue to the Court

16   that the prosecution was barred.  If there's a proper

17   application of sovereign immunity, the prosecution is

18   barred.

19             And for a number of reasons, we think that the

20   privilege belonging to a President, current or former,

21   should serve as a bar to prosecution under this statute, and

22   that's an important distinction, this statute under Title 2

23   of the code, because there are -- the fact that we've been

24   here for days arguing all of those issues speaks volumes

25   about the complexities that we're dealing with.

1          And so, yes, we agree with the Court.  Dr. Navarro

2   shouldn't have to take the chance of going to prison because

3   he believed, perhaps wrongly, that qualified immunity

4   precluded him from going down to Congress.

5          And that's what precluded Kellyanne Conway from

6   going down to Congress.  The OLC memorandum which said that

7   even though all Congress was interested in was unofficial

8   business, right?  By definition, she was alleged to have

9   been violating the Hatch Act and engaging in campaign

10  activities, by definition, unofficial business, and the

11  Department said she was not required to appear.

12         THE COURT:  They said she wasn't required to

13  appear because they construed it as seeking information

14  about official acts.

15         I mean, the OLC memo with respect to

16  Kellyanne Conway is 100 percent clear that it was viewed as

17  relating to official acts.

18         MR. WOODWARD:  The Department --

19         THE COURT:  But let me ask you where you are then,

20  Mr. Woodward.

21         If it is your view -- well, let me ask you this:

22  Is it your view that if what I've just described or what

23  we've all been talking about, which is the invocation of

24  immunity, the proper invocation of immunity, is a

25  constraint -- a constitutional constraint on the statute as

1    you've put it, one, is that a constraint that needs to be

2    determined by the Court based upon the factual record; or if

3    there's a factual dispute as to whether the constraint

4    applies, it should go to a jury?

5           Because there is a factual dispute on this record

6    as to whether President Trump invoked anything, directed

7    Dr. Navarro to do anything in response to the subpoena.

8           MR. WOODWARD:  Our view is that once Dr. Navarro

9    informed Congress that executive privilege precluded his

10   participation in the process, it was incumbent upon Congress

11   to seek an order of the Court.

12          THE COURT:  There's no requirement.

13          There's not.  I mean, you could fault Congress for

14   not coming to the Court and maybe that's entirely

15   appropriate but...

16          MR. WOODWARD:  And I feel compelled to acknowledge

17   that the *McGahn* litigation makes it unclear that Congress

18   could, in fact, seek an order from the Court.

19          THE COURT:  Well --

20          MR. WOODWARD:  Right.

21          No, I want to be --

22          THE COURT:  -- I think the *McGahn* litigation right

23   now as a whole is just -- I've been told essentially that

24   that opinion didn't exist.  It's vacated, right.

25   I understand that was the view but...

1          MR. WOODWARD:  We feel compelled to be transparent

2    with the Court about how this is not -- it's not our view.

3          THE COURT:  But that actually hurts your position.

4          MR. WOODWARD:  It does.

5          THE COURT:  It hurts your position, right?

6          MR. WOODWARD:  Yes.  Exactly.

7          THE COURT:  Because then it really does put

8    somebody in his position to have to wait until they're

9    charged before it can be resolved.

10         MR. WOODWARD:  That's right.

11         But practically speaking, that can't be what

12   Congress intended.

13         THE COURT:  Well, practically speaking, I don't

14   know whether that's what they intended or not.  I'm sure,

15   practically speaking, they wanted him to show up.

16         So I mean, I guess let's go back to the question

17   I've asked, which is:  If what you're telling me is that --

18   or if your position is -- and maybe it aligns then with the

19   government's and all of my time with Mr. Crabb for 60-plus

20   minutes was all for naught, that the question of whether

21   there is an immunity, qualified, absolute, whatever the heck

22   you want to call it, is a constraint on the government's

23   ability to prosecute; that is, it would be unconstitutional

24   for them to do so.

25         MR. WOODWARD:  Yes.

1          THE COURT:  If there is a factual dispute as to

2    the existence of that immunity, do I resolve it or does the

3    jury resolve it?

4          MR. WOODWARD:  I suspect the Court of Appeals will

5    say that that's within your discretion to decide.

6          THE COURT:  No, they won't.

7          It's one or the other.  It can't be both.

8          Either it's a legal question for me to determine

9    or it's a factual one for the jury.

10          There's no halfway between.  You can't be in

11    between on this.  It's one or the other.

12          MR. WOODWARD:  Well, I'm not comfortable taking a

13    position on which it ought to be.

14          THE COURT:  I need you to.

15          MR. WOODWARD:  I know.

16          THE COURT:  I need you to; otherwise, I'm going to

17    suggest that you have waived any position, you have waived

18    any argument that it goes to the jury, and I'll make a

19    decision.

20          And, frankly, I have already, because you've been

21    given one opportunity to present facts to establish that

22    there was an invocation and you didn't.  And now you've

23    asked for an evidentiary hearing.  We can talk about whether

24    that's appropriate.

25          But if you're going to take the position to take

1  no position, I think the Court of Appeals would say you've

2  waived the opportunity to send that to the jury.

3            MR. WOODWARD:  The Court's indulgence.

4            (Defense counsel conferred off the record.)

5            MR. WOODWARD:  The jury.

6            THE COURT:  Okay.

7            So why, if it is a jury question?

8            If we're in agreement, let's say it's a jury

9  question, okay, why is Dr. Navarro entitled to put that

10  defense to the jury in his factual circumstances?

11            For two reasons:

12            One, he never uttered the words "testimonial

13  immunity" and has presented no evidence that he was told to

14  invoke testimonial immunity, as opposed to executive

15  privilege, one.

16            Two, he admits that much, if not all, of his

17  conduct that they want to talk to him about was in his

18  personal capacity.

19            This is his press release:  "Dr. Navarro will be

20  hosting a press briefing call today at 1:00 p.m. in his

21  capacity as a private citizen to discuss his findings.  Hit

22  me up at ProtonMail."  Not WhiteHouse.gov, or WH.org or gov.

23            MR. WOODWARD:  Right.

24            Well, we respectfully disagree about whether the

25  statute is constitutional as applied, to the extent that the

1    information sought is delineated to be in one's personal

2    capacity, and we don't think the Department disagrees with

3    that position.

4              THE COURT:  I'm sorry, say that again.

5              MR. WOODWARD:  We don't think that the Department

6    disagrees with the position that simply because Congress has

7    delineated categories of information that are -- relate to

8    one's personal view, the contempt of Congress statute is

9    constitutional as applied.

10             And we can cite two examples in recent memory

11   where the Department apparently agreed with us, one of which

12   I'm intimately familiar with, and that is in their decision

13   not to prosecute Dan Scavino with contempt of Congress.  And

14   there Congress made the same effort to parse out

15   information.

16             THE COURT:  So give me a case, because I'm not --

17   I really am not going to be bound by their prosecutorial

18   decisions.  That's not for me to say.

19             But I think it's clear, and maybe I'm wrong, that

20   if a senior adviser to a former President refuses to go to

21   Congress about unofficial acts, there is no testimonial

22   immunity and you are subject to contempt prosecution because

23   every OLC memo that you have relied on speaks only in terms

24   of testimonial immunity extending to one's official acts,

25   nothing beyond that.

1        MR. WOODWARD:  Well, this is maybe a distinction

2   that the Court thinks not important, but I, again, go back

3   to 194 -- 2 U.S.C. 194, and the idea that this is not within

4   the Department's discretion.

5        And so I know -- I appreciate the Court not

6   wanting to evaluate its exercise of discretion in not

7   prosecuting Meadows and Scavino and to prosecute Navarro.

8        THE COURT:  So just answer the question.

9        So is it your view that Dr. Navarro could not be

10  subject to prosecution for contempt if Congress's exclusive

11  desire was to ask him questions about his personal conduct?

12       MR. WOODWARD:  And the President invoked?

13       THE COURT:  Yes.

14       MR. WOODWARD:  Then yes.

15       THE COURT:  They could not charge him?

16       MR. WOODWARD:  Not without an order finding that

17  the qualified immunity fails, given the circumstances.

18       THE COURT:  So hypothetically Congress subpoenaed

19  Dr. Navarro about his mortgage because they're doing an

20  investigation about financial improprieties for senior

21  officials in the administration and whether they received

22  any favors, about his personal mortgage, and the President

23  said, don't go, assert immunity, you mean to say that if he

24  doesn't show up for that, he couldn't be prosecuted for

25  contempt?

1      MR. WOODWARD:  I don't think we have to be so

2  hypothetical, insofar as we've seen Congress subpoena the

3  records of a sitting President, and the D.C. Circuit, or

4  maybe the Second Circuit, in *Mazars* --

5      THE COURT:  That was my case.

6      MR. WOODWARD:  D.C. Circuit.

7      So, yes, the privilege shields the President from

8  being hailed into Congress even when Congress attempts to

9  cloud or to shroud its motivation for bringing the senior

10  adviser to a hearing based on purely personal conduct.

11      THE COURT:  I think if President Trump

12  theoretically did not produce documents in *Mazars* after he

13  was ordered to, I think you would agree with me he could be

14  held in contempt?

15      MR. WOODWARD:  100 percent.

16      THE COURT:  Correct.

17      So I'm not sure why it's any different here.

18      I mean, I agree that there's no court order but...

19      MR. WOODWARD:  That's the difference.

20      It's a different statutory framework.

21      THE COURT:  So are you telling me that so long as

22  the President of the United States tells an aide to invoke,

23  regardless of what the subject matter is, and that aide

24  refuses to show up, that aide can't be subject to a contempt

25  prosecution?

1          MR. WOODWARD:  I would like to tell you that's

2    true because I would like to rely on the importance of the

3    office in invoking executive privilege, and that's not

4    something we can take for granted.  So, no, I won't make

5    that absolute observation.

6          But I think as a general matter, the testimonial

7    immunity can apply to an aide who has purportedly been

8    subpoenaed only for personal information.

9          Do I think that that testimonial immunity --

10         THE COURT:  Why?

11         Because I'm not sure how that would impact any

12   separation-of-powers concerns at all, if it has to do wholly

13   with unofficial acts.

14         All of the rationale for this, Judge Bates would

15   say, non-existent testimonial immunity, is based on a

16   separation-of-powers rationale.  And if it has nothing to do

17   with official acts, I don't see how there's any testimonial

18   immunity.

19         MR. WOODWARD:  Because it's harassing the

20   President, albeit indirectly through his aides.

21         THE COURT:  In your view.

22         I mean --

23         MR. WOODWARD:  Sure.

24         THE COURT:  -- there's no -- even the President

25   can be compelled to produce records, even if they're in his

1    official capacity.  There's no harassment defense just
2    because you're a White House official.
3              I mean, the President of the United States can be
4    compelled to produce his personal records.  The President of
5    the United States can be compelled to produce official
6    records.
7              MR. WOODWARD:  Your point is absolutely taken,
8    Your Honor, which is why the statute is unconstitutional as
9    applied and not on its face.
10             And as applied here, the facts --
11             THE COURT:  But the facts don't -- even if you're
12   right as a constitutional matter, you haven't put forth the
13   facts to establish it.
14             MR. WOODWARD:  Putting aside whether the President
15   invoked privilege --
16             THE COURT:  Because that's a pretty big deal.
17             MR. WOODWARD:  Putting aside whether the President
18   invoked privilege, the facts make clear that at least some
19   of what the Committee was seeking had to do with
20   Dr. Navarro's official duties.
21             And with respect to whether he needed to use the
22   words "testimonial immunity" in his response to the
23   Committee, he's not an attorney.
24             And whether he in his press release believed that
25   what he was going to talk about had to do with his personal

1       or his official capacity isn't binding on this Court either.

2              And so these are all issues that Dr. Navarro could

3       not have been expected to resolve in advance of making a

4       determination of whether to be subject to criminal

5       prosecution.  In fact, he believed he would not be subject

6       to criminal prosecution when he did not participate in the

7       congressional process.

8              THE COURT:  So even though there is no similar

9       immunity not to show up, if all you've done is invoke

10      executive privilege, as to unofficial acts, that doesn't

11      matter as a legal proposition?

12             MR. WOODWARD:  The phrase "testimony" -- I know

13      Your Honor does not like these examples.  But if we pull

14      Justin Clark's correspondence to the Committee on behalf of

15      Meadows, on behalf of Scavino, Justin Clark does not ask

16      Meadows and Scavino to invoke testimonial immunity.

17             Even the President's own lawyer is using executive

18      privilege with the understanding that the privilege gives

19      rise to the immunity which precludes their showing up.

20             THE COURT:  Okay.

21             So we're back to the same place we started, which

22      is, you think that's something that should be put to a jury,

23      whether there was an invocation or not.

24             MR. WOODWARD:  On balance, the defense submits

25      that the issue ought to be presented to the jury.

1          THE COURT:  Okay.

2          MR. WOODWARD:  For what it's worth, Mr. Brand,

3    I think, very strongly believes that this is a question for

4    the jury.  He and I disagree occasionally.

5          THE COURT:  Okay.

6          Would you agree with me that that's not true with

7    respect to the documents?

8          MR. WOODWARD:  No.

9          THE COURT:  Why not?

10          MR. WOODWARD:  The *Gorsuch* case is about

11    documents.

12          THE COURT:  That doesn't have to do with

13    testimonial immunity.  It has to do with specific documents

14    as to which the President of the United States told Anne

15    Gorsuch to invoke executive privilege, and she did so.

16          MR. WOODWARD:  Do we now know that the President

17    invoked executive privilege with respect to Dr. Navarro's

18    papers?

19          THE COURT:  Every single document?

20          MR. WOODWARD:  Responsive to the subpoena.

21          THE COURT:  Including stuff he wrote in his

22    personal capacity?

23          MR. WOODWARD:  I would not agree with the Court

24    that Dr. Navarro has to be put in a position to decide which

25    documents are subject to the privilege and which are not.

1           What the Court is suggesting --

2           THE COURT:  Why not?

3           I mean, you'd like to tell me what other folks did

4  but that's what Mark Meadows did.  He understood that

5  executive privilege only extends to documents that cover,

6  you know, communications between him and the President or

7  that relate to official acts.

8           MR. WOODWARD:  I'm not sure that Mr. Meadows --

9           THE COURT:  I mean, in other words, invoking

10 executive privilege only allows you to invoke executive

11 privilege as to the documents that are covered by executive

12 privilege, not everything and anything.

13          MR. WOODWARD:  I'm not sure that Mr. Meadows

14 consulted with the former President about which documents he

15 was producing ahead of time.

16          THE COURT:  Maybe he did, maybe he didn't.

17          But he didn't take the view that because the

18 President has told me to invoke, that everything and

19 anything in my possession that relates to this subject

20 matter is subject to executive privilege.  He didn't take

21 that view.

22          MR. WOODWARD:  Our position would be that the

23 subpoena for documents is not unlike the subpoena for

24 testimony that --

25          THE COURT:  Except for it's not covered by the

1    kind of blanket immunity that testimony is.

2              MR. WOODWARD:  Well, we submit that it should be.

3              THE COURT:  Okay.

4              Okay.

5              MR. WOODWARD:  That Olson's opinion on behalf of

6    the Department of Justice was that she need not appear.

7              THE COURT:  No, it was that she need not produce

8    the documents that were specifically identified as being

9    invoked with respect to executive privilege.

10             There were thousands of records subject to

11   subpoena.

12             MR. WOODWARD:  That were produced.

13             THE COURT:  Correct.

14             And the President, I think, identified --

15             MR. WOODWARD:  Law enforcement records.

16             THE COURT:  -- 60-some-odd documents, if memory

17   serves.  And that's what she didn't produce and that's what

18   Ted Olson said was not subject to contempt.  The refusal to

19   produce those documents was not subject to contempt.

20             MR. WOODWARD:  But he didn't advise Gorsuch to

21   show up and not provide the documents.  He said, don't show

22   up.

23             THE COURT:  No.  He said, don't provide the

24   documents.

25             You don't have to physically show up to provide

71

1    documents.  You either provide the documents or you don't

2    provide the documents.

3              MR. WOODWARD:  Well, the issue is whether she had

4    to appear, and she did not appear.

5              THE COURT:  I don't remember whether the subpoena

6    required her to physically come to the Hill to present the

7    documents.  Ordinarily that wouldn't be the case.  I mean, I

8    suppose that's what the subpoena actually calls for

9    typically but...

10             MR. WOODWARD:  I think that's the issue.  The

11   subpoena does, in fact, call for you to appear and we'll

12   say --

13             THE COURT:  I don't think that's the kind of

14   immunity Ted Olson was talking about; that somehow somebody

15   can refuse to appear to produce records that otherwise are

16   not subject to executive privilege, because they may be

17   titled to refuse to appear to produce records that are

18   subject of the privilege.

19             And the very rationale, at least put forward by

20   the OLC as to why there's no such blanket immunity with

21   respect to documents, is that, one, unlike testimony, you're

22   not sitting in a chair and having to make a decision

23   question by question as to whether there's an immunity and

24   therefore somehow you could be compelled or coerced or

25   mistaken in disclosing information.  And, two, the converse

```
1    of that is you have an opportunity to decide what's covered
2    and what isn't covered.
3              I mean, the same rationale just doesn't extend to
4    documents and the production of documents.
5              MR. WOODWARD:  Two thoughts on that, Your Honor.
6              First, I agree with you that Ted Olson wasn't
7    envisioning such a blanket immunity, because there had been
8    a back-and-forth as between the Department and Congress
9    about what could and could not be produced.
10             And that's what we're lacking here, that's what
11   this entire case is about, is that there was a presumption
12   that Trump was not invoking privilege and, therefore,
13   Dr. Navarro had an obligation to comply with the subpoenas.
14             Neither Congress nor the Department ever, to this
15   day, to my knowledge, they have not asked President Trump
16   what his position is.
17             THE COURT:  We got a letter from him.
18             MR. WOODWARD:  Not from him, Your Honor.
19             THE COURT:  So --
20             Right.  Right.  That letter was sent without his
21   authorization.
22             MR. WOODWARD:  I'm not suggesting it was sent
23   without his authorization.
24             THE COURT:  Okay.
25             MR. WOODWARD:  It's a letter.
```

1              THE COURT:  Yeah, from the President's counsel --

2              MR. WOODWARD:  Correct.

3              THE COURT:  -- which doesn't say that he told

4    Dr. Navarro to invoke anything.

5              MR. WOODWARD:  Thank you for the reminder,

6    Your Honor.

7              Second, the determination about whether a

8    particular record is protected by executive privilege is not

9    for Dr. Navarro to make, it's for the privilege holder to

10   make.  And so Dr. Navarro's immunity arises from his

11   inability to make that call.

12             THE COURT:  Please.

13             You mean to tell me that he couldn't have gone to

14   the President, if, in fact, he was told to invoke executive

15   privilege, and said, look, they've got some documents here

16   that aren't subject to executive privilege or that we need

17   to talk about it.

18             So if there's no testimony that he did that, you

19   mean to tell me he couldn't then be held in contempt for not

20   producing the documents that are not subject to executive

21   privilege?

22             MR. WOODWARD:  No.  Actually, you've hit the nail

23   right on the head for my position, which is that he does

24   have the opportunity to present testimony that he was not to

25   produce any documents.

1           THE COURT:  Okay.

2           And there's going to be testimony that there was

3    an actual contemplation of which documents were subject to

4    executive privilege and which were not?  I suspect not, by

5    the privilege holder.

6           It's not going to excuse him from refusing to

7    produce documents that aren't subject to executive

8    privilege.

9           MR. WOODWARD:  Understood, Your Honor.

10          But my point is only that if he was instructed not

11   to produce any documents by the privilege holder, whether a

12   particular document is personal or not is not what gives --

13   is not what -- does not make the constitutionality of the

14   prosecution appropriate or not.

15          THE COURT:  Okay.

16          I think the Department of Justice disagrees with

17   that.

18          MR. WOODWARD:  I understand.

19          THE COURT:  And the OLC memos you've relied on

20   disagree with that.

21          Okay.

22          All right.  Anything else?

23          MR. WOODWARD:  Not unless the Court has questions

24   for me.

25          THE COURT:  I do not.

1          Mr. Crabb, any interest in responding?

2          MR. CRABB:  Thank you, Your Honor.

3          If I could just make a couple points.

4          One, I just want to correct the record.

5          With respect to anyone else who may or may not

6    have been charged or prosecuted for contempt, I'm obviously

7    not going to get into any prosecutorial deliberations, but

8    I can say in my former life, I was involved in those and

9    Mr. Woodward is wrong about what motivated those.  So

10   obviously I'm not going to discuss it further, but he was

11   making certain assumptions that are just incorrect, and

12   I can assure the Court of that.

13          I'd ask the Court to consider a couple of other

14   things.  First, testimonial immunity has never been twisted

15   and that square peg stuck in a round hole of documents.

16   It's actually the label.  It's testimonial.  It's not

17   document immunity.  It's testimonial immunity.  So it has no

18   application whatsoever to documents.

19          Then if I could just briefly address with respect

20   to the question as to whether or not the invocation and the

21   existence of testimonial immunity should be presented to the

22   jury or not, just two things I'd ask the Court to consider.

23          Earlier in the discussion with the defense, there

24   was a discussion of constitutional issues.  And I'd ask the

25   Court to consider a number of constitutional issues that

1    affect prosecutions and involve question of fact that judges

2    decide all the time.  Motions to suppress, judges decide

3    whether the Fifth Amendment has been violated or not.

4    Judges decide whether the Fourth Amendment has been violated

5    or not.  And then that has -- in some cases decides whether

6    the case can go forward at all, but often, not always, has

7    very important impacts on cases.  So courts often make

8    factual decisions about constitutional issues and it doesn't

9    go to the jury to decide.

10           And then I'd ask the Court to consider a very

11    practical issue; that there's no way for the jury to resolve

12    the issue that would be before them, because it's not simply

13    a question as to whether or not the former President invoked

14    testimonial immunity.

15           Now we have a question, is it qualified?  And if

16    so, was it overcome by other factors.  These are questions

17    that only the Court could determine.  These -- it's not --

18    it's beyond the kin of a juror.  It's not simply one factual

19    question.  This would be an impossible task to give to the

20    jury to try to sort through.

21           THE COURT:  Can I ask you, if I were to agree with

22    you that the question of the invocation is one that I need

23    to decide, it's not one for the jury to decide -- I've

24    already made a determination in connection with the motion

25    to dismiss, I understand that.

```
1              But if there's a second bite of the apple, what

2    does that look like, in your view?

3              Is it an evidentiary hearing in which Dr. Navarro

4    would be given the opportunity to testify or present other

5    evidence to show that there was an invocation and then would

6    I have to be in a position to make a credibility

7    determination of the testimony and evidence presented, just

8    as I would in a suppression hearing?

9              MR. CRABB:  May I ask the Court which apple is

10   being bit the second time?

11             THE COURT:  To establish that there was an

12   invocation.

13             The first bite was unsuccessful.

14             MR. CRABB:  But is it this question -- and the

15   Court now like a second bite at a motion to dismiss the

16   indictment?

17             THE COURT:  Fair enough.

18             I don't know what we'd call it now.

19             I mean, look, I think --

20             MR. CRABB:  Well, I don't mean to be too attached

21   to labels.

22             THE COURT:  No, no.  It's --

23             MR. CRABB:  But, yes, if the Court were to say,

24   which I think the Court had given the defense a couple of

25   opportunities, to come forward with some evidence that there
```

1    was a proper invocation of testimonial immunity, to directly

2    answer the Court's question, yes, that could foreseeably

3    involve the Court making credibility determinations and

4    factual findings, as courts do, and as the Court just said,

5    suppression hearings all the time.  And, again, we believe

6    that would be the appropriate forum for it and an

7    appropriation decision for the Court to make, not the jury.

8              THE COURT:  Okay.

9              So just to be 100 percent clear here, is the

10   government of the view that the defendant should be given

11   the opportunity in an evidentiary setting before me to show

12   that he, in fact, was instructed to invoke some privilege?

13             MR. CRABB:  May I have just a moment, Your Honor?

14             (Government counsel conferred off the record.)

15             MR. CRABB:  Yes, Your Honor.

16             THE COURT:  Okay.  Okay.

17             All right.  Anything else, Mr. Crabb?

18             MR. CRABB:  No.  Thank you, Your Honor.

19             THE COURT:  All right.  Thank you.

20             All right.  I don't obviously plan to resolve this

21   or attempt to resolve this today.  There's a lot to think

22   about.  And so I will certainly -- I want to continue to

23   ponder this complicated issue and then I'll let you all know

24   whether we're going to do this either essentially as an

25   evidentiary hearing before me or whether I think this

```
 1    question of an invocation is more appropriately submitted to
 2    a jury.
 3              I guess that ultimately really rises and falls on
 4    the question of is this a constituent element of proof or a
 5    defense or is it something else at this point?
 6              Ms. Aloi?
 7              MS. ALOI:  Your Honor, I just wanted to flag that
 8    if this were something -- if there were to be -- if there
 9    was, like, hypothetical evidence that there was an assertion
10    of testimonial immunity, the Department's position is that
11    because it would have been on behalf of -- of the Presidency
12    by the former President, that this would open the door to
13    evidence that the current administration protecting the
14    Presidency did not invoke and that there would be other
15    additional factual issues to resolve.
16              It's not -- it's just not the narrow question of
17    whether or not there was an invocation.
18              THE COURT:  Let me ask you one more question.
19              Say we went through this exercise and I came to
20    the conclusion that there was no qualified immunity, does
21    Dr. Navarro then get the opportunity to cure?
22              MS. ALOI:  No.
23              THE COURT:  Okay.
24              Okay.
25              All right.  Let's take a couple minutes.  And then
```

1  if there's anything to be said about the motion to dismiss,

2  I'll hear it and then we'll conclude our proceedings for the

3  morning.

4          So let's just take about ten minutes and then I'll

5  be right back.

6          COURTROOM DEPUTY:  All rise.

7          This Court stands in recess.

8          (Recess from 11:48 a.m. to 12:06 p.m.)

9          COURTROOM DEPUTY:  All rise.

10         THE COURT:  Please be seated, everyone.

11         Just a couple of follow-up questions.

12         Can I just ask Mr. Crabb one question, and that

13 is:  If I were to have the kind of hearing that we've been

14 talking about and if I were to credit evidence that there

15 was an invocation and I were to conclude that immunity

16 applied, the result would be the dismissal of Count 1?

17         MR. CRABB:  I believe with -- may I just put one

18 caveat?

19         Maybe this was assumed in your scenario.

20         THE COURT:  Yeah.

21         MR. CRABB:  Even if you were to conclude there had

22 been an invocation, we believe you then have to determine

23 whether that invocation, since it would be qualified,

24 whether it had been overcome, but maybe that was assumed.

25         THE COURT:  Right.

1          MR. CRABB:  Yes.  At the end of the day, yes.

2          THE COURT:  I just want to be clear about what the

3    outcome would be.

4          MR. CRABB:  Right.

5          But we don't believe that even a proper invocation

6    of testimonial immunity could cover a subpoena requesting

7    documents.

8          THE COURT:  Agreed.

9          That I know.  Understood.

10         MR. CRABB:  I thought that was the dichotomy the

11   Court was drawing.

12         Maybe I misunderstood.

13         THE COURT:  I was leaving documents aside.

14         MR. CRABB:  Oh, I thought it was just -- which

15   count?

16         THE COURT:  I'm just talking about Count 1, which

17   is the testimony count.

18         MR. CRABB:  Right.

19         THE COURT:  So, again, to follow the thread

20   hypothetically all the way through, which is that I credit

21   there was an invocation, the immunity is qualified, and has

22   not been overcome, Count 1 gets dismissed.

23         MR. CRABB:  May I add one other qualifier?

24         THE COURT:  Sure.

25         MR. CRABB:  And I apologize, this is something we

1    probably need to think through some, and I understand the

2    Court alluded to this concept earlier.

3           But I would ask the Court's indulgence for us to

4    be able to consider, even if there is an invocation of

5    testimonial immunity what, if any, impact would that have

6    with respect to items that are topics that weren't part of

7    the official capacity.

8           I understand earlier the Court said, well, if you

9    show up to answer some questions, you're already waiving.

10   I understand the Court's raised that. But if we could just

11   think about that, there's a delta there, I'm not sure.

12          THE COURT: Okay. All right. Thank you.

13          MR. CRABB: Thank you.

14          THE COURT: Thanks, Mr. Crabb.

15          Mr. Woodward, one question for you.

16          The testimonial immunity that you believe

17   Dr. Navarro has or had, qualified or something else?

18          MR. WOODWARD: So something else, insofar as we

19   don't believe that we're in a posture, procedural posture

20   today, where if the Court were to conclude that there was an

21   immunity invoked by the former President, the Court could

22   then conclude that, irrespective of the invocation by the

23   former President, the immunity does not preclude prosecution

24   in this case, which is what the government is asking the

25   Court to do.

1          THE COURT:  Maybe I'll just be concrete.

2          Is it the defense's position that the immunity

3     that he had, the testimonial immunity he had, because in

4     your view he was instructed, that was a qualified immunity

5     or an absolute immunity not to testify?

6          MR. WOODWARD:  And I'm sorry that I can't answer

7     that "yes" or "no," because we do believe that after his

8     invocation of privilege, that the government could have

9     taken steps to overcome that immunity.  We appreciate that

10    the D.C. Circuit has made that clear and -- but it wasn't

11    done here.

12         The problem we have with our view of the way the

13    statute is to be interpreted is what the government suggests

14    is that Dr. Navarro is told by the former President to

15    invoke immunity, not show up.

16         He's then prosecuted by the Department under the

17    succeeding administration, and that Department of Justice

18    and that -- the incumbent President said, actually, we think

19    the privilege should be overcome because of the importance

20    of the issues, et cetera.  And so now he can be prosecuted

21    for contempt of Congress.

22         That defeats the purpose --

23         THE COURT:  But -- I get that --

24         MR. WOODWARD:  Okay.

25         THE COURT:  -- or I understand that.

1              And I actually had one more question for

2    Mr. Crabb, now that you've raised that.

3              But in your view, it is a qualified immunity.

4              MR. WOODWARD:  It is a qualified immunity that can

5    be overcome through appropriate procedures which would not

6    include a criminal prosecution under 192.

7              THE COURT:  Right.  That's what I -- okay.

8    Got you.

9              Mr. Crabb, the question for you then is as

10   follows:

11             In the government's estimation, if the immunity is

12   qualified, are there any due process concerns about the

13   nature of -- well, about the conduct and the application of

14   the statute to him?

15             And I say that for two reasons.  One is, it's

16   never been articulated, to my knowledge, until *Meadows*, that

17   that's the government's position and has been the

18   government's position.

19             And, two, insofar as qualified immunity has to

20   take into account the current President's view about the

21   invocation, that wasn't done until -- well, I take it back.

22   That was done before he was charged, all right, strike

23   number two, number one, in terms of -- are there any due

24   process concerns in your mind about the fact that there was

25   no -- nothing on the books about the kind of immunity he was

1    entitled to and that it would be a lesser form of immunity?

2              MR. CRABB:  May I just ask to make sure I'm

3    following, is the Court's question like, if the Court were

4    to conclude that it is a qualified immunity for a former

5    President and that there was -- testimonial immunity had

6    been invoked, would there be a due process problem with them

7    still charging Mr. Navarro because that is a qualified

8    immunity which had been overcome?  Am I following?

9              THE COURT:  Right.

10             In other words, until -- I don't know that the

11   Department had ever articulated the position that, for a

12   former aide of a former President, the testimonial immunity

13   is qualified versus the absolute immunity the Department has

14   taken the position with respect to current Presidents,

15   former aides; current President, current aide.

16             MR. CRABB:  I believe I understand the Court's

17   question.

18             And I'm sorry to do this, but I'm going to ask

19   the Court's indulgence.  Could we, on a short timeline, get

20   back to the Court on that question?

21             THE COURT:  Sure.

22             MR. CRABB:  Thank you.

23             THE COURT:  I appreciate that.

24             Okay.

25             All right.  Thank you for indulging me.

1          Mr. Woodward, do you want to add anything more to

2   your Speedy Trial motion to dismiss?

3          MR. WOODWARD:  It's an extremely technical

4   argument, I'll own that, as I previewed for the Court back

5   in May; nevertheless, it's a constitutional argument, and

6   the Constitution is technical from time to time.

7          THE COURT:  Why is it a constitutional argument?

8          MR. WOODWARD:  Because he has a constitutional

9   right to a speedy trial as codified under the

10  Speedy Trial Act.

11         THE COURT:  I think it's a different analysis but

12  go ahead.

13         MR. WOODWARD:  Well, the Speedy Trial Act --

14         THE COURT:  Bottom line is, I don't know that

15  they're coterminous, the constitutional right to a speedy

16  trail and the Speedy Trial Act.  But it doesn't matter.

17  Go ahead.

18         MR. WOODWARD:  I don't think they are coterminous.

19         THE COURT:  Right.

20         MR. WOODWARD:  I don't mean to suggest otherwise.

21         But Speedy Trial Act comes from --

22         THE COURT:  Right.

23         MR. WOODWARD:  -- his constitutional right.

24  That's why we have the Speedy Trial Act.

25         And so -- and courts in this district and in

1    this -- and all over the country have said that, although

2    technical, we have to abide by the terms of the

3    Speedy Trial Act.

4            And so when I was before you in January and

5    wrongly believed that the government was going to file a

6    pretrial motion that automatically excluded time under the

7    Act, that was what I assumed was going to be happening.

8    I was wrong.

9            The government's brief, in our view, does not ask

10   the Court for relief and therefore does not qualify as a

11   motion that automatically tolls time under the Act.  And the

12   Court's ability to find that the interests of justice

13   warrant tolling is not something that could -- can be

14   applied retroactively.

15           So it brings me no pleasure in making a technical

16   argument like this, but, nevertheless, it's one that we felt

17   incumbent to preserve.  And so we've made it.

18           I think the briefing speaks to the various issues,

19   and I'm sure the Court understands our position.  But if you

20   have any questions, we're happy to take them up.

21           THE COURT:  No.

22           MR. WOODWARD:  Thank you, Your Honor.

23           THE COURT:  All right.

24           Let me just go ahead and rule.

25           The motion will be denied.

1          By our calculations, as of the time the defense

2    raised the issue, only 56 days on the clock had tolled.

3    Here's how we get there.

4          Mr. Navarro was indicted on June the 2nd.  The

5    time between June the 3rd and the 17th was tolled by a

6    magistrate judge.

7          He was arraigned on the 17th.  From June 18th

8    through July 13th, there was no tolling.  So 26 days elapsed

9    during that period.

10         July 14th, Mr. Navarro -- or Dr. Navarro filed a

11   motion to modify the protective order tolling time, albeit

12   that for one day, because I granted the motion the next day.

13         The clock started up again on July 16 and ran

14   through August the 3rd for another 19 days, because what

15   happened on August 4th, Dr. Navarro filed a motion to

16   compel.

17         Then on August 17th, Dr. Navarro filed his motion

18   to dismiss.

19         And then on September 28th, the government filed

20   its motion in limine.

21         And then on November 4th, the Court held the

22   motion to dismiss hearing, at which time time was tolled

23   through January the 11th, which was the first trial date.

24         The first trial date was continued, and time was

25   not tolled, unfortunately, from January 12th through January

1    22nd, adding an additional 11 days.

2           The time began to toll again on January 23rd when

3    the government filed its second motion in limine to exclude

4    exhibits at trial, and, I believe, even extended certain

5    defenses at trial.  There's no doubt that that was a motion.

6           The next day, January 24th, Dr. Navarro filed his

7    motion for reconsideration.  That motion for reconsideration

8    also asked for an evidentiary hearing, and it also asked for

9    the Court to compel discovery.

10          I then held the hearing on the 27th, at which time

11   I denied the motion for reconsideration but did not rule

12   either on the government's second motion in limine and I did

13   not rule on the request for an evidentiary hearing or on the

14   motion to compel.  So those issues remained open following

15   the January 27th hearing, and I asked for further briefing

16   to inform me on those existing motions.

17          The 25th, the government -- we'd tolled time at

18   the hearing through February 28th; the government asked for

19   an extension through March the 14th.  That time continued to

20   be tolled, even though there was not explicit tolling during

21   that period, because we were in a period during which

22   additional briefing following a hearing was requested by the

23   Court and was still in process.

24          And, in fact, that remained the case until the

25   defense filed its response -- and I don't have the exact

1  date for that.  But then the Court had 30 days after the

2  defense filed its response, and that brought us beyond the

3  period of time -- excuse me -- I think that would bring us

4  to May 28th, correct?  Right.

5          So even the 30 days added after the defense's

6  filing of the motion -- excuse me, filing of its opposition,

7  an additional 30 days are included under the statute.  That

8  brought us to May 28th.  That post-dated by three days the

9  government's filing of the motion to set a trial date, which

10  tolled time.

11          So bottom line is, time remained tolled through

12  May the 28th and actually until May the 30th, because the

13  government had filed a motion to set a trial date, which

14  tolled the time running until I resolved that motion, which

15  was on May 30th.  And we did set a trial date on May 30th,

16  we set it for September 5th, and the defense agreed to toll

17  time through September the 5th.

18          So from January 23rd moving forward, all of that

19  time was tolled by a combination of motions and consented to

20  exclusions of time.  And we continued to be in a period

21  where the time is tolled based upon the exclusion of time.

22  So that's one reason why the clock has not run out.

23          The second reason the clock has not run out is

24  that the time was excluded for the government to file a

25  pleading after the hearing that we had on January the 27th

```
 1   when the government -- the time after January 27th through
 2   February 28th was explicitly tolled with the consent of the
 3   defendant.  The government asked for an extension to March
 4   14th, and there was no explicit tolling through March the
 5   14th.
 6              When the government filed its motion on March the
 7   14th -- excuse me, filed its opposition or its response on
 8   March the 14th, that qualified as a motion that
 9   independently tolled time once again.
10              And the definition of a motion, from the Melendez
11   decision, "The term 'motion' generally means an application
12   made to a court or judge for the purpose of obtaining a rule
13   or order directing some act be done in favor of the
14   applicant."
15              And the government in its filing that it made on
16   March the 13th or --
17              MR. WOODWARD:  14th.
18              THE COURT:  -- 14th, among other things, they
19   asked the Court to, "exclude from trial all argument and
20   evidence relating to executive privilege and testimonial
21   immunity and grant the pending motion in limine" that's on
22   page 1 of the government's submission.
23              On page 9, the Court -- the government asked, "The
24   Court should not permit the defendant to raise his
25   assertions about privilege and immunity before the jury."
```

1    That's on page 9.

2              On page 24, the government asked that the

3    defendant should not be permitted to present evidence or

4    argument regarding entrapment by estoppel at trial.  And

5    then at page 25, they asked the Court to grant the pending

6    motion in limine.

7              So although not styled as a motion, the

8    government's filing and submission that the Court had

9    requested was also a motion, and that therefore tolled the

10   time up at least through May the 30th, both to get an

11   opposition from the defense, which was then submitted for

12   there to be a hearing on those motions, which happened

13   today, and the Court has then 30 days under the statute to

14   resolve this.  Now, time is already excluded up through the

15   trial date, so that additional 30 days is already subsumed

16   within the period of time.

17             That period from February 28th through the date of

18   the filing, March 13th, when the government asked for the

19   extension and the Court did not expressly toll, I believe

20   I have the ability to now say on the record under

21   *United States versus Edwards* that that time was tolled and

22   the ends of justice outweighed the interests of the public

23   and the defendant in a speedy trial.

24             And that time is excluded because the parties had

25   agreed and the Court had requested to file additional

1   briefing to support the Court's evaluation of the pending

2   motions that it had considered at the oral hearing that took

3   place on the 27th.  That is clearly contemplated by the fact

4   that the defense at that hearing had agreed to exclude time

5   until the government filed its motion, clearly understanding

6   that there was an interest, a substantial interest in

7   excluding time.

8          And so giving the government that additional time,

9   which was not opposed, I should note, by the defense,

10  I think I can now say on the record that that time is also

11  excluded -- even though I may not have said that previously,

12  that that time is also excluded under the Speedy Trial Act

13  because the ends of justice were outweighed by the interests

14  of the defendant and the public in a speedy trial for that

15  period between February the 28th through the filing of the

16  government's papers on March the 13th.

17         So for those two independent reasons, time has not

18  run on the Speedy Trial Act.  And so we are, as I said, by

19  our calculations, 56 days in, we're under the 70 days, time

20  is tolled through the trial date, and so there's no basis

21  for dismissing the case for violating the Speedy Trial Act,

22  okay?

23         Anything else, Counsel?

24         MS. ALOI:  No.

25         THE COURT:  All right.

1          Thank you, all, very much.  We will be in touch

2   about how we will proceed on the matter that we've been

3   talking about for the better part of the morning.

4          MR. WOODWARD:  I'm sorry, Your Honor.  There is

5   one other issue that we didn't address at the last hearing,

6   that was my oversight, and that's the government's position

7   that we have waived any opportunity to argue entrapment by

8   estoppel.  That came up in January.  The Court will recall

9   that it set a deadline for us to provide notice of our

10  intent to use entrapment by estoppel.  And in our briefing

11  in response to the government's -- as the Court now has

12  ruled -- motion, we indicated that we did provide notice.

13         Now, the background on that is that when you and I

14  were in our colloquy about providing notice of entrapment by

15  estoppel, I was, again, mistaken about the fact that we had

16  already provided notice, and my colleagues reminded me after

17  that colloquy that, in fact, we --

18         THE COURT:  I don't think you've waived.

19         What I will tell you is that I don't think you've

20  presented a sufficient -- made a sufficient disclosure

21  pretrial --

22         MR. WOODWARD:  Well --

23         THE COURT:  -- to advance the defense.

24         And perhaps the rule does not technically require

25  it.

1              MR. WOODWARD:  Right.

2              THE COURT:  I am requiring it.

3              MR. WOODWARD:  All right.

4              So then we would like to provide additional --

5              THE COURT:  And let me explain why.

6              I think it is akin to a public-authority defense,

7      which the rule does require be disclosed beforehand.

8              And I think, frankly, in fairness to the

9      government, if Dr. Navarro is going to rely on an entrapment

10     by estoppel, that he identify precisely what he was

11     entrapped by.

12             MR. WOODWARD:  I don't think we have any problem

13     with doing that and we can do that in, say, 14 days.

14             THE COURT:  Okay.

15             MR. WOODWARD:  I just would want to make clear

16     that we aren't committing to Dr. Navarro's testimony,

17     whether at an evidentiary hearing or at a trial, but we

18     appreciate that the government wants to know where we would

19     get the defense from.

20             I'm not trying to mince words here, I think it

21     would come from Dr. Navarro's understanding, and so we can

22     make a proffer to the government about what Dr. Navarro

23     would say if we were going to present that defense.

24             THE COURT:  Right.

25             MR. WOODWARD:  Is that fair to the Court?

1           THE COURT:  That would be -- yes.

2           And Ms. Aloi and Mr. Crabb, is that consistent

3    with what you have requested?

4           MS. ALOI:  It's actually consistent with what you

5    had ordered back in January they do in February.

6           THE COURT:  Yeah, I don't remember exactly, but

7    okay.

8           Yeah, we've moved things around.

9           And the government -- if you can do that in

10   14 days, that'll give the government ample opportunity to

11   think about it.

12          MR. WOODWARD:  Thank you, Your Honor.

13          THE COURT:  All right.

14          Mr. Crabb.

15          MR. CRABB:  Sorry for the ping-pong.

16          But just to make clear, I believe the Court

17   analogizes Rule 12.3, which requires notice of a

18   public-authority defense.

19          And it specifically says that if the defense is

20   not used, withdrawn, the government can't use that against

21   the defendant.

22          So by them giving us a notice if they choose not

23   to actually present the defense at trial, the rule

24   contemplates we can't use that somehow against them, which I

25   understood to be the defense's concern.

1              THE COURT:  Oh.

2              MR. CRABB:  That's Rule 12.3(e), inadmissibility

3    of withdrawn intention.

4              THE COURT:  Right.

5              Yeah, I appreciate you pointing that out.

6              I don't think that was the concern, but if it

7    wasn't, it wasn't my concern.

8              MR. CRABB:  Okay.

9              I thought there was a concern about waiving

10   some --

11             THE COURT:  Yeah.

12             No, no, no.

13             I mean, I would treat this much like I would treat

14   the testimony of a defendant at a motion to suppress, which

15   is, the defendant can testify at a motion to suppress

16   hearing without prejudice to that being presented at a

17   trial.

18             MR. CRABB:  Right.

19             And that's how I understood it.  Not committed to

20   presenting the defense.

21             THE COURT:  Yeah.  Right.

22             MR. CRABB:  So just committed to giving proper

23   notice.

24             THE COURT:  Correct, that's all it is is notice.

25   Just in the same way that alibi or any other defense that

1    requires notice be given, it doesn't require the defendant

2    to then present it at trial.

3              MR. WOODWARD:  We appreciate the government's

4    clarification.

5              THE COURT:  All right.

6              Thank you, everyone.

7              COURTROOM DEPUTY:  All rise.  This court stands in

8    recess.

9              (Proceedings concluded at 12:30 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

        I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date:__June 21, 2023_____     

                               William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY: [4]** 3/2 80/6 80/9 98/7
**MR. CRABB: [122]**
**MR. WOODWARD: [82]** 54/8 55/10 55/12 57/18 58/8 58/16 58/20 59/1 59/4 59/6 59/10 59/25 60/4 60/12 60/15 61/3 61/5 61/23 62/5 63/1 63/12 63/14 63/16 64/1 64/6 64/15 64/19 65/1 65/19 65/23 66/7 66/14 66/17 67/12 67/24 68/2 68/8 68/10 68/16 68/20 68/23 69/8 69/13 69/22 70/2 70/5 70/12 70/15 70/20 71/3 71/10 72/5 72/18 72/22 72/25 73/2 73/5 73/22 74/9 74/18 74/23 82/18 83/6 83/24 84/4 86/3 86/8 86/13 86/18 86/20 86/23 87/22 91/17 94/4 94/22 95/1 95/3 95/12 95/15 95/25 96/12 98/3
**MS. ALOI: [4]** 79/7 79/22 93/24 96/4
**THE COURT: [207]**

**'**

**'motion' [1]** 91/11

**1**

**100 [3]** 57/16 64/15 78/9
**10:00 [1]** 1/6
**11 [2]** 28/22 89/1
**11:48 [1]** 80/8
**11th [1]** 88/23
**12.3 [2]** 96/17 97/2
**12:06 [1]** 80/8
**12:30 [1]** 98/9
**12th [1]** 88/25
**13th [4]** 88/8 91/16 92/18 93/16
**14 [1]** 95/13
**14 days [1]** 96/10
**1455 [1]** 2/3
**14th [10]** 38/25 39/23 88/10 89/19 91/4 91/5 91/7 91/8 91/17 91/18
**16 [1]** 88/13
**17th [3]** 88/5 88/7 88/17
**18 [1]** 54/21
**1808 [1]** 2/11
**18th [1]** 88/7
**19 [1]** 88/14
**192 [2]** 55/15 84/6
**194 [4]** 55/2 55/3 63/3 63/3
**19th [1]** 28/21
**1:00 [1]** 61/20

**2**

**20 [1]** 39/1

**20020 [2]** 1/15 2/20
**20004 [1]** 2/4
**20010 [1]** 2/11
**202 [4]** 1/16 2/12 2/16 2/21
**2023 [3]** 1/5 39/23 99/7
**20854 [1]** 2/15
**21 [2]** 1/5 99/7
**22-200 [2]** 1/4 3/3
**22039 [1]** 2/7
**22nd [1]** 89/1
**23rd [2]** 89/2 90/18
**24 [1]** 92/2
**24th [1]** 89/6
**25 [1]** 92/5
**252-7212 [1]** 1/16
**258-6597 [1]** 2/16
**25th [1]** 89/17
**26 [1]** 88/8
**27th [5]** 89/10 89/15 90/25 91/1 93/3
**28th [8]** 88/19 89/18 90/4 90/8 90/12 91/2 92/17 93/15
**2nd [1]** 88/4

**3**

**30 days [5]** 90/1 90/5 90/7 92/13 92/15
**301 [1]** 2/4
**30th [4]** 90/12 90/15 90/15 92/10
**3249 [1]** 2/21
**333 [1]** 2/20
**354-3249 [1]** 2/21
**3rd [2]** 88/5 88/14

**4**

**40 [1]** 55/20
**400 [1]** 2/3
**402-8800 [1]** 2/8
**4th [2]** 88/15 88/21

**5**

**56 [2]** 88/2 93/19
**5670 [1]** 2/4
**5th [2]** 90/16 90/17

**6**

**60-plus [1]** 59/19
**60-some-odd [1]** 70/16
**601 [1]** 1/15
**6597 [1]** 2/16

**7**

**70 days [1]** 93/19
**703 [1]** 2/8
**7212 [1]** 1/16
**7447 [1]** 2/12

**8**

**807-5670 [1]** 2/4
**8639 [1]** 2/7
**8800 [1]** 2/8

**9**

**996-7447 [1]** 2/12

**A.m [2]** 1/6 80/8
**abide [1]** 87/2
**ability [4]** 54/22 59/23 87/12 92/20
**able [1]** 82/4
**about [91]** 3/20 5/17 7/19 7/25 8/22 9/1 25/13 25/16 26/6 26/23 26/23 26/24 27/19 32/15 32/16 32/17 33/19 34/2 34/16 36/11 36/12 38/5 38/8 38/9 38/18 39/8 40/20 40/23 40/25 41/14 41/20 41/21 42/1 42/4 42/13 42/23 45/16 47/4 47/10 47/16 47/22 48/4 48/24 49/5 49/11 52/4 52/16 54/20 54/21 56/25 57/14 57/23 59/2 60/23 61/17 61/24 62/21 63/11 63/19 63/20 63/22 66/25 68/10 69/14 71/14 72/9 72/11 73/7 73/17 75/9 76/8 78/22 80/1 80/4 80/14 81/2 81/16 82/11 84/12 84/13 84/20 84/24 84/25 91/25 94/2 94/3 94/14 94/15 95/22 96/11 97/9
**above [2]** 38/2 99/4
**above-titled [1]** 99/4
**absolute [18]** 7/22 8/1 8/5 8/7 9/5 9/22 9/25 10/8 10/9 10/13 12/8 19/1 21/25 54/14 59/21 65/5 83/5 85/13
**absolutely [3]** 20/20 56/8 66/7
**according [1]** 24/22
**accordingly [1]** 21/18
**account [1]** 84/20
**acknowledge [1]** 58/16
**act [14]** 21/17 57/9 86/10 86/13 86/16 86/21 86/24 87/3 87/7 87/11 91/13 93/12 93/18 93/21
**action [2]** 23/17 55/6
**activities [1]** 57/10
**acts [22]** 4/18 9/19 13/2 14/12 22/9 40/20 40/20 40/24 40/25 41/1 41/6 42/4 42/13 42/23 57/14 57/17 62/21 62/24 65/13 65/17 67/10 69/7
**actual [2]** 18/19 74/3
**actually [14]** 12/21 15/1 16/14 23/10 24/13 59/3 71/8 73/22 75/16 83/18 84/1 90/12 96/4 96/23
**add [4]** 46/19 46/21 81/23 86/1
**added [1]** 90/5

**adding [1]** 90/9
**additional [8]** 79/15 89/1 89/22 90/7 92/15 92/25 93/8 95/4
**address [9]** 29/7 51/7 53/13 53/15 53/17 54/8 55/24 75/19 94/5
**addressed [1]** 43/15
**addressing [1]** 35/22
**adjudged [1]** 39/3
**adjudicated [2]** 12/1 12/17
**adjudication [1]** 10/18
**administration [3]** 63/21 79/13 83/17
**admits [1]** 61/16
**adopt [1]** 14/6
**advance [2]** 67/3 94/23
**advise [1]** 70/20
**advised [1]** 18/6
**adviser [5]** 38/5 52/1 52/1 62/20 64/10
**advisers [1]** 37/17
**advocating [1]** 29/25
**affect [3]** 12/16 39/7 76/1
**affirmative [6]** 26/10 26/17 36/9 36/10 36/15 37/2
**after [13]** 11/22 18/6 20/18 21/4 43/24 54/23 64/12 83/7 90/1 90/5 90/25 91/1 94/16
**again [23]** 3/11 7/3 15/13 17/22 19/11 22/20 23/4 27/22 30/12 30/22 35/7 44/18 48/9 51/17 54/16 62/4 63/2 78/5 81/19 88/13 89/2 91/9 94/15
**against [4]** 6/19 54/14 96/20 96/24
**ago [2]** 31/21 47/4
**agree [15]** 8/4 11/15 29/13 32/3 32/8 44/23 45/10 50/19 57/1 64/13 64/18 68/6 68/23 72/6 76/21
**agreed [6]** 41/16 62/11 81/8 90/16 92/25 93/4
**agreement [2]** 9/5 61/8
**ahead [6]** 19/15 28/16 69/15 86/12 86/17 87/24
**aide [77]** 4/16 4/20 5/1 5/12 5/23 7/8 7/9 7/12 7/13 7/17 8/2 8/5 8/7 8/8 9/16 9/18 9/23 9/25 10/3 10/6 10/7 10/7 10/9 11/2 11/8 11/9 12/25 13/6 13/13 13/16 14/10 14/11 14/13 14/24 14/25 15/3 15/12 15/14 15/17 15/19 15/25 17/1 18/5 18/13 18/14 18/16 18/21 21/4 24/23 24/24 24/24 27/2 40/22 41/2 41/4 41/6

**aide's [6]** 4/18 5/4 9/8 9/24 13/5 18/18
**aided [1]** 2/23
**aides [2]** 65/20 85/15
**akin [5]** 33/21 34/1 38/16 40/17 95/6
**albeit [2]** 65/20 88/11
**alibi [1]** 97/25
**aligns [1]** 59/18
**all [60]** 3/13 10/11 12/10 12/25 13/25 19/12 20/25 21/19 22/1 23/1 25/4 33/22 34/18 35/16 40/14 41/16 43/16 43/24 43/25 46/17 47/4 48/10 49/18 54/7 56/24 57/7 57/23 59/19 59/20 61/16 65/12 65/14 67/2 67/9 74/22 76/2 76/6 78/5 78/17 78/19 78/20 78/23 79/25 80/6 80/9 81/20 82/12 84/22 85/25 87/1 87/23 90/18 91/19 93/25 94/1 95/3 96/13 97/24 98/5 98/7
**all right [4]** 84/22 87/23 95/3 96/13
**alleged [1]** 57/8
**allow [1]** 56/12
**allows [1]** 69/10
**alluded [2]** 49/10 82/2
**almost [1]** 35/12
**Aloi [6]** 1/13 3/5 3/22 46/20 79/6 96/2
**already [15]** 17/5 27/24 28/5 28/22 30/14 42/21 42/22 43/1 47/10 60/20 76/24 82/9 92/14 92/15 94/16
**also [16]** 14/22 25/4 25/4 25/5 25/8 37/15 37/20 37/24 38/8 38/22 53/18 89/8 89/8 92/9 93/10 93/12
**although [3]** 44/18 87/1 92/7
**always [3]** 50/21 51/6 76/6
**am [6]** 18/13 25/24 43/3 62/17 85/8 95/2
**ambiguity [4]** 42/1 42/6 42/11 42/15
**Amendment [2]** 76/3 76/4
**AMERICA [2]** 1/3 3/3
**AMIT [1]** 1/10
**among [1]** 91/18
**ample [1]** 96/10
**analogies [1]** 35/24
**analogizes [1]** 96/17
**analysis [2]** 6/14 86/11
**Ann [1]** 1/13

**A**

**Anne [1]** 68/14
**another [3]** 11/17 54/6
88/14
**answer [10]** 4/7 5/10
8/16 13/17 16/6 41/19
63/8 78/2 82/9 83/6
**answering [1]** 44/6
**any [32]** 4/6 9/24 10/7
24/12 32/12 36/12
36/16 39/24 41/17 44/8
48/21 48/23 49/5 49/13
52/10 60/17 60/18
63/22 64/17 65/11
65/17 73/25 74/11 75/1
75/7 82/5 84/12 84/23
87/20 94/7 95/12 97/25
**anymore [1]** 42/20
**anyone [1]** 75/5
**anything [16]** 4/1 14/3
15/15 42/4 43/11 46/19
58/6 58/7 69/12 69/19
73/4 74/22 78/17 80/1
86/1 93/23
**apologize [6]** 16/19
23/4 33/3 33/16 52/6
81/25
**apparently [1]** 62/11
**Appeals [2]** 60/4 61/1
**appear [14]** 29/1 33/8
37/14 41/12 41/19
41/21 57/11 57/13 70/6
71/4 71/4 71/11 71/15
71/17
**appearance [2]** 29/4
41/23
**APPEARANCES [2]**
1/12 1/18
**appearing [1]** 3/19
**apple [2]** 77/1 77/9
**applicant [1]** 91/14
**application [4]** 56/17
75/18 84/13 91/11
**applied [7]** 55/15 61/25
62/9 66/9 66/10 80/16
87/14
**applies [1]** 58/4
**apply [1]** 65/7
**appreciate [12]** 21/15
23/21 23/25 32/17
43/14 51/2 55/4 58/15
60/24 74/14 78/6 84/5
**appropriately [3]** 30/20
36/19 79/1
**appropriation [1]** 78/7
**are [42]** 5/15 15/2
19/22 22/8 32/16 32/22
32/24 34/4 34/13 34/17
35/1 35/24 36/1 36/20
43/23 43/23 46/1 49/15
50/15 50/23 50/25 54/7
56/23 57/19 62/7 62/22
64/21 67/2 68/25 68/25
69/11 71/15 71/17
73/20 75/11 76/16 82/6

93/18
**are there [1]** 84/23
**area [1]** 40/14
**areas [1]** 46/9
**aren't [3]** 73/16 74/7
95/16
**arguably [4]** 26/2
26/12 41/5 42/16
**argue [4]** 12/9 29/1
56/15 94/7
**arguing [1]** 56/24
**argument [7]** 60/18
86/4 86/5 86/7 87/16
91/19 92/4
**arises [1]** 73/10
**around [1]** 96/8
**arraigned [1]** 88/7
**articulated [3]** 11/19
84/16 85/11
**as [113]**
**aside [6]** 8/6 17/17
25/3 66/14 66/17 81/13
**ask [25]** 8/4 24/22
32/10 38/24 40/25 42/3
42/13 42/23 54/6 57/19
57/21 63/11 67/15
75/13 75/22 75/24
76/10 76/21 77/9 79/18
80/12 82/3 85/2 85/18
87/9
**asked [15]** 34/18 42/1
59/17 60/23 72/15 89/8
89/8 89/15 89/18 91/1
91/19 91/23 92/2 92/5
92/18
**asking [4]** 7/17 16/24
38/19 82/24
**assert [5]** 7/9 7/13 8/9
13/1 63/23
**asserted [1]** 38/3
**asserting [1]** 11/3
14/12
**assertion [6]** 8/1 10/11
22/4 22/4 44/22 79/9
**assertions [1]** 91/25
**assess [2]** 16/24 52/6
**assessment [2]** 5/25
17/19
**assume [1]** 21/22
**assumed [3]** 80/19
80/24 87/7
**assuming [4]** 8/17 13/7
50/23 56/8
**assumption [2]** 22/2
23/9
**assumptions [1]** 75/11
**assure [1]** 75/12
**attached [1]** 77/20
**attempt [3]** 4/7 16/6
78/21
**attempted [2]** 23/16
39/1
**attempting [1]** 30/18
**attempts [1]** 64/8
**attorney [2]** 55/5 66/23
**ATTORNEY'S [1]** 1/14
**August [3]** 88/14 88/15

**authority [12]** 25/6
25/9 29/9 37/21 38/9
38/15 38/22 45/19
45/21 46/3 95/6 96/18
**authorization [2]** 72/21
72/23
**authorized [1]** 38/11
**automatically [2]** 87/6
87/11
**Avenue [2]** 2/3 2/20
**aware [2]** 16/14 21/5

**B**

**back [23]** 3/15 9/17
12/5 26/3 27/22 30/5
30/22 31/1 37/12 46/8
46/13 47/3 48/3 55/20
59/16 63/2 67/21 72/8
80/5 84/21 85/20 86/4
96/5
**background [1]** 94/13
**balance [2]** 6/19 67/24
**balancing [3]** 6/6 6/15
6/25
**bar [7]** 26/16 26/19
36/3 41/23 41/23 54/14
56/21
**barred [5]** 33/23 33/25
56/10 56/16 56/18
**Barrett [1]** 2/19
**bars [1]** 56/9
**base [1]** 35/25
**based [8]** 5/3 11/25
13/9 26/16 58/2 64/10
65/15 90/21
**basis [9]** 24/7 24/16
29/20 42/18 43/18 44/6
44/21 51/3 93/20
**Bates [1]** 65/14
**be [170]**
**bear [3]** 12/22 21/21
36/14
**bearing [1]** 36/16
**because [72]** 12/21
13/19 13/25 14/15
14/16 14/20 15/4 15/14
15/22 15/24 17/11
17/11 18/10 18/21
19/11 21/2 24/11 26/20
27/10 28/10 29/2 31/19
31/20 34/14 37/6 38/15
38/21 41/13 42/9 42/24
43/15 44/1 44/21 45/3
45/23 47/5 49/6 50/11
50/15 53/21 53/22
56/23 57/2 57/13 58/5
59/7 60/20 62/6 62/16
62/22 63/19 65/2 65/11
65/19 66/2 66/16 69/17
71/16 72/7 76/12 79/11
83/3 83/7 83/19 85/7
86/8 88/12 88/14 89/21
90/12 92/24 93/13
**been [62]** 3/16 3/19
7/20 8/9 8/21 12/8
12/19 15/21 17/21 18/2
18/25 20/19 21/6 31/5

36/7 37/1 38/8 41/6
41/13 43/8 43/15 44/15
44/12 44/16 47/8 47/16
47/24 48/11 48/14 49/9
49/21 50/24 50/25
51/22 53/2 56/8 56/23
57/9 57/23 58/23 60/20
65/7 67/3 72/7 75/6
75/14 76/3 76/4 79/1
80/13 80/22 80/24
81/22 84/16 84/17 85/6
85/8 94/2
**before [17]** 1/10 15/10
37/14 46/19 47/22 52/7
52/25 53/21 54/6 55/6
59/9 76/12 78/11 78/25
84/22 87/4 91/25
**beforehand [1]** 95/7
**began [1]** 89/2
**begin [2]** 3/22 27/20
**beginning [2]** 48/4
49/11
**behalf [4]** 67/14 67/15
70/5 79/11
**behind [1]** 52/4
**being [11]** 20/1 25/22
26/11 26/15 30/13
30/14 32/1 64/8 70/8
77/10 97/16
**belief [2]** 29/15 29/16
**believe [56]** 3/15 5/16
6/1 7/23 7/25 7/25 8/17
8/25 10/18 12/3 15/6
16/20 16/23 17/23
18/17 19/3 19/25 20/12
20/20 21/14 23/9 23/21
24/8 24/10 25/14 25/21
26/13 27/24 28/5 36/16
36/22 39/19 40/6 40/9
41/12 43/14 44/11
44/18 45/5 46/10 47/3
47/18 50/13 51/6 53/7
78/5 80/17 80/22 81/5
82/16 82/19 83/7 85/16
89/4 92/19 96/16
**believed [6]** 11/25 29/2
57/3 66/24 67/5 87/5
**believes [4]** 18/7 32/21
34/20 68/3
**belonging [1]** 56/20
**best [1]** 35/24
**better [5]** 43/21 49/13
50/19 51/5 94/3
**between [8]** 26/4 36/12
60/10 60/11 69/6 72/8
88/5 93/15
**beyond [8]** 32/14 35/20
36/7 37/1 38/2 62/25
76/18 90/2
**bifurcated [1]** 40/2
**big [1]** 66/16
**binding [1]** 67/1
**bit [3]** 39/13 40/16
77/10
**bite [3]** 77/1 77/13
77/15
**black [1]** 25/20

**bank [1]** 28/14
**blanket [3]** 70/1 71/20
72/7
**block [1]** 24/17
**blocks [1]** 48/6
**books [1]** 84/25
**boss [4]** 15/21 15/22
18/15 18/17
**both [4]** 40/20 41/5
60/7 92/10
**bottom [3]** 6/22 86/1
90/11
**bound [1]** 62/17
**Bradbury [2]** 31/17
33/7
**branch [1]** 6/15
**Branch's [1]** 6/17
**BRAND [5]** 2/10 2/14
2/14 3/7 68/2
**brandwoodwardlaw.c
om [1]** 2/13
**brief [2]** 39/22 87/9
**briefing [10]** 3/15 3/19
3/20 38/25 61/20 87/18
89/15 89/22 93/1 94/10
**briefly [1]** 75/19
**bring [3]** 55/5 56/6
90/3
**bringing [1]** 64/9
**brings [1]** 87/15
**broader [2]** 9/2 53/18
**broadly [1]** 6/16
**brought [5]** 27/6 50/15
56/5 90/2 90/8
**build [1]** 48/5
**building [1]** 48/6
**Bulger [1]** 23/24
**Bush [4]** 31/3 31/9
31/11 31/24
**business [2]** 57/8
57/10

**C**

**calculation [1]** 6/5
**calculations [2]** 88/1
93/19
**call [7]** 5/4 25/17 59/22
61/20 71/11 73/11
77/18
**called [1]** 4/16
**calls [2]** 8/18 71/8
**came [1]** 12/5 52/4
79/19 94/8
**campaign [1]** 57/9
**can [37]** 3/20 7/24
10/14 11/9 18/19 22/8
25/8 25/9 27/5 30/10
34/9 37/20 38/8 40/23
54/6 59/9 60/23 62/10
65/4 65/7 65/25 66/3
66/5 71/15 75/8 75/12
76/6 76/21 80/12 83/20
84/4 87/13 93/10 95/13
95/21 96/9 97/15
**can't [23]** 15/3 17/10
17/14 18/24 19/17 20/5
21/12 25/11 29/19
29/22 53/6 53/8 53/21

can't... **[10]** 53/22 55/19 55/25 59/11 60/7 60/10 64/24 83/6 96/20 96/24
candid **[1]** 6/18
cannot **[4]** 13/20 29/1 31/19 50/17
capacity **[7]** 61/18 61/21 62/2 66/1 67/1 68/22 82/7
careful **[1]** 16/15
carries **[2]** 36/10 37/3
case **[35]** 3/3 4/14 10/11 11/7 17/11 19/6 23/11 23/13 24/3 24/7 24/23 25/4 32/12 34/20 35/13 35/14 37/4 38/14 42/15 44/24 45/17 48/25 49/16 50/24 52/20 56/12 62/16 64/5 68/10 71/7 72/11 76/6 82/4 89/24 93/21
case's **[1]** 32/13
cases **[4]** 45/7 56/13 76/5 76/7
categories **[1]** 62/7
category **[1]** 36/15
caveat **[1]** 80/18
certain **[2]** 75/11 89/4
certainly **[4]** 17/5 44/7 51/4 78/22
Certified **[1]** 2/18
certify **[1]** 99/2
cetera **[1]** 83/20
CH **[1]** 2/19
chair **[2]** 42/23 71/22
chance **[2]** 43/21 57/2
charge **[1]** 63/15
charged **[8]** 11/9 35/5 53/10 53/20 54/1 59/9 75/6 84/22
charges **[3]** 25/25 50/15 54/1
charging **[1]** 85/7
Chase **[1]** 2/7
choose **[1]** 96/22
chooses **[1]** 36/9
Circle **[1]** 2/7
Circuit **[4]** 64/3 64/4 64/6 83/10
circumstance **[9]** 18/18 33/8 33/10 41/1 41/3 42/5 45/22 45/25 52/5
circumstances **[13]** 5/11 9/21 18/1 23/22 26/2 26/3 26/6 26/7 40/18 47/9 50/5 61/10 63/17
citation **[1]** 23/18
cite **[1]** 62/10
cited **[1]** 45/5
citizen **[1]** 61/21
civil **[4]** 19/22 23/13 23/16 35/13
claim **[2]** 44/15 44/16
clarification **[2]** 48/21

Clark **[1]** 67/15
Clark's **[1]** 67/14
classically **[1]** 30/20
Clause **[1]** 17/13
clear **[20]** 5/3 5/14 26/18 26/20 30/22 31/15 33/7 40/11 41/13 42/12 45/2 47/13 57/16 62/19 66/18 78/9 81/2 83/10 95/15 96/16
clearly **[3]** 34/20 93/3 93/5
cloaked **[1]** 27/18
clock **[4]** 88/2 88/13 90/22 90/23
cloud **[1]** 64/9
code **[1]** 56/23
codified **[1]** 86/9
coerced **[1]** 71/24
colleagues **[1]** 94/16
colloquy **[2]** 94/14 94/17
COLUMBIA **[3]** 1/1 1/14 11/1
combination **[1]** 90/19
come **[13]** 10/25 14/4 18/11 29/19 29/22 34/25 42/14 49/24 49/25 50/13 71/6 77/25 95/21
comes **[7]** 11/2 22/12 27/23 50/9 54/20 56/13 86/21
comfortable **[1]** 60/12
coming **[7]** 13/14 22/10 25/22 28/4 35/14 52/16 58/14
comments **[1]** 53/5
committed **[4]** 34/21 34/22 97/19 97/22
committee **[13]** 5/3 10/19 11/2 37/15 40/22 45/9 45/18 45/20 46/2 46/4 66/19 66/23 67/14
committing **[1]** 95/16
communicate **[2]** 7/18 8/8
communicated **[3]** 7/15 8/2 17/23
communicates **[2]** 14/12 22/3
communicating **[1]** 10/10
communication **[1]** 48/12
communications **[3]** 6/18 36/12 69/6
compel **[9]** 10/12 14/5 22/10 25/6 38/23 52/16 88/16 89/9 89/14
compelled **[8]** 37/15 55/9 58/16 59/1 65/25 66/4 66/5 71/24
compelling **[1]** 38/5
competing **[3]** 14/18 18/1 52/6
complete **[2]** 41/23

completely **[1]** 35/24
complexities **[1]** 66/5
complicated **[1]** 78/23
comply **[3]** 20/4 20/7 72/13
computer **[1]** 2/23
computer-aided **[1]** 2/23
concept **[1]** 82/2
concern **[4]** 96/25 97/6 97/7 97/9
concerning **[2]** 4/18 13/2
concerns **[3]** 65/12 84/12 84/24
conclude **[7]** 51/1 80/2 80/15 80/21 82/20 82/22 85/4
concluded **[3]** 24/2 54/23 98/9
concluding **[1]** 55/23
conclusion **[2]** 50/9 79/20
concrete **[1]** 83/1
conduct **[26]** 9/24 13/5 15/4 15/7 18/18 24/25 25/12 25/12 26/24 27/3 27/6 30/6 30/7 30/24 32/7 33/11 33/13 34/14 34/16 34/18 35/4 53/2 61/17 63/11 64/10 84/13
conferred **[4]** 39/17 46/25 61/4 78/14
confused **[3]** 35/8 49/1 49/4
confusion **[2]** 39/21 40/5
Congress **[49]** 4/15 6/10 7/16 8/2 10/12 13/14 14/2 14/4 14/12 15/15 15/24 22/6 22/7 22/11 23/18 31/4 37/14 38/1 38/22 42/2 45/3 49/20 49/23 52/2 52/15 54/22 54/23 54/25 55/2 57/4 57/6 57/7 58/9 58/10 58/13 58/17 59/12 62/6 62/8 62/13 62/14 62/21 63/18 64/2 64/8 64/8 72/8 72/14 83/21
Congress's **[7]** 6/19 25/6 25/8 37/20 37/25 38/9 63/10
congressional **[6]** 5/2 6/3 7/11 37/16 40/22 67/7
connection **[1]** 76/24
consent **[1]** 91/2
consented **[1]** 90/19
consider **[9]** 24/1 30/10 32/10 38/25 75/13 75/22 75/25 76/10 82/4
consideration **[1]** 5/9
considerations **[1]**

considered **[2]** 43/13 93/2
consistent **[3]** 18/24 96/2 96/4
constituent **[1]** 79/4
Constitution **[2]** 2/20 86/6
constitutional **[14]** 37/22 45/9 57/25 61/25 62/9 66/12 75/24 75/25 76/8 86/5 86/7 86/8 86/15 86/23
constitutionality **[1]** 74/13
constraint **[5]** 57/25 57/25 58/1 58/3 59/22
constraints **[1]** 27/7
construed **[3]** 38/8 40/19 57/13
consulted **[1]** 69/14
contemplated **[1]** 93/3
contemplates **[1]** 96/24
contemplation **[1]** 74/3
contempt **[58]** 11/9 13/5 13/14 13/16 13/21 14/7 14/14 15/4 15/5 15/16 15/17 16/1 16/23 18/6 18/20 19/8 20/21 21/7 22/11 22/11 22/16 23/2 23/7 23/18 23/20 25/1 27/3 27/4 30/24 31/19 31/20 32/1 32/2 32/16 32/18 34/22 39/9 45/20 46/5 48/15 50/3 50/4 51/16 52/23 53/11 55/3 62/8 62/13 62/22 63/10 63/25 64/14 64/24 70/18 70/19 73/19 75/6 83/21
contemptuous **[4]** 30/6 30/7 32/7 35/4
contest **[1]** 54/1
context **[7]** 23/14 25/21 25/23 26/15 48/25 50/10 52/19
contexts **[1]** 56/11
continue **[2]** 48/16 78/22
continued **[4]** 2/1 88/24 89/19 90/20
conversation **[1]** 34/10
conversations **[1]** 6/18
converse **[1]** 71/25
convinced **[1]** 35/3
Conway **[2]** 57/5 57/16
correct **[17]** 4/24 5/6 8/20 8/24 11/10 13/12 22/22 22/23 45/4 46/7 64/16 70/13 73/2 75/4 90/4 97/24 99/3
correctly **[1]** 4/19
correspondence **[1]** 67/14
coterminous **[2]** 86/15 86/18
could **[43]** 6/3 8/8 8/12

13/13 11/17 16/1 17/7 18/6 21/7 26/2 26/6 34/2 36/14 37/24 40/5 40/7 40/19 43/15 45/6 48/15 50/13 50/22 51/4 56/2 58/13 58/18 63/9 63/15 64/13 67/2 71/24 72/9 72/9 75/3 75/19 76/17 78/2 81/6 82/10 82/21 83/8 85/19 87/13
couldn't **[3]** 63/24 73/13 73/19
counsel **[9]** 39/17 46/25 61/4 73/1 78/14 93/23
count **[5]** 80/16 81/15 81/16 81/17 81/22
Count 1 **[2]** 80/16 81/22
country **[2]** 6/9 87/1
couple **[6]** 3/14 75/3 75/13 77/24 79/25 80/11
course **[3]** 4/25 8/14 50/8
court **[146]**
Court's **[34]** 4/7 5/10 5/16 10/3 12/3 13/10 14/16 16/22 16/24 17/17 19/17 28/20 28/22 39/19 40/5 43/5 43/10 43/15 43/22 45/13 46/8 51/24 54/10 54/12 54/17 61/3 78/2 82/3 82/10 85/3 85/16 85/19 87/12 93/1
courtroom **[1]** 3/9
courts **[7]** 32/19 36/20 37/9 37/18 76/7 78/4 86/25
cover **[4]** 33/10 33/13 69/5 81/6
covered **[4]** 69/11 69/25 72/1 72/2
covers **[1]** 41/5 41/14 42/9
CR **[1]** 1/4
Crabb **[14]** 1/13 3/5 3/23 46/17 54/4 59/19 75/1 78/1 80/12 82/14 84/2 84/9 96/2 96/14
create **[1]** 55/1
credibility **[2]** 77/6 78/3
credit **[2]** 80/14 81/20
crime **[9]** 32/14 32/24 33/23 34/5 34/17 34/19 34/21 34/22 45/12
criminal **[10]** 3/13 18/22 23/13 25/12 32/12 35/13 52/20 67/4 67/6 84/6
criminally **[1]** 56/3
CRR **[2]** 99/2 99/8
cure **[2]** 52/22 79/21
curious **[1]** 7/19
current **[14]** 5/24 6/7 6/20 6/24 14/25 24/24

**C**

current... [8] 51/25
55/17 56/20 79/13
84/20 85/14 85/15
85/15
curtain [1] 52/4
cut [1] 40/8

**D**

D.C [5] 1/5 1/15 2/4
2/11 2/20
D.C. [3] 64/3 64/6
83/10
D.C. Circuit [3] 64/3
64/6 83/10
Dan [2] 62/13
date [10] 88/23 88/24
90/1 90/9 90/13 90/15
92/15 92/17 93/20 99/7
dated [1] 90/8
dating [1] 55/20
day [7] 36/10 37/3
72/15 81/1 88/12 88/12
89/6
daylight [1] 46/15
days [15] 56/24 88/2
88/8 88/14 89/1 90/1
90/5 90/7 90/8 92/13
92/15 93/19 93/19
95/13 96/10
deadline [1] 94/9
deal [4] 32/20 32/20
48/1 66/16
dealing [2] 28/23 56/25
dealt [1] 28/22
Debate [1] 17/13
decade [1] 31/21
decade-plus [1] 31/21
decide [19] 25/11 26/1
32/23 32/24 33/24
33/24 34/4 35/23 36/5
36/20 60/5 68/24 72/1
76/2 76/2 76/4 76/9
76/23 76/23
decides [3] 30/21 36/4
76/5
decision [7] 30/11
38/21 60/19 62/12
71/22 78/7 91/11
decisions [2] 62/18
76/8
defeats [1] 83/22
defend [1] 29/22
defendant [20] 1/7 2/2
3/9 28/3 29/1 32/21
43/6 45/8 50/20 51/6
78/10 91/3 91/24 92/3
92/23 93/14 96/21
97/14 97/15 98/1
defendants [1] 56/14
defense [43] 3/8 24/7
26/10 26/11 26/17 29/9
29/17 29/24 30/1 30/16
31/13 36/9 36/9 36/10
37/2 40/15 43/12 44/16
45/12 56/15 61/4 61/10
66/1 67/24 75/23 77/24
79/5 88/1 89/25 90/2

94/23 95/6 95/19 95/23
96/18 96/19 96/23
97/20 97/25
defense's [3] 83/2 90/5
96/25
defenses [4] 36/15
53/20 56/2 89/5
define [1] 34/14
definition [3] 57/8
57/10 91/10
deliberate [1] 29/2
deliberations [1] 75/7
delineated [2] 62/1
62/7
delta [1] 82/11
demonstrate [1] 38/3
denied [2] 87/25 89/11
Department [50] 4/10
4/19 6/23 9/20 11/20
11/24 13/4 13/15 14/8
14/9 14/10 14/24 15/16
15/22 17/20 18/7 18/25
19/19 22/12 22/17
23/19 31/11 31/16
31/17 35/1 37/6 37/8
48/13 48/22 49/25 50/1
50/9 52/17 55/8 55/18
55/19 56/5 57/11 57/18
62/2 62/5 62/11 70/6
72/8 72/14 74/16 83/16
83/17 85/11 85/13
Department's [12] 5/11
5/22 13/20 17/19 17/24
39/2 39/23 39/25 41/2
50/6 63/4 79/10
depend [1] 23/15
depends [5] 25/21
26/15 27/23 30/13
36/24
described [5] 7/22
37/9 37/19 37/20 57/22
desire [1] 63/11
determination [10]
12/12 19/24 24/20 30/7
52/18 53/11 67/4 73/7
76/24 77/7
determinations [1]
78/3
determine [13] 15/11
16/25 24/14 25/19 32/6
32/13 34/18 35/19 36/1
50/22 60/8 76/17 80/22
determined [10] 21/15
24/3 24/5 24/15 27/13
34/21 39/6 40/2 54/25
58/2
determines [1] 23/20
determining [2] 19/4
36/25
dichotomy [1] 81/10
did [22] 11/22 13/7
27/2 29/20 31/12 38/15
40/24 48/5 64/12 67/6
68/15 69/3 69/4 69/16
71/4 73/18 79/14 89/11
89/12 90/15 92/19
94/12

24/10 33/16 36/2 42/2
44/7 44/8 45/3 45/21
47/5 48/23 49/8 51/23
52/3 52/10 53/3 58/24
60/22 69/16 69/17
69/20 70/17 70/20 94/5
difference [2] 22/5
64/19
different [16] 5/16 7/5
9/7 9/10 9/24 21/22
24/5 30/1 30/25 38/13
40/17 42/12 46/2 64/17
64/20 86/11
differently [4] 10/7
21/24 27/16 31/3
difficult [3] 33/1 44/25
56/7
direct [1] 11/8
directed [12] 7/9 9/19
13/1 21/24 22/1 27/3
31/9 31/13 31/18 41/6
51/14 58/6
directing [1] 91/13
direction [1] 14/25
directions [1] 51/15
directly [1] 78/1
disagree [5] 29/14
40/18 61/24 68/4 74/20
disagreement [1] 46/9
disagrees [3] 62/2 62/6
74/16
disclosed [1] 95/7
disclosing [1] 71/25
disclosure [1] 94/20
discovery [1] 89/9
discretion [6] 33/9
33/14 33/17 60/5 63/4
63/6
discretionary [3] 33/20
34/3 36/2
discuss [4] 3/13 47/20
61/21 75/10
discussed [1] 3/19
discussing [1] 25/23
discussion [6] 34/11
47/19 49/10 49/11
75/23 75/24
dismiss [13] 3/16 3/20
23/22 24/3 24/16 28/23
51/3 76/25 77/15 80/1
86/2 88/18 88/22
dismissal [2] 24/8
80/16
dismissed [2] 17/11
81/22
dismissing [1] 93/21
dispute [12] 25/13
27/19 30/9 31/8 31/10
31/23 32/4 32/5 35/10
50/3 58/5 60/1
disputed [1] 54/18
distinction [4] 34/7
35/17 56/22 63/1
district [11] 1/1 1/1
1/10 1/14 10/25 11/1
14/4 22/10 49/24 52/16
65/25

divorcing [1] 54/17
do [55] 4/12 4/19 7/13
9/23 10/6 10/7 13/23
15/12 15/15 16/24
16/25 17/14 18/17
20/14 22/1 22/9 23/21
29/21 31/14 34/14 37/7
38/22 40/24 41/2 41/8
42/19 46/1 46/3 46/21
47/25 51/12 53/21
53/22 55/9 58/7 59/24
60/2 65/9 65/12 65/16
66/19 66/25 68/12
68/13 68/16 74/25 78/4
78/24 82/25 83/7 85/18
86/1 95/13 96/5 96/9
do you [1] 47/25
document [3] 68/19
74/12 75/17
documents [31] 64/12
68/7 68/11 68/13 68/25
69/5 69/11 69/14 69/23
70/8 70/16 70/19 70/21
70/24 71/1 71/1 71/2
71/7 71/21 72/4 72/4
73/15 73/20 73/25 74/3
74/7 74/11 75/15 75/18
81/7 81/13
dodge [1] 8/15
does [39] 5/24 8/4 10/3
10/6 10/6 10/10 10/17
13/2 15/12 15/19 15/22
17/1 18/16 22/25 24/25
27/6 30/24 34/18 36/8
40/1 49/13 49/23 52/15
52/15 59/4 59/7 60/2
67/13 67/15 71/11
73/23 74/13 77/2 79/20
82/23 87/9 87/10 94/24
95/7
doesn't [44] 8/2 12/14
12/15 13/3 15/1 15/2
15/15 15/24 19/24 20/2
20/10 20/11 20/16
20/19 23/2 27/25 27/25
28/5 28/6 29/12 33/10
33/13 33/15 35/22
38/19 39/7 41/20 44/5
44/9 45/18 46/23 47/5
48/9 49/24 49/25 53/25
63/24 67/10 68/12 72/3
73/7 76/8 86/16 98/1
doing [3] 20/13 63/19
95/13
DOJ [2] 8/4 53/4
don't [81] 3/13 3/22 4/1
8/9 8/15 9/1 10/18 18/8
18/15 19/2 20/3 20/12
21/10 23/4 25/14 26/20
28/8 28/11 29/14 30/2
32/8 32/20 32/23 32/25
33/3 33/9 34/4 34/6
35/16 36/16 36/17
36/22 42/10 43/4 43/10
44/24 45/6 45/22 46/10
47/15 47/15 47/18 49/5
50/14 51/5 52/8 52/25

56/12 56/14 59/13 63/24
62/5 63/23 64/1 65/17
66/11 70/21 70/23
70/25 71/1 71/5 71/13
77/18 77/20 78/20 81/5
82/19 85/10 86/14
86/18 86/20 89/25
94/18 94/19 95/12 96/6
97/6
done [12] 5/9 11/17
14/2 14/6 16/4 42/9
43/18 67/9 83/11 84/21
84/22 91/13
door [1] 79/12
double [4] 32/21 33/23
34/12 53/23
doubt [5] 32/14 35/20
36/8 37/1 89/5
dovetailed [1] 12/4
down [3] 54/5 57/4
57/6
Dr. [45] 7/21 12/23
16/11 18/11 21/20
21/24 22/3 22/15 22/25
34/24 40/18 42/3 44/2
45/17 48/20 49/15
49/20 50/4 57/1 58/7
58/8 61/9 61/19 63/9
63/19 66/20 67/2 68/17
68/24 72/13 73/4 73/9
73/10 77/3 79/21 82/17
83/14 88/10 88/15
88/17 89/6 95/9 95/16
95/21 95/22
Dr. Navarro [37] 7/21
12/23 16/11 18/11
21/20 21/24 22/3 22/15
22/25 34/24 40/18 42/3
44/2 49/20 50/4 57/1
58/7 58/8 61/9 61/19
63/9 63/19 67/2 68/24
72/13 73/4 73/9 77/3
79/21 82/17 83/14
88/10 88/15 88/17 89/6
95/9 95/22
Dr. Navarro's [8] 45/17
48/20 49/15 66/20
68/17 73/10 95/16
95/21
drawing [1] 81/11
due [8] 84/12 84/23
85/6
during [4] 36/21 88/9
89/20 89/21
duties [7] 5/5 8/19 38/6
41/15 41/20 41/24
66/20
duty [1] 55/5

**E**

earlier [7] 19/9 50/19
53/6 53/13 75/23 82/2
82/8
EARTH [1] 2/2
Edmund [1] 2/10
Edwards [1] 92/21
effect [2] 12/5 40/1

**E**

**efficient [1]** 51/5
**effort [1]** 62/14
**either [12]** 11/3 11/8
25/19 29/8 48/21 53/1
53/4 60/8 67/1 71/1
78/24 89/12
**elapsed [1]** 88/8
**element [12]** 27/25
28/6 29/12 32/15 36/8
37/7 38/15 38/20 45/11
45/23 46/10 79/4
**elements [10]** 32/13
32/20 32/23 33/22 34/5
35/19 36/7 36/17 36/25
38/10
**Elizabeth [2]** 1/13 3/5
**elizabeth.aloi [1]** 1/17
**else [7]** 74/22 75/5
78/17 79/5 82/17 82/18
93/23
**email [7]** 1/16 1/17 2/5
2/8 2/12 2/16 40/21
**emphasize [2]** 47/7
51/4
**enacted [1]** 54/22
**end [6]** 31/24 32/1 47/9
47/18 49/9 81/1
**ends [2]** 92/22 93/13
**enforce [1]** 54/23
**enforced [1]** 39/9
**enforcement [2]** 54/24
70/15
**engaging [1]** 57/9
**enough [2]** 54/3 77/17
**ensuring [1]** 6/18
**entire [1]** 72/11
**entirely [1]** 58/14
**entitled [6]** 8/5 8/7
9/25 52/18 61/9 85/1
**entrapment [8]** 26/10
29/8 30/16 92/4 94/7
94/10 94/14 95/9
**entrapped [1]** 95/11
**envisioning [1]** 72/7
**essential [1]** 45/23
**essentially [7]** 6/15
28/12 42/7 43/1 46/3
58/23 78/24
**establish [4]** 30/15
60/21 66/13 77/11
**established [1]** 37/1
**estimation [4]** 6/24
19/19 50/6 84/11
**estoppel [8]** 26/10 29/8
30/16 92/4 94/8 94/10
94/15 95/10
**et [1]** 83/20
**et cetera [1]** 83/20
**evaluate [3]** 44/22 50/2
63/6
**evaluated [1]** 12/17
**evaluating [1]** 51/20
51/20
**evaluation [3]** 6/11
31/16 93/1
**even [30]** 6/16 28/2
33/22 36/18 36/21

44/21 45/8 47/7 47/16
48/13 50/8 51/15 57/7
64/8 65/24 65/25 66/11
67/8 67/17 80/21 81/5
82/4 89/4 89/20 90/5
93/11
**event [1]** 56/4
**events [1]** 39/4
**ever [5]** 50/14 53/7
56/3 72/14 85/11
**every [2]** 62/23 68/19
**everyone [4]** 3/11
50/19 80/10 98/6
**everything [2]** 69/12
69/18
**evidence [20]** 24/12
28/2 28/11 28/12 31/12
31/12 31/18 34/23 44/1
44/15 47/17 61/13 77/5
77/7 77/25 79/9 79/13
80/14 91/20 92/3
**evidentiary [7]** 60/23
77/3 78/11 78/25 89/8
89/13 95/17
**exact [1]** 89/25
**exactly [5]** 18/16 42/9
55/10 59/6 96/6
**example [5]** 10/13
11/16 31/2 40/21 42/12
**examples [4]** 32/19
32/19 62/10 67/13
**Except [1]** 69/25
**exclude [3]** 89/3 91/19
93/4
**excluded [6]** 87/6
90/24 92/14 92/24
93/11 93/12
**excluding [1]** 93/7
**exclusion [2]** 11/18
90/21
**exclusions [1]** 90/20
**exclusive [1]** 63/10
**excuse [6]** 25/25 39/5
74/6 90/3 90/6 91/7
**excused [1]** 2/4
**executive [39]** 5/15
6/15 6/17 8/23 15/2
22/4 22/6 25/17 28/3
29/4 39/4 41/9 42/25
43/16 43/19 44/4 44/4
54/13 58/9 61/14 65/3
67/10 67/17 68/15
68/17 69/5 69/10 69/10
69/11 69/20 70/9 71/16
73/8 73/14 73/16 73/20
74/4 74/7 91/20
**exercise [3]** 33/14 63/6
79/19
**exhibits [1]** 89/4
**exist [3]** 20/11 53/3
58/24
**existence [2]** 60/2
75/21
**existent [1]** 65/15
**existing [1]** 89/16
**expected [1]** 67/3
**explain [2]** 39/1 95/5

**explicit [2]** 89/20 91/4
**explicitly [1]** 91/2
**expressly [1]** 92/19
**extend [1]** 72/3
**extended [1]** 89/4
**extending [1]** 62/24
**extends [1]** 69/5
**extension [3]** 89/19
91/3 92/19
**extent [3]** 17/15 39/20
61/25
**extremely [1]** 86/3

**F**

**face [1]** 66/9
**faced [1]** 40/18
**fact [26]** 11/18 20/8
21/5 22/23 24/19 27/20
28/12 29/16 29/24 30/1
30/2 30/3 31/9 31/25
56/23 58/18 67/5 71/11
73/14 76/1 78/12 84/24
89/24 93/3 94/15 94/17
**factor [1]** 30/13
**factors [4]** 12/17 24/5
36/24 76/16
**facts [14]** 15/17 22/3
23/1 23/1 31/1 33/5
44/23 49/15 54/18
60/21 66/10 66/11
66/13 66/18
**factually [1]** 32/6
**fail [2]** 41/19 41/21
**failing [1]** 34/8
**fails [2]** 45/19 63/17
**failure [2]** 29/1 35/6
**fair [3]** 54/3 77/17
95/25
**Fairfax [1]** 2/7
**fairness [1]** 95/8
**faith [3]** 20/13 21/13
29/3
**fall [4]** 6/20 27/6 31/25
48/1
**falling [1]** 15/7
**falls [7]** 15/4 25/1
26/24 27/3 30/8 31/20
79/3
**familiar [1]** 62/12
**far [2]** 5/9 43/7
**fashion [2]** 17/8 43/14
**fault [1]** 58/13
**favor [1]** 91/13
**favors [1]** 63/22
**February [5]** 89/18
91/2 92/17 93/15 96/5
**Federal [1]** 22/10
**feel [2]** 58/16 59/1
**feels [1]** 35/12

**few [1]** 47/3
**Fifth [1]** 76/3
**figure [1]** 9/12
**file [3]** 87/5 90/24
92/25
**filed [13]** 3/16 88/10
88/15 88/17 88/19 89/3
89/6 89/25 90/2 90/13
91/6 91/7 93/5
**filing [7]** 90/6 90/6 90/9
91/15 92/8 92/18 93/15
**financial [1]** 63/20
**find [5]** 18/17 55/24
56/5 56/9 87/12
**finding [1]** 63/16
**findings [2]** 61/21 78/4
**fine [1]** 43/1
**first [14]** 4/3 8/4 37/12
46/4 52/20 53/6 55/23
56/12 56/13 72/6 75/14
77/13 88/23 88/24
**fit [1]** 20/16
**fits [1]** 12/7
**fitting [1]** 35/24
**flag [1]** 79/7
**folks [1]** 69/3
**follow [4]** 3/14 51/14
80/11 81/19
**follow-on [1]** 3/14
**follow-up [1]** 80/11
**following [11]** 10/2
10/17 21/21 22/16
51/15 51/23 52/12 85/3
85/8 89/14 89/22
**follows [4]** 24/24 27/17
27/18 84/10
**fool [1]** 43/21
**footnote [2]** 29/6 37/23
**force [1]** 55/19
**foregoing [1]** 99/3
**foreign [1]** 56/13
**foreseeably [1]** 78/2
**forfeited [2]** 42/8 43/1
**forfeits [1]** 42/16
**forgive [4]** 13/25 28/9
32/25 49/14
**form [5]** 20/15 37/10
37/19 37/25 85/1
**former [47]** 4/15 5/1
5/2 5/4 5/12 6/22 9/18
9/19 12/25 12/25 13/6
13/7 13/9 13/13 14/11
14/11 15/21 15/22
18/13 18/15 20/14
22/16 24/23 26/5 28/2
38/5 41/4 41/4 52/14
52/14 53/9 53/9 53/9
55/17 56/20 62/20
69/14 75/8 76/13 79/12
82/21 82/23 83/14 85/4
85/12 85/12 85/15
**forth [3]** 26/4 66/12
72/8
**forum [2]** 21/15 78/6
**forward [9]** 23/20 34/2
34/25 50/17 51/1 71/19
76/7 77/25 90/18

**found [1]** 17/12
**Fourth [1]** 76/4
**framework [1]** 64/20
**frankly [2]** 60/20 95/8
**function [2]** 15/7 32/13
**further [3]** 48/21 75/10
89/15

**G**

**gave [1]** 17/25
**general [2]** 5/10 65/6
**generally [2]** 53/19
91/11
**germane [3]** 26/10
29/8 30/17
**get [21]** 12/23 16/11
16/20 22/5 24/11 27/22
30/5 36/8 38/18 39/12
39/12 44/10 44/20
51/19 75/7 79/21 83/23
83/19 88/3 92/10 95/19
**gets [5]** 9/18 14/9
15/16 18/13 81/22
**getting [4]** 12/19 12/20
31/22 46/8
**give [6]** 16/5 41/20
54/22 62/16 76/19
96/10
**given [12]** 19/25 36/19
52/22 53/12 53/17 56/4
60/21 63/17 77/4 77/24
78/10 98/1
**gives [2]** 67/18 74/12
**giving [4]** 43/24 93/8
96/22 97/22
**Glen [1]** 2/7
**gmail.com [1]** 2/16
**go [40]** 8/3 10/14 10/21
10/24 12/14 12/21
15/24 18/18 19/15
22/25 23/20 28/6 28/16
29/12 30/8 30/22 31/1
32/23 34/2 34/4 35/2
38/14 38/19 50/17
50/25 52/1 53/1 53/1
53/3 56/12 58/4 59/16
62/20 63/2 63/23 76/6
76/9 86/12 86/17 87/24
**go ahead [4]** 19/15
86/12 86/17 87/24
**goes [12]** 35/10 37/6
38/20 42/6 42/17 45/11
45/11 45/23 46/10 48/3
49/20 60/18
**going [33]** 5/4 10/11
12/21 13/25 14/6 14/7
16/11 28/20 31/6 33/14
42/1 42/3 42/13 47/3
55/24 55/24 57/2 57/4
57/6 60/16 60/25 62/17
66/25 74/2 74/6 75/7
75/10 78/24 85/18 87/5
87/7 95/9 95/23
**gone [1]** 73/13
**good [8]** 3/2 3/11 3/12
3/24 3/25 20/13 21/13
29/3
**Good morning [3]**

**G**

**Good morning... [3]** 3/11 3/24 3/25
**Gorsuch [4]** 56/2 68/10 68/15 70/20
**got [11]** 4/1 4/4 10/7 10/14 10/24 10/24 15/23 49/4 72/17 73/15 84/8
**Got you [1]** 84/8
**gov [1]** 61/22
**government [36]** 1/13 3/6 3/22 37/23 38/10 39/17 41/19 46/25 56/11 78/10 78/14 82/24 83/8 83/13 87/5 88/19 89/3 89/17 89/18 90/13 90/24 91/1 91/3 91/6 91/15 91/23 92/2 92/18 93/5 93/8 95/9 95/18 95/22 96/9 96/10 96/20
**government's [17]** 28/23 49/5 50/22 59/19 59/22 84/11 84/17 84/18 87/9 89/12 90/9 91/22 92/8 93/16 94/6 94/11 98/3
**grand [4]** 23/19 34/21 50/10 55/6
**grand jury [1]** 55/6
**grant [2]** 91/21 92/5
**granted [2]** 65/4 88/12
**great [1]** 16/24
**grounds [2]** 3/17 3/21
**guess [5]** 4/9 7/19 14/21 59/16 79/3

**H**

**had [58]** 3/15 4/2 11/25 12/13 17/18 17/21 20/1 24/1 24/12 24/14 28/3 28/13 28/13 29/23 31/9 31/24 43/13 43/19 43/21 44/12 47/8 47/16 47/23 49/7 49/9 50/16 50/25 51/2 51/22 52/21 54/23 56/5 66/19 66/25 71/3 72/7 72/13 77/24 80/21 80/24 82/17 83/3 83/3 84/1 85/5 85/8 85/11 88/2 90/1 90/13 90/25 92/8 92/24 92/25 93/2 93/4 94/15 96/5
**hadn't [2]** 23/16 32/5
**hailed [1]** 64/8
**halfway [1]** 60/10
**happen [3]** 17/10 47/5 53/16
**happened [10]** 12/9 16/15 24/9 24/13 26/4 31/7 43/23 53/7 88/15 92/12
**happening [1]** 87/7
**happy [5]** 4/3 4/5 87/20
**harassing [1]** 65/19
**harassment [1]** 66/1
**hard [1]** 18/17

**has [60]** 10/9 12/8 13/19 14/4 15/9 15/10 15/23 18/2 18/17 18/22 18/25 22/17 22/18 23/11 23/12 27/24 33/4 34/24 37/7 38/10 41/6 44/16 45/8 45/16 45/24 46/1 46/3 48/14 51/12 52/20 53/7 55/8 55/18 61/13 62/6 65/7 65/12 65/16 68/13 68/24 69/18 74/23 75/14 75/17 76/3 76/4 76/5 76/6 81/21 82/17 83/10 84/17 84/19 85/13 86/8 90/22 90/23 92/13 93/17 94/11
**hasn't [3]** 14/2 42/2 42/7
**Hatch [1]** 57/9
**have [105]**
**haven't [1]** 66/12
**having [3]** 20/12 34/10 71/22
**he [82]** 8/6 11/23 11/25 13/2 15/21 17/12 18/6 22/1 22/4 22/5 22/25 23/2 23/2 28/12 28/12 29/2 29/19 29/22 30/2 30/2 31/12 31/13 31/14 38/16 40/24 42/17 42/19 44/3 45/3 48/22 48/23 49/18 50/15 55/23 55/25 56/1 56/2 57/3 61/12 61/13 61/16 63/23 63/24 64/12 64/13 66/21 66/24 66/25 67/5 67/5 67/6 68/4 68/21 69/4 69/14 69/16 69/16 69/17 69/20 70/20 70/21 70/23 73/3 73/13 73/14 73/18 73/19 73/23 73/24 74/10 75/10 78/12 83/3 83/3 83/4 83/20 84/22 84/25 86/8 88/7 95/10 95/10
**he didn't [1]** 45/3
**He said [2]** 70/21 70/23
**he's [6]** 15/21 15/23 55/23 55/24 66/23 83/16
**head [2]** 45/6 73/23
**hear [5]** 4/3 21/3 21/8 28/1 80/2
**hearing [22]** 1/9 3/15 60/23 64/10 77/3 77/8 78/25 80/13 88/22 89/8 89/10 89/13 89/15 89/18 89/22 90/25 92/12 93/2 93/4 94/5 95/17 97/16
**hearings [1]** 78/5
**heck [1]** 59/21
**held [9]** 28/9 28/10 45/16 45/24 52/23

**89/10
helpful [1]** 25/10
**her [4]** 31/9 31/13 38/6 71/6
**here [26]** 3/13 12/10 20/16 24/9 25/12 26/20 26/23 27/15 30/19 41/25 43/6 43/12 43/23 46/15 47/6 47/18 49/6 56/7 56/24 64/17 66/10 72/10 73/15 78/9 83/11 95/20
**here's [2]** 18/10 88/3
**herself [1]** 18/22
**hey [1]** 15/14
**Hill [7]** 8/3 8/8 18/19 42/6 42/17 44/5 71/6
**him [18]** 15/23 18/17 22/1 22/7 29/25 44/5 49/17 50/12 57/4 59/15 61/17 63/11 63/15 69/6 72/17 72/18 74/6 84/14
**himself [1]** 18/22
**his [40]** 11/25 15/20 15/21 15/22 18/17 22/10 29/1 29/4 29/15 29/15 38/5 44/2 58/9 59/8 61/10 61/16 61/17 61/19 61/20 61/21 63/11 63/19 63/22 65/20 65/25 66/4 66/22 66/24 66/25 67/1 68/21 72/16 72/20 72/23 73/10 83/7 86/23 88/17 89/6 91/24
**hit [2]** 61/21 73/22
**holder [4]** 36/13 73/9 74/5 74/11
**hole [1]** 75/15
**Honor [35]** 3/2 3/24 4/24 6/1 7/1 9/11 13/18 14/15 17/15 18/8 25/14 30/12 32/8 33/16 38/24 39/18 46/24 47/1 48/19 49/1 51/17 66/8 67/13 72/5 72/18 73/6 74/9 75/2 78/13 78/15 78/18 79/7 87/22 94/4 97/19
**HONORABLE [1]** 1/10
**hosting [1]** 61/20
**House [5]** 55/22 66/2 9/7 9/14 9/23 10/3 10/16 13/23 15/12 15/19 16/24 16/25 17/1 27/23 30/13 40/8 46/1 47/25 52/4 53/19 54/1 59/2 65/11 65/17 88/3 94/2 97/19
**however [4]** 4/3 19/21 26/16 25/19 27/14 35/17 43/5 43/10 43/11 45/15 45/24 51/17 53/13 53/16 55/13 56/1 58/22 61/1 62/19 64/13 65/6 65/9 68/3 70/14 71/10 74/16 77/19
**hurts [2]** 59/3 59/5
**hypo [3]** 16/9 16/22 17/17
**hypothetical [24]** 4/13 4/24 7/4 7/6 7/22 8/18 9/17 12/4 12/23 13/24 14/2 17/23 18/5 19/15 18/14

**30/25 40/7 54/13 54/17 64/2 79/9
hypothetically [6]** 4/15 31/8 45/18 52/14 63/18 81/20
**hypotheticals [1]** 43/25

**I**

**I am [2]** 25/24 95/2
**I apologize [4]** 16/19 33/16 52/6 81/25
**I believe [34]** 3/15 5/16 6/1 7/23 7/25 8/25 12/3 15/6 16/20 16/23 17/23 19/3 20/20 23/9 23/21 24/10 25/21 26/13 27/24 28/5 39/19 40/6 41/12 43/14 44/11 44/18 45/5 47/3 50/13 80/17 85/16 89/4 92/19 96/16
**I can [5]** 25/9 54/6 75/8 75/12 93/10
**I can't [5]** 20/5 21/12 53/6 53/8 83/6
**I did [1]** 89/12
**I don't [24]** 8/9 10/18 20/12 25/14 28/11 29/14 32/8 34/6 36/22 43/10 45/22 50/14 51/5 53/7 53/15 64/1 71/13 78/20 86/18 94/18 94/19 95/12 96/6 97/6
**I don't have [1]** 89/25
**I guess [5]** 4/9 7/19 14/21 59/16 79/3
**I have [11]** 4/23 19/25 23/4 23/23 25/24 30/19 39/15 60/20 77/6 78/13 92/20
**I just [11]** 4/23 8/12 39/18 47/13 49/7 51/19 75/4 80/17 81/2 85/2 95/15
**I know [9]** 14/16 16/16 21/21 22/5 39/11 46/15 60/15 63/5 81/9
**I mean [17]** 8/22 25/1 27/14 29/13 30/25 33/6 34/12 49/14 57/15 59/16 64/18 65/22 66/3 69/7 71/7 72/3 77/19
**I misspoke [1]** 33/18
**I say [1]** 84/15
**I should [3]** 7/20 15/1 93/9
**I think [45]** 4/12 5/7 5/7 6/5 7/24 13/17 14/16 20/22 20/25 21/3 23/10 25/16 25/19 27/14 35/17 43/5 43/10 43/11 45/15 45/24 51/17 53/13 53/16 55/13 56/1 58/22 61/1 62/19 64/13 65/6 65/9 68/3 70/14 71/10 74/16 77/19

**87/24 78/25 86/11
87/8 90/3 93/10 95/6 95/8 95/20
I thought [6]** 28/10 29/23 48/7 48/17 81/14 97/9
**I understand [20]** 4/19 16/18 16/23 19/22 20/13 22/20 29/11 29/25 35/23 39/19 40/4 47/13 47/25 58/25 74/18 76/25 82/8 82/10 83/25 85/16
**I want [13]** 5/14 16/15 17/22 19/11 26/20 30/22 39/21 40/7 40/14 47/7 51/4 58/21 78/22
**I wanted [1]** 41/2
**I was [7]** 16/13 27/8 28/13 35/8 75/8 81/13 87/8
**I will [2]** 78/22 94/19
**I'd [5]** 4/12 75/13 75/22 75/24 76/10
**I'll [15]** 4/6 12/23 16/5 16/20 29/7 31/3 40/15 51/9 54/5 60/18 78/23 80/2 80/4 83/1 86/4
**I'm [79]** 4/3 4/5 7/19 8/8 9/10 9/12 10/2 10/10 10/11 10/17 10/21 11/17 12/19 13/10 13/13 14/12 14/13 14/15 14/16 14/16 15/14 15/14 16/4 16/11 16/17 17/4 17/22 18/8 18/10 19/16 21/25 26/18 26/21 27/8 28/3 28/9 28/17 28/18 28/20 30/15 30/18 31/4 31/6 31/22 34/7 44/9 45/13 46/8 47/5 47/21 48/24 49/1 49/4 49/20 51/23 53/14 59/14 60/12 60/16 62/4 62/12 62/16 62/19 64/17 65/11 69/8 69/13 72/22 75/6 75/10 81/16 82/11 83/6 85/2 85/18 85/18 87/19 94/4 95/20
**I'm going [4]** 16/11 28/20 60/16 85/18
**I'm not [15]** 10/2 13/13 14/13 15/14 17/4 21/25 26/18 31/4 31/6 49/20 60/12 62/16 72/22 75/10 95/20
**I'm not sure [8]** 28/9 48/24 53/14 64/17 65/11 69/8 69/13 82/11
**I'm sorry [10]** 9/10 13/10 14/15 17/22 18/8 27/8 30/15 47/21 83/6 85/18
**I'm sure [2]** 49/4 87/19
**I've [14]** 7/22 8/9 21/4 28/9 30/14 31/5 46/17 48/11 49/21 53/20

**I**

I've... [4] 57/22 58/23 59/17 76/23
idea [1] 63/3
identified [4] 43/15 43/22 70/8 70/14
identify [1] 95/10
III [1] 2/6
ill [1] 35/24
ill-fitting [1] 35/24
illegal [1] 35/5
illuminating [1] 43/12
illustrates [1] 43/5
imagine [3] 20/5 21/12 53/8
immediate [1] 37/16
immune [6] 15/11 25/24 26/22 27/12 27/16 30/19
immunity [241]
immunize [1] 44/5
immunizes [1] 23/23
impact [2] 65/11 82/5
impacts [1] 76/7
implied [1] 37/25
importance [6] 6/4 6/8 6/9 6/17 65/2 83/19
important [7] 19/12 21/2 27/10 35/17 56/22 63/2 76/7
importantly [1] 17/1
impossible [1] 76/19
improprieties [1] 63/20
inability [1] 73/11
inadequate [1] 54/24
inadmissibility [1] 97/2
include [1] 84/6
included [1] 90/7
including [2] 22/13 68/21
incorrect [2] 51/15 75/11
incumbent [3] 58/10 83/18 87/17
indeed [1] 24/6
independent [1] 93/17
independently [1] 91/9
indicated [1] 94/12
indicted [3] 52/25 53/2 88/4
indictment [6] 23/19 23/22 24/16 34/20 51/3 77/16
indicts [1] 52/19
indirectly [1] 65/20
indulgence [3] 61/3 82/3 85/19
indulging [2] 21/1 85/25
infinite [1] 54/25
inform [1] 89/16
information [10] 5/4 6/4 6/9 8/18 57/13 62/1 62/7 62/15 65/8 71/25
informed [1] 58/9
inject [1] 40/14
insofar [3] 64/2 82/18

**instance** [3] 26/9 30/16 33/23
instantly [1] 47/19
instead [4] 13/14 14/6 22/9 55/24
instructed [1] 44/3 74/10 78/12 83/4
instruction [7] 24/25 27/17 27/19 27/20 30/2 30/3 30/8
instructions [2] 22/16 51/14
instructs [1] 52/1
intended [2] 59/12 59/14
intent [1] 94/10
intention [1] 97/3
intents [1] 12/10
interest [10] 6/15 6/16 6/18 18/1 19/6 40/12 52/6 75/1 93/6 93/6
interested [1] 57/7
interesting [1] 14/20
interests [4] 19/7 87/12 92/22 93/13
interplay [2] 54/18 55/1
interpret [1] 7/24
interpreted [1] 83/13
interrupt [3] 16/2 19/14 19/16
interruption [1] 20/23
intimately [1] 62/12
investigation [2] 50/11 63/20
investigative [2] 37/21 37/25
invocation [49] 5/9 7/18 9/2 12/10 15/3 17/25 18/19 24/20 25/17 26/3 26/14 29/3 29/8 34/23 34/25 35/2 35/4 36/12 38/14 38/16 39/4 39/25 43/8 43/19 44/13 46/9 47/8 51/13 54/12 57/23 57/24 60/22 67/23 75/20 76/22 77/5 77/12 78/1 79/1 79/17 80/15 80/22 80/23 81/5 81/21 82/4 82/22 83/8 84/21
invoke [30] 15/21 18/16 21/24 22/25 24/25 30/4 31/5 31/19 41/7 42/17 42/20 44/3 44/4 47/15 48/11 49/18 49/21 52/15 61/14 64/22 67/9 67/16 68/15 69/10 69/18 73/4 73/14 78/12 79/14 83/15
invoked [23] 13/8 17/12 21/13 21/23 25/13 28/13 29/23 31/24 32/5 42/25 43/14 47/17 53/10 56/8 58/6 63/12 66/15 66/18 68/17 70/9 76/13 82/21

**invokes** [2] 19/18 51/25
invoking [10] 8/8 15/14 17/7 20/14 26/5 28/3 42/24 65/3 69/9 72/12
involve [2] 76/1 78/3
involved [1] 75/8
involving [2] 5/4 53/9
ironclad [1] 28/2
irrespective [1] 82/22
Irving [2] 2/2 3/7
is [311]
Is that fair [1] 95/25
isn't [5] 24/19 30/23 38/13 67/1 72/2
issuance [1] 39/6
issue [27] 12/13 17/18 24/14 25/6 25/18 27/10 28/11 35/12 38/18 43/14 45/19 45/21 46/4 51/7 51/19 51/24 53/13 55/15 55/24 67/25 71/3 71/10 76/11 76/12 78/23 88/2 94/5
issued [2] 7/16 12/15
issuer [1] 7/15
issues [19] 12/14 14/14 24/11 34/4 36/14 41/18 44/12 44/21 44/25 45/18 56/24 67/25 75/24 75/25 76/8 79/15 83/20 87/18 89/14
it [192]
it would be [7] 26/8 41/23 47/23 49/10 50/18 59/23 80/23
it's [108]
it's like [2] 12/5 43/25
items [1] 82/6
its [19] 38/3 39/6 54/23 54/25 55/6 55/19 63/6 64/9 66/9 88/20 89/3 89/25 90/2 90/6 91/6 91/7 91/7 91/15 93/5
itself [1] 34/5
IV [1] 2/2

**J**

January [15] 3/15 12/5 28/21 87/4 88/23 88/25 88/25 89/2 89/6 89/15 90/18 90/25 91/1 94/8 96/5
jeopardy [4] 32/21 33/23 34/12 53/23
jirving1 [1] 2/5
John [6] 1/13 2/2 2/6 3/5 3/7 3/7
John Crabb [1] 3/5
John Rowley [1] 3/7
John.D.Crabb [1] 1/17
john.rowley [1] 2/9
JPROWLEY [1] 2/9
jprowleylaw.com [1] 2/9
Jr [3] 1/13 2/10 3/5
judge [10] 1/10 17/11

**invokes**
Judge Nichols [1] 17/11
judges [3] 76/1 76/2 76/4
judgment [3] 35/12 35/13 35/16
July [3] 88/8 88/10 88/13
June [5] 1/5 88/4 88/5 88/7 99/7
juries [1] 34/17
juror [1] 76/18
jury [52] 23/19 24/21 25/11 25/19 26/8 26/11 26/13 26/14 27/21 28/1 30/6 30/9 32/6 32/12 32/24 33/24 34/21 35/3 35/7 35/8 35/18 35/18 36/5 36/19 36/23 36/24 38/19 50/11 54/11 55/6 56/9 56/12 58/9 60/3 60/9 60/18 61/2 61/5 61/7 61/8 61/10 67/22 67/25 68/4 75/22 76/9 76/11 76/20 76/23 78/7 79/2 91/25
just [64] 4/9 4/12 4/17 4/23 5/7 7/22 8/12 12/8 18/4 21/4 25/23 35/7 38/8 39/13 39/15 39/18 41/4 43/2 43/17 44/14 45/2 47/13 47/25 49/7 49/10 51/9 51/10 51/19 52/9 52/12 53/4 53/18 55/24 57/22 58/23 63/8 66/1 72/3 75/3 75/4 75/11 75/19 75/22 77/7 78/4 78/9 78/13 79/7 79/16 80/4 80/11 80/12 80/17 81/2 81/14 81/16 82/10 83/1 85/2 87/24 95/15 96/16 97/22 97/25
justice [23] 14/8 14/9 15/16 15/23 22/12 22/17 31/11 31/17 35/1 37/6 37/9 48/14 48/22 50/1 50/1 52/17 55/8 70/6 74/16 83/17 87/12 92/22 93/13
Justice's [10] 4/11 4/20 6/23 9/20 13/4 13/15 14/10 14/24 18/25 31/16
justify [1] 52/21
Justin [2] 67/14 67/15

**K**

keep [2] 19/13 44/19
Kellyanne [2] 57/5 57/16
Kellyanne Conway [2] 57/5 57/16
kin [1] 76/18
kind [5] 48/5 70/1 71/13 80/13 84/25

**know** [39] 4/1 10/13 11/16 13/23 14/16 15/19 16/16 17/2 17/10 21/21 22/5 25/3 28/8 29/16 30/2 31/6 34/18 39/11 43/7 44/10 45/6 46/2 46/15 47/14 48/9 51/9 52/8 59/14 60/15 63/5 67/12 68/16 69/6 77/18 78/23 81/9 85/10 86/14 95/18
knowledge [3] 53/8 72/15 84/16
knows [1] 48/11

**L**

label [1] 75/16
labels [1] 77/21
lacking [1] 72/10
language [3] 25/7 27/9 40/6
large [2] 23/10 24/8
last [3] 38/9 40/14 94/5
late [4] 50/11 50/14 50/18 51/6
later [3] 20/15 29/7 40/2
latest [1] 51/24
latter [1] 19/6
law [6] 2/2 2/6 2/10 2/14 48/10 70/15
lawsuit [2] 19/22 56/5
lawyer [1] 67/17
leads [1] 43/18
leaning [1] 56/1
least [14] 24/22 31/15 36/6 38/21 40/4 47/21 48/10 48/22 51/10 52/22 53/7 66/18 71/19 92/10
leave [1] 8/6
leaving [1] 81/13
left [2] 28/13 47/20
legal [7] 32/17 33/21 34/3 34/13 36/3 60/8 67/11
legislative [2] 37/15 38/4
lens [1] 38/19
less [1] 51/12
lesser [1] 85/1
let [12] 8/4 37/4 37/12 37/12 40/7 52/12 57/19 57/21 78/23 79/18 87/24 95/5
let's [16] 4/13 4/17 6/15 8/6 21/20 21/22 30/25 30/25 31/2 45/17 49/15 52/14 59/16 61/3 79/25 80/4
letter [6] 22/24 22/25 49/17 72/17 72/20 72/25
life [1] 75/8
like [20] 4/9 4/12 12/5 26/9 34/12 35/12 43/25 46/2 51/20 65/1 65/2 67/13 69/3 77/2 77/5

Case 1:22-cr-00240-AKH Document 89 Filed 09/26/23 Page 107 of 113

**L**

like... [5]  79/9 85/3
87/16 95/4 97/13
limine [6]  28/24 88/20
89/3 89/12 91/21 92/6
limit [3]  37/20 37/24
38/8
limitations [1]  53/22
line [4]  6/21 6/23 86/14
90/11
litany [1]  55/20
litigated [3]  12/11 17/8
23/12
litigation [3]  19/23
58/17 58/22
little [2]  39/13 40/16
LLC [1]  2/2
long [3]  8/1 44/16
64/21
look [12]  10/10 22/7
34/9 38/12 38/20 40/22
42/3 43/25 52/4 73/15
77/2 77/19
looked [1]  24/4
looking [2]  32/11
47/12
looks [1]  9/6
lot [3]  46/17 54/8 78/21

**M**

made [13]  12/12 17/20
19/24 21/4 31/13 53/11
62/14 76/24 83/10
87/17 91/12 91/15
94/20
magic [1]  49/19
magistrate [1]  88/6
magistrate judge [1]
88/6
make [25]  4/23 8/12
13/25 30/10 38/1 39/18
49/13 52/12 53/5 60/18
65/4 66/18 71/22 73/9
73/10 73/11 74/13 75/3
76/7 77/6 78/7 85/2
95/15 95/22 96/16
makes [5]  52/17 52/24
58/17
making [5]  6/10 67/3
75/11 78/3 87/15
many [3]  32/19 37/13
46/1
March [9]  39/23 89/19
91/3 91/4 91/6 91/8
91/16 92/18 93/16
Mark [1]  69/4
matter [24]  7/11 11/20
29/22 31/7 33/8 33/13
33/21 33/21 34/3 34/3
36/21 44/8 44/10 47/5
48/10 55/6 64/23 65/6
66/12 67/11 69/20
86/16 94/2 99/4
matters [5]  3/14 3/19
22/1 44/1 48/1
may [29]  4/23 11/13
16/5 19/14 25/14 38/22
38/25 39/15 42/11

75/5 75/5 77/9 78/13
80/17 81/23 85/2 86/5
90/4 90/8 90/12 90/12
90/15 90/15 92/10
93/11
maybe [22]  6/21 6/21
7/20 20/6 28/17 34/6
40/18 46/21 46/22
48/13 54/8 58/14 59/18
62/19 63/1 64/4 69/16
69/16 80/19 80/24
81/12 83/1
Mazars [2]  64/4 64/12
McGahn [2]  58/17
58/22
McKennett [1]  2/14
MD [1]  2/15
me [68]  8/4 10/2 10/12
12/22 13/25 18/14
19/12 21/21 23/23
25/25 27/11 28/9 30/10
31/14 31/15 31/24 32/3
32/25 34/24 35/5 35/7
35/9 37/4 37/12 37/12
38/20 39/5 39/13 39/24
42/5 42/16 43/2 45/10
46/22 49/14 50/11
51/10 52/12 52/13
52/24 53/4 57/19 57/21
59/17 60/8 61/22 62/16
62/18 64/13 64/21 68/6
69/3 69/18 73/13 73/19
74/24 78/11 78/25
79/18 85/25 87/15
87/24 89/16 90/3 90/6
91/7 94/16 95/5
Meadows [11]  11/20
11/22 17/6 25/4 63/7
67/15 67/16 69/4 69/8
69/13 84/16
Meadows' [1]  17/11
mean [42]  8/15 8/22
15/25 18/8 19/2 19/9
23/5 25/1 25/3 26/19
27/14 29/13 30/25 33/6
33/17 34/9 34/12 34/13
36/2 44/7 49/8 49/14
51/23 52/3 52/10 57/15
58/13 59/16 63/23
64/18 65/22 66/3 69/3
69/9 71/7 72/3 73/13
73/19 77/19 77/20
86/20 97/13
meaning [1]  12/6
means [3]  4/11 39/24
91/11
meant [5]  29/15 33/19
49/7 51/19 52/4
measure [2]  23/11 24/8
mechanical [1]  2/22
mechanism [1]  25/22
media [1]  38/5
MEHTA [1]  1/10
Melendez [1]  91/10
memo [10]  24/23 25/2
27/1 31/1 31/17 31/21
33/6 33/7 57/15 62/23

memorandum [1]  57/6
memory [2]  62/10
70/16
memos [2]  33/12 74/19
mentioned [5]  36/14
43/6 43/16 43/17 53/21
Merit [1]  2/18
Miers [13]  14/21 14/21
14/22 27/2 31/2 31/4
31/18 31/23 32/4 37/4
38/21 39/14 40/12
Miers' [1]  31/13
might [2]  30/16 40/25
mightily [1]  55/22
mince [2]  19/2 95/20
mind [2]  56/13 84/24
mindful [1]  54/18
minimum [1]  22/18
minute [1]  45/21
minutes [1]  59/20
79/25 80/4
misreading [1]  28/18
misrecollecting [1]
28/17
missing [3]  14/16 43/3
43/11
misspoke [3]  33/18
52/7 52/8
misspoken [1]  51/18
mistake [2]  29/16
29/24
mistaken [2]  71/25
94/15
misunderstood [2]
49/8 81/12
modify [1]  88/11
moment [8]  4/14 4/17
7/25 18/12 21/22 25/10
39/15 78/13
moments [1]  47/4
monologue [1]  21/1
more [11]  6/16 7/20
17/1 40/17 42/21 51/5
51/24 79/1 79/18 84/1
86/1
morning [8]  3/2 3/11
3/12 3/13 3/24 3/25
80/3 94/3
mortgage [2]  63/19
63/22
most [3]  11/19 35/22
44/3
motion [40]  1/9 3/16
3/20 28/23 28/24 76/24
77/15 80/1 86/2 87/6
87/11 87/25 88/11
88/12 88/15 88/17
88/20 88/22 89/3 89/5
89/7 89/7 89/11 89/12
89/14 90/6 90/9 90/13
90/14 91/6 91/8 91/10
91/21 92/6 92/7 92/9
93/5 94/12 97/14 97/15
motions [5]  76/2 89/16
90/19 92/12 93/2
motivated [1]  75/9
motivation [1]  64/9

moved [3]  11/23 17/6
96/8
moving [1]  90/18
Mr. [30]  3/12 3/23 4/11
4/14 11/22 17/6 17/11
46/17 51/1 54/4 54/7
57/20 59/19 68/2 69/8
69/13 75/1 75/9 78/17
80/12 82/14 82/15 84/2
84/9 85/7 86/1 88/4
88/10 96/2 96/14
Mr. Brand [1]  68/2
Mr. Crabb [12]  3/23
46/17 54/4 59/19 75/1
78/17 80/12 82/14 84/2
84/9 96/2 96/14
Mr. Meadows [4]  11/22
17/6 69/8 69/13
Mr. Meadows' [1]
17/11
Mr. Navarro [6]  3/12
4/11 51/1 85/7 88/4
88/10
Mr. Navarro's [1]  4/14
Mr. Woodward [5]
54/7 57/20 75/9 85/15
86/1
Ms. [7]  3/22 31/13
31/18 46/20 56/2 79/6
96/2
Ms. Aloi [4]  3/22 46/20
79/6 96/2
Ms. Gorsuch [1]  56/2
Ms. Miers [1]  31/18
Ms. Miers' [1]  31/13
much [4]  46/23 61/16
94/1 97/13
must [2]  38/1 51/17
my [32]  4/10 5/14 7/20
9/17 10/10 13/24 14/2
18/5 18/15 21/1 22/2
22/13 27/9 30/5 34/8
35/4 35/24 40/17 43/24
45/6 53/7 59/19 64/5
69/19 72/15 73/23
74/10 75/8 84/16 94/6
94/16 97/7
myself [5]  14/17 16/19
30/15 47/22 49/2

**N**

nail [1]  73/22
names [1]  22/21
narrow [1]  79/16
nature [1]  84/13
naught [1]  59/20
NAVARRO [46]  1/6 3/4
3/12 4/11 7/21 12/23
16/11 18/11 21/20
21/24 22/3 22/15 22/25
34/24 40/18 42/3 44/2
49/20 50/4 51/1 57/1
58/7 58/8 61/9 61/19
63/7 63/9 63/19 67/2
68/24 72/13 73/4 73/9
77/3 79/21 82/17 83/14
87/7 88/4 88/10 88/10

**88**/15 88/17 89/6 95/9
95/22
Navarro's [9]  4/14
45/17 48/20 49/15
66/20 68/17 73/10
95/16 95/21
necessarily [1]  36/24
necessity [1]  6/8
need [16]  6/19 7/14 8/3
8/9 14/18 28/11 32/5
49/12 49/18 60/14
60/16 70/6 70/7 73/16
76/22 82/1
needed [1]  66/21
needs [1]  58/1
negate [3]  27/25 27/25
28/6
Neither [1]  72/14
never [6]  43/6 48/21
50/18 61/12 75/14
84/16
nevertheless [2]  86/5
87/16
next [7]  5/22 7/3 12/22
37/18 54/7 88/12 89/6
Nichols [1]  17/11
no [86]  1/4 3/3 5/19
10/21 11/4 12/20 12/20
18/2 18/7 20/1 21/2
21/2 21/5 24/11 25/15
25/20 27/10 28/1 28/11
28/12 28/19 28/19
29/20 29/24 31/12
31/12 32/8 33/3 33/3
34/9 34/9 34/23 35/13
39/11 42/21 43/8 44/1
44/1 44/9 44/9 44/21
45/10 45/25 46/5 47/14
49/6 51/1 52/8 55/18
58/12 58/21 60/6 60/10
61/1 61/13 62/21 64/18
65/4 65/24 66/1 67/8
68/8 70/7 70/23 71/20
73/18 73/22 75/17
76/11 77/22 77/22
78/18 79/20 79/22 83/7
84/25 87/15 87/21 88/8
89/5 91/4 93/20 93/24
97/12 97/12 97/12
non [1]  65/15
non-existent [1]  65/15
none [1]  43/25
not [246]
note [1]  93/9
nothing [8]  22/9 40/23
42/20 49/23 52/15
62/25 65/16 84/25
notice [9]  94/9 94/12
94/14 94/16 96/17
96/22 97/23 97/24 98/1
November [1]  88/21
now [34]  4/10 9/17
14/17 17/10 18/14
20/18 20/25 22/13
22/17 22/21 23/2 29/7
31/8 32/15 32/16 38/18
40/14 42/9 46/13 51/4
54/5 58/23 60/22 68/16

**N**

now... [10] 76/15 77/15 77/18 83/20 84/2 92/14 92/20 93/10 94/11 94/13
number [8] 36/20 45/7 50/14 56/11 56/19 75/25 84/23 84/23
NW [4] 1/15 2/3 2/11 2/20

**O**

objection [1] 46/5
obligation [1] 72/13
obligatory [1] 17/4
observation [2] 52/13 65/5
observes [2] 56/1 56/2
obtaining [1] 91/12
obviously [5] 10/2 34/13 75/6 75/10 78/20
occasionally [1] 68/4
odd [3] 52/13 53/4 70/16
odds [1] 6/22
off [9] 4/13 12/19 12/20 35/25 39/17 45/6 46/25 61/4 78/14
offense [7] 28/6 35/19 36/7 36/17 37/1 45/24 46/11
office [2] 1/14 65/3
official [32] 2/19 4/18 5/5 8/19 9/19 13/2 14/11 22/9 38/6 40/20 40/24 40/25 41/1 41/5 41/14 41/19 41/20 41/24 42/4 42/13 42/23 57/14 57/17 62/24 65/17 66/1 66/2 66/5 66/20 67/1 69/7 82/7
officials [1] 63/21
often [5] 37/9 37/18 54/2 76/6 76/7
Oh [2] 81/14 97/1
okay [60] 3/11 4/8 4/18 5/20 5/21 6/13 7/2 7/7 9/4 11/12 12/22 14/3 14/8 16/24 17/3 18/11 20/9 20/22 20/24 21/16 21/19 22/12 22/24 23/8 24/18 25/2 30/24 31/6 37/5 39/10 40/3 45/1 46/16 46/16 51/8 54/4 61/6 61/9 67/20 68/1 68/5 70/3 70/4 72/24 74/1 74/15 74/21 78/8 78/16 78/16 79/23 79/24 82/12 83/24 84/7 85/24 93/22 95/14 96/7 97/8
OLC [14] 7/24 14/23 33/12 37/9 37/18 39/21 40/6 40/11 55/20 57/6 57/15 62/23 71/20 74/19
OLC's [2] 39/24 51/11
Olson [10] 14/23 24/23

33/6 70/18 71/14 72/6
Olson's [1] 70/5
once [6] 20/7 20/15 53/1 55/2 58/8 91/9
one [46] 3/14 6/21 7/5 7/5 8/18 11/3 12/4 12/16 16/19 17/4 20/18 26/6 35/17 36/6 38/10 39/18 43/6 44/19 46/9 55/19 56/12 58/1 60/7 60/9 60/11 60/21 61/12 61/15 62/11 71/21 75/4 76/18 76/22 76/23 79/18 80/12 80/17 81/23 82/15 84/1 84/15 84/23 87/16 88/12 90/22 94/5
one's [4] 41/14 62/1 62/8 62/24
only [16] 16/13 17/5 18/6 18/9 21/4 36/5 41/14 41/18 43/16 62/23 65/8 69/5 69/10 74/10 76/17 88/2
open [2] 79/12 89/14
operate [1] 9/8
operates [1] 9/6
operating [1] 22/2
opinion [6] 14/23 28/20 40/11 44/19 58/24 70/5
opinions [3] 7/24 39/21 40/6
opportunities [1] 77/25
opportunity [22] 20/1 20/6 20/17 21/17 34/24 50/16 50/21 51/7 52/22 52/22 53/13 53/17 53/25 60/21 61/2 72/1 73/24 77/4 78/11 79/21 94/7 96/10
opposed [2] 61/14 93/9
opposition [3] 90/6 91/7 92/11
option [1] 17/16
oral [1] 93/2
order [9] 7/13 18/23 56/5 58/11 58/18 63/16 64/18 88/11 91/13
ordered [2] 64/13 96/5
Ordinarily [1] 71/7
ordinary [1] 38/3
original [1] 14/23
other [36] 9/13 9/16 10/6 12/16 12/17 13/24 15/13 15/15 15/19 19/5 19/7 20/16 26/7 32/12 32/19 33/25 35/9 36/24 41/21 42/2 42/20 45/15 51/15 60/7 60/11 69/3 69/9 75/13 76/16 77/4 79/14 81/23 85/10 91/18 94/5 97/25
otherwise [4] 21/15 60/16 71/15 86/20

54/11 60/13 67/25
our [26] 5/14 11/3 22/13 22/13 23/1 23/1 30/12 33/14 38/25 39/1 39/22 46/9 47/7 47/14 58/8 59/2 69/22 80/2 83/12 87/9 87/19 88/1 93/19 94/9 94/10 94/14
ourselves [1] 54/17
out [16] 9/13 10/16 11/18 21/4 23/11 44/19 45/17 47/25 50/19 51/5 53/16 56/12 62/14 90/22 90/23 97/5
outcome [2] 31/15 81/3
outset [1] 4/5
outside [6] 15/4 25/1 26/24 27/4 31/20 48/1
outstanding [1] 3/14
outweighed [2] 92/22 93/13
over [4] 39/21 41/17 47/19 87/1
overcome [31] 6/3 6/6 6/12 10/14 11/5 12/8 13/19 14/18 17/21 18/2 19/5 19/7 20/16 21/6 24/6 47/24 48/14 49/25 50/2 50/8 50/24 50/25 51/22 53/12 76/16 80/24 81/22 83/9 83/19 84/5 85/8
oversight [1] 94/6
own [4] 44/2 55/19 67/17 86/4

**P**

p.m [3] 61/20 80/8 98/9
page [12] 8/13 20/22 20/25 28/22 37/8 37/23 39/1 91/22 91/23 92/1 92/2 92/5
papers [2] 68/18 93/16
parameters [1] 48/1
Park [1] 2/11
parse [2] 23/5 62/14
part [10] 5/14 6/5 6/10 7/15 26/17 34/22 39/1 40/4 82/6 94/3
participate [1] 67/6
participation [1] 58/10
particular [2] 73/8 74/12
parties [2] 41/13 92/24
parts [1] 22/8
pass [1] 15/16
passages [1] 38/7
passed [2] 23/18 55/3
passes [3] 13/14 22/11 22/11
passing [1] 50/3
pause [2] 18/4 19/11
Pebble [1] 2/15
peg [1] 75/15
pending [3] 91/21 92/5 93/1

people [1] 46/1
percent [3] 57/16 64/15 78/9
perfect [1] 52/24
perhaps [8] 35/24 38/12 38/16 40/17 49/8 51/24 57/3 94/24
period [8] 88/9 89/21 89/21 90/3 90/20 92/16 92/17 93/15
permit [1] 91/24
permitted [2] 56/9 92/3
persist [1] 21/6
persisted [1] 20/18
person [25] 12/12 13/20 15/9 16/22 17/18 19/7 19/25 20/5 20/19 21/7 21/13 23/15 24/1 25/23 26/5 27/17 27/18 32/17 32/18 51/13 52/18 52/20 52/24 53/12 53/16
person's [1] 53/2
personal [11] 61/18 62/1 62/8 63/11 63/22 64/10 65/8 66/4 66/25 68/22 74/12
personally [2] 7/17 37/5
perspective [4] 7/12 9/8 48/8 53/18
pestering [1] 51/9
PETER [2] 1/6 3/4
phrase [1] 67/12
physically [2] 70/25 71/6
ping [1] 96/15
ping-pong [1] 96/15
place [2] 12/21 46/4 48/6 67/21 93/3
Plaintiff [1] 1/4
plan [1] 78/20
play [2] 5/25 10/16
played [1] 23/11
pleading [1] 90/25
please [3] 39/15 73/12 80/10
pleasure [1] 87/15
PLLC [1] 2/6
plus [2] 31/21 59/19
point [14] 10/3 14/16 23/24 39/19 39/19 40/5 42/7 42/24 43/5 43/7 44/19 66/7 74/10 79/5
pointed [3] 11/18 44/19 47/25
pointing [1] 97/5
points [4] 8/13 50/14 56/11 75/3
ponder [1] 78/23
pong [1] 96/15
portion [1] 25/9
position [49] 4/11 5/12 5/15 5/23 6/7 7/21 7/23 8/5 9/20 11/3 13/20 14/10 14/11 14/24 18/25 25/2 30/13 33/4

39/2 39/2 39/23 39/24 39/25 47/7 49/5 51/11 59/3 59/5 59/8 59/18 60/13 60/17 60/25 61/1 62/3 62/6 68/24 69/22 72/16 73/23 77/6 79/10 83/2 84/17 84/18 85/11 85/14 87/19 94/6
possession [1] 69/19
possible [1] 44/12
post [1] 90/8
post-dated [1] 90/8
posture [2] 82/19 82/19
potential [3] 18/22 19/3 22/18
potentially [2] 29/25 40/19
power [1] 37/25
powers [5] 6/17 37/22 55/14 65/12 65/16
practical [7] 7/11 15/13 76/11
practically [3] 59/11 59/13 59/15
precise [2] 7/20 27/9
precisely [1] 95/10
preclude [2] 37/13 82/23
precluded [3] 57/4 57/5 58/9
precludes [1] 67/19
predicate [1] 22/14
preface [1] 16/5
prejudice [1] 97/16
prepared [1] 4/1
present [13] 36/9 50/16 50/21 53/20 56/2 60/21 71/6 73/24 77/4 92/3 95/23 96/23 98/2
presentation [1] 34/23
presented [13] 24/12 25/22 26/11 26/15 28/12 37/2 54/11 61/13 67/25 75/21 77/7 94/20 97/16
presenting [1] 97/20
preserve [1] 87/17
preserving [1] 6/16
Presidency [2] 79/11 79/14
President [72] 5/1 5/2 5/24 9/19 13/1 13/7 14/11 15/1 18/13 20/14 21/23 22/17 22/24 25/13 26/5 26/6 27/2 27/17 28/3 28/13 29/3 29/20 29/23 30/8 31/3 31/5 31/9 31/11 31/18 31/24 32/5 37/14 41/4 41/7 49/17 51/14 51/25 52/14 53/9 55/16 56/20 58/6 62/20 63/12 63/22 64/3 64/7 64/11 64/22 65/20 65/24 66/3 66/4 66/14 66/17 68/14 68/16 69/6 69/14 69/18 70/14 72/15 73/14

Case 1:22-cr-00300-APM Document 119 Filed 06/26/23 Page 109 of 113

# P

**President...** [9] 76/13 79/12 82/21 82/23 83/14 83/18 85/5 85/12 85/15

**President Trump** [6] 21/23 22/24 49/17 58/6 64/11 72/15

**President's** [12] 4/16 6/7 6/20 6/22 6/24 9/18 14/25 24/24 37/16 67/17 73/1 84/20

**Presidents** [1] 85/14

**press** [3] 61/19 61/20 66/24

**presumption** [1] 72/11

**pretrial** [8] 12/11 19/23 23/12 27/13 36/4 36/21 87/6 94/21

**pretty** [1] 66/16

**Prettyman** [1] 2/19

**previewed** [1] 86/4

**previously** [2] 12/15 93/11

**principle** [3] 37/10 37/10 37/19

**principles** [1] 37/13

**prism** [2] 32/11 38/13

**prison** [1] 57/2

**private** [1] 61/21

**privilege** [56] 5/15 8/23 15/3 22/5 22/6 25/17 26/5 28/4 29/4 36/13 39/4 41/10 42/25 43/16 43/20 44/4 44/4 45/9 46/10 54/13 56/20 58/9 61/15 64/7 65/3 66/15 66/18 67/10 67/18 67/18 68/15 68/17 68/25 69/5 69/10 69/11 69/12 69/20 70/9 71/16 71/18 72/12 73/8 73/9 73/15 73/16 73/21 74/4 74/5 74/8 74/11 78/12 83/8 83/19 91/20 91/25

**probably** [2] 28/18 82/1

**problem** [3] 83/12 85/6 95/12

**problems** [2] 43/6 43/12

**procedural** [2] 5/8 82/19

**procedures** [1] 84/5

**proceed** [1] 94/2

**proceeding** [1] 11/24

**proceedings** [6] 1/9 2/22 3/10 80/2 98/9 99/4

**process** [7] 40/2 58/10 67/7 84/12 84/24 85/6 89/23

**produce** [13] 15/2 64/12 65/25 66/4 66/5 70/7 70/17 70/19 71/15 71/17 73/25 74/7 74/11

**produced** [3] 2/23 70/12 72/9

**producing** [2] 69/15 73/20

**production** [1] 72/4

**proffer** [1] 95/22

**progression** [1] 54/16

**promise** [4] 12/23 16/5 16/12 19/12

**proof** [3] 43/21 44/2 79/4

**proper** [7] 13/8 43/19 56/16 57/24 78/1 81/5 97/22

**properly** [4] 24/25 41/2 54/13 56/8

**proposition** [5] 9/3 26/15 45/8 53/24 67/11

**propositions** [1] 34/13

**prosection** [1] 23/24

**prosecutable** [3] 23/7 33/20 50/4

**prosecute** [8] 26/21 32/18 33/9 50/3 55/19 59/23 62/13 63/7

**prosecuted** [10] 13/11 13/21 18/20 48/22 56/3 56/14 63/24 75/6 83/16 83/20

**prosecuting** [1] 63/7

**prosecution** [44] 14/8 15/4 16/23 18/23 19/3 19/8 20/21 23/20 24/17 26/7 26/16 26/19 26/22 26/24 27/5 27/12 30/19 32/22 33/25 34/1 34/2 36/2 36/3 45/20 46/6 47/19 50/17 50/25 54/15 55/16 56/6 56/9 56/10 56/16 56/17 56/21 62/22 63/10 64/25 67/5 67/6 74/14 82/23 84/6

**prosecutions** [1] 76/1

**prosecutorial** [4] 33/9 33/17 62/17 75/7

**prospect** [1] 27/18

**protected** [1] 73/8

**protecting** [1] 79/13

**protective** [1] 88/11

**ProtonMail** [1] 61/22

**prove** [1] 38/10

**proven** [2] 32/14 35/20 36/7

**provide** [8] 70/21 70/23 70/25 71/1 71/2 94/9 94/12 95/4

**provided** [2] 55/4 94/16

**provides** [2] 41/18 55/3

**providing** [1] 94/14

**proving** [1] 36/17

**public** [5] 29/9 92/22 93/14 95/6 96/18

**public-authority** [3] 29/9 95/6 96/18

**pull** [1] 67/13

**purely** [1] 64/10

**purge** [2] 20/6 53/14

**purportedly** [1] 65/7

**purpose** [3] 38/4 83/22 91/12

**purposes** [2] 12/10 25/18

**purview** [1] 35/18

**put** [15] 18/4 21/23 27/16 31/3 40/7 48/5 56/14 58/1 59/7 61/9 66/12 67/22 68/24 71/19 80/17

**putting** [3] 17/16 66/14 66/17

# Q

**qualification** [1] 51/22

**qualified** [89] 4/21 5/12 5/23 5/25 6/2 6/7 6/11 6/14 7/9 7/10 9/7 9/21 10/14 10/19 11/3 11/4 11/19 12/1 12/7 12/7 13/1 13/9 13/18 14/18 15/9 15/15 15/20 15/20 15/23 15/25 17/18 17/21 17/25 18/2 18/7 18/15 19/5 19/6 19/20 19/24 20/1 20/2 20/8 20/16 21/5 21/13 21/14 21/23 21/25 22/18 24/4 24/5 38/17 41/17 47/10 47/23 47/23 48/8 48/10 48/14 48/23 48/24 49/18 49/21 49/22 50/2 50/7 50/23 51/21 52/5 53/10 53/11 57/3 59/21 63/17 76/15 79/20 80/23 81/21 82/17 83/4 84/3 84/4 84/12 84/19 85/4 85/7 85/13 91/8

**qualifier** [1] 81/23

**qualifies** [1] 34/17

**qualify** [3] 34/19 41/1 87/10

**quash** [2] 11/23 17/6

**question** [89] 5/10 5/16 5/22 6/2 7/3 7/20 9/2 9/2 10/3 10/20 12/4 12/14 13/10 13/17 16/6 16/20 24/19 25/15 25/16 26/8 26/9 26/14 27/4 27/5 27/11 27/15 27/21 30/5 30/5 30/23 30/24 33/19 33/21 35/8 35/8 36/18 36/19 36/22 36/23 36/23 37/7 38/14 39/8 42/18 42/18 42/23 43/18 43/18 44/6 44/6 45/14 51/12 51/19 51/20 51/23 54/6 54/10 55/12 55/14 55/23 56/7 59/16 59/20 60/8 61/7 61/9 63/8 68/3 71/23 71/23 75/20 76/1 76/13 76/15 76/19 76/22 77/14 78/2 79/1 79/4 79/16 79/18 80/12

# R

**raise** [4] 45/3 45/8 45/19 91/24

**raised** [3] 82/10 84/2 88/2

**ran** [1] 88/13

**rationale** [4] 65/14 65/16 71/19 72/3

**reach** [2] 28/11 33/15

**reaching** [1] 40/19

**read** [4] 25/9 37/4 37/12 38/7

**real** [1] 11/16

**real-world** [1] 11/16

**really** [10] 17/14 19/12 21/25 27/12 27/16 34/16 52/21 59/7 62/17 79/3

**Realtime** [1] 2/18

**reason** [6] 24/22 28/1 50/20 52/17 90/22 90/23

**reasonable** [4] 32/14 35/20 36/7 37/1

**reasons** [4] 56/19 61/11 84/15 93/17

**recall** [2] 55/2 94/8

**receive** [1] 8/7

**received** [4] 13/6 19/8 23/16 63/21

**receives** [1] 9/8

**receiving** [2] 9/16 11/23

**recent** [1] 62/10

**recently** [2] 11/19 35/22

**recess** [3] 80/7 80/8 98/8

**recipient** [5] 12/13 17/18 17/24 26/4 36/13

**recipient's** [1] 19/18

**reconsideration** [3] 89/7 89/7 89/11

**record** [22] 28/14 39/17 46/25 58/2 58/5 61/4 73/8 75/4 78/14 92/20 93/10 99/3

**recorded** [1] 2/22

**records** [9] 15/2 64/3 65/25 66/4 66/6 70/10 70/15 71/15 71/17

**refer** [1] 14/7

**referral** [1] 14/9

**referred** [1] 17/6

**referring** [2] 28/25 44/19

**refusal** [3] 18/18 33/7 70/18

**refuse** [3] 48/16 71/15 71/17

**refused** [1] 11/9

**refuses** [3] 42/14 62/20 64/24

**refusing** [3] 20/18 53/2 74/6

**regarding** [2] 41/24 92/4

**regardless** [1] 64/23

**Registered** [1] 2/18

**regulation** [1] 54/24

**relate** [2] 62/7 69/7

**related** [1] 8/19

**relatedly** [1] 25/3

**relates** [1] 69/19

**relating** [2] 57/17 91/20

**release** [2] 61/19 66/24

**relevant** [1] 26/12

**relied** [2] 62/23 74/19

**relief** [1] 87/10

**rely** [2] 65/2 95/9

**remained** [3] 89/14 89/24 90/11

**remedy** [1] 54/24

**remedying** [1] 43/22

**remember** [2] 71/5 96/6

**reminded** [1] 94/16

**reminder** [1] 73/5

**repeat** [3] 16/19 30/15 47/22

**repeating** [1] 14/17

**Reporter** [4] 2/17 2/18 2/18 2/19

**Representatives** [1] 55/22

**request** [1] 89/13

**requested** [4] 89/22 92/9 92/25 96/3

**requesting** [1] 81/6

**require** [5] 37/15 56/14 94/24 95/7 98/1

**required** [7] 37/21 38/2 44/20 56/6 57/11 57/12 71/6

**requirement** [2] 38/1 58/12

**requires** [5] 55/16 96/17 98/1

**requiring** [1] 95/2

**reset** [1] 41/4

**resolution** [10] 10/18 13/15 14/7 15/16 22/12 31/25 50/3 54/12 55/3 55/4

**resolve** [10] 30/10 35/10 60/2 60/3 67/3 76/11 78/20 78/21 79/15 92/14

**resolved** [9] 10/19 15/10 15/25 19/21 20/15 20/19 32/6 59/9 90/14

**respect** [15] 9/10 9/18

# R

respect... [13] 10/17 18/25 33/5 57/15 66/21 68/7 68/17 70/9 71/21 75/5 75/19 82/6 85/14
respectfully [1] 61/24
responding [1] 75/1
response [8] 4/21 7/10 58/7 66/22 89/25 90/2 91/7 94/11
Responsive [1] 68/20
restraint [3] 25/5 25/5 25/8
restricted [1] 36/25
result [3] 31/25 32/1 80/16
results [1] 54/14
retroactively [1] 87/14
returns [1] 23/19
Ridge [1] 2/15
right [109]
rise [6] 30/24 31/25 67/19 80/6 80/9 98/7
rises [2] 25/12 30/8 79/3
RMR [2] 99/2 99/8
Road [1] 2/11
roadblocks [1] 19/23
Rockville [1] 2/15
role [1] 5/24
round [1] 75/15
Rowley [2] 2/6 3/7
rule [10] 19/10 87/24 89/11 89/13 91/12 94/24 95/7 96/17 96/23 97/2
Rule 12.3 [1] 97/2
ruled [3] 27/24 28/5 94/12
run [3] 90/22 90/23 93/18
running [1] 90/14

# S

said [40] 7/9 11/15 14/5 14/6 16/8 19/3 19/22 22/17 24/10 27/1 27/23 28/25 29/12 30/14 31/21 40/13 40/22 44/8 44/9 44/14 46/5 47/4 47/14 49/4 53/13 57/6 57/11 57/12 63/23 70/18 70/21 70/23 73/15 78/4 80/1 82/8 83/18 87/1 93/11 93/18
same [14] 7/3 7/5 7/6 8/12 20/3 20/22 20/25 27/2 37/13 38/18 62/14 67/21 72/3 97/25
satisfies [1] 33/22
save [1] 4/6
say [55] 4/4 4/15 5/7 6/16 7/9 14/20 15/1 15/25 17/16 18/9 19/9 22/24 23/5 29/19 29/23 30/18 31/8 32/3 33/12 33/12 33/19 34/25 36/2
48/17 49/3 49/7 49/9 49/15 50/1 52/14 53/2 53/6 53/18 53/21 60/5 61/1 61/8 62/4 62/18 63/23 65/15 71/12 73/3 75/8 77/23 79/19 84/15 92/20 93/10 95/13 95/23
saying [15] 10/21 11/16 11/17 16/13 17/4 18/21 19/13 20/3 20/13 21/3 21/8 23/23 25/23 44/9 47/5
says [16] 11/2 13/13 15/14 15/22 18/15 22/4 22/6 22/7 29/7 31/11 31/17 45/21 49/17 49/20 55/8 96/19
scale [1] 6/21
Scavino [4] 62/13 63/7 67/15 67/16
scenario [8] 19/17 20/5 22/13 21 27/1 51/25 53/15 80/19
scope [7] 15/5 26/25 35/10 47/11 47/11 47/24 48/2
seated [1] 80/10
second [13] 12/24 14/1 16/11 36/8 36/14 64/4 73/7 77/1 77/10 77/15 89/3 89/12 90/23
Second Circuit [1] 64/4
see [4] 19/17 34/12 35/16 65/17
seeing [1] 34/7
seek [2] 58/11 58/18
seeking [2] 57/13 66/19
seemingly [1] 42/3
seems [13] 26/9 27/11 31/24 34/24 35/7 39/13 42/5 42/16 43/2 50/11 51/10 52/13 53/4
seen [1] 64/2
sees [1] 55/13
selective [2] 32/22 33/25
self [2] 54/24 54/24
self-enforcement [1] 54/24
self-regulation [1] 54/24
send [1] 61/2
sends [1] 49/17
senior [8] 4/16 4/20 41/18 52/1 55/16 62/20 63/20 64/9
sense [4] 13/25 49/13 51/11 52/24
sent [3] 40/21 72/20 72/22
sentence [2] 37/12 37/18
separation [5] 6/17 37/22 55/14 65/12
September [3] 88/19 90/16 90/17
serve [1] 56/21
serves [1] 70/17
set [9] 15/17 23/1 33/5 46/22 90/9 90/13 90/15 90/16 94/9
setting [1] 78/11
shall [2] 55/4 55/5
she [13] 31/19 46/22 46/23 56/3 57/8 57/11 57/12 68/15 70/6 70/7 70/17 71/3 71/4
shields [1] 64/7
short [1] 85/19
should [21] 7/20 15/1 23/10 35/9 36/5 36/6 36/25 39/9 41/2 41/12 52/3 56/21 58/4 67/22 70/2 75/21 78/10 83/19 91/24 92/3 93/9
shouldn't [1] 57/2
show [23] 8/10 9/1 10/12 10/12 13/3 15/1 18/16 22/3 23/2 31/10 35/6 42/10 59/15 63/24 64/24 67/9 70/21 70/21 70/25 77/5 78/11 82/9 83/15
showing [8] 13/13 14/13 15/14 31/4 38/1 43/2 49/21 67/19
shown [2] 42/21
shred [2] 44/14 47/17
shroud [1] 64/9
side [1] 6/21
significant [1] 38/4
similar [1] 67/8
similarly [1] 29/1
simple [1] 51/24
simply [4] 10/9 62/6 76/12 76/18
since [2] 44/16 80/23
single [1] 68/19
sir [1] 3/12
sit [1] 54/5
sitting [3] 37/16 64/3 71/22
situation [11] 9/23 22/15 31/23 32/4 40/16 43/19 43/22 48/8 48/20 53/8 53/17
slightly [1] 38/12
Smith [2] 55/21 56/4
so [113]
So I don't [1] 53/24
So I think [1] 53/15
some [42] 4/2 5/8 16/14 17/15 19/9 19/23 23/16 24/11 33/25 35/23 39/20 39/20 40/5 40/5 40/6 40/23 41/25 42/6 42/11 42/15 43/5 44/12 44/20 44/24 46/15 47/16 47/22 48/5 48/5 48/12 49/8 51/11 66/18 70/16 73/15 76/5
somebody [4] 27/12 27/15 59/8 71/14
somehow [3] 71/14 71/24 96/24
someone [6] 20/12 23/12 33/22 53/8 53/19 53/25
something [23] 4/4 10/7 12/9 23/11 25/25 27/13 30/9 30/20 32/22 34/14 38/16 43/3 43/17 46/21 54/11 65/4 67/22 79/5 79/8 81/25 82/17 82/18 87/13
sorry [20] 7/5 9/10 13/10 14/15 16/2 17/22 18/8 19/16 20/23 27/8 30/15 33/2 43/20 47/21 49/1 62/4 83/6 85/18 94/4 96/15
sort [5] 6/20 38/18 44/24 51/5 76/20
sorted [2] 49/12 50/19
sought [2] 6/4 62/1
sovereign [2] 56/15 56/17
speaking [3] 59/11 59/13 59/15
speaks [3] 56/24 62/23 87/18
specific [2] 38/1 68/13
specifically [3] 6/10 70/8 96/19
Speech [1] 17/13
speeches [1] 4/6
speedy [16] 3/17 3/21 86/2 86/9 86/10 86/13 86/15 86/16 86/21 86/24 87/3 92/23 93/12 93/14 93/18 93/21
Speedy Trial Act [9] 86/10 86/13 86/16 86/21 86/24 87/3 93/12 93/18 93/21
spinning [1] 53/16
spun [1] 21/4
square [1] 75/15
standpoint [1] 7/8
stands [2] 80/7 98/7
stanley [5] 2/10 2/13 2/14 3/7 3/8
Stanley Brand [1] 3/7
Stanley Woodward [1] 3/8
stanleymbrand [1] 2/16
start [3] 3/18 4/5 4/13
started [3] 48/4 67/21 88/13
starting [1] 39/1
stated [1] 11/24
statement [1] 40/12
STATES [12] 1/1 1/3 1/10 3/3 55/5 55/21 55/21 64/22 66/3 66/5 68/14 92/21
station [1] 2/7
status [2] 11/25 13/9
statute [31] 13/5 13/16 15/5 15/18 18/20 22/11 25/1 26/25 27/4 27/7 31/20 32/16 33/10 33/13 33/15 35/11 53/22 54/19 54/20 54/21 54/22 56/21 56/22 57/25 61/25 62/8 66/8 83/13 84/14 90/7 92/13
statutes [1] 55/1
statutory [1] 64/20
stenography [1] 2/22
step [2] 38/4 47/3
steps [1] 83/9
stick [1] 4/17
still [6] 16/1 22/21 42/13 50/15 85/7 89/23
stop [2] 10/2 51/9
story [1] 47/9
straight [1] 46/22
strange [1] 53/24
Street [1] 1/15
stress [1] 17/22
strict [1] 30/23
strike [1] 84/22
strongly [1] 68/3
struggle [1] 54/10
struggled [1] 55/22
stuck [1] 75/15
stuff [1] 68/21
styled [1] 92/7
subject [42] 13/5 13/16 14/14 15/2 15/3 15/17 15/20 16/1 16/22 18/6 18/14 18/22 19/8 20/20 21/7 22/15 22/18 23/2 23/6 24/20 27/3 31/19 48/15 51/16 62/22 63/10 64/23 64/24 67/4 67/5 68/25 69/19 69/20 70/10 70/18 70/19 71/16 71/18 73/16 73/20 74/3 74/7
subjective [2] 29/16 29/22
submission [4] 37/8 40/12 91/22 92/8
submit [1] 70/2
submits [1] 67/24
submitted [3] 39/22 79/1 92/11
subpoena [53] 4/16 4/22 4/22 5/3 6/3 6/6 7/11 7/15 7/16 8/18 9/9 9/17 9/18 11/23 12/13 12/15 12/16 13/7 17/7 17/18 17/24 18/1 18/14 19/8 19/18 20/4 20/7 22/8 23/16 26/4 36/13 38/2 38/11 39/3 39/6 39/8 40/1 40/19 42/12 45/18 45/22 46/4 47/12 58/7 62/2 68/20 69/23 69/23 70/11 71/5 71/8 71/11 81/6

**S**

subpoenaed [6] 4/15
5/2 7/12 41/5 63/18
65/8
subpoenas [2] 54/23
72/13
subsequent [1] 39/3
substantial [1] 93/6
subsumed [1] 92/15
succeeding [1] 83/17
such [9] 5/23 11/4 25/6
32/20 39/4 47/10 53/24
71/20 72/7
sufficient [2] 94/20
94/20
suggest [8] 33/17 38/7
44/7 52/3 52/5 52/11
60/17 86/20
suggested [3] 25/4
38/21 42/18
suggesting [2] 69/1
72/22
suggests [2] 25/7
83/13
Suite [1] 2/3
summary [3] 35/12
35/13 35/16
summoning [1] 37/14
supplemental [1] 3/18
support [2] 45/7 93/1
suppose [1] 71/8
supposed [1] 9/24
suppress [3] 76/2
97/14 97/15
suppression [2] 77/8
78/5
Supreme [3] 45/16
45/24 46/5
Supreme Court [1]
45/24
sure [23] 4/23 4/25
8/12 16/7 19/15 21/25
26/18 28/9 45/13 48/24
49/4 53/14 59/14 64/17
65/11 65/23 69/8 69/13
81/24 82/11 85/2 85/21
87/19
survive [2] 19/25 20/2
survives [1] 19/5
suspect [2] 60/4 74/4
system [2] 53/19 54/2

**T**

take [12] 45/17 57/2
60/25 60/25 65/4 69/17
69/20 79/25 80/4 84/20
84/21 87/20
taken [5] 46/17 55/18
66/7 83/9 85/14
takes [1] 7/21
taking [1] 60/12
talk [8] 3/20 7/25 47/16
49/5 60/23 61/17 66/25
73/17
talked [6] 38/9 45/16
47/4 47/10 47/22 49/11
talking [16] 8/22 26/22
26/23 26/24 32/15

54/20 54/21 57/23
71/14 80/14 81/16 94/3
tantamount [1] 26/1
task [1] 76/19
technical [4] 86/3 86/6
87/2 87/15
technically [1] 94/24
Ted [3] 70/18 71/14
72/6
tell [7] 42/3 45/7 65/1
69/3 73/13 73/19 94/19
telling [3] 18/14 59/17
64/21
tells [3] 31/4 52/14
64/22
ten [1] 80/4
tension [3] 39/13 39/20
40/7
term [1] 91/11
terms [5] 28/16 31/16
62/23 84/23 87/2
testify [14] 9/20 11/8
11/8 11/9 20/17 20/18
22/8 30/9 38/5 40/23
48/16 77/4 83/5 97/15
testifying [1] 21/7
testimonial [106]
testimony [23] 4/17
4/17 4/18 6/8 14/5
15/20 22/10 25/6 37/16
38/23 40/20 41/5 67/12
69/24 70/1 71/21 73/18
73/24 74/2 77/7 81/17
95/16 97/14
than [6] 9/7 9/25 10/7
15/15 40/17 51/13
Thank [16] 21/1 47/1
47/2 54/4 73/5 75/2
78/18 78/19 82/12
82/13 85/22 85/25
87/22 94/1 96/12 98/6
Thank you [10] 47/1
47/2 54/4 73/5 78/19
82/12 85/22 85/25
87/22 96/12
Thanks [1] 82/14
that [636]
that'll [1] 96/10
that's [89] 3/16 6/23
7/23 8/25 9/5 9/12
10/21 12/17 15/6 15/7
18/24 20/6 21/2 22/1
22/13 22/13 23/11 24/8
25/1 25/4 25/9 25/16
25/25 26/22 27/14 28/8
28/9 31/6 31/20 32/21
33/4 33/12 33/21 33/23
33/24 34/8 34/10 34/17
35/7 35/22 36/17 36/19
39/11 40/2 40/16 42/4
43/17 43/22 43/23
45/24 46/2 46/6 48/17
50/11 53/14 53/19 54/1
56/22 57/5 58/14 59/10
59/14 60/5 60/24 62/18
64/19 65/1 65/3 66/16
67/22 68/6 69/4 70/17

72/10 72/10 84/7 84/17
86/24 90/22 91/21 92/1
94/6 97/2 97/19 97/24
them [10] 20/1 20/14
41/20 45/6 59/24 76/12
85/6 87/20 96/22 96/24
then [55] 3/16 3/20
13/10 13/14 18/21
20/15 21/6 21/14 22/7
24/4 24/5 25/11 28/16
35/4 38/13 40/15 42/6
42/16 45/20 47/20
48/15 48/24 50/8 51/2
52/20 53/2 56/15 57/19
59/7 59/18 63/14 73/19
75/19 76/5 76/10 77/5
78/23 79/21 79/25 80/2
80/4 80/22 82/22 83/16
84/9 88/17 88/19 88/21
89/10 90/1 92/5 92/11
92/13 95/4 98/2
theoretically [1] 64/12
there [100]
there's [60] 11/17 19/9
19/23 22/5 22/24 22/24
25/7 25/12 28/1 28/11
29/6 29/16 29/20 29/24
31/12 31/12 31/18
32/19 32/21 33/19
35/13 39/7 39/20 40/23
41/25 42/6 42/11 42/15
42/20 42/21 43/8 44/1
44/1 44/14 44/15 45/7
45/10 45/25 46/5 54/8
56/16 58/3 58/12 58/13
60/10 64/18 65/17
65/24 66/1 71/20 71/23
73/18 74/2 76/11 77/1
78/21 80/1 82/1 89/5
93/20
therefore [6] 25/24
36/23 71/24 72/12
87/10 92/9
these [19] 3/10 16/14
24/11 24/12 25/17
25/25 32/22 41/17
44/11 44/20 44/23
44/24 47/9 49/6 49/15
67/2 67/13 76/16 76/17
they [34] 7/24 7/25
11/25 15/11 20/20 21/6
24/13 31/1 32/23 33/12
34/4 36/16 42/23 48/15
52/21 53/3 53/20 53/21
56/6 57/12 57/13 59/14
59/15 60/6 61/17 63/15
63/21 71/16 72/15
86/18 91/18 92/5 96/5
96/22
they're [6] 52/25 54/1
59/8 63/19 65/25 86/15
they've [3] 14/6 42/9
73/15
thicket [1] 40/8

36/5
things [21] 5/8 5/16
13/8 24/12 32/17 32/22
34/2 34/12 36/1 36/6
36/20 40/23 46/2 47/22
49/6 49/10 53/20 75/14
75/22 91/18 96/8
think [76] 4/12 5/7 5/7
6/5 7/24 8/6 10/13
13/17 14/16 20/22
20/25 21/3 22/7 23/10
25/16 25/19 27/14
35/17 36/18 40/22 43/4
43/5 43/10 43/10 43/11
45/15 45/22 45/24
50/14 51/17 52/25
53/13 53/15 53/15
53/16 53/24 53/25
55/13 56/1 56/19 58/22
61/1 62/2 62/5 62/19
64/1 64/11 64/13 65/6
65/9 67/22 68/3 70/14
71/10 71/13 74/16
77/19 77/24 78/21
78/25 82/1 82/11 83/18
86/11 86/18 87/18 90/3
93/10 94/18 94/19 95/6
95/8 95/12 95/20 96/11
97/6
thinks [2] 35/23 63/2
this [114]
This is [1] 3/3
thornier [2] 24/11
44/12
thorny [1] 44/21
those [17] 5/11 9/21
23/21 32/24 34/1 34/4
34/12 38/7 50/4 56/24
70/19 75/8 75/9 89/14
89/16 92/12 93/17
though [6] 36/18 50/9
57/7 67/8 89/20 93/11
thought [11] 25/8
28/10 29/20 29/23 48/7
48/17 49/3 56/4 81/10
81/14 97/9
thoughts [1] 72/5
thousands [1] 70/10
thread [1] 81/19
three [1] 90/8
through [29] 4/2 4/9
19/21 38/13 40/8 44/24
49/12 54/16 65/20
76/20 79/19 81/20 82/1
84/5 88/8 88/14 88/23
88/25 89/18 89/19
90/11 90/17 91/1 91/4
92/10 92/14 92/17
93/15 93/20
till [1] 53/19
time [50] 34/18 38/9
39/6 45/16 46/18 46/23
52/20 59/19 69/15 76/2
77/10 78/5 86/6 86/6
87/6 87/11 88/1 88/5
88/11 88/22 88/22
88/24 89/2 89/10 89/17

89/19 90/3 90/10 90/11
90/14 90/17 90/19
90/20 90/21 90/21
90/24 91/1 91/9 92/10
92/14 92/16 92/21
92/24 93/4 93/7 93/8
93/10 93/12 93/17
93/19
timeline [1] 85/19
times [1] 51/5
tips [1] 32/1
Title [3] 54/21 54/21
56/22
titled [2] 71/17 99/4
today [4] 61/20 78/21
82/20 92/13
told [22] 8/9 15/21
15/23 18/17 20/11 20/14
28/3 30/2 31/5 31/14
44/4 48/11 49/21 52/24
53/3 58/23 61/13 68/14
69/18 73/3 73/14 83/14
toll [3] 89/2 90/16
90/18
tolled [16] 88/2 88/5
88/22 88/25 89/17
89/20 90/10 90/11
90/14 90/19 90/21 91/2
91/9 92/9 92/21 93/20
tolling [5] 87/13 88/8
88/11 89/20 91/4
tolls [2] 87/11
too [5] 50/11 50/14
50/18 51/6 77/20
took [1] 93/2
top [1] 45/6
topics [1] 82/6
touch [1] 94/1
track [2] 12/19 12/20
trail [1] 86/16
transcript [3] 1/9 2/22
99/3
transcription [1] 2/23
transparent [1] 59/1
treat [2] 97/13 97/13
trial [32] 3/17 3/21
34/25 36/21 86/2 86/9
86/10 86/13 86/16
86/21 86/24 87/3 88/23
88/24 89/4 89/5 90/9
90/13 90/15 91/19 92/4
92/15 92/23 93/12
93/21 95/17 96/23
97/17 98/2
tried [2] 48/5 53/6
true [5] 14/22 27/2
35/15 65/2 68/6
Trump [7] 21/23 22/24
49/17 58/6 64/11 72/12
72/15
Trump's [1] 29/3
try [3] 16/20 49/24
76/20
trying [7] 9/12 14/5
18/10 30/15 40/8 49/3
95/20
turn [3] 21/20 40/15

**T**

turn... **[1]** 46/19
turns **[3]** 13/18 14/17 36/22
twisted **[1]** 75/14
two **[15]** 5/16 8/13 11/4 36/6 53/5 61/11 61/16 62/10 71/25 72/5 75/22 84/15 84/19 84/23 93/17
types **[2]** 34/1 41/21
typically **[1]** 71/9

**U**

U.S **[5]** 1/14 10/25 14/4 49/24 52/16
U.S.C **[2]** 55/2 63/3
ultimate **[1]** 16/20
ultimately **[2]** 30/6 79/3
unclear **[1]** 58/17
unconstitutional **[3]** 55/15 59/23 66/8
under **[17]** 5/11 17/25 23/21 47/9 55/2 56/21 56/22 83/16 84/6 86/9 87/6 87/11 90/7 92/13 92/20 93/12 93/19
understand **[29]** 4/19 5/19 16/8 16/18 16/23 18/11 19/22 20/13 22/20 26/21 29/11 29/25 35/21 35/23 36/11 39/19 39/22 40/4 45/13 47/13 47/25 58/25 74/18 76/25 82/1 82/8 82/10 83/25 85/16
understanding **[5]** 4/10 46/8 67/18 93/5 95/21
understands **[1]** 87/19
understood **[10]** 37/24 46/14 48/7 48/17 51/11 69/4 74/9 81/9 96/25 97/19
unfortunately **[1]** 88/25
unintentional **[1]** 29/2
UNITED **[12]** 1/1 1/3 1/10 3/3 55/5 55/21 55/21 64/22 66/3 66/5 68/14 92/21
United States **[8]** 55/5 55/21 55/21 64/22 66/3 66/5 68/14 92/21
United States of **[1]** 3/3
unlawful **[1]** 35/5
unless **[1]** 74/23
unlike **[2]** 69/23 71/21
unlikely **[1]** 56/4
unofficial **[7]** 40/20 41/6 57/7 57/10 62/21 65/13 67/10
unsuccessful **[1]** 77/13
until **[11]** 48/12 48/22 54/1 59/8 84/16 84/21 85/10 89/24 90/12

**U**

up **[45]** 8/10 9/1 10/12 10/13 12/5 13/3 13/13 14/13 15/1 15/14 18/16 23/3 25/22 27/23 31/4 31/10 35/6 37/12 42/10 42/14 42/21 43/2 44/5 46/17 49/21 50/13 54/7 56/14 59/15 61/22 63/24 64/24 67/9 67/19 70/21 70/22 75/20 80/11 82/9 83/15 87/20 88/13 92/10 92/14 94/8
upon **[4]** 48/5 58/2 58/10 90/21
us **[7]** 62/11 82/3 90/2 90/3 90/8 94/9 96/22
usdoj.gov **[2]** 1/17 1/17
use **[7]** 30/18 30/25 31/2 66/21 94/10 96/20 96/24
used **[4]** 27/8 30/13 30/14 96/20
uses **[1]** 49/18
using **[3]** 22/21 54/16 67/17
uttered **[1]** 61/12

**V**

VA **[1]** 2/7
vacated **[1]** 58/24
valid **[5]** 15/7 16/21 24/7 24/15 50/7
validity **[6]** 12/14 12/16 39/3 39/5 39/8 40/1
variable **[2]** 6/23 6/25
various **[1]** 87/18
verizon.net **[1]** 2/5
versus **[4]** 3/4 55/21 85/13 92/21
very **[13]** 15/13 26/12 33/6 35/17 41/13 44/21 48/4 53/4 68/3 71/19 76/7 76/10 94/1
view **[35]** 4/20 6/20 6/24 9/25 10/16 13/4 13/4 13/15 17/19 17/25 18/5 21/22 38/13 41/12 43/24 45/2 47/14 55/18 57/21 57/22 58/8 58/25 59/2 62/8 63/9 65/21 69/17 69/21 77/2 78/10 83/4 83/12 84/3 84/20 87/9
viewed **[1]** 57/16
vindicate **[1]** 10/4 18/23
vindictive **[1]** 34/1
violated **[2]** 76/3 76/4
violating **[2]** 57/9 93/21
volumes **[1]** 56/24
vs **[1]** 1/5

**W**

wait **[2]** 45/21 59/8
waived **[10]** 42/7 44/16 45/3 45/9 46/6 60/17

waiver **[4]** 45/2 45/11 45/23 45/25
waiving **[2]** 82/9 97/9
walk **[3]** 4/2 4/9 54/16
walking **[1]** 44/5
want **[30]** 4/4 5/14 10/12 16/2 16/15 17/22 19/11 26/20 30/22 32/25 39/18 39/21 40/7 40/14 46/19 46/20 46/21 47/7 47/13 50/1 50/3 51/4 58/21 59/22 61/17 75/4 78/22 81/2 86/1 95/15
wanted **[4]** 4/2 12/21 59/15 79/7
wanting **[1]** 63/6
wants **[2]** 46/22 95/18
warrant **[1]** 87/13
warrants **[1]** 38/4
was **[167]**
Washington **[5]** 1/5 1/15 2/4 2/11 2/20
wasn't **[10]** 39/23 43/16 44/20 52/18 57/12 72/6 83/10 84/21 97/7 97/7
WATER **[1]** 2/2
way **[14]** 4/12 11/17 11/18 12/16 17/4 17/5 23/10 44/8 51/10 52/10 76/11 81/20 83/12 97/25
whereas **[1]** 43/19
whether **[97]** 6/2 6/6 6/11 7/17 8/6 12/6 12/12 13/18 14/17 15/11 15/19 16/21 16/22 17/20 19/4 19/21 21/25 24/1 24/19 25/11 25/13 25/16 25/18 26/13 26/14 26/16 27/11 27/15 27/16 27/16 27/19 29/7 30/7 31/9 31/23 32/4 32/6 32/13 32/17 33/20 33/22 34/2 34/16 35/19 36/1 36/3 36/6 36/10 36/22 36/25 37/2 37/7 38/14 39/7 39/8 47/23 48/9 48/13 50/2 50/22 50/24 51/2 51/13 51/21 54/10 54/12 56/7 56/9 58/3 58/6 59/14 59/20 60/23 61/24 63/21 66/14 66/17 66/21 66/24 67/4 67/23 71/3 71/5 71/23 73/7 74/11 75/20 76/3 76/4 76/5 76/13 78/24 78/25 79/17 80/23 80/24 95/17
which **[57]** 10/10 12/11 12/15 12/22 13/8 20/2 22/4 22/8 25/23 30/1 34/7 34/22 38/20 42/10 42/18 43/17 48/4 52/13 57/6 57/23 59/17 60/13 62/11 66/8 67/19 67/21 68/14 68/24 68/25

were **[31]** 15/11 21/6 25/23 26/11 28/2 31/1 48/3 49/7 50/19 51/1 56/3 56/6 70/8 70/10 70/12 74/3 74/4 76/21 77/23 79/8 79/8 80/13 80/14 80/15 80/21 82/20 85/3 89/21 93/13 94/14 95/23
weren't **[3]** 50/20 53/3 82/6
WH.org **[1]** 61/22
what **[123]**
what's **[5]** 35/18 41/1 41/7 42/1 72/1
whatever **[6]** 4/4 20/15 26/3 50/20 52/17 59/21
whatsoever **[2]** 36/16 75/18
when **[16]** 11/24 23/5 27/15 29/20 45/11 45/11 50/10 53/3 64/8 67/6 87/4 89/2 91/1 91/6 92/18 94/13
where **[18]** 11/19 11/22 19/17 20/5 21/12 26/2 26/7 28/25 42/15 43/23 48/5 53/8 55/15 57/19 62/11 82/20 90/21 95/18
whereas **[1]** 43/19
whether **[97]** ...
which **[57]** ...
whichever **[1]** 7/15
white **[2]** 25/20 66/2
White House **[1]** 66/2
WhiteHouse.gov **[1]** 61/22
who **[14]** 9/8 9/16 9/18 10/9 13/1 14/25 15/9 18/13 19/7 21/13 23/16 24/24 65/7 75/5
who's **[2]** 9/25 10/7
whole **[1]** 58/23
wholly **[1]** 65/12
whose **[1]** 55/5
why **[33]** 3/18 3/22 22/15 23/2 24/19 25/11 27/19 30/9 30/10 31/15 32/9 34/10 35/8 35/9 36/17 38/13 38/18 43/23 48/4 48/24 55/12 61/7 61/9 64/17 65/10 66/8 68/9 69/2 71/20 86/7 86/24 90/22 95/5
wilfulness **[2]** 28/1 28/7
will **[10]** 12/12 18/11 60/4 61/19 78/22 87/25 94/1 94/2 94/8 94/19
William **[3]** 2/17 99/2 99/8
wisdom **[1]** 54/25
wish **[1]** 4/3
withdrawn **[2]** 96/20 97/3
within **[5]** 15/7 27/6 60/5 63/3 92/16
without **[4]** 63/16 72/20 72/23 97/16
witness **[2]** 38/3 45/19
won't **[3]** 40/25 60/6 65/4
Woodward **[9]** 2/10 2/10 2/14 3/8 54/7 57/20 75/9 82/15 86/1
word **[2]** 20/7 53/14
words **[20]** 9/13 9/16 10/6 13/24 15/13 15/19 19/2 23/5 35/9 42/2 42/20 44/2 45/15 49/19 51/15 61/12 66/22 69/5 85/10 95/20
work **[1]** 9/8
works **[2]** 40/9 53/19 54/2
world **[5]** 11/16 12/23 17/23 21/12 23/24
worth **[1]** 68/2
would **[107]**
wouldn't **[4]** 20/6 21/17 53/12 71/7
writes **[1]** 55/23

W

113

**written [1]** 39/14
**wrong [4]** 35/1 62/19
75/9 87/8
**wrongly [2]** 57/3 87/5
**wrote [6]** 37/5 37/6
37/9 37/23 39/11 68/21

**Y**

**yeah [13]** 5/19 11/14
16/7 19/15 31/14 40/10
73/1 80/20 96/6 96/8
97/5 97/11 97/21
**year [1]** 38/25
**years [2]** 39/21 55/20
**yes [32]** 5/7 5/11 7/1
8/11 8/14 8/15 8/16
8/25 15/6 17/15 19/4
25/15 25/19 27/8 39/16
44/11 44/23 48/19 50/8
57/1 59/6 59/25 63/13
63/14 64/7 77/23 78/2
78/15 81/1 81/1 83/7
96/1
**you [138]**
**you'd [1]** 69/3
**you'll [5]** 12/22 13/24
28/9 32/25 49/14
**you're [17]** 12/20 12/21
18/14 18/21 28/4 34/7
38/19 42/22 42/22
42/24 42/25 59/17
60/25 66/2 66/11 71/21
82/9
**you've [20]** 4/1 4/4
10/14 10/24 10/24 35/5
38/21 42/18 42/21 43/1
58/1 60/20 60/22 61/1
67/9 73/22 74/19 84/2
94/18 94/19
**your [60]** 3/2 3/24 4/24
6/1 7/1 9/11 9/24 10/16
13/4 13/18 14/15 17/15
18/5 18/8 25/14 30/12
32/8 33/4 33/16 38/13
38/24 39/18 40/24
43/24 45/2 46/17 46/24
47/1 48/19 49/1 51/17
57/21 57/22 59/3 59/5
59/18 60/5 63/9 65/21
66/7 66/8 67/13 72/5
72/18 73/6 74/9 75/2
77/2 78/13 78/15 78/18
79/7 80/19 83/4 84/3
84/24 86/2 87/22 94/4
96/12
**Your Honor [34]** 3/24
4/24 6/1 7/1 9/11 13/18
14/15 17/15 18/8 25/14
30/12 32/8 33/16 38/24
39/18 46/24 47/1 48/19
49/1 51/17 66/8 67/13
72/5 72/18 73/6 74/9
75/2 78/13 78/15 78/18
79/7 87/22 94/4 96/12

**Z**

**Zaremba [3]** 2/17 99/2