**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Criminal No. 1:22-cr-00200-APM** |
| **v.** ) | |
| ) | |
| **PETER K. NAVARRO,** ) | |
| ) | |
| **Defendant.** ) | |

**PETER K. NAVARRO'S DUE PROCESS RESPONSE**

"The words 'due process' have a precise technical import, and are only applicable to the process and proceedings of the courts of justice; they can never be referred to an act of legislature."

~Alexander Hamilton, Remarks on an Act for Regulating Elections, New York Assembly, 6 Feb. 1787, in 4 *Papers of Alexander Hamilton* 34, 35 (Harold C. Syrett ed., 1962).

In its submission, the government again fails to address the question posed by the Court, and instead again asserts that Dr. Navarro cannot prove that former President Trump instructed him to invoke privilege. The question unanswered by the government is, does an assertion, for the first time in history, that the invocation of executive privilege by a former president as to the congressional testimony of a senior presidential advisor, contravene the due process protections enshrined in our Constitution and the Amendments thereto?

To ask the question is to have the answer: Yes, of course it is plainly unfair for the Department of Justice to prosecute a presidential aide who understood – from the Department's own numerous pronouncements – that a refusal to comply with a Congressional subpoena is not prosecutable. *Committee on Judiciary, House of Representatives v. Miers,* 558 F. Supp.2d 53, 63-64 (D.D.C. 2008) ("[T]he Attorney General responded that because Ms. Miers and Mr. Bolten were acting pursuant to the direct orders of the President, "the Department has determined that

noncompliance . . . with the Judiciary Committee subpoenas *did not constitute a crime . . .*"
(emphasis provided).

The Department's abrupt departure from the way it has historically interpreted and
applied the contempt of Congress statute violates Dr. Navarro's Fifth Amendment right to due
process, which includes, "fair warning . . . in language that the common world will understand,
of what the law intends to do if a certain line is passed. To make the warning fair, so far as
possible the line should be clear." *McBoyle v. United States*, 283 U.S. 25, 27 (1931).  "The . . .
principle is that no man shall be held criminally responsible for conduct which he could not
reasonably understand to be proscribed." *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964)
(quoting *United States v. Harriss*, 347 U.S. 612 (1954)).  *See* Opp., at 6 n.8 (Oct. 12, 2022) (ECF
59).  Further, if the Court were to allow this case to proceed, it would sanction the Department's
use of the contempt of Congress statute in a broad and novel manner that violated Dr. Navarro's
right to due process.  *See United States v. Lanier*, 520, U.S. 259, 266 (1977) ("Due process bars
courts from applying a novel construction of a criminal statute to conduct that neither the statute
nor any prior judicial decision has fairly disclosed to be within its scope.").

Nor is the fact that the government took the position in a civil litigation that the assertion
of executive privilege by a former President is not controlling persuasive.  The government
indicted Dr. Navarro *before* it took any position in former Chief of Staff Mark Meadows's civil
litigation against the Select Committee.  Ultimately, this Court should note the clear novelty of
the issue before it, a novelty that the government itself concedes.  Apply the contempt of
congress statute uniquely here would violate the doctrine of the rule of lenity. *See Yates v. United
States*, 574 U.S. 528, 548 (2015) (plurality opinion) ("Application of the rule of lenity ensures
that criminal statutes will provide fair warning concerning conduct rendered and strikes the

appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability." (quoting *Liparota v. United States*, 471 U.S. 419, 427 (1985)).

The government further submits, without citing any supporting precedent, that Dr. Navarro's testimonial immunity would not extend to documents sought by the Select Committee's subpoena. Practically, Dr. Navarro cannot be expected to personally determine which records are protected by executive privilege and legally, the government cannot cite case law recognizing a distinction between a congressional subpoena for testimony or for records. To the contrary, both the OLC and case law have acknowledged that the executive privilege may properly be asserted as a defense to a Congressional subpoena for official documents. *See Miers*, 558 F. Supp. 2d at 62-64 ("President has decided to assert Executive Privilege and therefore the White House will not be making any production in response to these subpoenas for documents."). *See also id.* at 85 n.35 ("The President can invoke the [executive] privilege when asked to produce documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential. If the President does so, the documents become presumptively privileged. However, the privilege is qualified, not absolute, and can be overcome by an adequate showing of need." (quoting *In re Sealed Case*, 121 F.3d 729, 743-45) (D.C. Cir. 1997)). Indeed, this Court has even acknowledged specifically that a contempt prosecution of former Presidential officials over document disputes creates significant separation of power and constitutional concerns. *See Miers*, 558 F.Supp.2d at 92 ("Second, imprisoning current (*and even former*) senior presidential advisors and prosecuting them before the House would only exacerbate the acrimony between the two branches and would present a grave risk of precipitating a constitutional crisis. Indeed, one can easily imagine a stand-off between the Sergeant-at-Arms and executive branch law enforcement officials

concerning taking [an executive branch official] into custody and detaining him." (emphasis added)). *See also Response to Congressional Requests for Information Regarding Decisions Made Under the Independent Counsel Act*, 10 U.S. Op. Off. Legal Counsel 68, 86 ("[I]t seems most unlikely that Congress could dispatch the Sergeant at-Arms to arrest and imprison an Executive Branch official who claimed executive privilege.")

Here, Congress sought through its subpoena to Dr. Navarro both official documents relating to his tenure in the Executive Branch (which would without controversy be subject to the executive privilege) and non-official/personal documents. In doing so and seeking to prosecute all productions under the same charge, the government implicates important separation of powers issues: namely, whether the Committee can force Dr. Navarro to make the distinction as to which documents would be responsive and official (and therefore subject to the Executive Privilege) versus which documents would be responsive and personal. Ultimately, a categorization of documents would be required before responding to a subpoena, and the government now seeks to prosecute Dr. Navarro before he was given an opportunity to even determine of which documents would be responsive and non-privileged. *See Miers*, 558 F.Supp.2d at 106-08 ("ORDERED that [two executive officials] shall produce all non-privileged documents requested by the applicable subpoenas and shall provide to [government] a specific description of any documents withheld from production on the basis of executive privilege[.]").

Even if only the testimonial portion of the subpoena is found unenforceable, the Supreme Court has noted that the onus is on the Courts to determine whether a subpoena is wholly enforceable before holding one in contempt, and if a subpoena is only partially enforceable then the recipient should not be held in contempt for refusal to comply wholly or in part. *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 221-22 (1951) ("One should not be held in

contempt under a subpoena that is part good and part bad. The burden is on the court to see that the subpoena is good in its entirety, and it is not upon the person who faces punishment to cull the good from the bad.").

**[SIGNATURE ON NEXT PAGE]**

Dated: July 12, 2023                  Respectfully Submitted,

E&W Law, LLC

_____/s/ John S. Irving_____
John S. Irving (D.C. Bar No. 460068)
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
Telephone: (301) 807-5670
Email: john.irving@earthandwatergroup.com

SECIL LAW PLLC

_____/s/ John P. Rowley, III_____
John P. Rowley, III  (D.C. Bar No. 392629)
1701 Pennsylvania Ave., N.W., Suite 200
Washington, D.C. 20006
Telephone: (703) 417-8652
Email: jrowley@secillaw.com

BRAND WOODWARD LAW, LP

_____/s/ Stanley E. Woodward, Jr._____
Stan M. Brand (D.C. Bar No. 213082)
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Dr. Peter K. Navarro*

## **CERTIFICATE OF SERVICE**

On July 12, 2023, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

Respectfully submitted,

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Dr. Peter K. Navarro*