UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 22-cr-200 (APM) |
| ) | |
| PETER K. NAVARRO, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION AND ORDER ON ENTRAPMENT BY ESTOPPEL AND PUBLIC AUTHORITY DEFENSES

**I.**

In its Memorandum Opinion issued on January 19, 2023, the court held that, "without a more precise factual proffer," the defense of entrapment by estoppel was "not available to Defendant," and that a public authority defense was inapplicable. *United States v. Navarro*, No. 22-cr-200 (APM), 2023 WL 371968, at *15 (D.D.C. Jan. 19, 2023). Defendant at last has proffered evidence as to entrapment by estoppel, and in the same filing, he attempts to resurrect the public authority defense. *See* Def.'s Suppl. Notice Pursuant to Fed. R. Crim. P. 12.3 of Defenses of Public Authority and Entrapment by Estoppel, ECF No. 92 [hereinafter Def.'s Suppl.].

For the reasons explained below, based on his proffer, neither defense is available to Defendant at trial.

**II.**

Defendant's proffer starts with an incorrect statement of the law. He contends that the "willfully" element of the contempt of Congress offense, 2 U.S.C. § 192, requires showing that "a defendant acted with knowledge that his actions were unlawful." Def.'s Suppl. at 1. That is wrong.

"The gist of the offense [of contempt] is refusal to answer pertinent questions. No moral turpitude is involved. Intentional violation is sufficient to constitute guilt." *Sinclair v. United States*, 279 U.S. 263, 299 (1929) (rejecting "good faith" reliance "on the advice of competent counsel" as a defense to contempt), *overruled in part on other grounds by United States v. Gaudin*, 515 U.S. 506 (1995); *Licavoli v. United States*, 294 F.2d 207, 208 (D.C. Cir. 1961) ("Evil motive is not a necessary ingredient of willfulness under this clause of the statute. A deliberate intention not to appear is sufficient.").

Defendant's citations to *Ratzlaf v. United States*, 510 U.S. 135 (1994), and *(Sillasse) Bryan v. United States*, 524 U.S. 184 (1988), are patently disingenuous. The Supreme Court "has required proof that a defendant know which law he was breaking in only two contexts: criminal tax evasion, and currency structuring." *United States v. Burden*, 934 F.3d 675, 690–91 (2019) (discussing *Cheek v. United States*, 498 U.S. 192 (1991) (tax evasion) and *Ratzlaf*, 510 U.S. at 137–38 (currency structuring)). Those contexts "involve[] highly technical statutes that present[] the danger of ensnaring individuals engaged in apparently innocent conduct." (*Sillasse*) *Bryan*, 524 U.S. at 194.

The contempt of Congress statute is not such a "highly technical statute," and the Supreme Court long ago rejected efforts to make it so. *See United States v.* (*Helen*) *Bryan*, 339 U.S. 323, 330 (1950) ("[W]hen the Government introduced evidence in this case that respondent had been validly served with a lawful subpoena directing her to produce records within her custody and control, and that on the day set out in the subpoena she intentionally failed to comply, it made out a prima facie case of wilful default."). Defendant therefore need not have known his conduct was unlawful to be convicted of contempt of Congress. *See Licavoli*, 294 F.2d at 208.

2

### III.

Defendant starts his factual proffer as follows: "If called to testify at trial, [he] will state under oath that President Trump instructed him to assert Executive Privilege in response to the Select Committee's subpoena." Def.'s Suppl. at 2. Seems pretty straightforward. But the rest of Defendant's factual proffer is notable for what it does not say.

Defendant still has not told the court "when [the] conversation [with President Trump about the Select Committee's subpoena] occurred," or anything concerning the "substance" of that conversation. *Navarro*, 2023 WL 371968, at *3. Instead, he represents that (1) his "response to the Select Committee's subpoena closely resembled the assertion of Executive Privilege" he made in response to a different subpoena from the Coronavirus Subcommittee, Def.'s Suppl. at 2; (2) President Trump's "public instructions" to him about the Coronavirus Subcommittee "occurred near the same time" as the Select Committee's subpoenas to other former Trump Administration officials, *id.* at 3; (3) he understood that President Trump's "instruction to assert Executive Privilege applied to all subpoenas issued by Congress, including the one *he anticipated* he would receive from the Select Committee," *id.* (emphasis added); and (4) "[p]ursuant to the directions he received from President Trump regarding [the Select Committee subpoena], Dr. Navarro again acted with public authority and notified the Select Committee that he was unable to comply," *id.* at 3–4.

Taken together, these representations never say when or how President Trump directed Defendant to invoke privilege *after* President Trump became aware of the Select Committee's subpoena *to Defendant*. The timing and substance is critical. Unless President Trump had actual knowledge of the Select Committee's subpoena to Defendant, and instructed Defendant *as to that particular subpoena*, he could not have made a "'formal claim of privilege' after 'personal

3

consideration.'" *Navarro*, 2023 WL 371968, at *3; *see United States v. Reynolds*, 345 U.S. 1, 7–8 (1953) ("There must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.").

Defendant's proffer sounds much the same as the "standing order" argument he previously raised: that the President's public instruction to assert privilege in response to the Coronavirus Subcommittee subpoena was a command to do the same as to any and all subpoenas from Congress. *See Navarro*, 2023 WL 371968, at *4; Def.'s Suppl. at 2 ("[Defendant] understood that President Trump's instruction to assert Executive Privilege applied to all subpoenas issued by Congress [to President Trump's senior advisors], including the one he anticipated he would receive from the Select Committee as a Senior Advisor to President Trump."). The court previously rejected that contention, *see Navarro*, 2023 WL 371968, at *4, and does so again, if Defendant is attempting to revive it.

In short, when read in context, Defendant's declaration that "President Trump instructed him to assert Executive Privilege in response to the Select Committee's subpoena," Def.'s Suppl. at 2, appears to be a purposely ambiguous statement intended to elide the precision the law requires.

## IV.

In any event, even if the court were to accept Defendant's proffer at face value, it still falls short. The defense of entrapment by estoppel requires proof (1) "that a government agent actively misled him about the state of the law defining the offense," (2) "that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense," (3) "that the defendant actually relied on the agent's misleading pronouncement in committing the offense," and (4) "that the defendant's reliance was reasonable in light of the identity of the agent, the point

4

of law misrepresented, and the substance of the misrepresentation." *United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (quoting *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)); *see Navarro*, 2023 WL 371968, at *14. Defendant's proffer falters on the first and fourth elements.

*Actively Misleading.* The Supreme Court's decision in *Raley v. State of Ohio* illustrates what "actively misleading" looks like. 360 U.S. 423 (1959). There, four individuals invoked their Fifth Amendment privilege against self-incrimination in response to questions posed by the Ohio Legislature. *Id.* at 424. "[T]he Chairman of the Commission, who clearly appeared to be the agent of the State in a position to give such assurances, apprised three of the appellants that the privilege [against self-incrimination] in fact existed, and by his behavior toward the fourth obviously gave the same impression." *Id.* at 437. Afterwards, the four were charged with, and convicted of, refusing to answer questions put to them at the inquiry. *Id.* at 432–33. In affirming their convictions, the Ohio Supreme Court held that a state statute that automatically granted immunity to the witnesses "deprived them of the protection of the privilege [against self-incrimination]," and they "therefore had committed an offense by not answering the questions as to which they asserted the privilege." *Id.* at 425.

The Supreme Court reversed. It held that the convictions (with one exception, not relevant here) "violated the Due Process Clause of the Fourteenth Amendment." *Id.* "[T]o permit the convictions to stand," the Court wrote, "would be to sanction the most indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State *clearly* had told him was available to him." *Id.* at 438 (emphasis added). This was not a case where the state agent's "commands [were] simply vague or even contradictory"—the commands were "active[ly] misleading." *Id.*; *see also Cox v. Louisiana*, 379 U.S. 559, 568–70 (1965) (reversing

5

conviction for picketing across the street from a courthouse because a responsible state official had permitted the picketing and effectively advised that the location of the demonstration was lawful).

Since *Raley*, lower courts have strictly enforced the "active misleading" element of entrapment by estoppel. For instance, the Fourth Circuit in *United States v. Aquino-Chacon* said that to establish the defense of entrapment by estoppel, the defendant "must demonstrate that there was 'active misleading' in the sense that the government actually told him that the proscribed conduct was permissible." 109 F.3d 936, 939 (4th Cir. 1997). The Seventh Circuit in *United States v. Howell* stated similarly that the defense applies "when, acting with actual or apparent authority, a government official affirmatively assures the defendant that certain conduct is legal and the defendant reasonably believes that official." 37 F.3d 1197, 1204 (7th Cir. 1994). And, the Fifth Circuit in *United States v. Trevino-Martinez*, explained that a defendant is entitled to raise the defense "only when a government official or agent actively assures a defendant that certain conduct is legal." 86 F.3d 65, 69 (5th Cir. 1996) (internal quotation marks and citation omitted).

Here, Defendant does not say that President Trump "actually told him" or "affirmatively assured" him that it would be lawful not to comply with the Select Committee's subpoena. *See generally* Def.'s Suppl. Defendant does not proffer, for example, that President Trump advised him that he did not have to appear for testimony because of the privilege invocation. Nor does he assert that President Trump told him he could withhold all responsive records, regardless of whether they related to his official capacity, because of the privilege invocation. To the contrary, Defendant proffers that "[*he*] *knew* that President Trump's instructions regarding the Select Committee's subpoena followed the long-standing policy of DOJ's Office of Legal Counsel

6

[(OLC)]." Def.'s Suppl. at 4 (emphasis added).  In other words, he seemingly acted based on his understanding of the law, not on President Trump's "active assurance" that noncompliance would be lawful.

Defendant also once again points to OLC opinions to support his entrapment defense. *See id.*  Previously, the court observed that "[o]ther than referencing OLC opinions . . . Defendant has never represented that he actually relied on any particular OLC opinion before he refused to comply with the Select Committee's subpoena." *Navarro*, 2023 WL 371968, at *15.  He still has not identified any particular OLC opinion. *See generally* Def.'s Suppl.  Instead, he merely states that he understood the Department of Justice's "long-standing policy" to be that "Senior Presidential Advisors have absolute testimonial immunity from Congressional subpoenas." *Id.* at 4.  But even if that were an accurate statement of OLC's position—and it is not—Defendant points to no OLC opinion that recognizes absolute immunity from congressional process for a former senior aide to a *former* President.  That is because there is none.[1]  Defendant therefore has failed to establish that he was "actively mislead" by any OLC opinion.

*Reasonable Reliance.*  Nor can Defendant demonstrate reasonable reliance on President Trump's instruction to invoke executive privilege.  "In order for his reliance to be reasonable, the defendant must establish that 'a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.'" *Trevino-Martinez*, 86 F.3d at 69 (quoting *United States v. Brebner*, 951 F.2d 1017, 1024 (9th Cir. 1991).  As already discussed, President Trump offered no "information as true" upon

---

[1] OLC has taken the position that current and former senior advisors to a *sitting* President enjoy absolute immunity from compelled congressional testimony. *See Testimonial Immunity Before Cong. of the Former Counsel to the President*, 43 Op. O.L.C. __ (May 20, 2019).  It also has said that a senior advisor to a *sitting* President cannot be prosecuted for contempt for refusing at the President's direction to produce records concerning official acts. *See Prosecution for Contempt of Cong. of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101 (May 30, 1984).  OLC has never issued an opinion addressing the immunity available to a *former* senior aide to a *former* President, the circumstance at issue here.

which Defendant relied.  Additionally, a reasonable person would have understood that the former President's directive was the just the starting point for understanding what his compliance obligations were.

A modicum of research would have revealed that the Supreme Court has held that executive privilege is qualified, not "absolute." *United States v. Nixon*, 418 U.S. 683, 706–07 (1974).  It also would have shown that the D.C. Circuit held long ago that, as to congressional inquiries, executive privilege may yield to "a strong showing of need by another institution of government." *Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 730 (D.C. Cir. 1974).  And, finally, he would have learned that the privilege is "held by the Executive Branch, 'not for the benefit of the President as an individual, but for the benefit of the Republic,'" *Trump v. Thompson*, 20 F.4th 10, 26 (D.C. Cir. 2021) (quoting *Nixon v. GSA*, 433 U.S. 425, 449 (1977), and that "it must be presumed that the incumbent President is vitally concerned with and in the best position to assess the present and future needs of the Executive Branch, and to support invocation of the privilege accordingly," *Nixon v. GSA*, 433 U.S. at 449.

Here, Defendant learned before his deposition date that President Biden had decided not to assert executive privilege or testimonial immunity as to the Select Committee's subpoena to him. U.S.' Opp'n to Def.'s Mot. to Dismiss, ECF No. 44, Ex. 5, ECF No. 44-5, at 2.  Yet, he apparently made no further inquiry as to how the sitting President's determination affected his obligations to the Select Committee. Defendant's reliance on the former President's seemingly unadorned instruction to invoke executive privilege was not reasonable.

It also was not reasonable for Defendant to rely on any OLC opinion.  As discussed, no OLC opinion takes the position that a former aide to a former President enjoys absolute testimonial

8

immunity. Nor does Defendant say he sought clarification from the Department of Justice about OLC's position.

V.

Defendant also attempts to revive a public authority defense that the court previously held was not available to him. Def.'s Suppl. at 1; *Navarro*, 2023 WL 371968, at *15. It still is not.

The public authority defense is "narrowly defined." *United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015). To assert it, Defendant must show that (1) President Trump "actually authorized [him] to commit the particular criminal act at issue" and he "reasonably relied on that authorization," and (2) President Trump "actually had the authority to permit [him] to commit the criminal act in question." *Id.*

Defendant says he intends "to assert a defense of *actual* . . . exercise of public authority." Def.'s Suppl. at 1 (emphasis added). The court already has held, however, that President Trump did not have the actual authority to approve Defendant's violation of law because he was a private citizen at the time. *Navarro*, 2023 WL 371968, at *15.

Further, Defendant states he will put forth a defense of "*believed* exercise of public authority." Def.'s Suppl. at 1 (emphasis added). It is not entirely clear what Defendant means by this. If he means to say that he did not comply with the subpoena because he believed President Trump had the *apparent* authority to permit him to violate the law, that is not a defense. *See Navarro*, 2023 WL 371968, at *15. Alternatively, if he contends that he made an honest mistake about the former President's authority to sanction criminal conduct, that is not a defense either. *See Licovoli*, 294 U.S. F.2d at 208. In sum, a public authority defense is not available to Defendant.

9

## VI.

For the foregoing reasons, Defendant is precluded from advancing an entrapment by estoppel or public authority defense at trial.

Dated: July 28, 2023

Amit P. Mehta
United States District Court Judge