# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | **Criminal No. 1:22-cr-00200-APM** |
| **v.** | ) | |
| | ) | |
| **PETER K. NAVARRO,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MOTION FOR NEW TRIAL</u>

It what can only be described as a landmark result, on September 7, 2023, a jury convicted Dr. Peter K. Navarro of two charges of contempt of congress after he refused to comply with a subpoena issued by the U.S. House of Representatives' Select Committee to Investigate the January 6th Attack on the United States Capitol at the direction of former President Donald J. Trump.  Dr. Navarro's conviction marks *the first time* a senior presidential advisor has been convicted of contempt of congress, let alone prosecuted for that offense.  And it comes following the Court's ruling – as required by binding D.C. Circuit precedent – that Dr. Navarro was precluded from *even explaining to the jury* that he refused to comply with the subpoena at the direction of former President Trump; following the government's gratuitous references – requiring Court admonishment – to the riot at the U.S. Capitol on January 6, 2021, an event with which Dr. Navarro has never been accused of being associated; and following the completely unprecedented occurrence of Dr. Navarro's deliberating jury being paraded past the protestors and news media awaiting their verdict.  Dr. Navarro's trial was fraught without this final, prejudicial act, but its occurrence requires, pursuant to Rule 33 of the Federal Rules of Criminal procedure, he be given a new trial.

Without the ability to explain to the jury exactly why Dr. Navarro failed to comply with the Congressional subpoena he received, Dr. Navarro's defense at trial was straightforward – the government could not prove that Dr. Navarro's failure to comply with the subpoena was willful. Specifically, the government failed to investigate whether Dr. Navarro's noncompliance was the result of mistake, accident, or anything besides the required "deliberate intention to do the act." *See Licavoli v. United States of America*, 294 F.2d 207, 208-209 (D.C. Cir. 1961).  Instead, the government gratuitously focused its prosecution of Dr. Navarro on the events of January 6, 2021, and grossly insinuated that somehow Dr. Navarro was responsible for the riot that unfolded at the U.S. Capitol that day – so much so that the Court of its own volition admonished the jurors, repeatedly, that this case was not about the events of January 6.  Alone, the government's improper innuendo is inappropriate.  It was exacerbated, however, by the fact that in the midst of deliberations, the jury was paraded outside the Courthouse in front of protestors who had gathered to express their disapproval of the events of January 6, the Trump Administration, and all those who served in the Trump Administration, including Dr. Navarro.

The scene could not have been better scripted:  there were twelve residents of the District of Columbia, all necessarily affected by the events of January 6, 2021; deliberating the fate of a senior Trump Administration advisor without the benefit of knowing he had been directed not to comply with the subpoena in question by the President he served; all having been gratuitously reminded of the events of January 6, 2021 and its purported threat to our Nation's 247 year history of transitioning presidential power peacefully, despite no allegation that Dr. Navarro was in any way involved in the violence that occurred that day; all then paraded before the vitriolic protesting that was occurring outside the Courthouse, only to reach a unanimous verdict as to Dr. Navarro mere minutes later.  To say that the jury was unaffected by this series of events is to strain credulity.

Video footage of the jurors that day confirms the undue influence to which they were exposed.  As they exit the John Marshall Park entrance to the Courthouse, protestors and news media are gathered mere feet away, all anticipating their ultimate verdict.  The video footage confirms that several protestors held signs that related to the content of the information sought from Dr. Navarro by Congress, including inflammatory statements such as "Bro, Should've Pled the 5th ... Peter 4 Prison," "Defend Democracy," and "Free J6 Political Prisoners Now."







Just twenty (20) minutes after this encounter, the jury reached a verdict and convicted Dr. Navarro of both counts of contempt of congress.

Following the incident, and the jury's verdict, on September 13, 2023, the Court, again of its own volition, held a hearing for the purpose of taking the testimony of the Court Security Officer ("CSO") who led the jurors on their excursion outside the Courthouse into John Marshall Park. The CSO's testimony was contradicted by the video taken of the scene.[1]  The CSO testified that there was a significant distance between the protestors and the jurors, when video footage of the incident shows that the jurors whom she accompanied walked roughly a few feet from the protestors both upon leaving the Courthouse and upon re-entering the Courthouse:

---

[1] *See* Freedom Express Media, Live at the DC Federal Court House: Peter Navarro Verdict!, at 2:03:00, *available at* https://www.youtube.com/watch?v=D1FWJ7yXX2Q (last visited Oct. 6, 2023).





The CSO also testified that a barrier separated the jurors from the protestors when, again, video footage of the incident shows that the jurors view of the protestors would have been unobstructed:



Neither publicly available footage of the incident, nor the Courthouse CCTV footage clearly capture the protestors there that day, but it is undisputed that they were present when the jury was paraded past the gathered crowd:



And they were clearly present, and surrounded Dr. Navarro, as soon as he exited the Courthouse:

6



## I.   LEGAL STANDARD

The D.C. Circuit has held that, "[a] mistrial is a severe remedy—a step to be avoided whenever possible, and one to be taken only in circumstances manifesting a necessity therefor." *United States v. McLendon*, 378 F.3d 1109, 1112 (D.C. Cir. 2004) (internal quotation marks omitted) (quoting *United States v. Clarke*, 24 F.3d 257, 270 (D.C. Cir. 1994)).   "[A] mistrial is warranted if inadmissible evidence is erroneously presented to the jury that is so 'highly prejudicial' that the jury cannot reasonably be expected to ignore it." *United States v. Crews*, 856 F.3d 91, 96 (D.C. Cir. 2017) (citing *United States v. Eccleston*, 961 F.2d 955, 961-62 (D.C. Cir. 1992)).   Post-verdict scrutiny of juror conduct is disfavored due to the risk of undermining "full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople." *Tanner v. United States*, 483 U.S. 107, 120-21 (1987).   "Ordinarily, a verdict will not be upset on the basis of a juror's post-trial report of what occurred in the course of deliberations." *United States v. Campbell*, 684 F.2d 141, 151 (D.C. Cir. 1982). "The single exception concerns 'extraneous influences' that may have

improperly influenced the verdict." *Id.* "Extraneous influence" has been construed to cover publicity received and discussed in the jury room, consideration by the jury of evidence not admitted in court, and communications or other contact between jurors and third persons, including contacts with the trial judge outside the presence of defendant and his counsel. By contrast, evidence of discussions among jurors, intimidation, or harassment of one juror by another, and other intra-jury influences on the verdict is within the rule, rather than the exception, and is not competent to impeach a verdict. *United States v. Wilson*, 534 F.2d 375, 378-79 (D.C. Cir. 1976).

Normally, the Court is presumptively in favor of a jury's verdict and assumes that, where a curative instruction is offered, "a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it[.]" *United States v. Foster*, 557 F.3d 650, 656 (D.C. Cir. 2009) (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)). However, "[t]he single most important consideration in ruling on a motion for a mistrial is the extent to which the defendant was unfairly prejudiced." *McClendon*, 378 F.3d at 1112.

## II.    ARGUMENT

This matter began with a heightened potential that the jury would reach a verdict based substantially upon grounds other than Dr. Navarro's failure to comply with the Congressional subpoena at issue, including: Dr. Navarro's association with controversial political figures; his advocacy of certain political beliefs; the underlying nature of the information that Congress sought from Dr. Navarro; and/or the constant media coverage of the case. This potential prejudice was compounded by the unique procedural posture presented by the actual trial of Dr. Navarro, to include: the inability of Dr. Navarro to explain to the jury why he failed to comply with the Congressional subpoena at issue and the government's gratuitous reference to the events of January

6, 2021.  These unique circumstances rendered the possibility of prejudice to Dr. Navarro more likely than in any typical case.

Ultimately, the already tenuous scales of justice upon which Dr. Navarro's fate rested were tipped by the jury's exposure to the protestors that had gathered outside the courthouse to await, and even celebrate, his convictions.  Moreover, because the full picture of the scene to which the jurors were exposed did not become clear until well after the jury had reached its verdict, it did not benefit from a proper curative instruction that may have nullified their improper exposure.  As such, the prejudice to Dr. Navarro warrants a new trial.  *See United States v. Roy*, 473 F.3d 1232, 1239 n.3 (D.C. Cir. 2007) ("We would ordinarily be hesitant to hold that curative instructions given after the jury has notified the court that it had reached a verdict are adequate. In this case, however, we find that despite the timing of the instructions Roy has failed to meet his burden of showing prejudice[.]").

In similar cases, even a jury's brief exposure to relevant and prejudicial outside information immediately prior or during deliberations has resulted in a mistrial, including in circumstances where the Court was able to address the issue, interview potentially affected jurors, and/or provide a curative instruction before the jury reached a verdict.  *See United States v. Concepcion Cueto*, 515 F.2d 160, 163-64 (1st Cir. 1975) (finding a mistrial where, "[j]urors were. . . exposed to this disturbing information [relevant media coverage] at a crucial moment, immediately prior to closing arguments and shortly before they began their deliberations."). *See also id.* at 164 ("Had the potential harm been less clear, the individual assurances [of impartiality from each juror] might have been very useful in assessing actual impact. . .  Here the content and timing of the material went beyond anything we feel able to assume the average juror could withstand. It also went beyond anything the defendant should be forced to accept." (internal citations omitted)). *See also*

9

*United States v. Titsworth*, 422 F. Supp. 587, 591-92 (D. Neb. 1976) ("The jurors were exposed to the news items at a crucial moment, immediately prior to the commencement of their second day of deliberations, and shortly before their final vote on the verdict. 'A more critical moment would have been difficult to find.' (quoting *United States v. Kum Seng Seo*, 300 F.2d 323, 625 (3d Cir. 1962)).

The prejudicial nature of the jury's exposure to persons protesting the January 6th riot is clear and something the Court had even warned the government about earlier in the case:  Dr. Navarro being associated with either or both of Donald Trump's Presidential Administration and/or events at the Capitol on January 6, 2021, should not be elucidated at trial since the underlying nature of the materials sought by the congressional subpoena did not affect the contempt of congress charge.

Prior to reaching their verdict, these jurors found themselves face to face with protestors, and at least some of whom referred to members of the Trump administration or the events at the United States Capitol Building on January 6, 2021 as "terrorists" and called for their conviction. The jurors were exposed to this information at a crucial point in the proceedings, while their deliberations were ongoing but prior to a verdict having been reached.  Nevertheless, mere minutes after their exposure to the scene outside the Courthouse, the jury returned its verdict convicting Dr. Navarro of both counts of contempt of congress.  Only a new trial can ensure that Dr. Navarro's conviction is free from any prejudice caused by the jury's exposure to the scene outside the Courthouse that day.

**CONCLUSION**

For the reasons contained herein, Dr. Navarro respectfully requests that the Court find that Dr. Navarro's verdict was influenced by materials from outside the Courtroom, and therefor rule that a new trial is necessary.

**[SIGNATURE ON NEXT PAGE]**

Dated: October 6, 2023                    Respectfully Submitted,

                                          E&W Law, LLC

                                          _____/s/ John S. Irving_____
                                          John S. Irving (D.C. Bar No. 460068)
                                          1455 Pennsylvania Avenue, N.W., Suite 400
                                          Washington, D.C. 20004
                                          Telephone: (301) 807-5670
                                          Email: john.irving@earthandwatergroup.com


                                          SECIL LAW PLLC

                                          _____/s/ John P. Rowley, III_____
                                          John P. Rowley, III  (D.C. Bar No. 392629)
                                          1701 Pennsylvania Ave., N.W., Suite 200
                                          Washington, D.C. 20006
                                          Telephone: (202) 417-8652
                                          Email: jrowley@secillaw.com

                                          BRAND WOODWARD LAW, LP

                                          */s/ Stanley E. Woodward, Jr.*
                                          Stan M. Brand (D.C. Bar No. 213082)
                                          Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                          400 Fifth Street Northwest, Suite 350
                                          Washington, DC  20001
                                          202-996-7447 (telephone)
                                          202-996-0113 (facsimile)
                                          Stanley@BrandWoodwardLaw.com

                                          *Counsel for Dr. Peter K. Navarro*

**<u>CERTIFICATE OF SERVICE</u>**

On October 6, 2023, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

Respectfully submitted,

<u>*/s/ Stanley E. Woodward, Jr.*</u>
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
400 Fifth Street Northwest, Suite 350
Washington, DC  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Dr. Peter K. Navarro*