**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

                                        CR Action
                                        No. 1:21-670

      vs.                            Washington, DC
                                        October 21, 2022

STEPHEN K. BANNON,

                                        9:06 a.m.

            Defendant.

TRANSCRIPT OF SENTENCING HEARING
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the U.S.:**          **J.P. COONEY**
                            U.S. ATTORNEYS OFC. FOR D.C.
                            555 4th Street NW
                            Washington, DC  20001
                            202-252-1793

**For the Defendant:**    **DAVID I. SCHOEN**
                            DAVID I. SCHOEN, ATTORNEY AT LAW
                            2800 Zelda Road, Suite 100-6
                            Montgomery, AL  36106
                            334-395-6611

                            **MATTHEW EVAN CORCORAN**
                            **RIANE WHITE**
                            SILVERMAN THOMPSON SLUTKIN WHITE
                            201 N. Charles Street, 25th Floor
                            Baltimore, MC  21201
                            410-385-2225

**Reported By:**         **LORRAINE T. HERMAN, RPR, CRC**
                            Official Court Reporter
                            U.S. District & Bankruptcy Courts
                            333 Constitution Avenue, NW
                            Room 6720
                            Washington, DC 20001

1                    **P R O C E E D I N G S**

2           **DEPUTY CLERK:**  Good morning, Your Honor.  This is

3    criminal case year 2001-670, *United States of America versus*

4    *Stephen K. Bannon*.  Probation Officer is Renee

5    Moses-Gregory.

6           Counsel, please come forward and introduce

7    yourselves for the record beginning with the government.

8           **MR. COONEY:**  Good morning, Your Honor.  J.P.

9    Cooney on behalf of the United States.

10          **THE COURT:**  Mr. Cooney, good morning.

11          Mr. Schoen.

12          **MR. SCHOEN:**  Good morning, Your Honor.  David

13   Schoen for Mr. Bannon.  With me is Evan Corcoran, Riane

14   White.  Mr. Bannon is at the defense table, Your Honor.

15          **THE COURT:**  Good morning, everyone.

16          **MR. SCHOEN:**  Good morning.

17          **THE COURT:**  We are here, obviously, to sentence

18   the defendant, Mr. Bannon, on two counts of contempt of

19   Congress in violation of 2 U.S. Code Section 192.

20          Are both parties prepared to proceed?

21          **MR. COONEY:**  Yes, Your Honor.

22          **MR. SCHOEN:**  Yes, Your Honor.

23          **THE COURT:**  So I have read all of the materials,

24   which means I have read probation's presentence

25   investigation report and recommendation, the pretrial

1    services report and the sentencing memoranda and exhibits

2    submitted by the government and the defendant, including the

3    briefs and supporting materials that were submitted by both

4    parties yesterday evening without, I should note, seeking

5    leave of Court.

6         Before we begin, does anyone have anything to add

7    to those written materials, just anything written to add to

8    those written materials?

9         **MR. COONEY:**  No, Your Honor.

10        **MR. SCHOEN:**  No, Your Honor.

11        **BY THE COURT:**  Does the government object to my

12   considering Mr. Bannon's submission from last night?

13        **MR. COONEY:**  No, we do not.

14        **THE COURT:**  Does Mr. Bannon object to my

15   considering the government's submission from last night?

16        **MR. SCHOEN:**  No, Your Honor.

17        **THE COURT:**  Do we have any witnesses or victims

18   who will testify today?

19        **MR. COONEY:**  No, Your Honor.

20        **MR. SCHOEN:**  No, Your Honor.  There are no

21   victims, Your Honor.

22        **THE COURT:**  So here is a roadmap of how I intend

23   to proceed.  I'll first consider any objections to the

24   presentence investigation report and make my findings with

25   respect to it.

1          I will then go through the guidelines calculation.

2     Then I will hear from counsel for both parties and, at that

3     point, Mr. Bannon, if he wishes to address the Court.  As

4     always, the defendant need not address the Court.  It's

5     Mr. Bannon's option.  And then I'll likely take a quick

6     recess and return to pronounce the sentence.

7          The government has not raised any objections to

8     the final PSR; is that correct?

9          **MR. COONEY:**  That is correct.

10     **THE COURT:**  I recognize that Mr. Bannon has raised

11     certain objections to the PSR as reflected at Pages 27 to 30

12     of the PSR.  Most of those objections are arguments about

13     the appropriate guidelines calculation and some other legal

14     arguments.  But two of them, the objections that is, do

15     relate to the inclusion of certain information in the PSR.

16          Is that correct, Mr. Schoen?  Do I have that

17     right?

18     **MR. SCHOEN:**  Yes, Your Honor.  I think that is

19     correct.

20     **THE COURT:**  Does Mr. Bannon have any objections to

21     the PSR beyond those identified at Pages 27 to 30?

22     **MR. SCHOEN:**  I want to be clear on one of the

23     legal arguments in the objections.

24          There is an argument, legal argument, that both

25     there is no mandatory minimum sentence and -- sentence of

1   incarceration, and that it's not appropriate to sentence a

2   defendant to incarceration with a statute that has a

3   willfulness element, as the Court has construed it.  That

4   is, unless the defendant believes he or she has done

5   something wrong or unlawful.

6           The only one I'd like to discuss, if it's okay

7   with the Court today, would be the mandatory minimum.

8           **THE COURT:**  I'd be happy to hear from you on that.

9   What I'd like to do is just table that for one second

10  because I'm going to do the guidelines calculation, and it's

11  relevant to my guidelines calculation.

12          I think it's fair to say that all of the

13  objections, including those to the PSR, are preserved.  I

14  just wanted to note that a couple of them go to the factual

15  information that is included in the PSR and to distinguish

16  those from some of the legal arguments.

17          **MR. SCHOEN:**  I think, Your Honor, to that extent

18  they are set out in the objections.  The Court has them set

19  out in the addendum, and the Court can certainly rule on

20  what it has before it --

21          **THE COURT:**  Thank you.

22          **MR. SCHOEN:**  -- with respect to those factual --

23          **THE COURT:**  Yes.  Thank you, Mr. Schoen.

24          Mr. Bannon, have you had a chance to review the

25  presentence investigation report with your counsel?

1        **THE DEFENDANT:**  Yes, Your Honor.

2        **THE COURT:**  And have you had enough time to talk

3   with your counsel about the report and the memoranda that

4   have been filed in this matter?

5        **THE DEFENDANT:**  Yes, Your Honor.

6        **THE COURT:**  Are you completely satisfied with the

7   services of your counsel, here?

8        **THE DEFENDANT:**  Yes, Your Honor.

9        **THE COURT:**  Thank you.

10       As I've noted, Mr. Bannon has preserved all of his

11   objections to the PSR.  As it relates to the factual

12   information contained in the PSR and Mr. Bannon's objections

13   to the conclusion of that factual information, in my view,

14   those factual materials are properly included in the PSR.  I

15   therefore accept the factual findings contained in the PSR

16   regarding the circumstances of the offense, and I adopt

17   those facts for the purposes of imposing a sentence.

18       In addition, because there is no objection to my

19   consideration of the materials that were filed last night, I

20   also adopt the facts contained in the parties' submissions,

21   in particular, Mr. Bannon's submission from last night, as

22   well as the facts in the record from the trial.  Now, that's

23   step one.

24       Step two, as I indicated before, is I of course

25   have to calculate the appropriate guidelines range.  As

everyone knows, under the Supreme Court's decision in *United States versus Booker*, the guidelines are not mandatory. They are merely advisory.  But I nevertheless must calculate them correctly and consider them.

There are a couple of points of disagreement between the parties, the first of which is about the applicable guideline provision.  The government and the probation office argue that the Court should apply Guidelines Section 2X5.2, while the defendant argues that the Court should apply Guideline Section 2J1.5.

With respect to the contempt of Congress statute, 2 U.S. Code Section 192, the statutory index of the Sentencing Guidelines references two guidelines provisions, Section 2J1.1 and Section 2J1.5.  Section 2J1.1, entitled Contempt, instructs the Court to apply Section 2X5.1, the catch-all provision for other felony offenses.

Application note for Section 2X5.1 explains that, for Class A misdemeanors, such as contempt of Congress, the Court shall apply Section 2X5.2.  If this Court were to apply Section 2X5.2 to Mr. Bannon's conduct, the base offense level would be 6.

Section 2J1.5, on the other hand, which is entitled Failure to Appear by a Material Witness, instructs this Court to apply the base offense level of 6 if the failure to appear was in respect to a felony prosecution,

1    and a base offense level of 4 if the failure was with

2    respect to a misdemeanor prosecution.

3                I agree with the government that the best

4    guideline provision to apply here is 2X5.2.  Mr. Bannon's

5    conduct was more analogous to contempt of Court than simply

6    failing to appear as a witness.  In my view, Mr. Bannon's

7    base offense level is therefore 6.

8                But even if I were to apply Section 2J1.5, as

9    Mr. Bannon proposes, Mr. Bannon's base offense level, in my

10   view, would still be 6.  His failure to appear before the

11   House Select Committee about the events of January 6 was

12   not, in my view, analogous to a failure to appear in respect

13   to a misdemeanor prosecution, but was more analogous to a

14   failure to appear in respect to a felony prosecution.  So

15   the base offense level, in my view here, is 6.

16               We then have to look to Section 3D1.2 of the

17   Sentencing Guidelines to see how the offenses group.

18   Section 3D1.2 instructs that "All counts involving

19   substantially the same harm shall be grouped together into a

20   single group."

21               So I have to determine whether Mr. Bannon's

22   conviction arising from the failure to produce documents and

23   his conviction arising from the failure to testify, the two

24   counts at issue here, involved "substantially the same

25   harm."  Section 3D1.2 provides four reasons why counts may

1    involve substantially the same harm.

2              In my view Section 3D1.2(b) applies here.  Counts

3    1 and 2 involved the same victim, so to speak, Congress.

4    And the two acts, refusal to produce documents and refusal

5    to testify, were connected by a common objective.

6    Therefore, the two counts would be grouped together.

7              Then we turn to Sections 3D1.3 and 3D1.4 to

8    calculate the combined offense level.  Because the two

9    counts are grouped together and the same guidelines applies

10   to each, Mr. Bannon's offense level remains 6.

11             Finally, at least as to this point, we turn to

12   Section 3E1.1, Acceptance of Responsibility.  Mr. Bannon

13   argues that his offense level should be reduced by two

14   levels for acceptance of responsibility.

15             He argues that he is not precluded from an

16   acceptance of responsibility decrease merely because he

17   exercised his constitutional right to trial and the

18   defendants who go to trial may still receive this reduction

19   when they do not contest their factual guilt.  Mr. Bannon

20   argues that, because his challenges to the government's case

21   were legally and constitutionally based rather than

22   factually based, he is not precluded from receiving this

23   reduction.

24             The government responds that Mr. Bannon has not

25   clearly demonstrated his acceptance of responsibility as

1    required by guideline section 3E1.1(a).  The government

2    argues that Mr. Bannon's "claim for acceptance of

3    responsibility is contradicted by a sustained bad faith," as

4    Mr. Bannon still to this day, as the government has put it,

5    has not produced a single document or attempted to appear

6    for a deposition with the Select Committee.  The government

7    further argues that Mr. Bannon has not expressed remorse and

8    has attacked the Select Committee at every turn.

9         On this point, I agree with the government.

10   Although Mr. Bannon did challenge the government's case at

11   trial on primarily legal and constitutional grounds, as he

12   is, of course, permitted to do, he did seek to present

13   arguments that would have contested his factual guilt.

14   Obviously, some of those arguments were precluded by my

15   pretrial rulings.

16        But, moreover, he has expressed no remorse for his

17   actions, and he has yet to demonstrate that he has any

18   intention of complying with the subpoenas.  Therefore,

19   Mr. Bannon will not receive a reduction for acceptance of

20   responsibility and his offense level remains at 6.

21        Mr. Bannon has zero criminal history points and,

22   therefore, falls within Criminal History Category I; that's

23   undisputed.  Mr. Bannon's guideline sentence range would

24   therefore be 0 to 6 months.  But the government argues and

25   probation agrees that there is a one-month mandatory

1    minimum.

2              Mr. Schoen, this is where I'd like to hear your

3    argument on that question.

4              **MR. SCHOEN:**  Yes, Your Honor.

5              I'm sure that detailed guideline calculation is

6    exactly why Your Honor decided to become a judge.

7              **THE COURT:**  That and other things.

8              **MR. SCHOEN:**  Yes, Your Honor.

9              Your Honor, I think the main point I'd like to

10   make -- we addressed it in the papers briefly.  There's not

11   a lot of law on it one way or the other.  But the main point

12   I think I'd like to make is that, in arguing against --

13   sorry.

14             In arguing in favor of a mandatory minimum

15   sentence of incarceration, the government, again today,

16   appears to apply what I call the Bannon Rule.  That is, the

17   government changes its position in this case only for

18   Mr. Bannon from every other case I'm aware of in which the

19   government has addressed this issue.

20             There may be cases I'm not aware of, but I

21   certainly am aware of several in which the government took

22   the exact opposite position.  And the government ought to be

23   estopped from taking any other position in this case and

24   certainly advocating the position here.  But the government

25   doesn't just take the position it takes here.  It does it

1       stridently.

2               The government can't imagine in their papers how

3       anyone could read the language any differently than

4       requiring a mandatory minimum sentence of incarceration.

5               So I would direct the Court's attention, as a

6       preliminary matter -- I say preliminary.  This won't go on

7       very long.  First of all, to the case of *Block* that we cite

8       in the papers*.  Block*, as the Court is aware, is a decision

9       by United States Magistrate Judge Robinson in this district.

10      And Judge Robinson concluded at the end that there is a

11      mandatory minimum.

12              But she noted things in that report and

13      recommendation or order.  Eventually, by the way, what

14      happened in that case was they went before -- an appeal was

15      made to Judge Robinson's decision that went before Judge

16      Lamberth, and Judge Lamberth allowed the defendant to

17      withdraw his plea based on this issue, based on his

18      understanding of this issue.

19              And he noted in his decision, Judge Lamberth that

20      is, that in that case alone the parties filed at least four

21      memoranda apprising the Court of their views, all of their

22      views, that there is no mandatory minimum sentence in this

23      case.

24              So, for example, the one argument the government

25      made in that case, in *Block*, was that the term punishable in

1    the statute does not mean shall be punished as it's used in

2    other statutes.  Specifically, they referred to -- they

3    contrasted it with 18 U.S.C. 924.  And in 192, as the

4    government pointed out, this same Department of Justice --

5    192 does not say a Court shall not place on probation any

6    party convicted of a violation of the statute.  It just

7    means capable of being or able to be punished.

8          They cited to Black's Law Dictionary.  They cited

9    to a case, *United States versus Hunter*.  And I'm now

10   referring to Document 23, the government's submission in the

11   *Block* case in this same district in 2011.  I think their

12   submission was made 2010, but the decision came down 2011.

13         The government argued that "shall" wasn't related

14   in that case to "for not less than one month," because

15   they're separated by clauses.  Shall appears to modify,

16   according to the government, the "be deemed guilty of a

17   misdemeanor" clause rather than the "for not less than one

18   month" clause, since the words are separated by many words

19   and a comma, the government argued.

20         As to the impact of the table of statutory

21   provisions regarding mandatory minimum terms of

22   imprisonment, the government argued that the sentencing

23   commission's interpretation of a particular statute is not

24   controlling authority, and the Court should ignore that.

25   And they cited to a D.C. Circuit case, *United States versus*

1    *Price*, a 1993 case.  That was the government's argument in

2    *Block*.

3                THE COURT:  But the government is not estopped.

4    What's your best argument for why there's no mandatory

5    minimum here?

6                MR. SCHOEN:  The government's arguments, the

7    arguments that I'm making.  The arguments that the

8    government --

9                THE COURT:  What if I think those are not

10   compelling?  Tell me how the estoppel --

11               MR. SCHOEN:  Then Your Honor is going to rule

12   against me.

13               THE COURT:  So isn't the statute pretty clear?  It

14   says -- I understand the point about "shall be deemed

15   guilty" being separable, but don't the words imprisonment --

16   "and imprisonment in a common jail for not less than 1 month

17   nor more than 12 months," they have to mean something.  Why

18   is that not a mandatory minimum and a mandatory maximum?

19               MR. SCHOEN:  We're removing "punishable."  And

20   "punishable" versus "shall be punished," we don't see as

21   mandatory language.  And, as the government said, there is

22   no provision in this statute as there are in other statutes

23   that probation cannot be part of the sentence in this case.

24               That's part of the argument.  But, Judge, you

25   know, we go back many other cases.  I mean, the judge argued

1   in *Tejada*, all four parties, the judge, probation, the

2   government, the defendant, argued in *Tejada* that there is no

3   mandatory minimum sentence.

4          **THE COURT:**  But I have an independent --

5          **MR. SCHOEN:**  Of course.

6          **THE COURT:**  Those are not binding decisions, like

7   the D.C. Circuit.  I have an independent obligation to

8   review the statute to make a correct guidelines calculation.

9          And I'm trying to understand what the best

10  argument is, from a statutory interpretation perspective,

11  about why this isn't a mandatory minimum.  Is it a mandatory

12  maximum in your view?  Could I sentence Mr. Bannon for more

13  than 12 months?

14         **MR. SCHOEN:**  No, Your Honor, you could not.

15         **THE COURT:**  Why not?

16         **MR. SCHOEN:**  It's a different --

17         **THE COURT:**  Don't they stand or fall together?

18         **MR. SCHOEN:**  No, Your Honor, they don't.  Because

19  on the threshold, the question is, what's the Court's

20  authority, first of all, to impose punishment.  Secondly,

21  the statute certainly can set a cap on what that can be.

22         The question here is, is the -- first of all, is

23  Congress's silence on the no-probation factor relevant?

24  There's no analogue to that on the cap and on the maximum

25  end of it.  And the question here is, again, whether the

1    Court can affirmatively give -- the Court affirmatively has

2    to give some sentence of incarceration.  I think that that's

3    conceptually different from than on the cap.

4          Now, I'll say this:  Judge Lamberth noted in his

5    opinion that there was some basis at least for the defendant

6    to have had inquiry notice, let's say, that there could be a

7    mandatory maximum.  He said he thinks this is a case of

8    lawyering falling short.

9          However, as I say, he allowed the defendant to

10   withdraw his plea.  It was a function of two things.  One,

11   Judge Robinson's failure to advise the defendant that there

12   was a mandatory maximum.  And secondly --

13              **THE COURT:**  Minimum.

14              **MR. SCHOEN:**  That was a plea case, mandatory

15   minimum.  Sorry, Your Honor.

16          And secondly, because the Court believed the

17   defendant's understanding of the case, based on all of the

18   precedent.

19          I will say that there are cases they cite in *Block*

20   and elsewhere in which the D.C. Circuit has at least

21   recognized that conviction -- and conviction is, under this

22   statute, a suspended sentence has been given.  I don't say

23   the Court, as a matter of legal authority, put his

24   imprimatur on it.

25          I do say that there are at least two cases in

1    which the Circuit here recognized that in -- that the

2    District Court had imposed suspended sentences.  And those

3    would be, for example, *D.C. Bar versus Kleindienst*,

4    K-l-e-i-n-d-i-e-n-s-t.  I'm old enough to remember who

5    *Kleindienst* was.  And that's 345 Atlantic 2d 146, 149, note

6    5, D.C. Circuit 1975, a case from the Ninth Circuit, if the

7    Court's interested.

8         And then there's a case -- *Elliot Abrams*' case,

9    which is at 662 Atlantic 2d 867, 870, D.C. Circuit 1995.

10   And of course the case we cite in the brief also is the

11   *Watkins* case in which the defendant was convicted of seven

12   counts of violation of Section 192 and received a suspended

13   sentence.

14        Anyway, Judge, those are the arguments.  The

15   arguments that the government made and joined by the

16   defendant, and some of the cases joined by the judge and

17   joined by probation, are the arguments that I have to make

18   about why there is no mandatory minimum.

19        I think, you know, the question is, I'd like a

20   ruling on it, square ruling on it anyway.  If the Court

21   finds the language is clear and that there is a mandatory

22   minimum, I would just like to have that ruling.

23        **THE COURT:**  Of course.  Mr. Schoen, thank you.

24        **MR. SCHOEN:**  Thank you.

25        **THE COURT:**  Would the government like to respond?

1          **MR. COONEY:**  Just briefly, Your Honor, three

2    points.  First, the government is not estopped.  Second --

3          **THE COURT:**  Why not?

4          **MR. COONEY:**  Because this -- well, for two

5    important reasons.  The most important being is that there

6    is an intervening event, which is the *Block* decision.  *Block*

7    is law.  It's in the District Court of the District of

8    Columbia.  You are not bound by it because it is a

9    Magistrate Judge's decision and a District Court decision,

10   not a Circuit decision but we now have law.

11         And, second, candidly, Your Honor, we get it wrong

12   sometimes.  And the government had it wrong in 2010, which

13   brings me to my third point.  Magistrate Judge Robinson got

14   it right in *Block*.  There is no other way to read this

15   statute on its plain terms.

16         If the Court were to interpret it the way the

17   government urged in 2010 or the way the defense urges today,

18   then the 30-day to 1-year range in the statute would be

19   merely a suggestion, and the Court could sentence the

20   defendant to any term of imprisonment it deemed appropriate.

21   That cannot possibly be the law or what Congress intended

22   when it said "punishable by a term of 1 month and no more

23   than 12 months."

24         **THE COURT:**  Thank you, counsel.

25         So on this question, I hold that 2 U.S. Code

1    Section 192 imposes a mandatory minimum sentence of

2    incarceration of 1 month, but also has a mandatory maximum

3    sentence of incarceration of 12 months.

4            The plain language of the statute, in my view, is

5    clear.  The defendant convicted under the statute "shall be

6    deemed guilty of a misdemeanor punishable by imprisonment

7    for not less than one month."  That's the minimum.

8    Obviously, there's language about the mandatory maximum.

9            I believe the statute is clear on that point and

10   the government is not estopped for the reasons given by

11   counsel.  To include, those are just litigating positions.

12   There was an intervening decision.

13           More important, I have an independent duty to

14   decide what the sentencing range is here, whether it's the

15   guidelines range or the statutory provisions regardless of

16   what the government has argued in the past.

17           In my view, the statute sets out a mandatory

18   minimum of 1 month and a mandatory maximum of 12 months.

19   Going back to the guidelines range, what that means here is

20   that, whereas normally the guidelines range would have been

21   0 to 6 months, the guidelines range is actually 1 to 6

22   months.  The guidelines range is 1 to 6 months incarceration

23   with a mandatory minimum of 1 month.

24           I would just note that, even if Mr. Bannon were

25   correct that guidelines section -- and I indicated this

1    before -- 2J1.5 is applicable and his failure to appear is

2    analogous to a failure to appear with respect to a

3    misdemeanor prosecution, his base offense level would be 4

4    and the correct guidelines range would still be 1 to 6

5    months.

6           Likewise, even if Mr. Bannon were granted the

7    two-level reduction for acceptance of responsibility, his

8    base offense level would be 4 and the guideline range would

9    still be 1 to 6 months.

10          And even if Mr. Bannon were right as to both the

11   applicable guideline and the acceptance of responsibility

12   reduction, his base offense level would be 2 and the

13   guideline range would still be 1 to 6 months.  So that's the

14   period of incarceration.

15          **MR. SCHOEN:**  Your Honor?

16          **THE COURT:**  Mr. Schoen?

17          **MR. SCHOEN:**  Just so the record is clear.  The

18   argument -- the other argument we made that we should not be

19   imposing a sentence of incarceration on a person who

20   doesn't -- the statute doesn't require even believes that

21   his conduct was unlawful, et cetera, is somewhat associated

22   with or related to the idea of no mandatory minimum.

23          Again, I think we've made that argument.

24          **THE COURT:**  You have made that argument.  You've

25   preserved it.  I reject it.  It's preserved for purposes of

1    appeal.

2         **MR. SCHOEN:**  I do have two other commentators I'd

3    like to bring to the Court's attention, because I do think

4    this is a fundamental principle, at least as a matter of

5    legal philosophy, that there has to be some belief or

6    understanding that, once conduct was unlawful or criminal,

7    in order for a sentence of incarceration or criminal

8    liability even to be imposed, I would cite the Court to the

9    great philosopher, H.L.A. Hart, who wrote, "Those who lack

10   fault shall not be liable to criminal punishment."

11        And frankly, Blackstone, in his commentaries

12   that -- two William Blackstone Commentaries, *20-22, said,

13   "To constitute a crime against human laws, there must be

14   first a will, a vicious will and, secondly, an unlawful act

15   consequent upon such victim's will."

16        So I think it is a fundamental settled principle

17   of criminal law.  Again, we go back to, in a sense, the

18   definition of willful that we've talked about before.  I

19   understand the Court's position.

20        But I do think it's a fundamental tenet of

21   American criminal law, at least, that for criminal

22   liability, there has to be some showing of a belief or

23   understanding that one's conduct was criminal or wrongful

24   or --

25        **THE COURT:**  The problem is that runs square into

1    what the D.C. Circuit has said the mens rea is under the

2    statute, and the D.C. Circuit has blessed at least certain

3    sentences of incarceration under the statute in light of

4    that very same mens rea.

5           **MR. SCHOEN:**  Well, the Court just hit on my second

6    point and that is criminal liability but, even more so,

7    incarceration.

8           **THE COURT:**  I understand.

9           **MR. SCHOEN:**  We don't put people in prison in this

10   country, my view and the view of many others, unless we find

11   that they believe they did something wrong.

12          **THE COURT:**  Understood.

13          **MR. SCHOEN:**  Thank you, Your Honor.

14          **THE COURT:**  The argument is preserved.  I do not

15   believe and I find and hold that that is not a reason to

16   ignore the mandatory minimum here.  That is as to

17   incarceration.

18          As to the fine, at least as I read the papers,

19   both the government and probation appear to take the

20   position that the relevant fine range is between $100 and

21   $100,000.  Mr. Bannon has not objected to that position.

22          But Guideline Section 5E1.2 addresses fines for

23   individual defendants, and Section 5E1.2(c) contains a table

24   with fine ranges based on the offense level.  Under that

25   table for offense level 6, which is the offense level that I

1    determine applies here, the minimum fine, guidelines range

2    fine is $1,000 and the maximum fine is $9,500 under the

3    guidelines range.

4            Does the government agree that that is the

5    applicable guidelines fine range?

6            **MR. COONEY:**  You're right, Your Honor.  We were

7    inartful in our sentencing memorandum.  The guidelines range

8    is exactly what you articulated, $1,000 to $9500.  The range

9    would be 1,000 to 100,000 under the statute.

10           **THE COURT:**  The statutory range?

11           **MR. COONEY:**  Correct.  Correct.

12           **THE COURT:**  So in advocating -- just to be clear

13    then, and I'll hear from you on the appropriate, the reasons

14    for it --

15           **MR. COONEY:**  Yes.

16           **THE COURT:**  -- but the government is advocating

17    for an in-guidelines period of incarceration at the top end

18    but a variance on the fine?

19           **MR. COONEY:**  Exactly correct.

20           **THE COURT:**  Okay.  Thank you.

21            So I conclude that the range I've just

22    articulated, $1,000 to $9500, is the guidelines range for

23    the fine here notwithstanding the parties -- well, in light

24    of the government's concession and notwithstanding the fact

25    that, as far as I can tell, Mr. Bannon didn't object to the

1   probation to the PSR, which seems to suggest that the range

2   is $100 to $100,000.

3          Finally, do the parties agree that the applicable

4   mandatory special assessment in this case is $50 because

5   there are two misdemeanors?  I know it's a small point.

6          **MR. COONEY:**  Yes, Your Honor.

7          **THE COURT:**  Mr. Schoen?  This appears to be a yes.

8          So obviously, Mr. Bannon objects to my guidelines

9   calculation for the various reasons that we've already

10  discussed, objects as articulated by Mr. Schoen today and as

11  reflected in his objections to the presentence report.

12          But for purposes, just to be very clear for the

13  record, I hold that the guidelines range is 1 to 6 months on

14  each of the two counts, for which Mr. Bannon was convicted,

15  and that the fine range is $1,000 to $9500 under the

16  guidelines.  That's my guidelines calculation, and of course

17  the $50 mandatory special assessment.

18          At this time, I'd like to hear from the parties

19  about what they believe an appropriate sentence would be.

20  Obviously, I must consider the guidelines but also the other

21  Section 3553(a) factors.  Let me just say this at the

22  outset.  I hope the parties recognize that I understand this

23  case, sat through a trial, made a number of pretrial

24  rulings.

25          I recognize that the trial did not address all of

1    the evidence and facts because of my pretrial rulings.  But

2    I've reviewed the record again, including the record at

3    sentencing.  You don't need to repeat everything that you

4    have already argued.

5            I'd like to hear from you about the most salient

6    points as to why you think, for example, from the

7    government, you believe that a 6-month period of

8    incarceration and $200,000 worth of fines is appropriate.

9            **MR. COONEY:**  I'm going to start backwards, since

10   Your Honor just dealt with the fines.

11           **THE COURT:**  Yes.

12           **MR. COONEY:**  We recommend a $200,000 fine because

13   that is exactly what the defendant has asked for.  The

14   defendant rejected the -- or refused to cooperate with the

15   financial investigation of probation with respect to the

16   PSR.

17           The same financial investigation that is conducted

18   in every case of every defendant convicted of federal

19   crimes, be they misdemeanors or felonies, be they violent

20   crimes or financial crimes --

21           **THE COURT:**  This is that investigation to figure

22   out whether the defendant has an ability to pay an

23   appropriate fine.

24           **MR. COONEY:**  It is.

25           **THE COURT:**  And doesn't the appropriate fine

1    really have to be tied to the offense?

2            **MR. COONEY:**  Yes.

3            **THE COURT:**  Okay.  So let's assume Mr. Bannon,

4    notwithstanding the fact that he provided no information,

5    has an ability to pay any fine.  How is a $200,000 fine

6    warranted here in light of the guidelines range?

7            **MR. COONEY:**  Because it amplifies his contempt for

8    the criminal justice system, his contempt for the law, his

9    contempt for Congress.  It is consistent with his conduct

10   throughout this case, and it is an appropriate punishment

11   under the circumstances.  He has invited that.  He has

12   requested that, and the Court should take him up on it.

13           **THE COURT:**  Mr. Bannon didn't say, to be very

14   clear -- this is what he said in the PSR:  "I am willing and

15   able to pay in full any fine levied against me."  He didn't

16   concede that a $200,000 fine was appropriate.

17           **MR. COONEY:**  I read that as an invitation for the

18   Court to impose the maximum fine, particularly for the

19   reasons that I stated, that this conduct, that his decision

20   to not cooperate with the financial investigation, simply

21   amplifies his contemptuous conduct.

22           **THE COURT:**  Do you believe that there is -- if

23   putting that aside, putting aside Mr. Bannon's interactions

24   with the probation office, that an above-guidelines fine

25   would be warranted if that had not happened?

1          **MR. COONEY:**  Had that not occurred?

2          **THE COURT:**  In other words, if Mr. Bannon had

3    provided the financial information to the probation office,

4    and it said he can pay any fine -- I don't know what it

5    would say, but except to pay any fine -- the government

6    believe -- I don't see any argument from the government that

7    an above-guidelines fine would be otherwise appropriate

8    here.

9          **MR. COONEY:**  I think that an above-guidelines fine

10   would otherwise be appropriate insofar as the Court could

11   impose that and that would not be an unreasonable sentence

12   given the fact that Mr. Bannon could not have committed a

13   more malicious contempt.

14         He could not have been in more contempt of

15   Congress.  In that respect, I believe it would be perfectly

16   appropriate to sentence him to the maximum term of

17   imprisonment and the maximum fine --

18         **THE COURT:**  So let's turn to the --

19         **MR. COONEY:**  But --

20         **THE COURT:**  Yes, understood.  Okay, so let's go to

21   that because then that becomes the same argument about

22   incarceration.

23         **MR. COONEY:**  Yes.

24         So, Your Honor, we told the Court -- or we told

25   the jury during closing arguments that this case was neither

1    uncomplicated -- or that it was not complicated but that it

2    was important.  And the importance of this case has

3    everything to do with the defendant's obligations as a

4    citizen of the United States.

5              Your Honor, today and every day over at the U.S.

6    Attorney's Office there are citizens checking in at the

7    kiosk to appear for testimony before the grand jury under a

8    subpoena that obligates them to do so.

9              Every day citizens walk in and out pursuant to

10   subpoenas just like the ones the defendant received.  Those

11   citizens put themselves in harm's way to cooperate and to

12   fulfill those obligations.

13             Many of those citizens are objects of ridicule,

14   subjected to threats, subjected to potential harm.  Many of

15   them have to be relocated from their homes to comply with

16   those subpoenas.

17             This man, the defendant, a man of means, a public

18   figure, suffered no such threats, no such potential harm.

19   He chose, hiding behind a fabricated claim of executive

20   privilege and advice of counsel, to thumb his nose at

21   Congress.

22             Your Honor, the defendant is not above the law.

23   And that is exactly what makes this case important.  It must

24   be made clear to the public, to the citizens, like the ones

25   who appear before the grand jury over at the U.S. Attorney's

1    Office every day, that no one is above the law.  When they

2    are served with a valid subpoena, that they are expected to

3    adhere to it and to fulfill their obligations.

4            **THE COURT:**  Do you agree that, if Mr. Bannon had a

5    legitimate claim of executive privilege or if there had been

6    a legitimate claim of privilege, from the government's

7    perspective, that his conduct would have been appropriate?

8            **MR. COONEY:**  No.

9            **THE COURT:**  Why not?

10           **MR. COONEY:**  That is what makes this so egregious.

11   If he had a valid claim of executive privilege -- and I

12   should say, if we are talking about testimonial immunity,

13   that privilege, that might be one thing.

14           But we're not under even the defendant's view of

15   executive privilege.  If the defendant intended to

16   faithfully invoke executive privilege to faithfully rely on

17   his advice of counsel with respect to that, he would have

18   shown up.

19           This defendant never lifted a finger to try and

20   find a responsive document, did not try to submit a

21   privilege log, did not even appear before the Select

22   Committee to hear its questions and to invoke executive

23   privilege as the subpoena commanded him to do.

24           **THE COURT:**  Do you know why the Committee didn't

25   seek to enforce its subpoena against Mr. Bannon in court as

1        committees often do through civil action?

2                **MR. COONEY:**  I do not.

3                **THE COURT:**  Is that relevant here?

4                **MR. COONEY:**  No.

5                **THE COURT:**  Why not?  I mean, it seems to me that,

6        at least in certain circumstances, a committee seeks

7        judicial resolution of someone's obligation to appear

8        through the filing of an affirmative lawsuit, which has been

9        permitted perhaps misguidedly by courts, that allow

10        congressional committees to litigate in court, but they

11        didn't choose that here.

12                So why -- the fact that there was at least one

13        tool in the Committee's arsenal that it didn't invoke, why

14        isn't that at least somewhat relevant?

15                **MR. COONEY:**  Because a contempt of Congress

16        statute is a penal statute.  It is intended to punish the

17        conduct.  It is not an enforcement statute which is

18        separate.

19                But in this particular case on these facts, the

20        defendant maintained his recalcitrance despite being warned

21        in writing on multiple occasions of the consequences of

22        continuing his contempt and being provided the opportunity

23        to explain himself.

24                He did none of those things.  We might be in a

25        different circumstance had the defendant fulfilled his

minimal obligation, and that is to show up, but he failed to

even do that.

        **THE COURT:**  But what about his argument that

they're sort of related points.  One is, unlike some

defendants, perhaps he was represented by counsel.  He

retained counsel.  Counsel was engaged with the Committee.

        He didn't -- I mean, to some extent, I'm not

putting these words in Mr. Bannon's mouth.  I'm just -- one

could argue he engaged with the Committee.  He did not

ignore the Committee altogether, and he was being provided

advice by counsel, as reflected in declarations, including

the declaration that was submitted last night.

        All of those things show that he is less culpable

at least than others who would be potentially in contempt of

Congress, including people, for example, who might not have

ever engaged with the Committee or people who lied or

provided false information or testimony.

        So why don't those facts cut in Mr. Bannon's

favor?

        **MR. COONEY:**  I disagree, because the factual

record in this case illustrates or demonstrates that the

defendant's claim of executive privilege was merely a smoke

screen, that it was a cloak intended to cover an intent not

to comply, not to cooperate and not to reveal information.

        If it were any different, Your Honor, then once

1    his purported claim of executive privilege, what he claims

2    tied his hands, was relieved last summer, he would have

3    appeared and testified before the Select Committee.

4           Instead, he reached out to the Select Committee

5    with the hyperbolic letter provided to him by the former

6    President.  And he said, I will come, but I will come on my

7    terms, on my conditions.  He had no interests in genuine

8    compliance or adherence to his obligations.

9           He had an interest in making a public spectacle of

10   the Committee's hearings.  And that is consistent with all

11   of the public statements that the government outlined in our

12   sentencing memorandum and that are contained, I believe, in

13   the presentence report as well.

14          Throughout this entire case, the defendant has

15   tried to make it about nothing other than politics and

16   retribution.  He has tried to point the finger at other

17   individuals, other institutions, at the United States

18   Congress, to try and excuse his own conduct.

19          Throughout, he has acted as if he is above the

20   law.  He is not.  And as I said, it is critical that this

21   defendant and that the citizens of this country be sent a

22   message that no person, regardless of their means,

23   regardless of their station, regardless of the influence of

24   their friends or their patrons, is above the law.

25          Throughout the case and today, all the government

1    has asked and all we are asking here at sentencing is that

2    this man, Stephen Bannon, be treated like every other

3    citizen, that he be held accountable for his crimes and that

4    he be sentenced like any other citizen.

5          And despite the fact that, as I said before, I can

6    think of no more egregious contempt than the one that he has

7    engaged in.  Because we asked him to be treated like every

8    citizen, we are asking for what we asked for in the vast

9    majority of cases a guideline sentence at the top end of the

10    range.

11    **THE COURT:**  One question before you sit down.

12    It's about the sentence that I impose.  There's also the

13    question of, as Mr. Bannon has asked, whether I allow him to

14    be released pending an appeal, assuming there is one.

15          Government opposes that.  And it seems to me the

16    government's argument is basically his appeal would not

17    present substantial questions that are likely to succeed.

18    **MR. COONEY:**  Correct.

19    **THE COURT:**  Right?  Do I have that right?

20    **MR. COONEY:**  Correct.

21    **THE COURT:**  Because *Licavoli* is binding, you,

22    Judge Nichols, got it right.  He's not going to get that

23    overturned, and even if he does, he will not win.  All fair?

24    **MR. COONEY:**  All fair.

25    **THE COURT:**  Okay.  Thank you, Counsel.

1          **MR. COONEY:**  Thank you.

2          **THE COURT:**  Mr. Schoen or Mr. Corcoran?

3          **MR. CORCORAN:**  Your Honor, I know we usually don't

4   split allocution.  I'm just going to speak to the fine

5   because I was dealing with probation on that.  And then

6   Mr. Schoen will address the other issues.

7          It's really on my shoulders but -- excuse me -- it

8   should not be viewed as anything that would affect

9   Mr. Bannon's sentence.  I won't put the probation writer's

10  name in the record, but she is a very fine person and you

11  could see, by reading the report, very thorough.

12         Not only going into Mr. Bannon's history but also,

13  when we got to the financial end of things, I said that my

14  understanding was that that part of the report is not to get

15  an idea of a person's wealth in terms of sentencing but to

16  see, in terms of if a fine is possibly going to be imposed,

17  does the defendant have the capacity to pay and does it have

18  to be on a schedule or something like that.

19         And I had essentially suggested, if he stipulates

20  that he can pay the maximum sentence that's imposed, will

21  that satisfy the probation department, and her answer was,

22  yes.  That's it.

23         **THE COURT:**  My understanding from probation is

24  that they were actually -- happy is probably the wrong way

25  to put it, but -- perfectly willing to accept that

1   representation because it meant that they didn't have to do

2   the work of digging through and writing up Mr. Bannon's

3   financial information.  So it was essentially a time-saver.

4           **MR. CORCORAN:**  Absolutely, Your Honor.

5           **THE COURT:**  And what I heard from probation was

6   that, in no way, did that interaction reflect a

7   inappropriate attempt by Mr. Bannon to keep information from

8   probation but it was essentially a time-saver.

9           **MR. CORCORAN:**  Absolutely.  Thank you, Your Honor.

10          **THE COURT:**  Thank you.  Mr. Schoen.

11          **MR. SCHOEN:**  Your Honor, the temptation is to

12  respond directly to what Mr. Cooney just said.  But I'm

13  going to try to avoid that temptation for now, and then I'll

14  respond to it at the end.

15          I will say at the beginning that I hope that no

16  American buys into just about anything that Mr. Cooney just

17  said, except that Mr. Bannon ought to be treated like any

18  other citizen.

19          Mr. Bannon ought to be treated like any other

20  citizen who gets a subpoena, any other lay citizen who gets

21  a subpoena from Congress and who hires a lawyer, any other

22  citizen who relies on that experienced lawyer's advice, any

23  other citizen for whom executive privilege is invoked.

24          And the idea now -- well, I'll get into this more

25  in a moment.  But the idea now that the government argues,

1    well, this is a smoke screen.  It was never actually

2    invoked.  They argued to the jury, as they did today, his

3    reason for not complying was that he was above the law.

4         After spending almost a year arguing that he must

5    be prohibited from telling the jury why he didn't comply,

6    from putting forward any reason as to why he didn't comply

7    because no reason matters, but then the jury is told his

8    reason was he was above the law, he thought he was above the

9    law, and today you should sentence him because he thought he

10   was above the law, the record in this case doesn't show that

11   at all.  It shows just the opposite.

12        Let me take it from here, Your Honor.  The

13   probation recommendation in this case, Your Honor, as the

14   Court is aware, is for a sentence of 30 days and a fine

15   that's above the guidelines.

16        As Your Honor knows, we believe that there should

17   be no sentence of incarceration.  Any sentence of

18   incarceration should be suspended and it wouldn't be

19   appropriate to impose a sentence of incarceration in this

20   case.

21        Otherwise, the probation recommendation, after a

22   full investigation by experienced people, signed off by a

23   supervisor in the probation office, is a reasonable

24   recommendation absent the fine.

25        The fine is extraordinary and should not be

1    applied like that, and there shouldn't be any jail sentence.

2    And frankly, I don't waive any other objection we've made.

3    But it's certainly closer to where we should be than the

4    government's position is.

5         Let me say this, Judge, as an overview.  What I

6    propose to do is focus on the 3553(a) factors and how I

7    think that relates to the facts of this case mindful of the

8    Court's admonition to not rehash all of the facts.  I will

9    go into those facts that I think are relevant to 3553(a)

10   factors with this caveat in the beginning.  I've made the

11   point before.

12        It is our view that it is especially inappropriate

13   for this case to have been brought as a criminal case but,

14   more importantly, for the present circumstances, for any

15   punitive sentence to be imposed.  You know, the Court said

16   earlier that one of the factors guiding it was that there

17   had been no showing of remorse.

18        I want to address that.  And I want to address it

19   in a way that I hope the Court understands and appreciates

20   and doesn't feel is inflammatory, but I feel very strongly

21   about it.  And that is that, you know, this is not the

22   ordinary sentencing.  It's true.  Where a defendant comes

23   before the Court begging the Court for mercy, showing

24   contrition for the conduct, explaining why the defendant

25   feels remorse.

1          Because it's a case in which, quite frankly,

2     Mr. Bannon should make no apology.  No American should make

3     any apology for the way -- the manner in which Mr. Bannon

4     proceeded in this case.

5          The factors that are most relevant under 3553 are

6     the (a)(2)(A) and (B) factors, basically the -- excuse me --

7     reflect the seriousness of the offense and all that, and

8     provide just punishment, and afford adequate deterrence.  I

9     want to focus on that.

10          Mr. Bannon, as the Court knows, is an American

11     citizen, received a subpoena from a congressional committee,

12     followed by notice from counsel for the former President

13     that executive privilege is being invoked.

14          Now, I'll get into this in a moment.  They've

15     taken this position now.  Mr. Clark has appeared, and it

16     didn't mean this and it didn't mean that.  The letter speaks

17     for itself.  The subsequent emails speak for themselves and

18     don't amount to how the government has characterized them.

19          It plainly says in there that he should invoke --

20     that executive privilege has been invoked and that he should

21     follow it to the fullest extent of the law whatever that

22     means.  And that's relevant, Your Honor, because a primary

23     question the Court asked earlier.  Does Mr. Cooney know why

24     the Committee didn't go to a civil enforcement proceeding?

25          In any event, the reason I say Mr. Bannon should

1    show no remorse relates to the deterrence factor.  There is

2    nothing here to deter.  There is nothing here to punish.

3    And the message in punishing or asserting a deterrence

4    justification runs afoul, I believe, of the Constitution and

5    of principles that we all hold dear to us.

6          Frankly, God forbid, we should ever want to deter

7    an American citizen from honoring the values that Mr. Bannon

8    honored in this case.  It sounds corny, but it's true and I

9    mean it.

10          Mr. Bannon in this case hired this experienced

11   lawyer.  Then executive privilege was invoked.  That

12   lawyer -- we have sworn, undisputed testimony.  That lawyer

13   then told Mr. Bannon, Mr. Bannon's hands were tied.

14          He could not comply with the subpoena in either

15   regard, documents or testimony.  And that the only lawful

16   course he could take, consistent with the Constitution and

17   his obligations, once executive privilege has been invoked,

18   would be to do exactly what Mr. Bannon did.

19          That's not a man who thinks he's above the law.

20   That's a man who is acting to the greatest values that we

21   hold in this country with respect to the Constitution,

22   adherence to what he understands the Constitution to

23   require.

24          And it reflects a respect for the institution of

25   the office of the President.  And that goes for the

1    institution itself, which includes, in this case and

2    otherwise, the invocation by a former President, as we're

3    told in *Nixon versus GSA*, and as Justice Kavanaugh wrote in

4    his opinion on the cert denial in *Trump versus Thompson*.

5          The significance and the implications of the

6    invocation of executive privilege and the fundamental

7    constitutional principle of separation of powers, as he

8    understood these principles and as his experienced lawyer

9    explained them to him, was the sole -- were the sole

10   motivating factors behind Mr. Bannon's actions.

11         He acted at all times in a manner he firmly

12   believed was the only lawful course our Constitution permits

13   and the only lawful course his experienced lawyer told him

14   or opened to him once executive privilege was invoked.

15         Never, at any time did Mr. Bannon believe in any

16   way, shape or form that he was acting in any way that was

17   wrongful or against the law.  And that's vitally important

18   to both the punishment, just punishment and the deterrence

19   factor here.

20         Never did he intend to defy any lawful authority

21   and never should a Court or any other institution in this

22   country seek to punish or deter conduct so motivated and for

23   which a reasonable, articulable basis existed and was given

24   as in this case, reflected in the clear unequivocal advice

25   of counsel, as demonstrated by Mr. Costello's repeated

1    declarations under penalty of perjury in this case which

2    remain competently undisputed.

3              An equally fundamental privilege, well settled

4    privilege is that executive privilege is presumptively valid

5    once it's invoked.  And Mr. Bannon respected that

6    presumption, and we should never, ever, ever seek to deter

7    that respect.

8              But there's much more to this story that's

9    relevant to the concept of deterrence and that demonstrates

10   that there's no punitive measure let alone a sentence of

11   incarceration that is necessary or appropriate in this case,

12   and of course that's the guidepost under the introduction to

13   3553.

14             Notwithstanding the unequivocal advice of his

15   counsel, Mr. Bannon, through his lawyer, wrote to the

16   Committee Chair.  He engaged through his counsel, although

17   never directly with the Committee.  The Committee never

18   engaged directly with Mr. Bannon.

19             The Committee asked Mr. Bannon's counsel if he

20   would accept service, and they were perfectly fine

21   apparently with engaging just with his counsel.  Never

22   addressed him.  Notwithstanding the unequivocal advice of

23   his experienced counsel, he wrote to the Committee Chair on

24   October 13th, and he explained that his hands were tied.

25             However -- and this is vitally important here on

1    the matter of deterrence and why we're here and shouldn't be

2    here.

3         He specifically wrote to the Committee that, if

4    the Committee could work out the privilege issue with former

5    President Trump or if they would take the matter to a

6    competent court, a court in a civil enforcement proceeding,

7    just like, one after another, congressional committee has

8    done throughout history, and that judge determined that

9    Mr. Bannon must comply with the subpoena because executive

10   privilege didn't apply or because it had not been properly

11   invoked or because the privilege would not cover some of the

12   materials or the testimony at issue or because executive

13   privilege still required some other response, like a

14   privileged matter -- log, or some other measure, he would

15   fully comply.

16        He asked them to take this to the appropriate

17   arbiter.  Executive privilege has been invoked.  I don't

18   know exactly what my obligations are.  I know that my lawyer

19   has told me I cannot comply with the subpoena.  Committee,

20   go before a judge and let's have that judge tell me what to

21   do, and I will comply with that.

22        That's not a person who is above the law.  That's

23   a person trying to act consistent with the law.  That's the

24   kind of conduct we should encourage in this country.  Take

25   your controversy to a judge and let the judge decide and

1    comply.  And express, as he did, that he is fully willing to

2    comply once that happens.

3              In suggesting that we go before a judge for his or

4    her direction, Mr. Bannon suggested a perfectly appropriate

5    course of action, if the Committee were indeed actually ever

6    interested in getting his testimony.  We know otherwise.  We

7    believe otherwise from the public statements many of the

8    Committee members made trying to make an example out of

9    Mr. Bannon.

10             And quite frankly transforming this into, as I

11   believe it was from the start, a partisan political agenda

12   with no interest in investigation.  The Committee wouldn't

13   have been composed as it was if it were interested in an

14   investigation.  The Committee -- Speaker Pelosi chose, as

15   the Chair of this Committee, Chairman Thompson.

16             Chairman Thompson sued President Trump immediately

17   before becoming Chairman of this so-called investigative

18   Committee claiming that President Trump was responsible for

19   the events of January 6th and that he, Chairman Thompson,

20   was personally injured by it.  The American people deserve

21   better than that, something different from that in a

22   Committee they're supposed to believe.

23             But that wasn't the reason Mr. Bannon didn't

24   comply.  These are my thoughts about the Committee and

25   thoughts that Mr. Bannon spoke about, about the Committee

1     after the event in this case, which is perfectly

2     appropriate.

3          You know, Judge Silverman of blessed memory wrote

4     an article on why the First Amendment is the most important

5     value in this country.  Mr. Bannon is vocal.  He speaks out

6     about a lot of issues, and he spoke out about this

7     Committee.  That doesn't demean the process.  They're

8     accurate statements about the Committee.

9          Quite frankly, Speaker Pelosi demeaned the process

10     when she appointed Thompson as the Chair, when she appointed

11     Raskin and Schiff on the Committee, two people who wrote

12     books about the events of January 6th and have a vested

13     interest, perhaps financial, including financial, in making

14     sure that this Committee comes to the same conclusions they

15     reached in their books.

16          The American people and any American citizen who

17     is interested in the events of January 6th and believes they

18     were important deserves better, not a political, partisan

19     political agenda like that.

20          But, again, the government claims Mr. Bannon

21     saying those kinds of things demeans the process and

22     therefore he should be punished.  No, he didn't respond to

23     the subpoena as they would have liked because executive

24     privilege was invoked, but he asked the Court to consider

25     it.

1          Had the Committee taken up Mr. Bannon's request

2     and suggestion and gone before a court, it would have

3     allowed him to do all that was in his power to try to honor

4     the invocation of executive privilege and the institution of

5     the presidency and the presumption of validity and the

6     separation of powers, fundamental principles in which

7     Mr. Bannon believes from head to toe, the Constitution of

8     our United States and the fundamental principles underlying

9     them, that people have died for, that people have spoken

10    aggressively for, to ensure that they remain guarantees that

11    are honored.

12          But he would have yielded to the conclusion and

13    the directive of a competent court, and he would have come

14    forward and provided whatever he could, whatever the

15    subpoena called for that was within his power and he made

16    that clear.  But they didn't take that route.

17          Your Honor will recall that, at one point during

18    the government's closing argument, consistent with the

19    outrageous overreaching by the prosecution that we've seen

20    in this case, a misdemeanor case in which three prosecutors

21    were assigned four FBI agents in a case they told the Court

22    was open and shut, a simple case.

23          One of these prosecutors told the jury that

24    Mr. Bannon not complying with the Committee's subpoena and

25    command to produce documents and appear was like a

participant in a sporting event defying the referee.  That's
the transcript of July 22nd, 2022 at 10:24, lines 9 to 12.

That was an offensively false analogy.  It's
offensive to our Constitution and the fundamental principles
underlying the Constitution.

A congressional committee, under our
constitutional system of checks and balances and
characterized by a formalized separation of powers, is not
the referee with respect to its own conduct or authority by
any means.

Indeed, our Founding Fathers were crystal clear
about this.  Consider for a moment what Mr. Madison said in
"Federalist 47."  He was speaking about an objection that
was raised by the New York Committee claiming there was
insufficiency in the proposed Constitution on the question
of separation of powers.

And he wanted to assure them of the importance of
separation of powers and that it would be honored.  He wrote
about the danger of excessive power in one branch,
specifically the legislative branch.

"No political truth is certainly of greater
intrinsic value or is stamped with the authority of more
enlightened patrons of liberty than that on which the
objection is founded."  The objection that separation of
powers was not sufficiently accounted for in the proposed

1    Constitution.

2          He went on to say, "The accumulation of all powers

3    legislative, executive and judiciary in the same hands,

4    whether of one, a few or many, and whether hereditary,

5    self-appointed, or elective, may justly be pronounced the

6    very definition of tyranny."

7          Allowing a constitution -- a congressional

8    committee to be its own command action and to be the referee

9    of its own authority and its commands is tyranny according

10   to Mr. Madison not just according to me.

11         Madison goes on to refer to his Oracle, who we

12   know was Montesquieu, on the exact question of a legislative

13   branch being the ultimate judge of the propriety of its own

14   conduct.  Again, this goes to the deterrence factor,

15   Your Honor.

16         Because Mr. Bannon wasn't willing, through his

17   lawyer, and could not and should not have been required to

18   follow the command of a congressional committee when

19   executive privilege had been invoked, and he understood it

20   to be invoked, and this idea that it was a smoke screen is

21   belied by President Trump's letter of July 9th in which he

22   confirms that he invoked executive privilege.

23         It's belied by the letter from Clark using the

24   same language used in the other letters to the other people

25   who we have referred to in the past with the exception of

1    one clause in the letter but not relevant on this point.

2              In any event, Madison went on to discuss -- this

3    won't go on too long, Judge, but I think it's important.

4    This is an important issue.  I think these are important

5    constitutional principles.  And it's very important, I

6    think, for the Court and the world to know that Mr. Bannon

7    stands for the Constitution.

8              On the exact question of the legislative branch

9    being the ultimate judge of the propriety of its own

10   conduct, Madison was clear.  He wrote again, in "Federalist

11   47," "there can be no liberty where the legislative and

12   executive powers are united in the same person or body of

13   magistrates or if the power of judging be not separated from

14   the legislative and executive powers."

15             He went on to say -- to write to say, "where the

16   *whole* power of one department is exercised by the same hands

17   which possess the *whole* power of another department, the

18   fundamental principles of a free constitution, are

19   subverted.  This would have been the case -- if the entire

20   legislative body had possessed the supreme judiciary."

21             "The entire legislature, can perform no judiciary

22   act..."

23             "The entire legislature again can exercise no

24   executive prerogative..."

25             Madison explained further, "The reasons on which

1    Montesquieu grounds his maxim are a further demonstration of

2    his meaning.  'When the legislative and executive powers are

3    united in the same person or body,' says he [Montesquieu],

4    'there can be no liberty because apprehensions may arise

5    lest *the same* monarch or senate should *enact* tyrannical

6    laws, to *execute* them in a tyrannical manner.'  Again 'Were

7    the power of judging joined with the legislative, the life

8    and liberty of the subject would be exposed to arbitrary

9    controul, for *the judge* would then be *the legislator*.'"

10         Judge, these are fundamental, constitutional

11   principles that were important to our Founding Fathers and

12   they must remain just as important to us today.  I don't say

13   this from any political perspective.

14         I represented the Democratic party of the United

15   States just this year.  I represent the Libertarian party.

16   I represent independent candidates.  I represented a

17   Socialist candidate for President in the 2020 election,

18   Your Honor.  I've never represented the Republican Party.

19   These are universal principles that every American should

20   care about and our Founding Fathers did care about.

21         Finally on Madison, Your Honor, in "Federalist

22   48," he went on with this theme to express its importance.

23   He warned about the dangers to liberty posed specifically by

24   the legislative branch if it's allowed to expand its already

25   vast power.  And this will be my last quote, Your Honor.

1          Madison wrote in "Federalist 48," "The legislative

2     department derives a superiority in our governments from

3     other circumstances.  Its constitutional powers being at

4     once more extensive and less susceptible of precise limits,

5     it can with the greater facility, mask under complicated and

6     indirect measures, the encroachments which it makes on the

7     co-ordinate departments."  Encroachments which we must not

8     allow to happen, we must not allow the Committee ever to be

9     a law unto itself.

10          These prosecutors, in their excessive zeal to make

11     Mr. Bannon their trophy were willing to mislead the jury on

12     this point and, perhaps more significantly, pervert or tear

13     asunder fundamental constitutional principles and

14     specifically, the fundamental constitutional principle of

15     separation of powers.

16          By arguing to this jury that Mr. Bannon failed to

17     obey a referee, the congressional committee, he asked for

18     the course -- the lawfully course to be taken, go before a

19     judge.  The Committee is not and cannot be the referee of

20     the obligations arising from its subpoena or the validity or

21     implications of the invocation of executive privilege.

22          Mr. Bannon, on the other hand, was true to those

23     precious constitutional values and advised the Committee

24     that he would comply with the directive on his obligations

25     with respect to the subpoena and the privilege holder if

1    only the Committee would submit the matter to the

2    jurisdiction of the appropriate branch of government,

3    judicial branch.

4         We should never punish or seek to deter that

5    course of action in Mr. Bannon or anyone else so situated.

6    But Mr. Bannon didn't just stop there in his efforts.  He

7    made another effort to see if there were a way to comply

8    while still respecting executive privilege.

9         On October 18th, 2021, President Biden, through a

10   representative, wrote to Mr. Costello purporting to override

11   or supercede former President Trump's invocation of

12   executive privilege.

13        At the same time, Mr. Costello -- we know from his

14   sworn testimony -- learned about the lawsuit *Trump versus*

15   *Thompson* in which a primary issue was whether an incumbent

16   president can supersede the invocation of privilege of a

17   former president and, if so, under what circumstances?

18        Mr. Costello asked the Committee for a one-week

19   extension to allow him to study the matter and evaluate the

20   impact of those developments.  If the Trump invocation had

21   been overruled as a matter of law, then Mr. Bannon believed

22   he would be free to comply.

23        The Committee immediately rejected his request for

24   a one-week extension, having already scheduled a televised

25   conference to evoke to hold Mr. Bannon in contempt.  Far

1    from defying the Committee, as we've been told by the

2    government, Mr. Bannon has tried one more time to find a way

3    to comply and the Committee simply was not interested.  Its

4    media plans and finding a way to make an example of

5    Mr. Bannon were the Committee's overriding priority.

6          Your Honor, when we talk about deterrence,

7    specifically in this context, it would be deterring someone

8    from ignoring a subpoena from Congress.  That's not what

9    Mr. Bannon did by any means.  Mr. Bannon had a principle

10   reason for not complying with the subpoena.

11         And more than that -- not more than that, less

12   than that but also relevant, he had the reason that his

13   experienced lawyer told him, this is the only way you can

14   respond to that subpoena.  There's nothing about the offense

15   conduct -- oh, and he testified on multiple other occasions

16   before other committees when executive privilege was

17   resolved or not invoked.

18         There's nothing about defendant's conduct,

19   Mr. Bannon's reasons for his response to the subpoena, that

20   he believed or understood at any time to be unlawful or

21   wrong.  Rather, he believed at all times, as directed by his

22   experienced counsel, that he took the only lawful course

23   open to him once he understood executive privilege to have

24   been invoked.

25         To put it in Section 3553(a) terms, therefore

1   there is nothing to punish that should be punished and

2   nothing to deter that should be deterred in the future.  In

3   fact, we must encourage citizens, when executive privilege

4   is invoked, to pursue the appropriate legal course.

5           This case didn't turn on whether Mr. Costello was

6   right or wrong about whether a privileged log should have

7   been turned over.  One can bet his or her bottom dollar

8   that, if a privileged log had been turned over, we'd be in

9   the same situation today.  It didn't turn on that kind of

10  technicality.  But Mr. Costello has explained his reasons

11  for why he believed --

12          **THE COURT:**  What if Mr. Costello had produced

13  non-privileged documents?

14          **MR. SCHOEN:**  I didn't hear the question,

15  Your Honor.

16          **THE COURT:**  What if Mr. Costello or Mr. Bannon had

17  produced non-privileged documents?

18          **MR. SCHOEN:**  I can only offer my view on it

19  Your Honor.  I don't believe --

20          **THE COURT:**  To date, correct, no non-privileged

21  responsive document has been produced.  Correct?

22          **MR. SCHOEN:**  Correct, Your Honor.  And let me

23  explain that.

24          **THE COURT:**  And I read -- and it seems to me that

25  from the FBI 302s about Mr. Costello's discussions with the

1    FBI -- not to characterize them as meetings or interviews or

2    whatever -- he seems to acknowledge that, at least some of

3    the categories of the subpoena, would call for

4    non-privileged documents.

5         **MR. SCHOEN:**  Well, Mr. Costello drafted a letter,

6    which he provided to the government at that time in which he

7    listed 7, I believe, maybe 12, but 7 categories of questions

8    to which he believed he had -- Mr. Bannon had nothing

9    responsive.  He gave that draft to the government.

10        It was never given to the Committee because the

11   Committee called everything off.  They said, We're going

12   forward with this.  That's one reason.  Mr. Costello was

13   prepared to do that.  But Mr. Costello, as the Court is

14   aware, understood the OLC opinion to be to mean that, if the

15   Committee will not allow a privilege holder to be present

16   for a deposition, then the entire subpoena is invalid.

17        **THE COURT:**  That's why I asked about documents.

18        **MR. SCHOEN:**  Then the entire subpoena is invalid.

19   That's how -- this is one subpoena with two categories to

20   it.  He viewed -- he's made it clear in his declaration.  He

21   viewed the entire subpoena as being invalid.  And who is

22   Mr. Bannon to say that my lawyer is wrong on such a legal

23   question?  I don't think that's fair.  So beyond --

24        **THE COURT:**  Let's just go to -- now so --

25        **MR. SCHOEN:**  I'd like to address that question

1    though if the document -- whether he's produced anything,

2    Your Honor.

3                    **THE COURT:**  Sure.  Has he produced any documents?

4                    **MR. SCHOEN:**  No, Your Honor.

5                    Two things about that.  One, as the Court is

6    aware, the government makes the case in their papers that

7    there was something wrong, let's say, for Mr. Corcoran to

8    have approached Committee counsel about trying to work out

9    an accommodation.

10                   Of course the law requires an accommodation.  But

11   let me say how that came up.  I did a radio show.  The radio

12   show host, my good friend and his friends with Congressman

13   Raskin, on the radio publicly he said, Why don't you just

14   get the Committee to drop the criminal charges so they can

15   get the information?

16                   I said, radio host -- who I'm sure would prefer

17   not to have his name mentioned here -- I said, Radio Host,

18   that's not for Mr. Bannon.  Right now, Mr. Bannon is under

19   indictment.  Take it to Congressman Raskin.

20                   And it was reported to me that he did, and

21   Congressman Raskin said, Unfortunately, at this point, it's

22   out of my hands.  You'll have to go to the U.S. Attorney's

23   office.  That's the genesis of that.

24                   Mr. Corcoran did exactly the right thing in

25   approaching the Committee to say, Let's work out an

1    accommodation.  Let's not go criminal with this.  Let's get

2    you the information.  That's step one.  Step two -- and

3    that, by the way, if privilege were removed.

4              So without going into any privileged

5    conversations, eventually a letter was issued by President

6    Trump on July 9th saying that privilege was removed.  So

7    government counsel, in my view at least, mocked the response

8    today that Mr. Costello made, but their response was --

9    again, you can parse the words however you like.

10             The response, I can assure the Court was,

11   privilege has been removed.  Mr. Bannon can now comply.  He

12   would like -- he wants to testify in a public forum and so

13   on.  Okay.  That's what Mr. Bannon wanted.  But the response

14   from the Committee was to give a deadline for compliance

15   that came during the course of this trial.

16             The decision was made by Mr. Costello that you

17   couldn't possibly do all of those things at once.  They

18   couldn't have Mr. Bannon appear before the Committee or

19   provide documents, first, going through the documents, while

20   he was in the middle of preparing for trial and sitting

21   through the trial.  And that ended the matter.  That was a

22   firm deadline that Chairman Thompson gave.

23             So that's the end of that, Your Honor.  And at

24   this point, quite frankly, the government decided to seek

25   punitive action.  They refused any accommodation.  The

1    subpoena now is extinguished based on this result in this

2    case.

3            But that's not to say that Mr. Bannon isn't

4    willing still to engage with the Committee.  But he hasn't

5    heard further from the time the Committee set that deadline

6    knowing that he couldn't comply.  But, again, that's not a

7    matter of remorse.  It's not a matter relevant to

8    deterrence, in my view.

9            I've said before, Your Honor, that this kind of

10   situation -- again, this is a very specific situation, but I

11   mean the kind of situation in which a defendant acts on

12   principle, reasonable, valid principle, principles he

13   believed to be valid, his lawyer believed to be valid.  And

14   it's not appropriate to assess criminal liability and

15   punishment against that person.  I don't need to go into

16   that argument further.

17           But the prosecution argues that Mr. Bannon should

18   be punished because he has spoken out against the

19   January 6th Commission, he's undermined its legitimacy, and

20   he imperils the integrity of our system.

21           That position ignores the fact that his consistent

22   reasons communicated by Mr. Costello over and over for

23   responding as he did, and the message to the public was,

24   executive privilege is important.  I must honor it.  Not,

25   I'm thumbing my nose at a committee.  Not, I'm ignoring a

1    committee.  Not, I'm ignoring my obligations.

2              I am honoring the Constitution and I'm respecting

3    the institution of the presidency.  That's the message

4    Mr. Bannon sent and not that he's above the law.  But it was

5    because of the invocation of executive privilege.

6              Now, ironically, the prosecution argues that that

7    demeans that process and the congressional process, and that

8    they say Mr. Bannon referred to this as a show trial, that

9    that demeans the integrity of this process.

10             They omit, of course, Mr. Bannon's repeated

11   statements to the media about his great respect for this

12   Court and for the jury in this case.  That hardly demeaned

13   the process.

14             I would suggest this, however, Your Honor -- and I

15   mean this sincerely -- with respect to demeaning the

16   integrity of this process, consider Mr. Bannon's actions,

17   relying on executive privilege and his good-faith belief in

18   what he did as a constitutional principle, and what the

19   government did with respect to a lawyer's records in this

20   case.

21             Government counsel, unequivocally, knowing that an

22   Historic Communications Act order is one of the most

23   intrusive mechanisms we have in our system, lied, flat out

24   lied to a federal judge in order to try to get

25   Mr. Costello's social media, email and telephone records.

1          How did they lie?  They told the judge in the

2    application that a particular email address belonged to

3    Mr. Costello, the lawyer in this case.  They made those

4    representations and all of their names appear on this

5    application.

6          They made that representation to a judge and it

7    wasn't true.  Was it just sloppy?  Was it sloppy to get 600

8    or more pages of some other American citizen's papers with

9    the imprimatur of the federal judge on the order authorizing

10   it?  That's more than sloppy.

11         They had four FBI agents on this case.  They could

12   have figured out whether that belonged to Mr. Costello.  And

13   the same goes for the other records of other

14   non-Mr. Costello in this case's records.  That's a lie to a

15   federal judge.  That demeans the integrity of this process.

16         I know the Court said it intends to address this

17   after the case, but it's a very serious violation.  And I

18   haven't seen any document yet that shows a correction to

19   that federal judge to whom those representations were made.

20         And instead, the government has the audacity to

21   complain that, in our investigation of exactly what

22   happened, the person whose records the government seized and

23   gave to us was notified that his records had been reviewed

24   by the government.

25         In this case, the government argued repeatedly

1    over the past year that Mr. Bannon should be barred from

2    raising any deficiency in the Committee or its composition

3    because he had waived them.  And earlier they convinced the

4    Court to find a waiver of that.

5           Now they argue that he challenged the legitimacy

6    of the Committee.  He was never permitted to do that in

7    front of the jury; and that was a defense that, quite

8    frankly, we believed he was entitled to, demonstrating the

9    political nature of the effort, the basis for bringing this

10   case criminal.  The government gives no paper to his efforts

11   at accommodation, which, as we say, the courts have said,

12   were constitutionally mandated.

13          What the prosecution really wants is to punish and

14   shoot down Mr. Bannon and others who would follow suit for

15   speaking out about the use of an investigative, in quotes,

16   committee for a partisan political agenda and not for an

17   investigation.  I understand that.  I understand they know

18   that this message goes to millions of people around the

19   world, and they don't want that message.

20          But politics has infected this process at least in

21   Congress for far too long, if this is truly meant to get at

22   the events of January 6th.  That's obviously beyond our

23   scope here.  But it's relevant because the government raised

24   this issue of demeaning the Committee.  Telling the truth

25   about this Committee or speaking one's mind about the

1   Committee is not only perfectly acceptable in this country,

2   it's an obligation if one believes it to be true.

3          And if you're an American concerned about the

4   events of January 6th and you want a real objective

5   full-fledged investigation, then you should speak out about

6   the Committee and its partisan political agenda.  Its public

7   statements and its pre-determined conclusions readily lead a

8   reasonable observer to believe that the Committee was

9   illegitimate from its inception.

10          But we're not, in this case, talking about that as

11   a basis for not complying with the subpoena.  This case is

12   about the invocation of executive privilege.  And Mr. Bannon

13   is entitled, in my view, obligated to speak out about the

14   Committee as he has.

15          An issue the government has raised in its papers

16   now is about this Mr. Clark.  Respectfully, we object to any

17   of the factual -- purportedly factual statements from

18   Mr. Clark being considered by the Court through these 302s

19   or whatever the government claims, some agent's notes of

20   what Mr. Clark said.

21          This is a sensitive subject to me, so I try to

22   move beyond all of that.  I have, unfortunately, a good deal

23   of personal experience with Mr. Clark, and he is nothing but

24   a thug.  I wouldn't believe a thing he says.  He's one of

25   what one might call the Three Stooges who were operating

1    from the government during that time.  But there were four

2    of them, so four stooges isn't a thing.

3            He has lied to me personally.  He has ripped me

4    off personally.  And so I don't think he's worthy of

5    believing as to anything he says, quite frankly.  But

6    unfortunately, that's my own personal baggage that I would

7    be happy to substantiate.

8            But in any event, it's certainly not competent

9    testimony in this form.  And the emails, as the government's

10   construed them don't lead to the conclusion they would lead

11   to, but Mr. Costello has provided the Court with a rebuttal

12   to what Mr. Clark said.

13           But you know what, Judge?  The reason the whole --

14   one of the main reasons the whole Clark thing or the

15   executive privilege was a smoke screen argument all is

16   completely irrelevant is because Mr. Bannon was the only one

17   willing to put this to the test.

18           He said, take me before a judge.  If you find,

19   Judge, privilege wasn't invoked properly, there was no

20   privilege, or this is a smoke screen or Clark testifies he

21   didn't mean this when he said that, then it would have all

22   gone out the door and he would have testified and he would

23   have complied, which he assured the Committee he would do.

24           So it doesn't really matter what Clark claims now,

25   because Bannon was willing to put it all before a judge.  He

1   also provided the government with all of Clark's

2   correspondence, Costello did.  We have the Trump letter of

3   July 9th confirming that privilege was invoked.  So this is

4   all, to borrow their word, a smoke screen, Your Honor.  It's

5   a kinard.  It's not a relevant issue.  It's an issue just

6   intended to inflame the Court and to put more heat into this

7   case.

8          So when the government stands before Your Honor

9   and says, Mr. Bannon could not have committed a more

10  malicious contempt of Congress than what he did in this

11  case, that's outrageous.  Shame on them and every American

12  who hears that kind of thing should reject it out of hand.

13         A more egregious or malicious contempt of Congress

14  would have been, Screw you, Congress.  Take your subpoena

15  and shove it.  Or, I'm going to ignore your subpoena,

16  Congress.  Not, I'm relying on the invocation of executive

17  privilege by a former President of the United States and on

18  what my lawyer told me is the only lawful course of action I

19  can take.  That's not malicious, that's responsible.

20         Your Honor, the question ultimately is what

21  message the Court wants to send with its sentence in this

22  case.  I know that this Court -- without knowing any more

23  about the Court than what I've read and what I've seen in

24  person, honors and cherishes our Constitution as much as any

25  American could.

1          And I know that the Court values these principles

2    of separation of powers.  The Court's written about it.  The

3    Court's written about these principles, not just as a judge

4    but as an advocate at the highest levels.

5          I know, therefore, that the Court doesn't consider

6    it corny when I talk about the value of these principles.

7    But I worry that a message of a harsh sentence in this case

8    sends just exactly the wrong message.

9          What's the alternative?  Mr. Bannon gets the

10   subpoena as a layperson, a congressional committee subpoena.

11   That raises immediately a host of technical questions he

12   needs a lawyer for.  But then add to the mix the invocation

13   of executive privilege, and that lawyer has to wrestle with

14   what to do and how to proceed.  But he tells his client what

15   to do.

16         This lawyer has come forward and admitted exactly

17   what he did, right or wrong.  Warts on.  Warts off.

18   Everyone can criticize the action that he took.  But

19   Mr. Bannon wasn't in a position to override it.  We don't

20   want to send a message to people that this is a

21   free-for-all.

22         When you get a subpoena from a congressional

23   committee and hire a lawyer, ignore your lawyer.  Do what

24   you think is best.  Ignore the invocation of executive

25   privilege.  You decide what the courts haven't been able to

1    decide, the extent to which an incumbent's view on executive

2    privilege supersedes a former president's view.  You decide,

3    layperson.

4            That's not a message we can afford to send,

5    Your Honor.  Mr. Bannon never, at any time, believed he was

6    above the law, never acted in any way to lead anyone to

7    believe he thought he was above the law.  He acted in a

8    responsible manner.

9            That's why, Your Honor, quite frankly, I don't

10   believe it would be fair or appropriate for him to come

11   before the Court and say he's terribly sorry about how he

12   proceeded.  He proceeded based on a reasonable

13   constitutional belief.  He proceeded based on his advice of

14   counsel.  And more than that, he gave the Committee an out.

15           He wanted to find a way to comply that would be

16   consistent with his direction from counsel and with his

17   respect for the institution of the presidency.  He could

18   have done no more and to punish or deter that or to expect,

19   remorse or contrition about that, I don't think it would be

20   fair to expect, reasonable to expect or responsible to

21   expect as an American, Your Honor.  Thank you very much.

22           **THE COURT:**  Thank you, Mr. Schoen.

23           **MR. SCHOEN:**  We ask, Your Honor, as you know -- as

24   Your Honor knows --

25           **THE COURT:**  Yes.

1       **MR. SCHOEN:**  -- for a sentence of no

2  incarceration.  If any sentence of incarceration were

3  imposed, that it be suspended.  That no fine be imposed but,

4  in any event, a minimum fine, certainly within the

5  guidelines, and we certainly seek a stay pending appeal,

6  first of all, self-surrender but, secondly, a stay pending

7  appeal.

8       Your Honor has spoken at great length, far more

9  eloquently than I, about its reservations concerning the

10  *Licavoli* holding, and its apparent inconsistency with modern

11  standard for the willfully, and with the traditional

12  standard.

13       I have brought to the Court's attention a couple

14  of cases just in the last couple of years on this question

15  of "willfully."  I think that Justice Alito and Justice

16  Thomas have spoken clearly in contrasting willfully with

17  knowingly.

18       But in any event, it meets the substantial

19  question standard in this circuit.  Even if the Court were

20  to think that the Court did everything exactly right, it

21  still would meet the standard because reasonable jurors

22  could disagree.

23       Thank you, Your Honor.

24       **THE COURT:**  Thank you, Mr. Schoen.

25       My intent is to take a recess before I impose the

1    sentence.  But, Mr. Schoen, does Mr. Bannon -- Mr. Bannon,

2    do you intend to speak?  You need not.  It's your option.

3           **THE DEFENDANT:**  My lawyers have spoken for me,

4    Your Honor.

5           **THE COURT:**  Okay.  Thank you.

6           So I'm going to take a brief recess, and then I

7    will come back and walk through my analysis and the sentence

8    here.

9         (Break)

10          **THE COURT:**  Thank you, Ms. Lesley.

11          Before I walk through the 3553(a) factors and

12   pronounce the sentence, I'd just like to briefly recap for

13   everyone the parties' positions.

14          The government requests an in-guideline sentence

15   of 6 months total incarceration, which is at the top end of

16   the sentencing guidelines, plus an above-guidelines fine of

17   $100,000 on each count for a total of $200,000 in fines.

18          The defendant, as we've heard, of course, argues

19   for a sentence of probation.  And the probation office

20   recommends 30 days of incarceration on the two counts

21   running concurrently, so 30 days of incarceration, and a

22   $20,000 fine.

23          In imposing a sentence I must consider the Section

24   3553(a) factors, the first of which is the nature and

25   seriousness of the offense.

1         The subpoena here was issued to Mr. Bannon in

2    connection with the January 6th Committee's investigation of

3    the events of that day.  As I have said in other contexts,

4    but it bears repeating again, the events of January 6th were

5    undeniably serious.

6         A large mob entered or sought to enter the United

7    States Capitol while a Joint Session of Congress was meeting

8    to certify the results of the presidential election.  Many

9    of the rioters planned to come to the Capitol for the

10   express purpose of interrupting those proceedings.

11        Many used violence against law enforcement

12   officers or engaged in vandalism.  Many of those rioters

13   engaged in planning efforts before January 6th suggesting

14   that they intended to engage in violence.

15        The January 6th Committee thus has every reason to

16   investigate what happened that day, including who may have

17   been involved in planning or instigating what happened and

18   thus what, if anything, can be done to prevent similar

19   horrific events from occurring in the future.

20        To that end, the Committee issued a subpoena to

21   Mr. Bannon that required him to produce documents and

22   provide testimony on a number of topics related to the

23   Committee's inquiry.

24        Mr. Bannon, however, has not produced a single

25   document to the Committee, has not provided the Committee

with a log regarding responsive documents he might be
withholding on whatever ground, and has not provided any
testimony on any topic.

Mr. Bannon's primary argument is that he could not
do so or was excused from doing so because former President
Trump had asserted executive privilege with respect to the
subpoena.  There are, however, several problems with this
position.

First, the record reflects that, in the fall of
2021, former President Trump had not actually asserted
executive privilege over any particular document or
testimony and had certainly not directed Mr. Bannon that it
would be appropriate for him not to provide any information
to the Committee whatsoever.

Instead, the October 6th, 2021 letter from Justin
Clark, counsel to former President Trump, stated that
President Trump was instructing Mr. Bannon to, "Not produce
any documents concerning privileged material," and "not
provide any testimony concerning privileged material."

Second, on January 6, 2021, Mr. Bannon was a
private citizen who had not been employed in the executive
branch for several years.  That does not mean he could not
have been in possession of documents covered by executive
privilege or a participant in conversations that might be
covered by executive privilege.  But it does mean that he

1   was less likely to have such information than others who

2   were working in the executive branch at the time.

3          Third, and somewhat relatedly, some of the

4   information sought by the subpoena, both documents and

5   testimony, is information as to which no conceivable claim

6   of executive privilege could be made.  Even Mr. Bannon's

7   counsel, Mr. Costello, appeared to acknowledge that point in

8   his meetings with the FBI and DOJ after the House referred

9   Mr. Bannon for prosecution for contempt.

10         Nevertheless, Mr. Bannon did not produce such

11  documents to the Committee or testify regarding such topics

12  nor did he provide the Committee with a log of any documents

13  that he was withholding based on executive privilege.

14  Indeed, to this day, he has not provided the Committee with

15  such a log.  Thus, the Court does not even know if he has

16  any such documents.

17         Even though, in July of this year, former

18  President Trump withdrew any executive privilege barrier to

19  Mr. Bannon's production of privileged documents or testimony

20  about assertedly privileged matters, Mr. Bannon still has

21  not produced a single document or privilege log or appeared

22  for testimony.

23         All of this reflects that the offense here was

24  quite serious, and all of this cuts in favor of a

25  substantial sentence.  But other facts cut in Mr. Bannon's

1    favor.

2         First, a congressional subpoena directed to

3    someone who, like Mr. Bannon, may have been communicating

4    directly with the then-President of the United States does

5    present potential executive privilege issues that implicate,

6    among other things, the various OLC opinions on interbranch

7    subpoenas and that, in many respects, have not been resolved

8    by the courts.

9         Second, throughout this process, Mr. Bannon was

10   represented by counsel, including in discussions and letters

11   with the Committee.  And the record reflects that his

12   counsel was advising him how to respond to the subpoena.

13        Mr. Bannon did not completely ignore the fact that

14   he had received a subpoena nor did he fail to engage with

15   the Committee at all.  And while his counsel's advice may

16   have been overly aggressive or misguided, it does appear

17   that, at least to some extent, Mr. Bannon was following that

18   advice.

19        Third, the Committee, as other congressional

20   committees have done in the past, could have but did not

21   attempt to sue Mr. Bannon civilly and seek a court order

22   requiring Mr. Bannon to comply with the subpoena in whole or

23   in part.  Instead, the Committee moved quickly to hold

24   Mr. Bannon in contempt and to refer this case for

25   prosecution.  These points cut in Mr. Bannon's favor.

1          Moving to the second factor, the history and

2     characteristics of the defendant, Mr. Bannon served in the

3     United States Navy for several years until he was honorably

4     discharged in 1983.  He then obtained an MBA from Harvard in

5     1985.

6          He worked as an investment banker.  And then,

7     ultimately, from 2012 to 2016, he was the executive chairman

8     at Breitbart News Network.  He resigned in August 2016 and

9     began working on Donald Trump's presidential campaign.

10          From August 2016 to December 2016, he was the CEO

11     of Donald Trump for President.  He then became the chief

12     strategist and senior counselor to President Trump in August

13     of 2016.  That is to say he became an executive branch

14     employee at that time.

15          Mr. Bannon resigned from that position in August

16     2017 and launched his own podcast.  Since 2017, he has been

17     self-employed and, as I indicated earlier, has not been an

18     employee of the executive branch since that time and

19     certainly not on January 6th, 2021.

20          As I noted earlier, Mr. Bannon does not have a

21     criminal history under the sentencing guidelines.  Although

22     he was indicted in August 2020 by a federal grand jury for

23     certain alleged crimes, he received a presidential pardon

24     regarding them.  And although he was indicted last month by

25     a New York grand jury for similar crimes, similar alleged

1    crimes, he has not been convicted of them.

2            As I stated earlier, in my view, Mr. Bannon has

3    not taken responsibility for his actions with respect to his

4    refusal to comply with the two congressional subpoenas.  He

5    has, however, been compliant with the conditions of release

6    and with all proceedings that have occurred in this court.

7            As to the next factor, protecting the public,

8    respect for the law and deterrence, I conclude that

9    Mr. Bannon appears to be of, perhaps, some very small risk

10   of recidivism at least with respect to congressional

11   subpoenas.

12           As explained before, Mr. Bannon has still refused

13   to comply with either the subpoena -- excuse me, with either

14   the document or testimony components of the subpoena, has

15   yet to produce either a single document or a privileged log

16   to the Select Committee.

17           Specific deterrence as to Mr. Bannon appears at

18   least a little necessary.  But much more important, others

19   must be deterred from committing similar crimes.  Respect

20   for Congress is, of course, an important piece of our

21   constitutional system.  And flaunting congressional

22   subpoenas betrays a lack of respect for the legislative

23   branch which exercises the will of the people of the United

24   States.  Overall, this factor weighs slightly against

25   Mr. Bannon.

1          As to the need, the next factor, to avoid

2    unwarranted sentencing disparities, I recognize that

3    convictions, under 2 U.S. Code Section 192, are relatively

4    rare.  There's not a great deal of comparative data about

5    such sentences.  The government points to five sentences

6    that are 50 or more years older as comparators.

7          First, the sentence in *Licavoli* of 6 months

8    incarceration for refusal to testify at all in response to a

9    congressional subpoena but, as Mr. Bannon notes, that

10   defendant had a substantial criminal history.

11         Second, the sentence in *Tobin* of 30 days for not

12   providing certain documents in response to a subpoena,

13   although that defendant had provided some other documents.

14         The sentence in *Hutchinson* of 6 months for a

15   defendant who testified before Congress but refused to

16   answer 18 questions.

17         The sentence in *Yellin* of 12 months for a

18   defendant who testified before Congress but refused to

19   answer four questions but, as Mr. Bannon notes, the

20   conviction there was overturned on appeal.

21         And finally, fifth, the sentence in *Seger* of 12

22   months for a defendant who testified before Congress but

23   refused to answer 10 questions but, as Mr. Bannon notes

24   again, that conviction was also overturned on appeal.

25         The government argues that Mr. Bannon should

1    receive 6 months because he refused to testify at all and

2    refused to produce any documents, such that he deserves a

3    more stringent sentence than the defendant in *Tobin* and a

4    comparative sentence to the defendant in *Licavoli*.

5         And again, as we heard earlier, Mr. Bannon argues

6    that, if the Court is going to impose a term of

7    incarceration, it should be no more than what the Court

8    believes is the mandatory minimum and, of course, Mr. Bannon

9    has argued that probation only should be imposed.

10        I should note that I am also aware from the

11   Sentencing Commission of two other cases in which the

12   defendants pleaded guilty to contempt of Congress and were

13   sentenced to one month and probation respectively.

14        So the lack of many comparator sentences, the fact

15   that all of the existing comparator sentences provided by

16   the government are ones imposed many years ago under very

17   different circumstances lead me to conclude that these cases

18   are essentially sui generis and there is no risk here of

19   creating unwarranted sentencing disparities either way.   In

20   my view, this factor does not weigh heavily in my analysis.

21        So having heard from the parties, based on my

22   considerations of the presentence investigation report, the

23   other pretrial services materials, the sentencing memoranda,

24   including those submitted yesterday, all of the Section

25   3553(a) factors as discussed above and the guidelines as

1    I've calculated before, I believe that the guidelines

2    provide an appropriate sentence in this case.

3              And I will impose a sentence of 4 months of

4    incarceration for each count running concurrently, along

5    with a fine of $6,500, which is essentially the same ratio

6    of 4 months is to 6 months as $6500 is approximately to

7    $9500.  That is the -- the $9500, again, is the top end of

8    the fine range.

9              In my view, the sentence I'm imposing reflects the

10   fact that there can be more culpable ways to be in contempt

11   of Congress than Mr. Bannon's conduct, such as by

12   intentionally not responding at all, not engaging at all and

13   the like.  But for the reasons I've already discussed, I do

14   believe that Mr. Bannon does have some culpability here.

15             Mr. Bannon also argues that he should not have to

16   serve his sentence while he appeals.  I agree.  I am

17   prepared to release Mr. Bannon from his sentence of

18   incarceration pursuant to 18 U.S. Code Section 1343, if he

19   files a timely appeal.

20             In particular, I find that Mr. Bannon is not

21   likely to flee or pose a danger to the safety of any person

22   or the community; and that such an appeal would not be taken

23   for the purpose of delay but rather would raise substantial

24   questions of law.

25             In particular, as I've noted throughout this case,

1      there is a substantial question regarding what it should

2      mean for a defendant to willfully make default under the

3      contempt of Congress statute and what evidence a defendant

4      should be permitted to introduce on that question.

5            This case also raises substantial questions about

6      the effect of the congressional subpoena recipients,

7      invocation of the Speech or Debate Clause, and questions

8      regarding whether and to what extent the Committee was

9      formed and operate in compliance with its rules.

10           Mr. Bannon's appeal, again assuming he appeals,

11     would present those substantial questions.  So if Mr. Bannon

12     files an appeal, as he has stated is his intention, I will

13     enter an order releasing him from serving his term of

14     incarceration until his appeal is resolved.

15           As a result, you, Stephen Bannon, are hereby

16     committed to the custody of the Bureau of Prisons for a term

17     of imprisonment for concurrent terms of 4 months on each of

18     Counts 1 and 2.

19           You are also ordered to pay a fine of $6500 and a

20     special assessment of $25 per count for a total of $50.

21     Regarding monetary penalties, the special assessment of $50

22     is payable immediately to the Clerk of Court.  Payments for

23     criminal penalties are due in monthly installments of $500

24     to commence 30 days after the date of the judgment.

25           The probation office shall release the presentence

1    investigation report to all appropriate agencies in order to

2    execute the Court's sentence.  Under 18 U.S. Code Section

3    3742, you have a right to appeal the sentence and judgment

4    imposed by me.  If you choose to do so, you must file any

5    appeal within 14 days after the entry of judgment.  If

6    you're unable to afford the cost of an appeal, you may

7    request permission to file an appeal without cost to you.

8           As to voluntary surrender, I believe it's

9    appropriate here.  In particular, I believe the way this

10   should work is that I will enter the judgment assuming an

11   appeal is noticed.  I will then enter an order releasing

12   Mr. Bannon from his obligation to appear for his period of

13   incarceration.

14          If an appeal is not noticed, and therefore I don't

15   enter that order, then Mr. Bannon must make arrangements to

16   surrender voluntarily no later than November 15th, which is

17   the period, basically, after the period by which an appeal

18   must be noticed.

19          Are there any other -- and I should say, I think

20   it's crystal clear all of the objections that have been

21   lodged by Mr. Bannon, both in the papers, throughout the

22   trial, with respect to the PSR and again today.  I don't

23   think we need to rehash them now.

24          But is there anything, Mr. Schoen, in particular,

25   you feel the need to preserve for the record?

1          **MR. SCHOEN:**  No, Your Honor.

2          **THE COURT:**  Thank you.

3          Does the government wish to note anything?

4          **MR. COONEY:**  No, Your Honor.

5          **THE COURT:**  Okay.

6          Thank you, all.

7          I apologize.  We will get the judgment out as

8    quickly as possible, so that these post-judgment things can

9    happen.  Okay?  Thank you, all.

10          (Proceedings concluded at 11:07 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **C E R T I F I C A T E**

2

3          I, **Lorraine T. Herman, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9    ___October 28, 2022___          ___/s/_____
                     **DATE**                        **Lorraine T. Herman**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25