# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 1:22-cr-00200-APM |
| v. ) | |
| PETER K. NAVARRO, ) | |
| Defendant. ) | |

**DEFENDANT PETER K. NAVARRO REPLY IN SUPPORT OF MEMORANDUM IN AID OF SENTENCING[1]**

---

[1] Earlier today, January 22, 2024, the government sought leave of court to file a sixteen (16) page response to Dr. Navarro's Sentencing Memorandum. Claiming "new arguments" and the purported existence of a "wholly independent motion," the government sought leave at literally the 11th hour to triple the number of pages in its response. Accordingly, Dr. Navarro respectfully reserves the right to oppose the government's 11th hour request and/or additional time to respond to the government's lengthy submission without leave of Court.

As the Supreme Court observed nearly a Century ago:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor -- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88 (1935). The government here betrays its duty of impartiality in seeking the Court's sentence of Dr. Navarro. Consider, for example, its ask that Dr. Navarro be forced to pay a fine of $200,000. *See* Memo., at 20 (Jan. 18, 2024) (ECF No. 159). The government sought such a fine in the sentencing of Stephen K. Bannon as well, but was reminded by Judge Nichols that the U.S. Sentencing Guidelines ("USSG") place a ceiling of $9,500 on any fines assessed of Mr. Bannon (based on his guidelines range) and that even if the government seeks an upward variance, the higher fine needs to be tied to the offense. *See* Sentencing Tr., at 23:6-9, *United States v. Bannon*, No. 21-cr-670 (D.D.C. Oct. 21, 2022) (ECF No. 159-1) ("Mr. Cooney: . . . We were inartful in our sentencing memorandum. The guidelines range fine is exactly what you articulated, $1,000 to $9,500. The range would be 1,000 to 100,000 under the statute.").[2] It would seem the government was inartful again.[3]

---

[2] Briefly, 2 U.S.C. § 192 has a statutory maximum fine of $1000. The government acknowledges this, but states that 18 U.S.C. § 3571(b) presumptively raised the statutory maximum fine to $100,000. *See* Memo., at 11-12 (Jan. 18, 2024) (ECF No. 159). Dr. Navarro objects to the constitutionality of this reading of § 3571(b) insofar as it restricts the power of future Congresses. *See United States v. Eisenberg*, 496 F. Supp. 2d 578, 581-82 (E.D P.A. 2007) ("The 100th Congress's ability to restrict the power of future Congresses (by requiring them if they desire to set a lower fine level, to, in addition to setting the lower fine level, specifically exempt the statute from § 3571) is suspect.").

[3] The government went on to argue that a variance from the Guidelines was warranted Continued…

The government's betrayal is manifest of its true motive – the prosecution of a senior presidential advisor of a chief political opponent.  By way of a second example, consider the position taken by the Department – representing one United States – in its litigation against Dr. Navarro for allegedly refusing to return purportedly presidential records to the National Archives and Records Administration under the Presidential Records Act.  44 U.S.C. §§ 2201-2209.  Here, the government claims that Dr. Navarro's work related to the 2020 Presidential Election could only have been conducted in his personal capacity.[4]  Yet there, because it suits their interests, the government recently asserted – originally under seal – that Dr. Navarro, and the Administration of President Trump, could very well have worked to ensure election integrity as part of his official duties.  *See* Notice, at 4 (Dec. 29, 2023) (ECF No. 35) ("However, the United States has not taken the position that every action that Defendant took in connection with the 2020 Presidential Election was done in his personal, and not official, capacity; nor has the United States taken the position that any communications related to the 2020 Presidential Election are not Presidential records.").

Returning to the seminal legal issue presented by this case, the government again betrayed its duty of impartiality by fastidiously avoiding the novel legal question presented by

---

based on Mr. Bannon's conduct?  *See id.* 23:16-19 ("The Court: . . .but the government is advocating for a. . . variance on the fine?" "Mr. Cooney: Exactly correct."); *id.* at 25:12-25, 26:1-2, 26:3-12 ("The Court: And doesn't the appropriate fine really have to be tied to the offense?" "Mr. Cooney: Yes. . . .  The Court: How is a $200,000 warranted here in light of the guidelines range?"  "Mr. Cooney: Because it amplifies his contempt for the criminal justice system."); *id.* at 76:3-8 ("The Court: And I will impose a sentence of four months of incarceration. . . along with a fine of $6,500, which is essentially the same ratio of 4 months is to 6 months as $6500 is approximately to $9500. . . $9500, again, is the top end of the fine range.").

[4] *Inter alia*, the government took the following position in a colloquy with the Court: "The Court: So your view is, for example, the piece about the Green Bay Sweep because it had to do with the campaign and the election could not have possibly been in his official capacity. . . . Mr. Hulser: Yes, judge."  H'rg T., at 48:4-8 (Nov. 4, 2022) (ECF No. 64).

Dr. Navaro's prosecution: whether a former senior presidential advisor could be constitutionally prosecuted for contempt of congress. Despite taking more than 45 days to brief the question without actually providing any answer, it was only when the Court pressed for a response at a hearing months later that one was given. Now, despite acknowledging such a prosecution does implicate constitutional concerns, the government forces this Court to "wade into these judicially uncharted constitutional waters," Order, at 3 (Jan 19, 2023) (ECF No. 4), and *punish* Dr. Navarro for raising these issues. The undeniable reality is that for more than 50 years, the Department has not prosecuted a former senior presidential advisor and there is reason to believe Dr. Navarro will be *the only former senior presidential advisor ever prosecuted* with this offense. Indeed, because the Court finally forced the Department to confront a question that had heretofore gone unanswered by either O.L.C. or any Court this case will serve as a roadmap to the resolution of future disputes between our separate but co-equal Branches of government.

Put differently, the only reason this Court is compelled to deliberate any sentence for Dr. Navarro is because of the failure of political adversaries to communicate. "Historically, disputes over congressional demands for presidential documents" have not involved the courts but, instead, 'have been hashed out in the hurly-burly, the give-and-take of the political process between the legislative and the executive.'" *Trump v. Thompson*, 20 F. 4th 10, 25 (D.C. Cir. 2021) (quoting *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2029 (2020)). And so it was, more than 40 years ago, that Judge John Lewis Smith wrote: "The difficulties apparent in prosecuting Administrator Gorsuch for contempt of Congress should encourage the two branches to settle their differences without further judicial involvement. Compromise and cooperation, rather than confrontation, should be the aim of the parties." *United States v. U.S. House of Representatives*, 556 F. Supp. 150, 153 (D.D.C. 1983) (dismissing the action declaratory

judgment action by the Department of Justice as, "an improper exercise of the discretion granted by the Declaratory Judgment Act, 28 U.S.C. § 2201").

And yet not once – not one time – did either Congress or the Department of Justice contact former President Trump to either ascertain his position on whether he desired to assert privilege with respect to the subpoena issued by the Select Committee to Dr. Navarro.[5]  Now, the Department of Justice thrusts this Court – the Judicial Branch – into the fray by demanding that it "punish" Dr. Navarro for his failure to comply with the Select Committee's subpoena – compliance this Court found to be born of an understanding that he was duty-bound not to comply:  "And whether [the government] think[s] the President invoked [executive privilege] or not here, [Dr. Navarro] thought he invoked. . . . I don't know that anybody would really dispute that Dr. Navarro thought he was supposed to invoke."  Hr'g Tr., at 119:18-23 (Aug. 28, 2023) (ECF No. 148).  *See also Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148, 213 n.34 (D.D.C. 2019).  This brazen showing of a lack of impartiality contravenes the admonition of the Court in *United States v. Tobin*, 306 F.2d 270, 276 (D.C. Cir. 1962) ("Especially where the contest is between different governmental units, the representative of one unit in conflict with another should not have to risk jail to vindicate his constituency's rights.").

The government further betrays its duty of impartiality in its interpretation of the applicable guidelines.  Appendix A of the U.S. Sentencing Guidelines ("USSG") plainly directs

---

[5] The Court similarly acknowledged some responsibility was owed by Congress.  *See* Hr'g Tr., at 120:2-9, 19-25, 121:1-2 (Aug. 28, 2023) (ECF No. 148) ("The Court: [S]houldn't we at least demand more of Congress before we subject somebody to contempt after they've invoked a Presidential communications immunity or privilege? . . .  So if Congress itself makes a determination that privilege does not apply without resorting to a federal court to confirm that determination, a former senior advisor who was following the instruction of . . . the former President is automatically subject to [or] potentially subject to criminal contempt; is that right?  I mean, that's where we find ourselves so clearly that's what the Department of Justice thinks.").

the Court to Guideline §§ 2J1.1 and 2J1.5. *See* USSG Appendix A ("This index specifies the offense guidelines section(s) . . . applicable to the statute of conviction."). § 2J1.1, in turn, now provides only a cross-reference to § 2X5.1, which applies only to felony offenses.[6] § 2J1.5, on the other hand, applies both to felonies *and* misdemeanors and recommends a base offense level of four (4), for the latter. *See* USSG § 2J1.5(a)(2). Leary of this outcome, the government instead argues that § 2X5.1's comment 3 requires the application of § 2X5.2, based on the following language: "This guideline applies only to felony offenses not referenced in Appendix A (Statutory Index). For Class A misdemeanor offenses *that have not been referenced in Appendix A*, apply § 2X5.2 . . . ."). The problem with the government's logic is that 2 U.S.C. § 192 *is* referenced in Appendix A.

Finally, the government betrays its duty of impartiality by misrepresenting Dr. Navarro's acceptance of responsibility. Asserting that Dr. Navarro never sought to, "comply with his obligations" under the Select Committee's subpoena, the government ignores that Dr. Navarro offered to resolve this prosecution in exchange for providing information to the Select Committee after confirming former President Trump's waiver of privilege, offered to avoid a trial by agreeing to a stipulated bench trial and, ignores that when asked if Dr. Navarro *could* cure his default, the government advised the Court that he could not. Hr'g Tr., at 79:19-22 (June 21, 2023) (ECF No. 090). Clearly Dr. Navarro is entitled to a two (2) level reduction given that the only reason he proceeded to trial was to preserve important constitutional issues. USSG § 3E1.1 commt n.2.

[SIGNATURE ON NEXT PAGE]

---

[6] Also of note, the original language of § 2J1.1 was not limited to just felonies. The original guidelines, promulgated in 1987, provided: "If the defendant was adjudged guilty of contempt, the court shall impose a sentence based on stated reasons and the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2)." USSG Amendment 170 (1989).

Dated: January 22, 2024                    Respectfully Submitted,

                                              E&W Law, LLC

                                              _____/s/ John S. Irving_____
                                              John S. Irving (D.C. Bar No. 460068)
                                              1455 Pennsylvania Avenue, N.W., Suite 400
                                              Washington, D.C. 20004
                                              Telephone: (301) 807-5670
                                              Email: john.irving@earthandwatergroup.com


                                              SECIL LAW PLLC

                                              _____/s/ John P. Rowley, III_____
                                              John P. Rowley, III  (D.C. Bar No. 392629)
                                              1701 Pennsylvania Ave., N.W., Suite 200
                                              Washington, D.C. 20006
                                              Telephone: (703) 417-8652
                                              Email: jrowley@secillaw.com

                                              BRAND WOODWARD LAW, LP

                                              _____*/s/ Stanley E. Woodward, Jr.*_____
                                              Stan M. Brand (D.C. Bar No. 213082)
                                              Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                              400 5th Street NW, Suite 350
                                              Washington, DC  20001
                                              202-996-7447 (telephone)
                                              202-996-0113 (facsimile)
                                              Stanley@BrandWoodwardLaw.com

                                              *Counsel for Dr. Peter K. Navarro*

## **CERTIFICATE OF SERVICE**

On January 22, 2024, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.   .

Respectfully submitted,

*s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
400 Fifth Street Northwest, Suite 350
Washington, DC  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Dr. Peter K. Navarro*