# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 22-cr-00200 (APM) |
| ) | |
| PETER K. NAVARRO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

### I.

A grand jury indicted Defendant Peter K. Navarro on two counts of contempt of Congress, in violation of 2 U.S.C. § 192. Count One alleged that Defendant refused to comply with a subpoena for records issued by the U.S. House of Representative's Select Committee to Investigate the January 6th Attack on the U.S. Capitol ("Select Committee"). Count Two alleged that Defendant failed to appear for a deposition sought by the same subpoena. A jury convicted him on both counts. The court imposed a total sentence of four months of incarceration.

In his sentencing memorandum, Defendant requested release pending appeal if the court imposed a term of prison. Def.'s Mem. in Aid of Sentencing, ECF No. 160, at 21–29 [hereafter Def.'s Sentencing Mem.]. The court agreed to defer ruling on that request until after Defendant filed a supplemental brief, which he has now done. Def.'s Suppl. in Supp. of Release Pending Appeal, ECF No. 168 [hereinafter Def.'s Suppl. Mem.]. Defendant raises four grounds to support his motion for release pending appeal. As explained below, because Defendant has not shown that any of those issues will pose a "substantial question of law" on appeal, his motion is denied.

## II.

Under 18 U.S.C. § 3143(b)(1), a court "shall order the release" of an individual pending appeal if it finds: "(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released"; and "(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" "(i) reversal [or] (ii) an order for a new trial."[1]  There is no dispute here regarding Defendant's flight risk or dangerousness, nor is there any assertion that his appeal is for the purpose of delay. Thus, the sole question before the court is whether Defendant's forthcoming appeal raises "a substantial question of law."[2]

A "substantial question" is not merely an issue that is "fairly debatable," "fairly doubtful," or "not frivolous." *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987) (per curiam) (citations omitted). Nor is it enough that the prosecution and some of the issues presented were, as Defendant repeatedly asserts, "novel" or "unique." Def.'s Sentencing Mem. at 1, 3, 22–23, 26, 28. A "substantial question" is "a 'close' question or one that very well could be decided the other way." *Perholtz*, 836 F.2d at 555 (citation omitted). That higher standard reflects a "presumption of valid conviction," which a defendant seeking release must overcome. *Id.* at 556.

## III.

### A.

The court begins with Defendant's contention concerning the D.C. Circuit's decision in *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961). On the government's motion in limine,

---

[1] Defendant does not argue that a successful appeal would result in either "a sentence that does not include a term of imprisonment," 18 U.S.C. § 3143(b)(1)(B)(iii), or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," *id.* § 3143(b)(1)(B)(iv).

[2] Defendant does not contend that he will raise a "substantial question of . . . fact" with respect to any of the court's factual determinations. 18 U.S.C. § 3143(b)(1)(B).

2

the court held that *Licavoli* precluded Defendant from arguing at trial that he had not "willfully [made] default," 2 U.S.C. § 192, because he had a good-faith belief that President Trump had invoked executive privilege, which excused him from compliance. *See United States v. Navarro (Navarro II)*, 651 F. Supp. 3d 212, 238–39 (D.D.C. 2023). Defendant says he will contest that ruling on appeal. He intends to argue that "*Licavoli*'s antiquated holding is inconsistent with prior Circuit precedent" and that "*Licavoli* is inapplicable to assertions of executive privilege, which implicate principles of separation of powers." Def.'s Suppl. Mem. at 4. Neither of these issues poses a "substantial question."

**1.**

In asserting that *Licavoli*'s holding is at odds with earlier Circuit authority, Defendant cites only to *Townsend v. United States*, 95 F.2d 352 (D.C. Cir. 1938). Defendant's reliance on *Townsend* is curious. In that case, the defendant appeared before a congressional committee, made a statement, and then left without answering any questions. *Id.* at 357–58. The defendant disputed that his conduct was "willful," claiming that he had to have acted with a bad purpose to violate § 192, and he had not done so. *Id.* The D.C. Circuit rejected that argument. *Id.* It instead said that "[a] witness may exercise his privilege of refusing to answer questions and submit to a court the correctness of his judgment in so doing, but in the event he is mistaken as to the law it is no defense, for he is bound rightly to construe the statute." *Id.* at 361. The court thus rejected a mistake-of-law, or good-faith, defense.[3]

*Townsend* relied on the Supreme Court's decision in *Sinclair v. United States*, in which the Court held that acting in "good faith on the advice of competent counsel" was *not* a defense to

---

[3] If there were any doubt that the court rejected a good-faith defense in *Townsend*, the D.C. Circuit said the same in two other post-*Townsend*, pre-*Licavoli* cases—*Eisler v. United States*, 170 F.2d 273, 280 (D.C. Cir. 1948) (citing *Townsend*), and *Dennis v. United States*, 171 F.2d 986, 990 (D.C. Cir. 1948) (quoting *Townsend*).

3

contempt for refusing to answer pertinent questions. *Id.* (citing 279 U.S. 263, 299 (1929)). The Court in *Sinclair* explained that a violation of § 192 requires no showing of "moral turpitude," an "[i]ntentional violation is sufficient to constitute guilt," and a defendant's "mistaken view of the law is no defense." 279 U.S. at 299. Subsequently, the D.C. Circuit in *Licavoli* relied on *Sinclair* to hold that willful default under § 192 did not require a showing of "evil motive," only "a deliberate intention to do the act." 294 F.2d at 209. *Licavoli* and *Townsend* thus rest squarely on the same Supreme Court precedent, and there is no inconsistency between them that gives rise to a "substantial question."

### 2.

Defendant's second argument regarding *Licavoli* is entirely conclusory. He makes no genuine effort to explain why *Licavoli* is inapplicable because his case involved an assertion of executive privilege. Def.'s Suppl. Mem. at 4–5. He cites only to *Pauling v. Eastland* for the black-letter principle that, when a defendant challenges an indictment or conviction, "the court must apply the law, paying heed and giving effect, first of all, to Constitutional provisions." *Id.* (quoting 288 F.2d 126, 129 (D.C. Cir. 1960)). No one contends otherwise.

In any event, limiting *Licavoli* as Defendant proposes would produce an incongruous result. It would mean that the government's burden to prove willfulness was heavier in this case than in others because Defendant is a former senior aide to a former President who had a good faith belief that executive privilege excused his noncompliance. The court is aware of no authority that increases or alters the government's evidentiary burden as to the mens rea element of a crime based on a defendant's official position and his professed state of mind. "Like any other person charged with a violation of § 192, Defendant [could not] assert as a defense that he refused to

appear because he had a good faith belief that he was not legally required to do so." *Navarro II*, 651 F. Supp. 3d at 239.

## B.

The court next addresses Defendant's arguments regarding the claimed effect his invocation of executive privilege had on the government's authority to prosecute him for contempt of Congress. But first some background is in order.

Prior to trial, Defendant moved to dismiss the indictment. He argued that, as a former senior aide to the President who had legitimately asserted executive privilege, he was immune from compelled congressional process and, for that reason, he could not be prosecuted for contempt under § 192. *See id.* at 222. The court refused to dismiss the indictment at that stage because Defendant had not "come forth with *some* evidence to show that President Trump made a 'formal claim of privilege' after 'personal consideration' with respect to the Select Committee subpoena." *Id.* at 223.

The court then gave Defendant a second bite at the apple. It held an evidentiary hearing so that Defendant could offer proof that the former President in fact had invoked executive privilege in response to the Select Committee's subpoena issued to him. Defendant testified at that hearing and presented evidence. Still, the court found that Defendant "ha[d] not carried his burden of establishing a formal claim of privilege from President Trump after his personal consideration of the Select Committee subpoena, or that President Trump had authorized him to make a determination about whether to invoke executive privilege with respect to the subpoena." Hr'g Tr., August 30, 2023, ECF No. 149, at 23–24 [hereinafter Evid. Hr'g Tr.].

Now, Defendant argues that "the question of whether an invocation of executive privilege is required and what is required for a 'proper' invocation are both 'close questions' or questions

'that could very well could be decided the other way.'" Def.'s Suppl. Mem. at 5–6; *see also* Def.'s Sentencing Mem. at 24–26 (same). The court disagrees.

1.

Whether a President's invocation is required to assert executive privilege is not a substantial question. The answer is surely "yes." *See Nixon v. Sirica*, 487 F.2d 700, 714–15 (D.C. Cir. 1973) ("*Whenever a privilege is asserted*, even one expressed in the Constitution, . . . it is the courts that determine the validity of the assertion and the scope of the privilege." (emphasis added)). Any other answer would mean that the President has unilateral authority to determine when and how the privilege applies. That is not the law. *Id.* at 715 ("To leave the proper scope and application of Executive privilege to the President's sole discretion would represent a mixing, rather than a separation, of Executive and Judicial functions."); *see also* Evid. Hr'g Tr. at 12 (explaining that "the terms 'claimed' or 'invoked' with respect to privilege, those are two verbs that, in my view, require an act of some affirmative conduct, that is, by either the President or someone who the President has designated and authorized to make the claim on the President's behalf") (citing *Dellums v. Powell*, 561 F.2d 242, 248 (D.C. Cir 1977)).

Citing *United States v. Nixon*, Defendant insists that "executive privilege is presumptive" and he was duty-bound to invoke it. Def.'s Suppl. Mem. at 5 (citing 418 U.S. 683, 708 (1974)). But *Nixon* does not stand for the proposition that Congress and the courts should unfailingly accept that executive privilege applies whenever an aide to the President asserts it. The D.C. Circuit rejected a similar argument long ago. *See Sirica*, 487 F.2d at 715 ("If the claim of absolute privilege was recognized, its mere invocation by the President or his surrogates could deny access to all documents in all the Executive departments to all citizens and their representatives, including Congress . . . . Support for this kind of mischief simply cannot be spun from incantation of the

doctrine of separation of powers."). What the *Nixon* Court meant by "presumptively privileged" is that courts will assume the privilege applies when invoked, but it is not an absolute privilege and can be overcome by countervailing considerations. 418 U.S. at 708; *see Trump v. Thompson*, 20 F.4th 10, 26 (D.C. Cir. 2021) (stating that "executive privilege is a qualified one"). Nowhere did the Court suggest that the privilege has effect when the President does not invoke it.

If anything, President Nixon did what President Trump could have done here. Through his counsel, he unequivocally claimed executive privilege by moving to quash the grand jury subpoena. *Nixon*, 418 U.S. at 688 (stating that "[t]his motion was accompanied by a formal claim of privilege"). Because the court found no evidence that President Trump ever invoked the privilege, no "presumption" ever attached to Defendant's testimony or records.

**2.**

As to "what is required for a 'proper' invocation," the court previously acknowledged that this is an "open question" in the D.C. Circuit. Evid. Hr'g Tr. at 6–7. This court answered that question in part by adopting the approach suggested in dicta in *Dellums v. Powell*. *Id.* at 10–13 (citing *Dellums*, 561 F.2d at 248) (stating that "[a]nalytically, there is much to be said for the proposition that the . . . presidential privilege must be claimed by the president or an official authorized to speak for the president").

Yet, after over a year of litigation, Defendant still has not offered what he thinks is required for a proper invocation of executive privilege. Nor has he articulated why the court's reliance on *Dellums* was wrong. He has conceded that his invocation alone had no legal significance unless it was actually done at the behest of President Trump or his designee. *See* Hr'g Tr., November 4, 2022, ECF No. 64, at 20–21 (defense counsel not contesting that it would be ineffective for a former senior advisor to invoke privilege without an instruction to do so). That begs the question:

7

what does a President, current or former, have to do to properly assert executive privilege? Defendant has not supplied an answer. Defendant thus has not carried his burden to show that this question is a "close" one.

### 3.

It is important to note that the questions Defendant intends to raise about a President's proper invocation of executive privilege, even if answered in his favor, likely will not lead to reversal of his conviction for refusing to appear for testimony (Count Two). The questions matter to Defendant because, throughout these proceedings, he has argued that, (1) as a former senior aide to a former president who asserted executive privilege, he enjoyed immunity from the congressional process and therefore was not required to appear before the Special Committee, and (2) because he properly declined to appear, the contempt statute does not reach his conduct. *See Navarro II*, 651 F. Supp. 3d at 222. For that proposition, he has relied on various memoranda from the Office of Legal Counsel ("OLC"), *see id.*; *United States v. Navarro (Navarro IV)*, No. 22-cr-200 (APM), 2023 WL 4936723, at *3 (D.D.C. July 28, 2023), which he cites again in his supplemental memorandum, Def.'s Suppl. Mem. at 5 (citing *Prosecution for Contempt of Cong. of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101, 134 (1984)).

No OLC opinion, however, goes as far as Defendant contends. The OLC opinions express the view that, when the President invokes executive privilege in response to a subpoena from Congress, "current and former senior advisors to a *sitting* President enjoy absolute immunity from compelled congressional testimony" about official acts, and that a senior advisor who follows a President's instruction not to testify about such matters cannot be prosecuted for contempt. *Navarro IV*, 2023 WL 4936723, at *3 n.1. But "no OLC opinion [] recognizes absolute immunity

8

from congressional process for a former senior aide to a *former* President," even as to official acts, *see infra*, and not even Defendant claims that such immunity reaches testimony about non-official acts. *See Navarro IV*, 2023 WL 4936723, at *3 & n.1. Thus, even if the former President had invoked privilege, at a minimum, such invocation did not reach testimony pertaining non-official acts.[4] Therefore, no authority excused his complete non-appearance before the Select Committee.

Moreover, by the end of these proceedings, Defendant had backed off of his claim of absolute testimonial immunity. He agreed instead that a former aide to a *former* president, at most, enjoys a qualified immunity. *See United States v. Navarro (Navarro III)*, No. 22-cr-200 (APM), 2023 WL 4846715, at *1 (D.D.C. July 28, 2023) (citing Hr'g Tr., June 21, 2023, ECF No. 90, at 83–84). This court ruled that qualified immunity did not justify Defendant's refusal to appear before the Select Committee to sit for a deposition, even regarding official acts. Evid. Hr'g Tr. at 28–36. Defendant has not argued that that determination presents a "close question." Thus, even if President Trump had properly invoked executive privilege—and there is no evidence he did so—qualified testimonial immunity would not have excused his failure to appear or foreclosed his prosecution.

## C.

Defendant's claim of *testimonial* immunity does not extend to his conviction for refusing to produce *documents* to the Select Committee (Count One). So, Defendant offers a different question regarding the documents count: whether his prosecution violated principles of "separation of powers." Def.'s Suppl. Mem. at 6. Defendant argues that because neither he nor Congress

---

[4] The Special Committee sought at least some information about Defendant's non-official acts. For example, the Select Committee was interested in asking Defendant about reports he published in December of 2020, which argued that a pattern of irregularities showed that the election had been stolen from President Trump. As the court noted at sentencing, when Defendant issued those reports he publicly stated that he was doing so in his *personal* capacity, thus falling outside of any claim of privilege. Sentencing Hr'g Tr. (draft), January 25, 2024, at 88; *cf. Blassingame v. Trump*, 87 F.4th 1, 4 (D.C. Cir. 2023) (holding that a President's re-election campaign activities are not official acts).

could resolve his executive privilege claim as to records—only a court had the authority to do so—and because no court ever resolved the privilege dispute, his prosecution violated the separation of powers. *Id.* More precisely, he "submits that his assertion of executive privilege precluded his prosecution absent [a judicial] order overcoming the privilege and compelling his testimony." Def.'s Sentencing Mem. at 26. For that proposition, Defendant cites to the D.C. Circuit's decision in *Tobin v. United States*, in which the court approvingly quoted the trial court's observation that "where the contest is between different governmental units, the representative of one unit in conflict with another should not have to risk jail to vindicate his constituency's rights." Def.'s Suppl. Mem. at 6–7 (citing 306 F.2d 270, 276 (D.C. Cir. 1962)). Defendant's "pre-prosecution judicial order" theory does not present a "close question."

For starters, the claimed need for a judicial determination as a condition to prosecution likely is a forfeited argument. If, as Defendant contends, a prosecution against him could not proceed until after a court resolved all privilege disputes, it was incumbent upon him to tell the Special Committee that he in fact had potentially privileged records in his possession. *See McPhaul v. United States*, 364 U.S. 372, 379 (1960) (stating the defendant should have identified any legitimate reason not to produce records "upon the return of the writ") (quoting *United States v. Bryan*, 339 U.S. 323, 332 (1950)). But Defendant asserted executive privilege *before* receiving the subpoena, and then had no communications with the Select Committee until *after* the deadline to produce records had passed. If he had told the Committee that he in fact had potentially privileged records, "[s]uch a statement would have given the [Select Committee] an opportunity to avoid the blocking of its inquiry by taking other appropriate steps to obtain the records." *Id.* Because of his silence then, Defendant cannot now complain that his prosecution was improper because there was no judicial resolution of the privilege claim.

10

Nor does *Tobin* give rise to a "substantial question." Indeed, Defendant's selective quoting of *Tobin* demonstrates the weakness of his position. *Tobin* involved a congressional subpoena to the Port of New York Authority. Thus, the case concerned not a dispute between Congress and the Executive Branch, but Congress and a state-level entity. Defendant omits the text that precedes his preferred portion:

> Although this question is not before the Court, it does feel that if contempt is, indeed, the only existing method, Congress should consider creating a method of allowing these issues to be settled by declaratory judgment. *Even though it may be constitutional to put a man to guessing how a court will rule on difficult questions* like those raised in good faith in this suit, what is constitutional is not necessarily most desirable.

306 F.2d at 276 (emphasis added). So, it is true that in *Tobin* the D.C. Circuit acknowledged the challenges inherent in resolving hard issues within a contempt proceeding. But it also recognized that it would be "constitutional" to do so. The court betrayed not even a hint that, if a privilege dispute arises, a judicial resolution is a necessary precondition to prosecution under the contempt statute.[5]

## D.

Defendant's final proposed "substantial question" merits little discussion. Defendant insists that his prosecution was "motivated by political bias." Def.'s Sentencing Mem. at 26–29. Yet, he offers no actual proof to support that contention. *See id.* at 27–28 (asserting that political bias can be discerned from the prosecution's trial references to the events of January 6th); *see also United States v. Navarro (Navarro I)*, 627 F. Supp. 3d 1, 7–8 (D.D.C. 2022) (holding that Defendant had failed to come forward with evidence to support a "colorable claim" of a selective

---

[5] When it previously rejected this argument, the court did observe that perhaps "the Court of Appeals will rule differently." Evid. Hr'g Tr. at 30. But the court's passing remark during an oral ruling was not made in the context of considering whether the issue presented a "substantial question" and should not be equated with its more considered judgment reflected in this written opinion.

prosecution). If anything, the record demonstrates just the opposite. *See Navarro I*, 627 F. Supp. 3d at 5–6 (discussing the absence of political bias in Department of Justice's decision to not prosecute two of the former President's closest aides, Chief of Staff Mark Meadows and Deputy Chief of Staff Dan Scavino, both of whom were subpoenaed but did not testify before the Select Committee); Sentencing Hr'g Tr. (draft), January 25, 2024, at 90 (same). Defendant's cynical, self-serving claim of political bias poses no question at all, let alone a "substantial" one.

## IV.

For the foregoing reasons, Defendant's request for release pending appeal is denied. Unless this Order is stayed or vacated by the D.C. Circuit, Defendant shall report to the designated Bureau of Prisons ("BOP") facility on the date ordered by the BOP.

Dated: February 8, 2024

Amit P. Mehta
United States District Court Judge