# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | Criminal No. 1:22-cr-00200-APM |
| v. ) | |
| ) | |
| PETER K. NAVARRO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT PETER K. NAVARRO'S EMERGENY MOTION FOR RESENTENCING**

Defendant Dr. Peter K. Navarro, by and through the undersigned counsel, and pursuant to Section 3582 of Title 18 of the United States Code and Rule 32.1 and 37 of the Federal Rules of Criminal Procedure, respectfully requests this Court modify the term of Dr. Navarro's sentence to include a term of supervised release of thirty (30) days.

Procedurally, Dr. Navarro requests, pursuant to Rule 37, that the Court issue an Indicative Ruling that it would modify Dr. Navarro's sentence if the D.C. Circuit remanded to the Court for that purpose. Assuming the D.C. Circuit does so remand, Dr. Navarro thereafter requests the Court enter an Order as soon as it is authorized to do so, but not later than June 19, 2024,[1] modifying Dr. Navarro's sentence to include a term of supervised release of (30) days. Dr. Navarro will then

---

[1] Section 3582(c)(1)(A) only authorizes the Court to modify a prisoner's sentence only after that prisoner, "fully exhaust[s] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner's] behalf" or that, 30 days lapse, "from the receipt of such a request by the warden of the defendant's facility." Dr. Navarro submitted his request for the release sought herein to the Warden of FCI Miami on May 8, 2024. This Court will therefore be authorized to act under § 3582 not later than June 19, 2024. However, because Dr. Navarro has appealed his conviction and sentence, Notice of Appeal (Jan. 25, 2024) (ECF No. 164), he is required to seek an Indictive Ruling from the Court and then ask the Court of Appeals to remand this case for purposes effecting its ruling. Accordingly, Dr. Navarro is asking this Court to enter an Order only after it is authorized to do so pursuant to § 3582(c)(1)(A).

immediately be eligible to begin serving his term of supervised release and will conclude service of his sentence, both imprisonment and supervised release, at approximately same time.

On September 7, 2023, Dr. Navarro was convicted of two misdemeanor counts of contempt of congress pursuant to 2 U.S.C. § 192 for his failure to comply with a subpoena for testimony and documents before the United States House Select Committee to Investigate the January 6th Attack on the United States Capitol.  On January 25, 2024, this Court imposed concurrent sentences of four months imprisonment for each misdemeanor count and specifically remarked that it was mirroring the term of imprisonment for Steve Bannon. *See e.g.*, Hr'g Tr., at 91:2-13 ("The Court: . . . I do need to ensure that Dr. Navarro is sentenced consistent with how others have been sentenced.  And while there are some mitigating factors here that are not present in Mr. Bannon's case, and there are some aggravating factors here that are not present in Mr. Bannon's case, I think they ultimately balance out. . . You will be committed to the custody of the Bureau of Prisons for concurrent terms of four months[.]").  The Court did not sentence Dr. Navarro to any term of supervised release.  On March 19, 2024, Dr. Navarro self-reported for surrender to the Bureau of Prisons at FDC Miami.  His release date is currently scheduled as July 17, 2024.

Dr. Navarro's term of imprisonment has been marred by the same political turmoil that gave rise to his prosecution. *See*, *e.g.* Hr'g Tr. at 83:24-25, 84:1 (Jan. 25, 2024) (The Court: "I've already expressed my bewilderment at why he was arrested in the way he was instead of was [sic] able to turn himself in.").  He has been denied the opportunity to speak both with the press as well as a with Member of Congress.  Indeed, when the Director of the Bureau of Prisons was asked about why a sitting Member of Congress could not speak to Dr. Navarro, he was informed that Dr. Navarro is, "too notorious" to be interviewed.  *See* Matt Gaetz (@RepMattGaetz), X (May 6,

2

2024).[2] This despite that same Member being permitted to tour the facility where Dr. Navarro is imprisoned and to interview a prisoner convicted of participating in the events of January 6, 2021, Matt Gaetz (@RepMattGaetz), X (Jan. 5, 2024).[3] On a more personal note, defense counsel has been denied the request to visit Dr. Navarro unless they agree to do so on the weekend. Pertinent to the instant motion, upon information and belief, Dr. Navarro is the only prisoner at his facility serving a misdemeanor sentence and the only prisoner not now eligible for early release under the First Step Act of 2018 (P.L. 115-391).

Pursuant 18 U.S.C. § 3624, as modified by the First Step Act:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term . . . under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner to the community.

18 U.S.C. § 3624(c)(1). This provision enables qualified prisoners early release albeit under continuing supervision by the government. Specifically, there are two types of prelease custody applicable to Dr. Navarro. First, the Director *shall*:

> place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons *shall*, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for *the maximum amount of time* permitted under this paragraph.

18 U.S.C. § 3624(c)(2) (emphasis added). *See also* 18 U.S.C. § 3624(g)(2)(A). As Dr. Navarro was sentenced to 120 days confinement, ten percent of his term would be twelve (12) days. However, pursuant to 18 U.S.C. § 3624(g)(2)(A)(iv), Dr. Navarro would only be required to remain on home confinement until he had served 85% of his term of confinement, or 102 days. Given

---

[2] https://twitter.com/RepMattGaetz/status/1787632541828092199.

[3] https://twitter.com/RepMattGaetz/status/1743369092562571538

that Dr. Navarro would not be released to home confinement until after he served 108 days, more than 85% of his term of confinement, Dr. Navarro should simply be released at that time. Thus, despite the mandatory directive of § 3624, the Bureau of Prisons has advised Dr. Navarro – irrespective of the lack of any language to this effect within any pertinent statute – that because his period of home confinement would not exceed thirty (30) days, it is not "practicable" for him to be processed for the same. This claim is clearly incongruous insofar as none of the processing required for placement on home confinement is actually required. Nevertheless, challenging this interpretation by the Bureau of Prisons would take longer than the duration of time remaining on Dr. Navarro's sentence (Dr. Navarro has been admonished to, "file a grievance"). Dr. Navarro does not now ask the Court to decide whether this interpretation of, "practicable," is reasonable, and defense counsel is otherwise unaware of any authority *permitting* the Court to decide this question as part of Dr. Navarro's criminal action, as opposed to a separate *habeas* action.[4]

Separately, § 3624 provides that the Director, "may transfer the prisoner to begin any . . . term of supervised release . . . based on the application of time credits under section 3632." 18 U.S.C. § 3624 (g)(3). Under § 3632(d)(4)(A)(i), any prisoner who, "participat[es] in evidence-based recidivism reduction programming or productive activities . . . shall earn 10 days of time credits for every 30 days of participation." Thus, Dr. Navarro will earn 30 days of time credits during the first three (3) months of his term of incarceration (the Bureau of Prisons has acknowledged he is earning these credits), were Dr. Navarro to be sentenced to a thirty (30) day

---

[4] 18 U.S.C § 3624(g)(2) also provides that even were Dr. Navarro's residence ineligible for home confinement, which it certainly is, that Dr. Navarro could be released to a halfway house (Residential Reentry Center) to serve his home confinement time. Dr. Navarro was advised, however, that no beds are available at a halfway house within this District (and the Federal Public Defender confirmed for counsel that there are currently no facilities being maintained in this District for men to serve time in a halfway house). Yet oddly, Dr. Navarro is not a resident of this District, as recognized by the Bureau of Prisons assigning Dr. Navarro to FCI Miami. *See* 18 U.S.C. § 3621(b) (requiring BOP to house prisoners not more than 500 miles from their place of residence).

4

term of supervised release, he should be permitted to serve the same following the completion of this third month of incarceration (or an approximate release date of June 17, 2024).[5]

Congress has authorized this Court to adjust Dr. Navarro's sentence to ensure he receives a benefit from the time credits he earns during his term of imprisonment. Pursuant to § 3582 this Court:

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). Section 3553(a), in turn, provides the following factors to be considered in sentencing (or resentencing): (a) the nature and circumstances of the offense; (b) the history and characteristics of the defendant; (c) the seriousness of the offense, respect for the law, and just punishment; and (d) deterrence to criminal conduct and protection from further crimes. These factors, of course, were necessarily addressed by Dr. Navarro in his Sentencing Memorandum (Jan. 18, 2024) (ECF No. 160), and applied by the Court at sentencing. *See* Hr'g. Tr. at 74:3-7 (Jan. 25, 2024). At bottom, nothing in the Court's consideration of the sentencing factors suggests that Dr. Navarro should be precluded from the benefit of any time credits he has earned during his term of imprisonment.

---

[5] To be sure, § 3624(g)(3) is permissive: "the Director of the Bureau of Prisons *may* transfer," *id.* (emphasis added)), the only excuse proffered by the Director – that processing Dr. Navarro for home confinement would not be practicable – is negated by the Court's sentencing him to a term of Supervised Release, which would require processing regardless. Nevertheless, Dr. Navarro makes this request knowing that it may result in his serving a term of supervised release *in addition* to serving four months of imprisonment should the Bureau of Prisons reject his application for the utilization of time credits under the First Step Act.

To the contrary, at least one other District Court has concluded the spirit of the First Step Act requires such an interpretation. In *United States v. Oprea*, No. 11-cr-64, 2023 U.S. Dist. LEXIS 188648 (D. N.H. Oct. 20, 2023), the district court considered a prisoner's, "petition[] . . . to modify his existing sentence to *add* a term of supervised release to the end of his period of incarceration." The district court further observed: "That seemingly odd request is driven by [the prisoner's] desire to benefit from certain programs created under the First Step Act (FSA) and administered by the Bureau of Prisons (BOP)." *Oprea*, 2023 U.S. Dist. LEXIS 188648, at *1. Importantly, the court observed:

> [M]aking relief of the sort sought by [the petitioner] available to federal inmates who were not sentenced to a term of supervision will encourage otherwise-ineligible inmates to participate in the evidence-based recidivism reduction programs offered by the BOP under the First Step Act. That, in turn, facilitates the general public policy goal of protecting the public from future criminal activity. Absent such relief, one would expect that inmates without a term of supervised relief will be less likely to participate in such programs, to the detriment of society as a whole.

*Oprea*, 2023 U.S. Dist. LEXIS 188648, at *10. Like the petitioner in *Oprea*, the lack of any term of supervised release for Dr. Navarro constitutes an, "extraordinary and compelling" reason to alter his sentence, 18 U.S.C. § 3582(c)(1)(A); Dr. Navarro can readily demonstrate he is not a danger to the community; and Dr. Navarro's release would be consistent with the sentencing factors described in 18 U.S.C. § 3553(a).

Moreover, although supervised release was not contemplated by the government's Sentencing Memorandum (Jan. 18, 2024) (ECF No. 159), it *was* contemplated by Dr. Navarro's Presentence Investigation Report (Jan. 11, 2024) (ECF No. 156), which noted that guideline range for a term of supervised release was one (1) year, *see* U.S.S.G. § 5D1.2(a)(3), but that imposition of supervised release was "optional." *See* U.S.S.G. § 5D1.1(b). Although it's possible the Court elected not to impose a term of supervised release to deprive Dr. Navarro of any benefit from the

6

time credits he earns under § 3632. However, to the extent this was simply an oversight, the Court should resentence Dr. Navarro to include a period of thirty (30) days of supervised release, which such time he would be permitted begin serving during the fourth month of his imprisonment.

[SIGNATURE ON NEXT PAGE]

Dated: May 9, 2024                      Respectfully Submitted,

                                               E&W Law, LLC

                                                 _____/s/ John S. Irving_____
John S. Irving (D.C. Bar No. 460068)
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
Telephone: (301) 807-5670
Email: john.irving@earthandwatergroup.com


SECIL LAW PLLC

       _____/s/ John P. Rowley, III_____
John P. Rowley, III  (D.C. Bar No. 392629)
1701 Pennsylvania Ave., N.W., Suite 200
Washington, D.C. 20006
Telephone: (703) 417-8652
Email: jrowley@secillaw.com

BRAND WOODWARD LAW, LP

       _____*/s/ Stanley E. Woodward, Jr.*_____
Stan M. Brand (D.C. Bar No. 213082)
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
400 5th Street NW, Suite 350
Washington, DC  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Dr. Peter K. Navarro*

## CERTIFICATE OF SERVICE

On May 9, 2024, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.   .

Respectfully submitted,

*s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
400 Fifth Street Northwest, Suite 350
Washington, DC  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Dr. Peter K. Navarro*